# Exhibit Q

## Mosaic Program Loan Program Addendum



# MOSAIC PROGRAM
# LOAN PROGRAM ADDENDUM

*Last updated December 7, 2021*

This Loan Program Addendum (this "**Loan Addendum**") supplements and is incorporated by reference into the Mosaic Program Participation Agreement (the "**Participation Agreement**") between Solar Mosaic LLC, a Delaware limited liability company (successor in interest to Solar Mosaic, Inc.), as administrator of the Mosaic Loan Program (the "**Loan Program**") and Modern Home LLC, a Delaware limited liability company, as administrator of the Mosaic Lease Program (the "**Lease Program**", and together with the Loan Program, the "**Mosaic Program**"), of the first part (collectively, "**Program Administrator**"), and the Person named as Participant in the Participant Application, of the second part ("**Participant**"). All capitalized terms not otherwise defined herein shall have the meanings given to them in the Participation Agreement.

**1. APPLICABILITY.** This Loan Addendum applies to the promotion and funding of any Loan under the Loan Program. Participant agrees to comply with the terms and conditions of this Loan Addendum, as well as the other Mosaic Program Documents, whenever promoting the Loan Program to Customers interested in Eligible Products financed by a Loan. In the event of a conflict between the terms of this Loan Addendum and other Mosaic Program Documents, the order of priority described in Section 12.8 of the Participation Agreement shall apply. Program Administrator may modify the terms of this Loan Addendum in its sole discretion as set forth in Section 1.4 of the Participation Agreement.

**2. FEES AND PAYMENTS**

**2.1.** Funding Schedule; Seller's Points.

    2.1.1. Program Administrator, on behalf of the applicable Financing Provider, will define funding stages for each Eligible Product (each, a "**Funding Stage**"). Upon completion of the applicable Funding Stage ("**Stage Completion**"), Program Administrator will direct Participant and/or the Customer to provide confirmation and/or evidence of such Stage Completion, in each case in such form and substance as required by Program Administrator or the applicable Financing Provider, and Participant shall deliver or cause the related Customer to deliver such confirmation and/or evidence promptly upon Program Administrator's request.

    2.1.2. Program Administrator may require Participant to pay a fee equal to a percentage of the Loan Amount for each Loan ("**Seller's Points**"). The Seller's Points are "seller's points" for purposes of the Truth in Lending Act and Regulation Z promulgated thereunder. Participant agrees to accept the Loan Amount, minus the applicable Seller's Points and any outstanding amounts owed by Participant to Program Administrator or any Financing Provider under the Mosaic Program Documents (the "**Net Loan Amount**") in full satisfaction of the amount owed by the applicable Customer for an Eligible Product under the Purchase Agreement. Subject to Section 4, Program Administrator, on behalf of the applicable Financing Provider, will pay Participant the Net Loan Amount in installments within ten (10) business days following the achievement of certain Funding Stages as notified by Program Administrator to Participant (the "**Funding Schedule**"). Program Administrator reserves the right, in its sole discretion, to change Seller's Points, the Funding Schedule and any other payment terms upon written notice to Participant in accordance with Section 1.4 of the Participation Agreement.

    2.1.3. Program Administrator may, in its sole discretion, disburse all or a portion of the Net Loan Amount to Participant prior to expiration of the applicable Customer's statutory right to cancel the Loan Agreement if the Customer wishes to waive such statutory right due to emergency circumstances. In such an event, Participant must obtain from the Customer a waiver in the Customer's own handwriting that (a) details the nature of the emergency, (b) states that the Customer is waiving his or her right to cancel the Purchase Agreement and the Loan Agreement with the applicable Financing Provider within the statutory period, (c) is signed and dated by the Customer, and (d) is otherwise in the form required by Applicable Law (a "**Cancellation Waiver**"). Participant will promptly provide a copy of any Cancellation Waiver



within three (3) business days of Program Administrator's request therefor. In the event that Participant fails to provide a copy of the Cancellation Waiver within such timeframe, or the Cancellation Waiver is not in the form required by this Section 2.1.3, then Program Administrator reserves the right to cancel the applicable Loan Agreement and exercise the remedies set forth in Section 4. Copies of all Cancellation Waivers shall be retained by Participant for three (3) years.

