UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI*, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL,* | ) ) ) ) ) ) ) | |
| | ) | 3:23-CV-00046-DCLC-JEM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS MICHAEL ATNIP AND CRAIG KELLEY'S
OBJECTION TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND ORDER APPOINTING A RECEIVER**

Defendants Michael Atnip and Craig Kelley hereby OBJECT to the *ex parte* Motion for a Temporary Restraining Order and Order Appointing a Receiver (Doc. 5, the "Motion") filed by Plaintiffs State of Tennessee ("Tennessee") and Commonwealth of Kentucky ("Kentucky", and together with Tennessee, "Plaintiffs"). In support thereof, the Individual Defendants state as follows:

<u>TABLE OF CONTENTS</u>

I.     STATEMENT OF FACTS .......................................................................................... 1

    1.  Solar Titan's Track Record Of Success and Growth ................................................. 2

    2.  Solar Titan Has Been Deceptive from the Start ....................................................... 3

    3.  Efforts To Revitalize The Company ........................................................................ 4

    4.  Solar Titan's Training Program and Adherence To Local Power Authorities and Regulations ...................................................................................................... 5

1

    5.   The Current Temporary Restraining Order ................................................................. 5

II. ARGUMENT

    1. Atnip Cannot Be Held Personally Liable Because Plaintiffs Cannot Establish That Atnip Was Personally Involved In Any Of The Wrongdoings As Set Forth In the Complaint.
.................................................................................................................................... 12
    2. Plaintiffs Cannot Establish A Likelihood of Success on the Merits Generally .............. 13
    3. Plaintiffs' Claims As To Misrepresentations Related To The Quality And Standard Of Defendants' Solar Systems ……………………………………………………15
    4. Plaintiffs Cannot Establish That Titan Solar's Inadequate Training Causes Damage To Consumer ……………………………………………………………………16
    5. Even if Plaintiffs Establish a Likelihood of Success As To Their Claims Against the Company, Atnip Cannot Be Held Personally Liable For the Company's Actions Because Plaintiffs Cannot Justify Piercing the Corporate Veil ......................................... 17
    6. The Balance of Interests and Public Interest in Freezing the Individual Defendants22

## FACTS

The instant dispute arises out of Plaintiffs' improper and unsubstantiated attempts to hold individuals personally liable for vague and conclusory allegations lodged against a wholly separate and distinct corporate defendant. Defendant Solar Titan USA, LLC, ("Solar Titan") is a rapidly growing full-service provider of residential solar installations, designs, and services, currently marketing throughout Tennessee, Kentucky, Georgia, and Alabama. Solar Titan sets itself apart from competitors by dedicating in-house resources to all stages of completing solar installations, including both sales and design activities, by working with both solar consumer finance partners and major suppliers to provide full-service solar installation from start to finish.

Defendant Richard Atnip's ("Atnip") relation to Solar Titan in the instant case is based solely on his current ownership interest in Solar Titan. Beyond his ownership interest in the company, Atnip has not been involved in its day-to-day activities since the first year of its

inception. Since then, Atnip has been kept at arms-length while Defendant Sarah Kirkland ("Kirkland") has at all times relevant hereto, called the majority of the shots across the board, and has been intimately involved in decisions related to matters including but not limited to consumer complaints, solar system performance issues, and employee training—all of which form the basis for a majority of Plaintiffs' claims—while Atnip has remained associated with Solar Titan's operations in name only. Atnip's involvement has been so limited that he was unaware of the company's most recent financial difficulties until late June of 2022, the realization of which prompted him to begin reinvesting his own funds back into the company in an effort to alleviate its most recent financial distress. Atnip Declaration ¶ ¶ 5-8. Since then, Atnip has contributed at least $3,154,454.65 of his own money back into the company. *Id*. at ¶ 8.

### Solar Titan's Track Record Of Success and Growth

From its inception and through the end of 2021, Solar Titan was an extremely successful and growing company. In order to assist Solar Titan in evaluating a potential sale, third-party firm Cohn Reznick performed an audit as produced in a due diligence report (the "Report"), which analyzed the financial position of the company through the third quarter of 2021. Exhibit B. The Report provides for substantial growth of Solar Titan, large profits and net income, and high margins. *Id*. at 28. Specifically, the Report provides that the net income for Solar Titan in 2020 was $1,956,000 and in the first three quarters of 2021 was $6,303,000. *Id*. The draft 2021-year-end financial statements show the same successful company. Exhibit C. The financial statement shows net income of $8,644,759 and year end cash of $2,461,003. *Id*. at 3-4. The financial statement further shows accounts payable and accrued expenses of less than half the

cash on hand at $1,062,354 and long-term debt of only $509,842. *Id*. at 9. Notably, the financial statement further shows Members' equity at the end of 2021 at $4,172,192. *Id*. at 3.

**Solar Titan's Recent Troubles Caused By Generac**

Despite its track record as a highly profitable provider, recent developments have caused Solar Titan to experience temporary cash flow issues stemming from situations outside of Solar Titan's control and unattributable to the company itself. Like many other similarly situated providers, Solar Titan has fallen victim to Generac Holdings, LLC's ("Generac") faulty equipment and failure to remediate damage caused by the same. Specifically, Solar Titan has experienced Generac's negative effects on its business—including the same Generac product failures that caused Pink Energy's forced Chapter 7 Bankruptcy filing—which has similarly required Solar Titan to waste resources to divert its installer crews from servicing new customers to service existing system issues caused by Generac. As discussed more fully herein, Generac's equipment failures as they relate specifically to the SnapRS device supplied to Solar Titan have wreaked havoc on the company's reputation and image, as exhibited by the filing of this instant dispute, which incorrectly categorizes Generac's equipment failures as results of Solar Titan's wrongdoings.