2.2. Payment Method.

    2.2.1. All payments referenced in the Mosaic Program Documents shall be made electronically via wire transfer, ACH (Automated Clearing House) payment or similar means. Participant authorizes Program Administrator, on behalf of the applicable Financing Provider, to initiate credit entries for amounts that may be due Participant under the Mosaic Program Documents. Participant authorizes Program Administrator to initiate debit entries for (a) any credit entries in error; or (b) the amount which Participant owes Program Administrator or any Financing Provider under the Mosaic Program Documents, including Seller's Points, which is more than the amount owed to Participant. Such credit and debit entries will be to the bank account identified by Participant. The authorizations set forth in this Section 2.2.1 will remain in effect until the date on which no Loans remain outstanding. Participant must notify Program Administrator within three (3) business days of any change to the bank account for such ACH credits and ACH debits. Program Administrator agrees to comply with written notifications from Participant that alter Participant's bank account information (i.e. name and address of the bank or financial institution, transit/routing number or account number), provided, that Program Administrator receives such notification in sufficient time and manner to give Program Administrator and the bank or financial institution reasonable opportunity to act on it. Any payment disputes shall be resolved pursuant to Section 10 of the Participation Agreement.

    2.2.2. Any disbursement by Program Administrator on behalf of Participant to any equipment manufacturer, distributor or other specified designee(s) shall constitute a payment by Program Administrator to Participant for amounts owed by Program Administrator to Participant pursuant to the Mosaic Program Documents. To the extent a disbursement made on behalf of Participant to any equipment manufacturer, distributor or other specified designee(s) is less than the total purchase price of the related Eligible Products owed by Participant to such manufacturer, distributor or other designee, Participant shall be solely responsible for the payment to such manufacturer, distributor or designee of any such deficiency.

3. Additional Representations, Warranties and Covenants of Participant.

3.1. Prohibition on Customer Fees. Participant covenants and agrees that it shall not require, through a price increase, additional fee, surcharge, or otherwise, any Customer to pay any fees in connection with obtaining a Loan through the Financing Program (including Seller's Points, administrative fees or any other fees imposed by Financing Providers or Program Administrator on Participant under the Participation Agreement), provided, that Participant may treat such fees as overhead to be distributed across Customers regardless of whether such Customer uses a Loan to finance the purchase of an Eligible Product; (b) Participant shall not knowingly encourage, assist or permit any Customer to (i) use Loan proceeds for any purpose other than to purchase an Eligible Product, or (ii) receive cash or other payments from Participant or any other party in connection with the Loan (except any applicable rebates from the manufacturer of the related Eligible Product or local utility, as applicable); and (c) Participant shall not, directly or indirectly, make or agree to make any payment on a Loan on behalf of a Customer without the prior written approval of Program Administrator.

3.2. Bona Fide Sale. Participant hereby represents and warrants to Program Administrator, as of the date hereof and as of the date of each executed Loan Agreement, that to Participant's and its applicable Participant Agents' best knowledge, each Loan Agreement will arise out of a bona fide sale of Eligible Products by Participant and the express consent of the applicable Customer and will not involve the use of the Loan for any purpose other than to finance the Eligible Products that are the subject of the Loan Agreement.

3.3. Extended Warranties; Service Plans. Participant agrees that it will not offer Extended Warranties or Service Agreements in conjunction with purchases of Eligible Products without the Program Administrator's prior approval.



If so approved, Participant agrees that (a) all such Extended Warranties and Service Agreements will comply with Applicable Law, (b) Participant will comply with all obligations under any such Extended Warranty or Service Agreement, whether underwritten by Participant, an Affiliate of Participant or a Third Party, and (c) in the event a manufacturer or Third Party breaches a Standard Warranty, Participant will cure, or cause to be cured, such breach within thirty (30) calendar days' notice thereof.

3.4. Eligible Product Data. To the extent applicable, Participant shall provide to Program Administrator the information outlined in the table below for each Purchase Agreement ("**Eligible Product Data**") within ten (10) business days of Program Administrator's request therefor. Participant will use commercially reasonable efforts to ensure that the Eligible Product Data is provided in easily readable and text searchable format.

| Activity | Documentation |
| --- | --- |
| Site Audit | Audit Form |
| Repair History | Within 30 calendar days of performing a repair on each Eligible Product |
| Warranty Claims History | Within 30 calendar days of processing a warranty claim for each Eligible Product |
| Purchase/Procurement | Purchase order for each Eligible Product, including bill of materials (make, model, source, serial number or manufacturing lot, warranties) |
| Evidence of Stage Completion | Photos of Eligible Product upon completion of the applicable Funding Stage; confirmation of delivery of Eligible Product |
| Customer Feedback | Any feedback on an Eligible Product from a Customer |