**Efforts To Revitalize The Company.**

Atnip and Defendant Craig Kelly ("Kelly") have since taken it upon themselves to continuously reinvest their own funds into the company, while Solar Titan's senior management team ("Management") has implemented and controlled corrective action in an effort to remediate the most recent hurdles. Despite Plaintiffs' assertions to the contrary, Atnip and Kelly have

never purchased: (1) a private jet; or (2) a yacht for $1,800,000. Exhibit A at ¶ ¶ 9-10. What they have done, however, is continuously utilize their own assets to reinvest into the company, including making the decisions to sell both their property located at 3411 Tooles Bend Rd., Knoxville, TN 37922, and charter fishing boat at a loss in order to reinvest the proceeds back into the company. *Id*. at ¶¶ 10-11. Solar Titan's day-to-day revitalization efforts are currently spearheaded by their Management, including Defendant Kirkland who currently serves as the company's CEO while using her experience based in business development, hiring, scheduling, team building, sales, and procurement to lead the company. Although neither Atnip nor Kelly serve on the senior management team, Kirkland is supported by five (5) additional team members, including a controller, general manager, marketing and advertising manager, director of sales and training, and a technical operations manager who assist in the day-to-day operations.

Despite Plaintiffs' contentions that Solar Titan has employed unfair and deceptive practices in relation to its sales and marketing initiative, the company made its initial name for itself by taking advantage of the explosive demand for solar installation services driven by decreasing costs, tax incentives, improved technologies, and the prevalence of climate-related power shutdowns—without the use of unfair or deceptive practices—and plan to do the same over the next decade, due in part to the assistance provided by Defendants Atnip and Kelly in recent times.

## Solar Titan's Training Program and Adherence To Local Power Authorities and Regulations.

Solar Titan further sets itself apart from competitors through the employ of its proprietary installation training, which results in quick and efficient solar system completion and remains ongoing throughout an installers career in order to ensure that employees stay current on the most up-to-date technology, equipment, and methods. Solar Titan's training incorporates not

only classroom and visual demonstrations, but also hands-on training to equip installers for being in the field. In addition, Solar Titan takes special care to provide an extensive and focused training by which to increase reach to new customers and continuously improve sales conversion rates. Similar to solar installer training, sales employees participate in a training program upon being hired and experience ongoing training throughout their career with Solar Titan to foster their development at the company and ensure a consistent standard of the highest customer care.

Although Plaintiffs lodge baseless contentions by which to allege that Solar Titan fails to comply with controlling authority, Solar Titan works diligently to ensure that its employees adhere to applicable requirements for different utility companies and are properly licensed at all times. For example, Solar Titan continuously maintains its general contractor and electrical contractor licenses, both of which are granted reciprocity in numerous states, thereby minimizing Solar Titan's launch time into new territories.

### The Current Temporary Restraining Order

By Order of this Honorable Court, there is a Receiver in place over Titan Solar and the assets of the Individual Defendants have been frozen. The Plaintiffs have alleged, based on hearsay and rumor from disgruntled former employees and competitors, that the Individual Defendants need to have their assets frozen because they will dissipate their assets and the assets are a flight risk. However, the sale of assets was only to revitalize the flailing company. Additionally, Mr. Atnip's and Mr. Kelley's assets are located in Tennessee for the most part. All of their real estate is owned in Tennessee, except for one investment property located in Florida that is already under contract for sale. *Id*. at ¶ 14. Further, Mr. Atnip and Mr. Kelley have no personal finances or bank accounts that are not in the U.S. *Id*. at ¶ 15.

### ARGUMENT

A preliminary injunction "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). Despite the Plaintiffs draconian request, the Plaintiffs dedicated less than a single page of their over fifty-page memorandum arguing why the Individual Defendants should be held personally liable. Moreover, the Plaintiffs cite to half a sentence of legal authority – from a California case – to support their theory that the Plaintiffs should be held personally liable.

In order for the Plaintiffs to obtain the requested preliminary injunction, the Plaintiffs are required to demonstrate a likelihood of success on the merits, that that the balance of the interests tip are in favor of the injunction, and the injunction is in the public interest. *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1214 (9th Cir. 2019) (holding that in an "ordinary case a showing of irreparable harm is required to obtain injunctive relief, no such showing is required" for governmental statutory relief). The following argument will demonstrate why the Individual Defendants are not likely to be found personally liable on the merits of the case. Subsequently, Atnip and Kelley will demonstrate that the balance of interests and the public interest is not supported by a temporary injunction freezing their assets.

I.      **Reasonable Likelihood of Success on the Merits.**

Plaintiffs have failed to sufficiently set forth the evidence to establish a strong likelihood of success on the merits and accordingly are not entitled to the requested injunction. *See Louisiana-Pacific Corporation v. James Hardie Building Products, Inc.*, 2018 WL 3589122 at *2 (M.D. Tenn. 2018) (citing *NE Ohio Coal. For Homeless and Service Employees Intern. Union, Local*

*1199 v. Backwell*, 467 F.3d 999, 1009 (6th Cir. 2006)) (placing burden on party seeking temporary restraining order to establish "strong likelihood of success on the merits"). To be sure, "a preliminary injunction is an extraordinary remedy never awarded as of right," and Plaintiffs have failed to justify how they are entitled to the same. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

### a. Atnip Cannot Be Held Personally Liable Because Plaintiffs Cannot Establish That Atnip Was Personally Involved In Any Of The Wrongdoings As Set Forth In the Complaint.

Plaintiffs attempt to sustain their baseless contention that Atnip should be individually liable for any of the allegations in the Complaint by setting forth vague and conclusory allegations accompanied by misleading representations of inapplicable case law. Indeed, Plaintiffs fail to articulate anything beyond three sentences contained in their 53-page memorandum in support of their Motion, which states in relevant part:

> In order to obtain injunctive relief against an individual for a corporation's violations of state and federal consumer protection laws, the Plaintiffs must show that the individual "participated directly in the acts and practices or had the authority to control them." Atnip is the current owner of Solar Titan and has the authority to control all aspects of Solar Titan's operations or winding down process. Even if Atnip has since delegated control of the business, as the majority owner, he still has the authority to control the business.