4. Program Administrator's Remedies.

4.1. Remedies. If Participant (a) fails to perform its contractual obligations to Customers under any Purchase Agreement in any material respect, or (b) is not in compliance with any of the terms or conditions of the Mosaic Program Documents in any material respect (including, without limitation, failure to achieve Stage Completion for an Eligible Product within the timeframe set forth in any Loan Supplement), Program Administrator, on behalf of the Financing Providers, reserves the right in its sole discretion to take any or all of the following actions, in addition to any remedies available to Program Administrator or the applicable Financing Provider at law or in equity: (i) withhold all or part of any amount owed to Participant under the Mosaic Program Documents until such deficiencies are remedied; (ii) at any time, as a continuous right, without notice or demand, set off any amounts owed by Participant to Program Administrator or any Financing Provider under the Mosaic Program Documents against any outstanding amounts owed by Program Administrator or any Financing Provider to Participant until Participant's liability for such amounts owed is fully satisfied and discharged; (iii) immediately suspend Participant's participation in the Program and assess Participant such additional charges (such as late payment, returned payment or administrative charges) as implemented by Program Administrator in its reasonable discretion; (iv) require Participant to refund, or charge back Participant through offset or otherwise, up to (A) 100% of the Loan Amount for the related Loan and (B) any losses incurred by the applicable Financing Provider in connection with Customer disputes related to Participant's non-compliance ("**Customer Dispute Amounts**"); (v) initiate a debit entry on Participant's bank account for the Loan Amount and/or Customer Dispute Amounts; (vi) terminate and/or cancel the applicable Loan Agreement(s); and/or (vii) charge interest on any delinquent payment amounts at a rate of 12% per annum prorated for each day such payment is past the due date. Participant acknowledges and agrees that any funds refunded, charged back or debited pursuant to the foregoing subsections (iv) and (v) shall be deemed a fee earned in full by Program Administrator in connection with the resolution of any Customer disagreement or dispute, and not funds retained by or on behalf of

# MOSAIC

Participant, and Participant further agrees that in such event Participant shall be deemed to have forfeited and waived any rights to or interest in any payment under the applicable Purchase Agreement.

4.2. <u>Remedies Cumulative</u>. Participant's obligations under the Mosaic Program Documents are not affected by any settlement, extension, forbearance or variation in terms that Program Administrator or a Financing Provider may grant in connection with any Loan or by the release of the obligations of any Customer by a court or by operation of law. Each right, power, and remedy of Program Administrator or any Financing Provider provided for in the Mosaic Program Documents or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in the Mosaic Program Documents or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Program Administrator or any Financing Provider of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by Program Administrator or any Financing Provider of any or all such other rights, powers, or remedies.

5. **ADDITIONAL DEFINITIONS**

Exhibit A to the Participation Agreement is supplemented with the following definitions.

"**Cancellation Waiver**" is defined in <u>Section 2.1.3</u>.

"**Contract Price**" means the price of an Eligible Product pursuant to a Purchase Agreement.

"**Customer Dispute Amounts**" is defined in <u>Section 4.1</u>.

"**Eligible Product Data**" is defined in <u>Section 3.4</u>.

"**Extended Warranty**" means any agreement, written or oral, by Participant or a Third Party to provide to the Customer a production and/or workmanship warranty of the Eligible Product that is above and beyond the Standard Warranty.

"**Funding Schedule**" is defined in <u>Section 2.1.2</u>.

"**Funding Stage**" is defined in <u>Section 2.1.1</u>.

"**Loan Addendum**" has the meaning set forth in the preamble.

"**Loan Amount**" means the amount of credit extended by a Financing Provider to a Customer under a Loan Agreement, which is equal to the Contract Price minus any credits or payments made by Customer in advance of the Loan, and after making adjustments for change orders or amendments agreed to by the Customer and Participant in writing.

"**Net Loan Amount**" is defined in <u>Section 2.1.2</u>.

"**Purchase Agreement**" means the agreement, purchase order, invoice or similar document evidencing the purchase by Customer of an Eligible Product from Participant.

"**Seller's Points**" is defined in <u>Section 2.1.2</u>.

"**Service Agreement**" means an agreement, written or oral, by Participant or a Third Party to provide services to the Customer beyond the Standard Warranty, including but not limited to Performance Guarantees, Extended Warranties, warranty services, and production guarantees.

"**Stage Completion**" is defined in <u>Section 2.1.1</u>.

"**Standard Warranty**" means, with respect to an Eligible Product, the standard manufacturer's warranty and/or state-mandated minimum workmanship warranties provided to all purchasers of such Eligible Product.