First and foremost, Plaintiffs' assertion that injunctive relief is warranted as to both violations of state and federal consumer laws is unsupported by their cited caselaw, which solely stands for the proposition as to when injunctive relief against an individual is available for violations of the FTCA, and Plaintiffs failed to articulate the standard's universal applicability as to violations of any state and federal consumer protection laws. *See F.T.C. v. American Financial Benefits Center*, 324 F.Supp.3d 1067, 1080-81 (N.D. Cal. 2018) (outlining standard for obtaining injunctive relief against an individual defendant under the FTCA). Further, and of

even greater import, the case law interpreting situations in which injunctive relief is available directly supports Defendant Atnip's position that he cannot be held personally liable, and explicitly contradicts Plaintiffs' representations to the contrary. For example, in *FTC v. Swish Marketing*, 2010 WL 653486 at *5 (N.D. Cal. 2010), the court found the Commission's "conclusory" assertions of defendant's relevant authority and knowledge, including that defendant: (1) was the CEO for the corporate defendant; (2) formulated, directed, controlled, had the authority to control, or participated in acts and practices set forth in the Complaint; and (3) knew of the acts through the consumer filed complaints with defendants, the Better Business Bureau, law enforcement agencies, and bank and payday lenders during the relevant time frame, were insufficient to support an inference of the defendant's personal involvement. 2010 WL 653486 at *5-6.

The instant dispute is more similar to the facts as set forth in *Swish Marketing*, and less like those in cases in which the court found sufficient allegations to impose personal liability. For example, in *American Financial*, the court found allegations that the individual defendant: (1) was the CEO, secretary, FRO, and sole director of the relevant entities; (2) assumed all of the leadership roles in both high-level and day-to-day management of the entities; (3) signed contracts with consumers as "Managing Director"; and (4) acted as a liaison to the BBB in relation to which defendant was advised of consumer complaints and the consumer's confusion caused by the alleged misrepresentations were sufficient to impose personal liability. *See* 324 F. Supp.3d at 1080-81 (contrasting allegations with those contained *Swish Marketing*, where plaintiffs only alleged that the individual defendant was the CEO and that consumers had filed complaints with defendants, Better Business Bureau, and law enforcement); *see also F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997) (finding sufficient

allegations to impose personal liability where plaintiffs set forth specific allegations as to defendant's role in conducting and facilitating the fraudulent solicitation which formed the basis for the allegations). Here, however, Plaintiffs have failed to set forth anything other than conclusory allegations by which to assert that—solely by virtue of his status as the current owner of Solar Titan—Atnip has the authority to control all aspects of Solar Titan's operations and maintains the same despite having delegated control to others. Instead, Plaintiffs have affirmed Atnip's position through their own pleadings that "Atnip does not currently play a substantial management role in the company, and even when Atnip actually was actively involved in Solar Titan's operations, his involvement with the company was limited." *See* Pls.'s Memo at 7. The testimony contained in Plaintiffs' own memorandum further represents that when Atnip was involved, "everything seemed to be on the up-and-up" and that if something was incorrect with payroll, "he would correct it immediately." *Id.*

Plaintiffs have not—and cannot—sufficiently allege direct individual involvement of Atnip in the aforementioned allegations by which to hold him personally liable for the alleged wrongdoings. "Under Tennessee law, a corporate officer is only personally liable for torts in which he or she participated in the wrong," and the same principle is equally applicable to the relevant statutory claims. *Menuskin v. Williams*, 145 F.3d 755, 762 (6th Cir. 1998) (citing *Cooper v. Cordova Sand & Gravel Co.*, 485 S.W.2d 261, 271-72 (Tenn. Ct. App. 1971)).; *see also, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 195 (1974) ("A damages action under the [Fair Housing Act] sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by defendant's wrongful breach."); *Reilly v. Alcan Aluminum Corp.*, No. 98-3566 1999 WL 313879 at *3 (6th Cir. 1999) (recognizing claim brought under age discrimination statute as a tort claim); *Hard Rock Café*

*Licensing Corp. v. Concession Service, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (trademark and copyright infringement treated as analogous to torts); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) ("A cause of action for breach of a duty imposed by statute or case law, and not by contract, is a tort action.").  Indeed, a plaintiff cannot rely on an individual's status as an officer or director in an effort to render him liable for the acts of his officers or directors unless he knowingly or recklessly participates or assists in the fraud.  *Menuskin*, 145 F.3d at 762 (quoting *Citizens Savings & Loan Ass'n v. Fischer*, 214 N.E.2d 612, 615-16 (1996)); *see also Goodman v. UNUM Group*, 2009 WL 10664240 at *3 (W.D. Tenn. 2009) (quoting Tenn. Cod Ann. § 48-16-203(b)) (noting shareholder not personally liable for acts of corporation except when liability is based on shareholder's own acts or conduct).

Here, Plaintiffs base the entirety of their contention that Atnip had the authority to control Titan on his ownership status.  In *Menuskin*, the court held that in a matter arising out of the sale of property, appellants failed to establish individual liability against a corporate officer as to claims—including an alleged violation of the TCPA—resulting from misrepresentations made as to the existence of encumbrances.  *See* 145 F.3d at 762.  There, the court held that even where appellants: (1) pointed to an officer's representations that appellants did not need their own attorneys or title insurance because the company's attorneys would handle the sales contracts and perform a title search; (2) provided proof of the officer's status as Secretary, Treasurer, billpayer, and bookkeeper of the corporation; and (3) signed both a sales contract and warranty deed, such was insufficient to establish that she personally made any affirmative representations to appellants.  *See id*. at 762.  The allegations set forth in *Menuskin* are not only similar to, but even more substantial than, the facts in the instant dispute, where Plaintiffs seek to allege personal involvement of Atnip based solely on his position as an officer of Solar Titan, without pointing

to any evidence that Atnip "personally made any affirmative misrepresentations to any of the [Plaintiffs]." Indeed, based on the 6th Circuit's refusal to impose personal liability on an officer who was alleged to have made the exact misrepresentations which caused appellant's harm, it is difficult to justify how Atnip should be held personally liable where Plaintiffs' allegations do not even rise to the level of those rejected in *Menuskin*.

Not only do Plaintiffs fail to meaningfully articulate a likelihood of success on the merits as to Atnip's personal liability, but their own pleadings set forth affirmative representations to the contrary. For example, Plaintiffs' references to the management of Solar Titan's operations include representations that "Atnip currently does not play a substantial management role in the company," and "[former employees] have never actually seen [Atnip] in the company." *See* Pls.'s Memo at 7. To the contrary, Plaintiffs assert not only that Kelley is in charge of running the Company and general day-to-day operations, but that Kirkland is the individual Defendant responsible for hiring and terminating employees, responding to consumer complaints, working with Titan's lending partners, coordinating with local power companies, and supervising the alleged no cancellation policy, all of which relate to the exact allegations supporting Plaintiffs' underlying actions. *Id*. at 9-10.

It is of further import to note that where Tennessee's legislature intended to impose personal liability on a company's owner for the company's alleged statutory violations, it included express provisions providing guidance for when personal liability would be available. For example, Tenn. Code Ann. § 62-6-136(c) "specifically imposes personal liability on an owner for the owner's 'own representations, acts or omissions'" related to fraudulent misrepresentations or omissions made by the owner himself regarding the company's licensure status. *Clarksville Towers, LLC v. Straussberger*, 639 S.W.3d 586, 596 (Tenn. App. 2021)

(quoting Tenn. Code Ann. § 62-6-136(c)). Therefore, not only do Plaintiffs fail to articulate how Atnip has opened himself up to personal liability through his own actions, but the TCPA itself is silent as to the statutory imposition of personal liability on a corporate owner and consequently does not provide statutory authority for the same.

    **b.  Plaintiffs Cannot Establish A Likelihood of Success on the Merits Generally.**

Even if Plaintiffs had adequately shown a strong likelihood of success on the merits as to the imposition of personal liability on Atnip, they have not—and will remain unable to—establish a strong likelihood of success on the merits to their claims against both Atnip, personally, and Solar Titan, generally.

**Plaintiffs' Lending Claims**

***Plaintiffs Cannot Show That Atnip Ever Acted As An Agent For Mosaic.***

In yet another poor attempt to argue claims in direct contravention of Plaintiffs' own proffered evidence, Plaintiffs attempt to impose liability on the Individual Defendants as "agents" of Mosaic. However, pursuant to the express terms contained in the Mosaic Program Participant Agreement, which provides in relevant part that:

> Neither Party is an agent, representative or partner of the other Party, and neither Party nor its Representative shall represent that it is an agent, representative, partner or employee of any other Party…This agreement shall not be interpreted or construed to create an association, joint venture, agency, partnership, franchise, sales representative or employment relationship between the Parties or to impose any partnership obligation or liability upon either Party.

*See* Exhibit D at Section 12.7. "[W]here the pleading incorporates or attaches a document that clearly negates agency, a general allegation of agency fails." *Walker v. Frontier Leasing Corp.*, 2010 WL 122413 at *8 (Tenn. App. 2010) Accordingly, insofar as any claim seeks to impose liability on Atnip in his capacity as an alleged agent of Mosaic, such claims must fail, and

Plaintiffs accordingly cannot show a strong likelihood of success on those claims based on the clear and indisputable language contained in the agreement between Mosaic and Solar Titan.

***Consumers failed to act reasonably under the circumstances.***

As to each of Plaintiffs' claims of unfair and deceptive practices arising out of alleged misrepresentations made by Solar Titan related to the consumer loans used to fund the purchase of systems from Solar Titan, Plaintiffs have not demonstrated a strong likelihood of success on the merits, because they have not sufficiently shown how a consumer's reliance on the alleged misrepresentations would be reasonable. Plaintiffs allege that the alleged misrepresentations include: (1) claims related to savings resulting from a system purchase; (2) eligibility for the Federal Tax Credit; and (3) misrepresenting payment and cancellation terms. In order to prevail on the merits of unfair and deceptive practice claims, both the state and federal statutory claims require Plaintiffs to show that the practice is "likely to mislead consumers acting reasonably under the circumstances." *See, e.g.*, *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630-31 (6th Cir. 2014) (requiring plaintiffs to establish a "representation likely to mislead customers acting reasonably under the circumstances" to establish liability under the FTCA); *Corder v. Ford Motor Co.*, 2008 WL 2697143 at *1 (6th Cir. 2008) (applying FTCA definition to KCPA); *McCollum v. Peters*, 2015 WL 4485557 at *6 (Tenn. App. 2015) (defining deceptive act or practice as a "material representation, practice or omission likely to mislead…reasonable consumer[s]").

The Mosaic Loan Agreement entered into by each and every consumer purported by Plaintiffs to have been misled as a result of Defendants' unfair and deceptive practices is riddled with extensive disclaimers and warnings related to both consumers' Federal Tax Credit eligibility as well as payment terms, while materials such as Solar Titan's Energy Consultant

Pitchbook and Q&A resources highlight Solar Titan's careful training of its employees related to their sales pitches to prospective customers. For example, the Mosaic Loan Agreement provides in relevant part:

> You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed order to realize the benefits of the Solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any such tax credits. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. In order to determine your eligibility, for any federal solar investment tax credit, you should make an independent assessment or consult with your independent tax advisors. Additionally, if you are not eligible to receive a federal solar investment tax credit you will not be able to use the proceeds of your tax credit to make a voluntary prepayment as described below.

*See* Exhibit E at p. 2-7 (disclosing requirements to qualify for federal solar investment credit and disclaiming any representations being made as tax advice and further suggesting that consumer should consult with independent tax advisor); *see also* Exhibit F at p. 2 (noting that company utilizes a sales model that focuses on universal benefits excluding the federal tax credit, so that a consistent sales approach can be used for all homeowners); Exhibit G at p. 9 (disclosing production calculations based on annual averages and providing that variances will occur based on placement options and weather patterns).

Based on the facts in the present case, it is inconceivable that consumers who are contemplating such a large purchase would base the entirety of their decision on a tax credit without confirming their eligibility for the same prior to entering into the contract. Similarly, any reasonable consumer would confirm guaranteed savings versus mere puffery in advertisements prior to entering into the relevant contract. *See Daughtery v. Sony Electronics, Inc.*, 2006 WL 197090 at *9 (Tenn. App. 2006) (noting liability for misrepresentation does not arise out of "sales talk" or "puffing"). However, even if this Court finds Plaintiffs to have adequately set forth a strong likelihood for success on the merits of their state and federal law

consumer claims, such would be against Solar Titan as a corporation, and cannot be sustained against Atnip in his individual capacity through his own personal involvement nor as a result of piercing the corporate veil.

**Plaintiffs' Claims As To Misrepresentations Related To The Quality And Standard Of Defendants' Solar Systems.**

***Plaintiffs Cannot Establish That Titan Solar Defendants Are Responsible For The System Deficiencies.***

In regard to Plaintiffs' claims related to alleged misrepresentations regarding the characteristics of the solar systems sold by Titan Solar, Plaintiffs are unable to demonstrate a strong likelihood of success on the merits, as the overwhelming majority of system failures attributed to Defendants are actually a result of Generac's equipment failures, and not Defendants' own wrongdoings or system deficiencies. *See* Exhibit G at p. 11 (advertising features based on assumption of fully functioning Generac equipment). Beginning in January and February of 2022, Solar Titan began receiving an onslaught of customer complaints related to system production issues, with complaint volume further increasing into March. Once Solar Titan learned of the production issues, its field service team quickly identified Generac's SnapRS801 rapid shutdown component as the cause of the ongoing issues. As a result of complaints from both Solar Titan and numerous other solar installation companies, Generac designed and engineered the new RS802, which was represented to have been tested with exceptional results increasing both performance and reliability. Prior to such complaints, Solar Titan did not receive anywhere close to the volume of complaints caused by Generac's defective product.

However, even if this Court were to find that Plaintiffs presented a strong likelihood of success on the merits with respect to system deficiencies, such issues remain unattributable to Atnip personally, and cannot be made attributable by way of piercing the corporate veil.

**Plaintiffs Cannot Establish That Titan Solar's Inadequate Training Causes Damage To Consumers.**

In addition to inadequately attempting to attribute Generac equipment failures to Solar Titan's systems, Plaintiffs further cannot attribute the same failures to Solar Titan's training of its installers. Beyond a blanket assertion that "Solar Titan installers are often inexperienced and lack proper training. They also lack appropriate oversight from licensed professionals," Plaintiffs fail to present any evidence as to the inadequate training Solar Titan installers allegedly receive and how the same "cause[s] damage" to the consumer's home. *See* Compl. At ¶ 57. However, Defendants employ proprietary installation training, including but not limited to, safety, wire and conduit, inverter, module and optimizers, and electrical component training, which is implemented through both hands-on and classroom education. *See* Exhibit H at p. 33 (outlining Solar Titan's installation crew training program).

Even if this Court were to conclude that Solar Titan employed inadequate training as to its system installers, Atnip was never involved in the training nor development of the same, and Plaintiffs are unable to establish a strong likelihood of success on the merits of such claims against Atnip individually.

*Remaining Claims*

To the extent there remain outstanding claims contained in Plaintiffs' Complaint in addition to those discussed herein, such claims do not provide Plaintiffs with a right to injunctive relief, and accordingly it is not necessary for Defendants to address whether they have established a strong likelihood of success on the merits in relation to the same. Injunctive relief is expressly provided for in some, but not all, Plaintiffs' claims and such creates a presumption that, had the same legislature wanted the same availability for other claims it would have expressly included the same. *See Collins v. Yellen*, 141 S.Ct. 1761, 1782 (2021) (noting that "[w]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *see also Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029, 1037 (2019) (reiterating presumption that statutes do not contain surplusage). Further, and to the extent that this Court finds the remaining claims subject to the requested relief, Plaintiffs have not established actions taken by Atnip through which to impose personal liability for acts taken by Solar Titan and its officers exercising full control and dominion.

   **c.** **Even if Plaintiffs Establish a Likelihood of Success As To Their Claims Against the Company, Atnip Cannot Be Held Personally Liable For the Company's Actions Because Plaintiffs Cannot Justify Piercing the Corporate Veil.**

   In addition to their failure to adequately allege any personal involvement by Atnip, Plaintiffs further fall short in their attempt to impose personal liability on Atnip for Titan's alleged wrongdoings based on the reluctance of courts to pierce the corporate veil. Despite having made 85 pages of allegations in their Complaint and 53 pages of argument in their memorandum of law in support of the requested injunctive relief, Plaintiffs dedicate less than a single page to argue why ***any*** Individual Defendant should be personally liable, and only ***three sentences*** as to why Atnip should be.

As to both the Tennessee and Kentucky state law claims, Tennessee state law will apply in determining of whether the corporate veil should be pierced. *See S.E. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (finding that Tennessee courts apply the internal affairs doctrine); *see also Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. App. 2012) (holding "the rights, duties and obligations of an Ohio LLC and its members are governed by Ohio law."). Further, in determining whether federal law or state common law would control the issue of piercing the corporate veil, the Sixth Circuit has held that state common law would control. *AT & T Glob. Info. Sols. Co. v. Union Tank Car Co.*, 29 F. Supp. 2d 857, 865 (S.D. Ohio 1998). Therefore, Tennessee law applies to the analysis of whether or not to hold the Individual Defendants liable for the alleged acts of the entity Titan Solar. *See* Complaint ¶ 34.

"There is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors, or affiliated corporations." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 828 (Tenn. App. 2012). Due to this presumption, Tennessee courts only pierce the corporate veil under "extreme circumstances" and the theory will "be applied with great caution and not precipitately." *Id.* at 829. "The ***party wishing to negate the existence of such separate entity has the burden*** of proving facts sufficient to justify piercing the corporate veil." *Id.* (emphasis added).

The Tennessee Supreme Court set forth three <u>required</u> elements to pierce the corporate veil:

> 1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
> 2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty,

or a dishonest and unjust act in contravention of third parties'
rights.
3) The aforesaid control and breach of duty must proximately
cause the injury or unjust loss complained of.

*Id. see also Tennessee Racquetball Inv'rs, Ltd. v. Bell*, 709 S.W.2d 617, 622 (Tenn. App. 1986)

(holding that the elements apply to individual owners too, and that each element is "required to

fix liability"). If the required elements are met, Tennessee Courts also consider what are known

as the "Allen factors" to consider whether or not to pierce the corporate veil:

Factors to be considered in determining whether to disregard the
corporate veil include not only whether the entity has been used to
work a fraud or injustice in contravention of public policy, but
also: (1) whether there was a failure to collect paid in capital; (2)
whether the corporation was grossly undercapitalized; (3) the
nonissuance of stock certificates; (4) the sole ownership of stock
by one individual; (5) the use of the same office or business
location; (6) the employment of the same employees or attorneys;
(7) the use of the corporation as an instrumentality or business
conduit for an individual or another corporation; (8) the diversion
of corporate assets by or to a stockholder or other entity to the
detriment of creditors, or the manipulation of assets and liabilities
in another; (9) the use of the corporation as a subterfuge in illegal
transactions; (10) the formation and use of the corporation to
transfer to it the existing liability of another person or entity; and
(11) the failure to maintain arms length relationships among
related entities.

*Edmunds*, 403 S.W.3d at 830.

Throughout the Plaintiffs' pleadings, Plaintiffs have presented a stronger argument for

why Atnip should ***not*** be held personally liable for the acts of Solar Titan as opposed to why he

should be personally liable and have failed to meet any of the elements required to pierce the

corporate veil as set forth *Edmunds*. *Edmunds* first requires Atnip to exercise complete control

over Titan Solar's finances and business practices to such an extent that Titan Solar would not

have a separate mind, will or existence of its own. Plaintiffs' pleadings allege the exact opposite

and establish that Atnip's involvement falls well short of being in complete control over Titan Solar. For example, Plaintiffs allege that (i) "Kelley is running the Company," Pls.'s Memo at p. 4; (ii) "Kelley is clearly the person primarily responsible for the day-to-day operations," *Id.*; (iii) employees testified they were "hired by Kelley," *Id.* at 5; (iv) "Kelley oversees and makes decisions concerning nearly every aspect of Solar Titan's operations," *Id.* at 6; (v) "Atnip currently does not play a substantial management role in the company," *Id.* at 7; (vi) "I've never actually seen [Atnip] in the company." *Id.*; (vii) Kirkland is an "owner and managing member," *Id.* at 9; (viii) Kirkland controlled in "hiring and terminating" employees, *Id.*; (ix) Kirkland controlled "responding to consumer complaints," *Id.*;(x) Kirkland controlled "working with Solar Titan's lending partners," *Id.*; (xi) Kirkland controlled "coordinating with the local power companies," *Id.*; and (xii) Kirkland supervised the alleged no cancellation policy, *Id.* at 10. Thus, the Plaintiffs themselves make it abundantly clear that Mr. Atnip did not exercise the complete dominion and control and therefore fail to establish the first element required to hold Mr. Atnip personally liable.

Although Plaintiffs' failure as to the first element is dispositive, even if this Court were to find that Plaintiffs have satisfied the first element, the second provides that Atnip would have to use his control to commit a fraud or wrong. Again, the Plaintiffs pleadings show the exact opposite. The testimony provided by Ms. Helton provides that when Atnip was in control of the policy and business practice that "everything seemed to be on the up-and-up. It was legit. If pay was wrong, he would correct it immediately. The few sales reps that I had at that point in time never – hardly ever had an issue with payment. Again, if it was incorrect, he would correct it." *Id.* at 7. Required element two is not satisfied either because Mr. Atnip did not use his control to commit any wrong, nor have there been allegations made to the contrary. Therefore, Plaintiffs

have not met their burden as it relates to the elements necessary to pierce the corporate veil and hold Mr. Atnip personally responsible.

Furthermore, the *Allen* factors also weigh in Atnip's favor. The Plaintiffs have presented no evidence to support that Solar Titan did not collect its capital contributions, that it was grossly undercapitalized at startup, or that the records did not accurately reflect the owners' membership interests in the company. The Complaint makes clear that ownership is not vested in one individual; rather, both Kirkland and Atnip have an ownership interest in Solar Titan. Complaint ¶¶ 25 & 27. The Complaint and Tennessee public record also makes clear that the business location is not at Mr. Atnip's residence. Complaint ¶ 26; *see also* Filing Information. This case evidences that Mr. Atnip uses separate attorneys from Titan Solar, and the lack of control over the business decisions as previously discussed establishes that Solar Titan was not an instrumentality or business conduit for Atnip. Although the Plaintiffs allege that the Individual Defendants lacked meaningful assets and financial power prior to starting Solar Titan, there is no evidence that the Individual Defendants opened Solar Titan to transfer existing liability of the Individual Defendants to Solar Titan. Last, the Plaintiffs rely on speculative statements from witnesses without personal knowledge and the Plaintiffs lack particularity in any allegation that would evidence a break in an arm's length relationship between Solar Titan and the Individual Defendants or Titan Charters. For example, the pleadings vaguely provide: (i) "***Upon information and belief***, these ill-gotten funds are being diverted to support the lavish lifestyle of the individually named Defendants," Complaint ¶ 322 (emphasis added); (ii) "***Upon information and belief***, the Solar Titan Defendants used the profits from Solar Titan's illegal sales to launch Titan Charters," *Id.* ¶ 329; (iii) "I ***feel*** that they were probably drawing profits weekly. Now, this, again, is my ***perception***," Pls.'s Memo, at 27 (quoting Helton deposition) (emphasis added).

The Court in *Edmunds* made clear that it is the Plaintiffs' burden to establish that the corporate veil should be pierced, and the Individual Defendants should be held personally liable. 403 S.W.3d at 829. Despite a voluminous record, the Plaintiffs cited incorrect law and provided less than a single page to support its theory that the Individual Defendants should be personally liable for the allegations in the Complaint. This clearly did not meet the burden required to hold the Individual Defendants liable and Plaintiffs have not met their threshold burden of establishing a strong likelihood of success on the merits by which to be entitled to the requested injunctive relief.

## II.    The Balance of Interests and Public Interest in Freezing the Individual Defendants Assets

For the reasons provided *supra*, Success on the Merits, the Individual Defendants should not be held personally liable; therefore, an asset freeze is not directly required on the Individual Defendants. The Plaintiffs also have not established that there is a likelihood of success on the merits of its claims against the entity Solar Titan. However, if the Court disagrees, no distributions were made to Atnip (Mr. Kelley does not have an ownership interest in Titan Solar) that would qualify as a fraudulent transfer under relevant law.

Matters of corporate governance, such as piercing the corporate veil and profit distributions, will be governed by Tennessee state law. *See supra*, Corporate Veil. Tenn. Code § 66-3-305 provides that a fraudulent transfer to future creditors requires a showing of "actual intent to hinder, delay, or defraud any creditor of the debtor . . . ."[1] Here, it is clear that no distribution was made with the intent to defraud a creditor that still does not exist.

---

[1] The other potential avenue for a fraudulent transfer under Tenn. Code § 66-3-305 (debtor did not receive equivalent value) is not applicable to the case at hand because it is not disputed that Mr. Atnip rightfully owns 90% of the Titan Solar.

Initially, the Plaintiffs have not yet established that there is a valid future creditor who Titan Solar owes a debt to or a specific transfer that the Plaintiffs believe are fraudulent. A fraudulent transfer, even to a future creditor, must occur within a reasonable time, "as to future creditors the debt must be incurred within a reasonable time after the transfer." *Hicks v. Sovran Bank/Chattanooga*, 812 S.W.2d 296, 301 (Tenn. Ct. App. 1991). There is no documentation provided of a specific transfer to invalidate; therefore, the Plaintiffs cannot establish that the transfer occurred within a reasonable time to when the debt accrued.

Further, when actually digging into the financials of Titan Solar, it's clear that the distributions to the Individual Defendants were appropriate. On January 30, 2022, Cohn Reznick performed an audit in a due diligence report to assist Titan Solar evaluate a potential sale (the "Report"). Exhibit B; *see also* Exhibit C. The Report analyzed the company through the third quarter of 2021, but what is evident is that at least as late as January 30, 2022, the Individual Defendants had good reason to believe that Titan Solar was in a good financial position. The Report provides that Titan Solar was experiencing extreme growth in proceeds, profit, net income, and margins. Report, 28. Specifically, and important to the distributions, net income for the year 2020 was $1,956,000 and through three quarters in 2021 was $6,303,000. *Id*. at 28. Of course, net income is income above and beyond the company expenses and liabilities and are appropriate then for profit distributions to the owners, especially when you see the growth that Titan Solar was experiencing. Further, the financial statement from 2021 demonstrates that Titan Solar had Members' equity at the end of 2021 of $4,172,192. Exhibit C.  Financial Statement at 3. The financial statement shows that Titan Solar had $8,644,759 in net income for 2021 and had $2,461,003 in cash on hand to pay future liabilities. *Id*. at 3-4. On the liabilities side, the financial statement hsows that Titan Solar only had $1,062,354 in accrued expenses and only $509,842 in

long-term debt. *Id*. at 9. This 2021 financial statement clearly shows a company in a good financial position that could distribute to its owners. There is not a hint of a company that could not pay its debts as they became due, especially with the noted growth of the company.

The *Citizens & S. Nat. Bank v. Auer* case is comparable to the present matter. 514 F. Supp. 638 (E.D. Tenn. 1981). In *Citizens*, the Defendant "was not in financial difficulty at the time" of the transfer. *Id*. at 640. The Court found that the Defendant had "no actual intent" to hinder his future creditors. *Id*. At the time of the transfer, the Defendant also had enough assets to pay his actual liabilities as they accrued. *Id*. The Court held that these facts were sufficient to support that no fraudulent transfer occurred by the Defendant.

The present case is comparable to *Citizens* because Titan Solar was not in financial difficulty at the time of any significant distribution to Mr. Atnip. *See* Exhibits B and C. Exhibits B and C also demonstrates that Solar Titan had the ability to pay all of its actual debts as they accrued at the time of any distribution to Atnip. Also similar to *Citizens*, there was no actual intent to hinder future creditors. Atnip was not aware of any issues with Solar Titan as the complaints were handled by Kirkland. Memorandum, 9 (Kirkland was responsible for "responding to consumer complaints"). Further, when Atnip became aware, he started selling his assets to put money back into Solar Titan, an act that is the opposite of attempting to hinder creditors. Exhibit A at ¶¶ 6 - 13. Therefore, like *Citizens*, no fraudulent transfers occurred.

Thus far, Atnip has established that he is not personally liable for the claims of the Plaintiffs. The Plaintiffs have also not brought forth any evidence of a specific transfer that was fraudulent to freeze Atnip's assets based on potential liability of Solar Titan (which Defendants dispute). Moreover, the actions of the Defendants make evident that no fraudulent transfer occurred generally. This creates no basis to freeze Atnip's assets.

However, if the Court is not persuaded by Atnip's arguments thus far, the factors weigh in favor of not freezing the assets of Atnip. "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Pension Ben. Guar. Corp. v. Evans Tempcon, Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015). The purpose in appointing the receiver "is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Id.* In determining whether to appoint a receiver and freeze assets the Courts consider the following factors:

> whether the property at issue is in "imminent danger of ... being lost, concealed, injured, diminished in value, or squandered," whether the defendant engaged in fraudulent conduct, "the inadequacy of the available legal remedies," the lack of less drastic equitable remedies, and the likelihood that the appointment will do more good than harm. District courts also consider whether there is inadequate security for a debt and whether a debtor is insolvent.

*Id.* (internal citations omitted). Atnip asserts that the assets are not at danger of being lost or squandered, Atnip did not engage in fraudulent conduct, the inadequacy of available legal remedies, and there are less drastic equitable remedies available.

Atnip's assets are not in imminent danger of being squandered or lost and do not need to be frozen to prevent squandering or the like. The Plaintiffs attempt to paint a picture of a loose living Wolf of Wallstreet like owner in Atnip. To paint this picture, the Plaintiffs rely on testimony from disgruntled former employees who own competing businesses. However, this information is simply false. The Plaintiffs rely on statements from Ms. Helton, all of which she clearly has no direct, personal knowledge of, "I <u>feel</u> that they were <u>probably</u> drawing profits weekly. Now, this, again, is my <u>perception</u> . . . ." Memorandum, 27 (emphasis added). Ms. Helton makes it abundantly clear she does not know, and has no actual personal knowledge of

the situation. Not only do the witnesses not have personal knowledge, they also are disgruntled former employees who have opened up competitive businesses. Helton has since started Freedom Solar Solutions, LLC. *See* Exhibit I. Another witness relied upon by the Plaintiffs is Jason Horton. He also has started a competing business, Solar 1 USA, LLC. *See* Exhibit J. Despite the Plaintiffs' evidence of squandering assets coming from less than credible sources without actual knowledge, the Plaintiffs did little to no research to confirm the information provided by their key witnesses. The Plaintiffs are simply not correct in saying that Mr. Atnip purchased a private jet. Exhibit A at ¶ 9. Atnip had a jet card to use for business purposes. He also never purchased a $1,800,000 yacht; rather, he purchased a charter fishing boat for $1,400,000 and was forced to sell it under distress for $1,000,000 in order to invest the money back into Titan Solar. *Id*. at ¶¶ 10 - 11.

While Atnip did rightfully use distributions from Solar Titan to amass assets, making money is not illegal in itself. When Solar Titan began to struggle, Atnip actually began putting money back into the business to make it succeed, Atnip invested at least $3,154,454.65 back into the business during its struggles. Exhibit A at ¶¶ 7 - 8. The Plaintiffs point out that Atnip recently liquidated a home and argue that means Atnip is a flight risk with his assets; however, the truth is the opposite. Atnip liquidated this home to help put money back into Solar Titan. Exhibit A at ¶ 12 - 13. The Plaintiffs could have investigated where the proceeds of these sales were going but chose not to.

Moreover, all of Atnip's assets are based in East Tennessee except for one property in Florida that Mr. Atnip has under contract to sell prior to the asset freeze. Exhibit A ¶¶ 14 - 15. Atnip is not a sophisticated scammer hiding assets in foreign accounts that are going to disappear

without an asset freeze. Atnip simply wants to continue renting his rental properties and paying for his regular living expenses, and now attorney fees. *See* Motion for Release of Assets.

As discussed *supra*, Success on the Merits, Atnip did not engage in fraudulent conduct. Further, there are less drastic equitable remedies available that also allow for the availability of full legal remedies to the people the Plaintiffs are trying to protect. As also discussed *supra*, Generac is largely responsible for the issues with the consumers' products. To the extent that the Plaintiffs are trying to recoup assets and money for any alleged citizens of their states, Generac should be held responsible. Generac has substantial assets that could make whole any alleged wrong. Moreover, it's a less drastic remedy to freeze Generac assets because Generac was the entity who caused the issues with the consumers. Additionally, holding Generac's assets is less draconian than holding an individual's assets who was not involved in the day-to-day decision making. Ultimately, Atnip is not in danger of hiding his assets and there is a less drastic way to handle this issue that also allows for full recovery (which is disputed) for the citizens in the Plaintiffs' respective states.

WHEREFORE, the Defendants Richard Michael Atnip and Craig Kelley respectfully requests this Court DENYING Plainitffs request for a preliminary Injunction, and for such other relief as is just.

This 13th day of February, 2023.

Respectfully submitted,

WRIGHT, CORTESI & GILBREATH          DARROWEVERETT LLP

BY:    /s/*Stephan R. Wright*
       Stephan R. Wright (#031494)     BY:    /s/ *Samuel C. Blink*
       2288 Gunbarrel Rd.                     Samuel C. Blink (#036400)
       Ste. 154/Box 247                       Fifth Third Center
       Chattanooga, TN 37421                  424 Church Street, Suite 2000
       Telephone: (423) 826-6919              Nashville, TN 37219
       Facsimile: (423) 826-6929              (615) 651-7386
       *swright@wcglegal.com*                 *sblink@darroweverett.com*
       *Attorneys for Craig Kelley*           *Attorneys for Richard Michael Atnip*


## **CERTIFICATE OF SERVICE**

I do hereby certify that the forgoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. Additional copies were mailed to:

Solar Mosaic, LLC
601 12th Street, Suite 325
Oakland, CA 94607

This 13th day of February, 2023.

                                      BY:    /s/*Stephan R. Wright*