| | | |
|---|---|---|
| STATE OF TENNESSE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL | ) ) ) ) ) ) ) | 3:23-CV-00046-DCLC-JEM |
|     Plaintiffs, | ) ) | |
| vs. | ) ) | |
| IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, *et al.* | ) ) ) | |
|     Defendants. | ) ) | |

## PLAINTIFFS' SUPPLEMENTAL STATEMENT IN SUPPORT OF PRELIMINARY INJUNCTION AND OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTIONS IN OPPOSITION TO PRELIMINARY INJUNCTION AND DEFENDANT KIRKLAND'S MOTION TO PRESENT TO LIVE TESTIMONY

State of Tennessee and Commonwealth of Kentucky ("Plaintiffs") file this statement in advance of the February 27, 2023 Preliminary Injunction Hearing and in support of their position that none of the Solar Titan Defendants have shown or will be able to show cause why this Court should not extend its February 9, 2023 Opinion and Order (Doc. No. 21) by issuing a Preliminary Injunction enjoining the violations of law alleged in Plaintiffs' Civil Enforcement Complaint, continuing the freeze of the Solar Titan Defendants' Assets, continuing the Receivership, and imposing such additional relief as may be appropriate.

In support of Plaintiffs' position, Plaintiffs intend to rely on three new declarations attached as Exhibits A through C to this Statement; Plaintiffs' Complaint (Doc. No. 3); a supplemental declaration provided by Lisa Cochran, a Consumer Complaint Investigator with the Office of the Kentucky Attorney General, that includes consumer complaints filed since Plaintiffs initiated this

action, attached as Exhibit D; a supplemental declaration provided by Claire Marsalis, the Director of Tennessee's Division of Consumer Affairs, that includes consumer complaints filed since January 17, 2023, attached as Exhibit E; Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order Against Solar Titan Defendants and for Appointment of a Receiver Over Defendant Solar Titan USA ("TRO Motion") (Doc. No. 5); Plaintiffs' Exhibits attached to their TRO Motion (Doc. Nos. 10 and 11); Plaintiffs' Memorandum in Support of their TRO Motion (Doc. No. 6); all other relevant initial pleadings (Doc. Nos. 1, 2, and 8); any report that Richard Ray, the court appointed receiver, provides prior to or during the Preliminary Injunction Hearing; and all financial disclosures provided by the Solar Titan Defendants submitted prior to the Preliminary Injunction Hearing. Plaintiffs do not intend to present additional testimony unless it is necessary to respond to evidence put on by one or more of the Defendants.

As explained in more detail below, Plaintiffs also oppose Defendant Kirkland's Motion to Permit Live Testimony because she does not raise genuine issue of material fact that would affect this Court's determining whether the preliminary injunction should issue.

### ADDITIONAL DECLARATIONS AND EXHIBITS

In his Rule 65(B) Certification and Declaration of Counsel (Doc. No. 8), Assistant Attorney General Keen ("AAG Keen") referenced two phone conversations he recently had with two former Solar Titan employees.[1] These employees were Suzanne French, Solar Titan's former Human Resources Manager (Doc. No. 8 at ¶ 24, PageID # 249), and John Brandon Stephens, Solar Titan's former Chief Financial Officer (Doc. No. 8 at ¶ 25, PageID # 249–50). Due to the exigent nature of Plaintiffs' filings and their requested relief, Plaintiffs did not have time to obtain a signed

---

[1] In his Rule 65(B) Certification and Declaration, AAG Keen mistakenly said that "Defendants Atnip and Kirkland recently sold a home for nearly $10 million . . . ." (Doc. No. 8 at ¶18, PageID # 245). AAG Keen meant to say "Defendants Atnip and *Kelley* recently sold a home for nearly $10 million . . . ."

declaration from either Ms. French or Mr. Stephens before requesting immediate intervention from this Court. Since then, Plaintiffs have been able to obtain these declarations (hereinafter referred to as "French Declaration" and "Stephens Declaration", respectively). We ask that the Court consider these declarations when ruling on this Preliminary Injunction.

Plaintiffs are also providing the declaration of Kevin Atchley ("Atchley Declaration"), an electrical inspector with Warren County Public Works, attached as Exhibit C. Mr. Atchley's declaration confirms the numerous issues local power companies and electrical inspectors have with Solar Titan installations. Plaintiffs also submit supplemental declarations from Lisa Cochran ("Cochran Supplemental Declaration"), a Consumer Complaint Investigator with the Office of the Kentucky Attorney General, attached as Exhibit D, and Claire Marsalis ("Marsalis Supplemental Declaration"), Tennessee's Division of Consumer Affairs Director, attached as Exhibit E, both of which include new consumer complaints submitted since Plaintiffs first filed this action. Finally, Plaintiffs submit a recent email conversation between Counsel for Plaintiff State of Tennessee and Ursula Abrams, Operations Manager for the North American Board of Certified Energy Practitioners ("NABCEP"), attached as Exhibit F.

## ARGUMENT

### I. AN EVIDENTIARY HEARING IS NOT NECESSARY BECAUSE THE DEFENDANTS HAVE NOT RAISED A GENUINE ISSUE OF MATERIAL FACT.

"A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required." *Harris v. Wells Fargo Bank, N.A.*, No. 2:18-cv-2400-JPM-dkv, 2018 WL 4896727, at *1 (W.D. Tenn. Oct. 9, 2018). None of the Defendants' pleadings submitted in advance of this hearing raise an issue of

material fact as to the four preliminary injunction standards; therefore, this Court need not engage in a full evidentiary hearing in order to rule on the issue before it: whether a preliminary injunction should issue.[2]

In Defendant Sarah Kirkland's Motion to Permit Live Testimony at Preliminary Injunction Hearing (Doc. No. 36) ("Kirkland Motion"), Defendant Kirkland fails to claim that she has evidence contradicting Plaintiffs' claims against the Solar Titan Defendants. Instead, Kirkland simply states that she "will present testimony concerning her involvement with and role in the operations of Solar Titan and related entities and the roles of other people in its sales and management." (Doc. No. 36, PageID # 2455). She does not dispute Plaintiffs' allegations of the company's unlawful conduct, or dispute that she played a role in the company. Defendant Kirkland may dispute the extent of her role in Solar Titan's unlawful conduct; however, that should have no bearing on the Court's decision here.[3] Regardless, Defendant Kirkland's role and participation in Solar Titan's illegal activities is well-documented by the evidence already provided by Plaintiffs. For example, Sarah Dorismar testified in detail that Kirkland instructed her to process only four consumer cancellations per week, despite Solar Titan's extensive backlog of over ninety consumer contracts it was legally required to cancel. (Doc. No. 10-6, PageID # 892–93, Dorismar Tr. at 31:11–23; 32:9–24).

---

[2] Defendants Atnip and Kelley filed a joint pleading in opposition to the preliminary injunction; however, much of that joint filing focuses solely on Defendant Atnip's personal liability. Therefore, Plaintiffs do not feel it necessary to devote significant time in this Memorandum to rehashing Defendant Kelley's well-established role in Solar Titan's unlawful practices. Plaintiffs will instead devote most of their argument to the issues raised by Defendants Kirkland and Atnip.

[3] Individual liability is established merely upon a showing that the principal had or should have had knowledge of the company's unlawful conduct; however, the extent of the individual defendant's culpability is a factor to be considered when fashioning final relief. *Porter & Dietsch, Inc. v. F.T.C.*, 605 F.2d 294, 309 (7th Cir. 1979).

4

Moreover, and according to documents submitted by Defendant Atnip, Sarah Kirkland presented herself to investors as Solar Titan's CEO. (Doc. No. 51-6, PageID # 2766, 2770, 2812). As described in more detail below, in order to prove personal liability under state and federal consumer protection statutes, Plaintiffs need only show that the Defendants had control over the company's conduct, knew or should have known of the company's unlawful conduct, and did not adequately intervene in the company's unlawful conduct. Defendant Kirkland has not claimed that she will be able to show she did not exercise the requisite control over Solar Titan, that she did not know or should not have known of Solar Titan's unlawful conduct, or that she took any steps to stop the unlawful conduct. Beyond that, although not necessary to prove personal liability under the relevant statutes, Plaintiffs can show—and will show—that Defendant Kirkland directly participated in Solar Titan's unlawful conduct.

Defendant Kirkland also states that "[s]he will testify regarding her knowledge of problems Solar Titan had, including representations made by sales personnel, processing of rescissions and refunds, installation delays, equipment failures, and other quality control issues." (Doc. No. 36, PageID # 2455). In the description of her intended testimony, she again fails to present any dispute as to whether Solar Titan misled consumers or whether she is personally liable. To the contrary, and as confirmed by her indication of what she plans to testify to, her knowledge of Solar Titan's shortcomings is well-documented. Plaintiffs have presented evidence of her knowledge of the company's violations of federal and state law. For example, Plaintiffs filed a transcript of sworn testimony from Jason Horton describing in detail that Kirkland was aware of Solar Titan's misrepresentations to consumers. In fact, Mr. Horton testified that Kirkland disseminated the sizing charts Solar Titan sales representatives relied on when promising consumers that certain solar systems would eliminate or nearly eliminate their monthly utility bill. (Doc. No. 10-3, PageID

5

# 543–46, Horton Tr. at 44:19–25, 45–47; Doc. No. 10-5, PageID # 831–36, Horton Tr. Exs. 4 and 5 (the sizing guidelines created by Kelley and Kirkland)). As someone with a NABCEP certification, Kirkland knew, or should have known, that the information in Solar Titan's sizing charts was inaccurate. (Doc. No. 10-3, PageID # 551–54, Horton Tr. at 52:8–55:19).

Additionally, in her declaration, Suzanne French testifies that Defendant Kirkland was aware of several issues pertaining to Solar Titan's lack of training and poor installation equipment. (French Declaration at ¶¶ 19–20). Ms. Kirkland was also well-aware of the voluminous complaints received by the Better Business Bureau ("BBB") and State Attorneys General in every state where Solar Titan conducted business. In his declaration, Tony Binkley, the President and CEO of the BBB of Greater East TN, Inc., described meeting with Defendants Kelley and Kirkland at Solar Titan's offices to discuss the "numerous complaints from consumers, Solar Titan's delayed or unresponsiveness to those complaints, and customers' continued dissatisfaction with the lack of resolve to correct the issues." (Doc. No. 11-6, Page ID # 1741, Binkley Declaration at ¶ 10). In fact, Defendant Kirkland requested Mr. Binkley provide consumer complaints to her directly, and Mr. Binkley sent those complaints directly to her on April 20, 2022. (*Id.* at ¶ 11). Moreover, when the Tennessee Valley Authority ("TVA") decided to kick Solar Titan off the Green Connect QCN program, the letter sent by TVA to Solar Titan notifying the company of the removal was sent to Sarah Kirkland's attention. (Doc. No. 11-15, PageID # 2312). In its letter to Defendant Kirkland, the TVA explained that it was kicking Solar Titan off the Green Connect QCN program due to Solar Titan's failure to timely submit documentation and failure to resolve jobs. (*Id.*).

Defendant Kirkland also indicated she anticipates testifying "regarding her role in the operations side of the business and attempts to address these problems on behalf of the company given her role." (Doc. No. 36, PageID # 2455). Plaintiffs agree that, given her role in the company,

6

Kirkland was responsible, along with Defendants Atnip and Kelley, for addressing the myriad of problems created by Solar Titan's unfair and deceptive business practices. Despite her obligations as a managing member, however, she failed to adequately address Solar Titan's unlawful conduct, despite being aware that consumers were misled. For example, instead of addressing the numerous consumer complaints filed with the BBB, Defendant Kirkland instructed Mr. Binkley to withdraw Solar Titan's affiliation with the BBB. (Doc. No. 11-6, PageID # 1741, Binkley Declaration at ¶ 12). Likewise, Suzanne French testifies in her declaration that Kirkland routinely dismissed Ms. French anytime she brought concerns of Solar Titan's unlawful or unethical conduct to her attention. (French Declaration at ¶¶ 19–21, 24, 26). Defendant Kirkland, at best, chose to ignore Solar Titan's problems rather than take steps toward resolving customer complaints.

Defendant Kirkland further states that "[s]he will testify regarding funds she received upon the decision and direction of others, including the source, nature, and her extent of knowledge regarding those funds." (Doc No. 36, PageID # 2455). It is unclear what she is referring to when she says, "funds she received," but this statement is similarly inadequate to present a genuine factual dispute that would necessitate a full evidentiary hearing. What we do know—and what Kirkland cannot dispute—is that Defendant Kirkland was paid millions of dollars during her short time with Solar Titan. According to Kirkland's financial disclosures, she was paid over $1.4 million dollars from Solar Titan in 2021 alone. As explained in Mr. Stephens' declaration, when Solar Titan was profitable, Defendants Kirkland and Atnip would immediately drain those profits. (Stephens Declaration at ¶ 10). As such, Plaintiffs' position is that all funds received by Solar Titan's principals rightfully belong to the consumers harmed by the Solar Titan Defendants' unlawful conduct.

Finally, Defendant Kirkland anticipates that "[s]he will testify regarding her assets and monthly expenses, and her need for additional income and access to savings and/or lines of credit to pay bills and support her household." (Doc. No. 36, PageID # 2455). Again, it is clear based on her financial disclosures that Defendant Kirkland has chosen to lead an expensive lifestyle with the money Solar Titan took from consumers. But as described below, Defendant Kirkland's request for a full, unconditioned lift of the asset freeze is neither reasonable nor necessary, and Kirkland cannot show that the assets she seeks to access are not "tainted" by her unlawful behavior and should not remain frozen to preserve funds necessary for satisfaction of a potential judgment against her.

In short, Defendant Kirkland fails to present evidence raising a genuine issue of material fact necessitating a full evidentiary hearing. Kirkland's control over and direction of Solar Titan's unlawful activity is well-documented, and there is no doubt that she has personally benefited financially from this conduct. She may wish to continue using consumer funds to support her lifestyle, but a full, unconditioned lift of the asset freeze is unreasonable, unnecessary, and would result in loss of assets needed to satisfy Defendant Kirkland's liability.

While Defendant Atnip does not request that he be allowed to present live testimony at the Preliminary Injunction Hearing, it is important to note that Defendant Atnip's filing is likewise devoid of any facts that would present a genuine issue of material fact as to his or any of his codefendants' liability under state and federal consumer protection law. Defendant Atnip repeatedly dismisses his role in Solar Titan as that of passive partner and asks this Court to relieve him of any obligation because he "did not exercise complete control over [Solar Titan]." (Doc. No. 46, PageID # 2514). In making this statement, Defendant Atnip misrepresents his role in the company, as established by the numerous exhibits submitted by Plaintiffs in their initial pleadings.

Defendant Atnip also misunderstands the standard for personal liability under the claims brought by Plaintiffs (i.e., Atnip asserts he is not liable because Plaintiffs did not pierce the corporate veil). (Doc. No. 46, PageID # 2515–16). The reality is, Atnip was aware of Solar Titan's shortcomings and did nothing to fix it because he profited handsomely from this unlawful conduct. In 2021 alone, Defendant Atnip reported over $6 million in income, all of which appears to have come from Solar Titan. A requirement that consumer protection law enforcement agencies "pierce the corporate veil," or otherwise show that an individual defendant "exercised complete control" over a business, is not, and has never been, the standard for personal liability under state or federal consumer protection laws.

In short, Defendants have failed to present any evidence raising a genuine issue of material fact as to whether they misled consumers about the benefits and characteristics of their solar systems (*See generally* Doc. Nos. 10-16 through 10-18, PageID # 1243–541; Doc. No. 11-11, PageID # 2141–240; Doc. Nos. 11-6 through 11-10, PageID # 1737–2140, Marsalis Declaration with Consumer Complaints; Cochran Declaration with Consumer Complaints; Binkley Declaration with Consumer Complaints), failed to properly rescind contracts for consumers who exercised their three-day rescission right (Doc. No. 10-6, PageID # 892–94; Doc. No. 10-2, PageID # 373–77; Doc. No. 10-3, PageID # 570–76), and gave inaccurate and insufficient disclosures about Solar Titan's installation and funding process. (*See, e.g.*, Doc. No. 10-3, PageID # 532–33, 560–69, Horton Tr. at 33:12–25, 34:1–6, 61:6–12, 63:5–12, 66:5–8, 68:17–25, 69:1–11, 17–25, 70:11–20).

Moreover, none of the Solar Titan Defendants have refuted that the company routinely failed to live up to its contractual obligations to customers (Doc. No. 10-15, PageID # 1240, Warren Declaration at ¶¶ 16–18; Doc. No. 11-4, PageID # 1716, Suddoth Declaration at ¶¶ 13–

16; Doc. No. 10-13, PageID # 1226–28, Morelli Declaration ¶¶ 11–15, 18–20), that Solar Titan performed installations without pulling the requisite permits (Doc. No. 10-5, PageID # 700, Horton Tr. at 111:18–24), or that Solar Titan failed inspections at an unusually high rate (Doc. No. 10-13, PageID # 1226–27, Morelli Declaration at ¶¶ 11, 15). The Solar Titan Defendants also cannot refute that their own adhesion contract contains legally prohibited terms and a non-compliant Notice of Buyer's Right to Cancel. (Doc. No. 3, PageID # 40). As such, none of the Solar Titan Defendants can show cause why this Court's prior determinations on these factors should change. Defendants have even failed to present evidence as to why they are not personally liable for the company's conduct. For this reason, this Court should deny Defendant Kirkland's request to present live testimony and issue a Preliminary Injunction restraining the Solar Titan Defendants' unlawful conduct, continuing the asset freeze, and continuing the receivership pending the resolution of this case.

## II. THE INDIVIDUAL DEFENDANTS ARE PERSONALLY LIABLE UNDER THE TENNESEE CONSUMER PROTECTION ACT AND KENTUCKY CONSUMER PROTECTION ACT.

Because the individual defendants are personally liable under the relevant consumer protection statutes, the preliminary injunction should issue.

### A. Standard for Personal Liability Under State Consumer Protection Statutes

To establish an individual's liability for monetary awards for a company's consumer protection violations, Plaintiffs must show that the company's owner "'had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *F.T.C. v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1080 (N.D. Cal.

2018) (citing *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).[4] An individual will be liable for corporate violations of the FTC Act (and thus the TCPA) if: (1) she participated directly in the deceptive acts or had the authority to control them, and (2) she had knowledge of the misrepresentations, or was aware of a high probability of fraud along with an intentional avoidance of the truth. *F.T.C. v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574 (7th Cir. 1989) (overruled on other grounds by *F.T.C. v. Credit Bureau Ctr., LLC*, 937 F.3d 764 (7th Cir. 2019)). Similarly, under the Kentucky Consumer Protection Act ("KCPA"), an individual will be liable for a corporate entity's unlawful business practices when the individual "actively participated in the fraudulent scheme, or was aware of its existence and did nothing about it." *Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App. 1981). "Generally a corporation will be looked upon as a separate legal entity but when the idea of separate legal entity is used to justify wrong, protect fraud or defend crime the law will regard the corporation as an association of persons." *Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974).

Authority to control can be demonstrated by a defendant's active involvement in business affairs, establishment of corporate policy, or assumption of the duties of a corporate officer. *F.T.C. v. Chinery*, No. 05-3460, 2007 WL 1950270, at *6 (D.N.J. July 5, 2007) (citations omitted). A

---

[4] Defendant Atnip takes issue with Plaintiffs' reliance on cases involving the Federal Trade Commission ("FTC") and the FTC Act (Doc. No. 46, PageID # 2502). Defendant Atnip's concerns are misplaced. The Tennessee Consumer Protection Act ("TCPA") is known as a "little FTC Act," acting as a state analogue of the FTC Act and was created to give its Attorney General enforcement authority over consumer protection violations. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 114 (Tenn. Ct. App. 2005). In fact, the TCPA explicitly requires Courts to rely on FTC precedent and interpretations when interpreting and applying the TCPA. TENN. CODE ANN. § 47-18-115. Moreover, the CFPA's "unfair, deceptive, and abusive acts or practices" standard is similar to the FTC Act's "unfair and deceptive" standard. *See* CFPB, *Unfair, Deceptive, or Abusive Acts or Practices*, CONSUMER LAWS AND REGULATIONS MANUAL v.3, March 2022, at 1, https://files.consumerfinance.gov/f/documents/cfpb_unfair-deceptive-abusive-acts-practices-udaaps_procedures.pdf ("The principles of "unfair" and "deceptive" practices in the CFPA are similar to those under Section 5 of the Federal Trade Commission Act (FTC Act).").

11

defendant's knowledge may be demonstrated by evidence that she knew or should have known of the material misrepresentations or was aware of a high probability of fraud with intentional avoidance of the truth. *Id.*

There is no need to prove that the principal intended to defraud consumers in order to hold her personally liable. *F.T.C. v. Millennium Telecard, Inc.*, No. 11-2479, 2011 WL 3745963, at *9 (D.N.J. July 12, 2011). "[I]mposing a requirement that the FTC prove subjective intent to defraud on the part of the defendants would be inconsistent with the policies behind the FTCA and place too great a burden on the FTC." *Amy Travel Serv.*, 875 F.2d at 574. Instead, Plaintiffs are only required to establish that the "defendants had or should have had knowledge or awareness of the misrepresentations." *Id.* at 574; *cf. Porter*, 605 F.2d at 309 (explaining that the extent of a party's culpability under the Federal Trade Commission Act should affect the nature of relief granted).

### B. The Individual Defendants Had Authority to Control the Unlawful Activity.

Each individual defendant is, either formally or informally, a corporate officer of Solar Titan and signatory to multiple company bank accounts. Defendant Kirkland had the authority to control the misrepresentations made by Solar Titan, including misrepresentations regarding the performance of the solar systems the company sold. (Doc. No. 10-3, PageID # 543–46, Horton Tr. at 44:19–25, 45–47, 52:8–55:19; Doc. No. 10-5, PageID # 831–36, Horton Tr. Exs. 4 and 5). She also had the authority to control Solar Titan's unlawful practices regarding loan cancellations. (Doc. No. 10-6, PageID # 891–93, Dorismar Tr. at 13:29–39, 31:11–23, 32:9–24). In fact, Kirkland oversaw all of Solar Titan's "operations, operation processes and managers." (Doc. No. 10-11, PageID # 1202).

12

Similarly, Defendant Atnip held himself out to the Tennessee Secretary of State as a managing member of Solar Titan. (TRO Ex. J, Tennessee Secretary of State Annual Report Forms for Ideal Horizon Benefits). Although Defendant Kelley served as Solar Titan's CEO, Kelley reported directly to Atnip. (Doc. No. 10-11, PageID # 1202). Thus, at the very least, Atnip had the authority to control his husband and business partner such that he could have prevented him, and anyone else affiliated with Solar Titan, from engaging in unlawful activity in the company's name.

## C. The Individual Defendants Knew or Should Have Known of the Unlawful Activity.

Defendants Kirkland and Kelley were made aware of consumer complaints against Solar Titan from multiple sources, including the BBB and Local Power Company ("LPC") personnel. (Doc. No. 11-6, PageID # 1741, Binkley Declaration at ¶¶ 11–13; Doc. No. 11-5, Page ID # 1723-24, Miller Declaration at ¶¶ 10–11, Attachment A.) Likewise, Defendant Atnip was aware of, and responded to, consumer complaints. (Marsalis Supplemental Declaration at Attachment 2). As the Seventh Circuit recognized, awareness of consumer complaints may be evidence of an individual's reckless indifference to a company's unlawful activity. *See F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 638 (7th Cir. 2005) ("To claim ignorance in the face of consumer complaints . . . amount[s] to, at the least, reckless indifference to the corporation's deceptive practices.").

Even more, Kirkland had knowledge of Solar Titan's other unlawful business practices, including its failure to properly cancel contracts for customers who had properly exercised their right of cancellation and its use of misleading marketing materials, including the inaccurate sizing guidelines. (Doc. No. 10-6, PageID # 891–93, Dorismar Tr. at 13:29–39, 31:11–23, 32:9–24; PageID # 543, Horton Tr. at 44:19–25, 45–47; Doc. No. 10-5, PageID # 831–36, Horton Tr. Exs. 4 and 5).

13

**D. The Individual Defendants Either Participated in or Failed to Stop the Unlawful Activity.**

Defendant Kirkland played an active role in shaping the marketing for Solar Titan's solar system capability claims. With her knowledge, participation, approval, and oversight, Solar Titan continued to make false and deceptive representations and omissions in the company's advertisements despite knowledge of those advertisements' falsities. For example, Defendant Kirkland knew or should have known that Solar Titan was not a TVA partner, Solar Energy Industries Association ("SEIA") partner, or NABCEP partner, yet she continued to approve, either expressly or by omission, Solar Titan's use of advertisements that contained these misrepresentations. (Doc. No. 11-6, PageID # 2313; Doc. No. 11-17, PageID # 2314–21; Ex. F, Email from Ursula Abrams). In September 2021, Stephen Miller reached out to Defendant Kirkland directly to address misrepresentations in Solar Titan's advertising, but his concerns were never addressed. (Doc. No. 11-5, PageID # 1723, Miller Declaration at ¶ 10).

Defendant Atnip played an active role in the company, even if he was not involved in day-to-day operations. First, Defendant Atnip was a signatory on Solar Titan's bank accounts. *See F.T.C. v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1271 (S.D. Fla. 2019) ("[D]ay-to-day involvement of [Defendants'] activities is unnecessary to establish direct participation. Where individuals obtained merchant bank accounts for an entity . . . they directly participated in the entity's wrongdoings.") (citing *F.T.C. v. J.L. Publ'ns, Inc.*, 99 F.Supp.2d 1176, 1206 (C.D. Cal. 2000)). Defendant Atnip also responded to consumer complaints through, at least, Spring 2021. (Marsalis Supplemental Declaration at ¶¶ 19–21, Attachment 2. In some instances, Atnip provided extensive responses to customers complaining of deficiencies. (*See, e.g.*, *id.*) Moreover, Defendant Kelley reported directly to Defendant Atnip. (Doc. No. 10-11, PageID # 1202). Atnip also identified himself and Defendant Kelley to Kentucky as a "current [or] former employee[] of

14

Solar Titan who [is] currently or [was] previously involved in the selling, marketing, installation, or financing of Solar Power Systems in Kentucky." (Doc. No. 10-11, PageID #1201). Thus, both Defendants Atnip and Kelley had the authority to control Solar Titan's business activities. They did not, however, use that authority to prevent Solar Titan from engaging in unlawful activity. Instead, Defendants continued to take profits from Solar Titan anytime the company was profitable. (Stephens Declaration at ¶ 10).

### III.    A PRELIMINARY INJUNCTION SHOULD ISSUE.

When a defendant is on notice of a temporary restraining order, a plaintiff's request for the temporary restraining order may be treated as a motion for a preliminary injunction. *Moncier v. Jones*, 803 F. Supp. 2d 815, 826 (E.D. Tenn. 2011). The four factors a court considers when determining whether to grant a requested temporary restraining order or preliminary injunction are the same. *Id.* These four factors are: "(1) whether the movant would suffer irreparable harm without the injunction; (2) whether issuance of the injunction would cause substantial harm to others; (3) whether the public interest would be served by the issuance of the injunction; and (4) whether the movant has demonstrated a strong likelihood of success on the merits." *Id.* (citing *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (*citing PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003)). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe, MI*, 341 F.3d 474, 476 (6th Cir. 2003). Further, "[a] preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits." *Wells Fargo Bank*, 2018

WL 4896727, at *1. A court is not required to hold an evidentiary hearing without "genuine issues of material fact raised in opposition to a motion for a preliminary injunction." *Id.*

As explained in Plaintiffs' Memorandum in Support of the TRO Motion (Doc. No. 5), all four factors weigh in Plaintiffs' favor. Moreover, as reflected in this Court's February 9, 2023 Opinion and Order (Doc. No. 21), this Court has already found that Plaintiffs are likely to succeed on the merits for each of their counts against the Solar Titan Defendants and that immediate, irreparable harm will result absent an injunction.

### A. Likelihood of Success

As previously determined by this Court, Plaintiffs are likely to succeed on their claims that the Solar Titan Defendants "have engaged in acts and practices that violate state and federal consumer protection laws which authorize Plaintiffs to seek, and this Court to grant, [preliminary injunctive relief]." (Doc. No. 21 at ¶ 21). As reflected in the numerous consumer complaints filed with the Attorneys General of Tennessee and Kentucky; the declarations provided by consumers, LPC employees, and the TVA; and the Sworn Testimonies of former Solar Titan employees, there is little doubt that the Solar Titan Defendants made misrepresentations to their customers about the capabilities of the solar systems the company sold. This is a violation of the Consumer Financial Protection Act ("CFPA"), the TCPA, and the KCPA.

An overwhelming number of consumer complaints and consumer declarations also show that the Solar Titan Defendants made misrepresentations about consumers' anticipated electric bill savings and eligibility for tax credits that would offset the cost of the solar systems. (*See, e.g*, Doc. No. 11-7, PageID # 1837, 1847, 1920; Doc. No. 11-8, PageID # 2024, 2035). Moreover, the Solar Titan Defendants' own adhesion agreement contained terms that, on their face, violate the Consumer Review Fairness Act, the Tennessee Home Solicitation Sales Act, and the Kentucky

16

Home Solicitation Sales Act. (Doc. No. 10-5, PageID # 837–38, Horton Tr. Ex. 7). These are but a few examples of the Solar Titan Defendants' undeniably unfair and deceptive business practices that violate federal and state consumer protection laws, and which provide this Court the basis to issue the relief requested.

### B. Irreparable Harm to Plaintiffs and Consumers

As the chief law enforcement officers of their respective States, Plaintiffs will suffer irreparable harm if the Solar Titan Defendants are allowed to continue wasting assets that rightfully belong to the consumers they have harmed. Irreparable harm will occur if the asset freeze is lifted because the Solar Titan Defendants will be permitted to deplete the assets they obtained through unfair and deceptive business practices, thereby frustrating this Court's ability to provide relief to consumers and otherwise do justice. The Solar Titan Defendants have no rightful claim to any assets which rightfully belong to the consumers harmed by their conduct. The asset freeze is needed in order to ensure that Plaintiffs can obtain full and appropriate relief for harmed consumers.

For these reasons, and in accordance with this Court's February 9, 2023 Opinion and Order, the Solar Titan Defendants should continue to be enjoined from unlawful conduct and their assets should remain frozen.  Further, the Court should maintain the receivership and allow Mr. Ray to continue fulfilling his duties to this Court in evaluating company records to identify assets available for fashioning effective final relief.

### C. The Public's Interest

As this Court noted in its Opinion and Order in a different action, the moving parties' likelihood of success is often instructive or determinative of the remaining preliminary injunction factors. *Torres v. Collins*, No. 2:20-CV-00026-DCLC, 2020 WL 7706883, at *1 (E.D. Tenn. Nov.

30, 2020). The public has a significant interest in ensuring that the Solar Titan Defendants are not allowed to continue violating the law and are not allowed to spend or dispose of assets that rightfully belong to harmed consumers. The public also has a significant interest in this Court's ability to fashion the most effective relief possible for the harm caused by the Solar Titan Defendants' conduct. The Attorneys General of Tennessee and Kentucky are obligated to use their law enforcement authority to protect the interests of their citizens. *See, e.g.*, *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990). Thus, this factor weighs heavily in Plaintiffs' favor.

### D. Harm to the Solar Titan Defendants

The Solar Titan Defendants have no legitimate interest in continuing to violate the law or continuing to dispose of assets that rightfully belong to the consumers they have harmed. Thus, this factor also weighs in Plaintiffs' favor.

## IV. THE INDIVIDUAL DEFENDANTS' ASSETS SHOULD REMAIN FROZEN.

In addition to enjoining the individual defendants' unlawful conduct, Plaintiffs also seek restitution for the victims of the individual defendants' scheme. To preserve the possibility of such relief, Plaintiffs ask that the Court continue to exercise its statutory and equitable authority to keep the asset freeze in place. This Court has the authority to issue an asset freeze against the individual defendants for their liability under federal and state consumer protection laws. Moreover, Defendants Kirkland and Atnip have not provided a proper basis to support their motion that the asset freeze be lifted. Therefore, the individual defendants' assets should remain frozen.

### A. Authority for Issuing Asset Freeze Under Relevant Statutes

This Court has the authority to grant an asset freeze under the CFPA, the TCPA, and the KCPA. The CFPA specifically allows the Court to "grant any appropriate legal or equitable relief with respect to a violation of Federal consumer financial law." 12 U.S.C. § 5565(a)(1). The CFPA

18

also allows the Court to grant "rescission or reformation of contracts." *Id.* at (a)(2). Once this Court's equitable powers are invoked, the full breadth of the court's authority is available, including the power to grant preliminary relief as is necessary to preserve the possibility of providing effective final relief. *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112–13 (9th Cir. 1982). "Rescission is an old equitable remedy and the district court has power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy." *Id.* at 1112. Rescission is a possible remedy under the CFPA. Thus, there is a basis for this Court to order an asset freeze.

The TCPA also allows this Court to grant an asset freeze. Specifically, Tennessee Code Annotated § 47-18-108(b)(1) allows this Court to "make such orders . . . as may be necessary to restore to any person who has suffered any ascertainable loss by reason of the use or employment of such unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which may have been acquired by means of any act or practice declared to be unlawful by this part." It is well-settled that asset freezes are permissible under the TCPA. *See, e.g.*, *State ex rel. Slatery v. HRC Med. Centers, Inc.*, 603 S.W.3d 1, 7 (Tenn. Ct. App. 2019); *F.T.C. v. United Benefits, LLC*, Case No. 3:10-cv-0733 (M.D. Tenn. 2010); *State ex rel. Slatery v. McDivitt Motors*, Case No. 7670 (Tipton Co. Cir. Ct. July 2, 2019).

Asset freezes are likewise permissible under the KCPA. Specifically, Kentucky Revised Statutes § 367.200 states that "[t]he court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been paid out as a result of any practice declared to be unlawful by [Kentucky Revised Statutes §] 367.130 to 367.300, including the appointment of a receiver[.]" As Kentucky courts

19

have recognized, "the [Kentucky] legislature, in enacting [Kentucky Revised Statutes §] 367.200, intended to vest the Attorney General with the authority to seek restitution on behalf of defrauded consumers[.]" *ABAC Pest Control, Inc.*, 621 S.W.2d at 706 (Ky. Ct. App. 1981). Kentucky Revised Statutes § 367.210 provides that a receiver appointed pursuant to Kentucky Revised Statutes § 367.200:

> shall have the power to sue for, collect, receive and take into his possession **all** the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice declared to be illegal and prohibited by [Kentucky Revised Statutes §] 367.110 to 367.300, including property with which such property has been **mingled if it cannot be identified in kind because of such commingling**." (emphasis added).

Thus, under the KCPA any assets derived through unlawful means, and assets with which they have been commingled, are properly subject to an action for restitution by the Attorney General, and Kentucky Revised Statutes § 367.200 empowers a court to "make such additional orders or judgments as may be necessary" to provide restitution for consumers harmed by unlawful business practices, including an asset freeze. As previously stated, Plaintiffs and consumers would suffer irreparable harm if the asset freeze is lifted. Plaintiffs and consumers need the asset freeze to remain in place to protect the public's interest and allow this Court to provide the most effective relief possible.

Importantly, none of the aforementioned authorities stand for the proposition that Plaintiffs must have "an equitable interest" in the assets being frozen, as Defendant Kirkland suggests. (Doc. No. 44, PageID # 2486). Indeed, when the public interest is implicated, this Court's equitable

powers assume an even broader and more flexible character than when only a private controversy is at stake. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

In order for this Court to justify the issuance of an asset freeze, Plaintiffs must show that: (a) the Defendants are liable under the CFPA, TCPA, or KCPA, and (b) that there is a likelihood that the Defendants would dissipate or transfer assets to avoid paying a judgment. *Johnson v. Coutrier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."). Where a law enforcement agency is likely to succeed in showing that an individual is liable, the freeze should extend to individual assets as well. *See, e.g.*, *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109 (9th Cir. 2006).

Here, the evidence supports Plaintiffs' position that the individual defendants are likely liable under the CFPA, TCPA, and KCPA, and that there is a likelihood that the Defendants would dissipate or transfer assets to avoid paying a judgment. As explained in Mr. Stephens' declaration, Solar Titan was attempting to sell the company to investors throughout 2022 (Stephens Declaration at ¶¶ 12–13). Mr. Stephens went on to state that, immediately prior to Plaintiffs filing the present action, Defendants Atnip and Kirkland entered into a deal with Mike Sardo, owner of Texas Solar, for the purchase of Solar Titan with the intent that Solar Titan completely wind down its operations and file bankruptcy (Stephens Declaration at ¶¶ 16, 19). In this regard, Solar Titan planned to "completely abandon its customers" and sell its remaining assets (Stephens Declaration at ¶¶ 17–18). Moreover, the individual defendants continued to operate Solar Titan in an unlawful manner and take from the company even in the face of investigations by State Attorneys General.

Simply put, a freeze on the individual defendants' assets is necessary to maintain the *status quo*, ensure that funds are not dissipated during the pendency of this case, and preserve

Defendants' assets for consumer redress. The Solar Titan Defendants' violations have garnered hundreds of consumer complaints and drawn the attention of multiple law enforcement authorities. While the exact scope of harm caused by the Solar Titan Defendants' unlawful conduct is not yet known, the Receiver's preliminary findings show there is reason to believe the extent of Solar Titan's harm far exceeds what assets remain in the individual defendants' possession.

**B. Standard for Lifting Asset Freeze**

Once a court has determined that an asset freeze is necessary to protect funds that rightfully belong to the consumers harmed by a defendant's conduct, if a party seeks to terminate the asset freeze the court uses a two-pronged test in order to determine which assets, if any, should be unfrozen. The first prong of that test is a determination as to "whether Defendant's request to unfreeze assets is reasonable and necessary." *F.T.C. v. ACRO Servs. LLC*, No. 3:22-CV-00895, 2023 WL 351202, at *5 (M.D. Tenn. Jan. 20, 2023). Second, the court must determine whether the defendant has "establish[ed] that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." *Id.* (citing *SEC v. Bravata*, 763 F. Supp. 2d 891, 920 (E.D. Mich. 2011)); *FTC v. Image Sales & Consultants*, 1997 U.S. Dist. LEXIS 18905, at *7 (D. Ind. Nov. 14, 1997) ("[T]he Court also has a responsibility to keep some assets available for potential consumer redress in the event that the FTC prevails."). Ultimately, the decision to unfreeze assets lies within the sole discretion of the court. *Id.*

**i. The Individual Defendants Fail to Explain Why a Full, Unconditioned Lift of the Asset Freeze is Reasonable and Necessary.**

The individual Solar Titan Defendants may request to release frozen funds in order to pay "reasonable and necessary expenses." Defendant Kirkland's attestation that "[s]he will testify regarding her assets and monthly expenses, and her need for additional income and access to

savings and/or lines of credit to pay bills and support her household" is insufficient to show her request to lift the asset freeze is reasonable and necessary. It is clear from her financial disclosures that Kirkland has chosen to live an expensive lifestyle with the money Solar Titan unlawfully took from consumers. Defendant Kirkland's request for a full, unconditional lift of the asset freeze is neither reasonable nor necessary. Defendant Kirkland has not shown that she intends to put on proof of reasonable and necessary living expenses which this Court could rely upon if it were inclined to adjust the asset freeze or make more assets available to Kirkland.

      ii.     **The Individual Defendants' Funds are Tainted and Should Remain Frozen to Preserve Funds to Satisfy a Potential Judgment.**

As Shawna Helton and Jason Horton testified in their Sworn Testimonies to the State of Tennessee, Defendants Kirkland, Atnip, and Kelley were not wealthy prior to starting Solar Titan. In fact, Defendants Atnip and Kelley needed to borrow money from Mr. Horton. (TRO Mot. Ex. E, Horton Tr. at 171:11–173:20). Likewise, just before starting Solar Titan, Defendant Kirkland sought assistance from Ms. Helton in finding a job because her current employment was not paying well. (TRO Mot. Ex. D, Helton Tr. at 14:6–10).

Plaintiffs will address Defendant Kirkland's Motion to Permit Live Testimony because she is the only party who has attempted to present anything about the asset freeze specifically. Defendant Kirkland's description of what she planned to testify about fails to present a genuine issue of material fact that this Court should lift the asset freeze against her. In Kirkland's Motion to Permit Live Testimony, she stated that "[s]he will testify regarding her refusal to accept compensation from the company since September 2022 while she continued to work for the company in an attempt to serve its customers." Even if Kirkland could establish that she had not received compensation from the company since 2022, it is irrelevant to her personal liability and does not refute that Solar Titan's ill-gotten gains have funded her current standard of living.

23

Despite purportedly not being paid by Solar Titan since September 2022, Defendant Kirkland earned enough money during her time at Solar Titan to ensure that she, as the primary breadwinner of her family, would be able to afford luxury vehicles and a million-dollar home. As can be seen from her financial disclosures, these purchases were made after she knowingly or recklessly perpetrated fraud on consumers.

Defendant Kirkland has not shown that the assets she seeks to access are not "tainted" by her unlawful behavior and should not remain frozen to preserve funds to satisfy a potential judgment against her. Further, instead of taking steps to rectify the fraud, she planned to launch a new business leaving Solar Titan consumers saddled with large loans for inoperable systems or systems not operating as promised. As described by Mr. Stephens, the Solar Titan Defendants decided to abandon the company late last year and start a new company with Texas Solar, leaving Solar Titan customers out to dry. (Stephens Declaration at ¶¶ 12–13). In December 2022, Defendant Kirkland even left Mr. Stephens by himself to negotiate the transfer of the Company's remaining assets to Texas Solar while she went to Las Vegas for a vacation. (*Id.* at ¶ 13). Thus, the Solar Titan Defendants cannot show that their assets are not "tainted" by their unlawful conduct and that lifting the asset freeze is reasonable and necessary.

"The unfortunate reality of asset freezes is that they preserve legal interests sometimes at the 'unpleasant consequence for the defendant . . . .' But the apparent impetus behind imposing such unpleasant consequences here actually is based on a desire to avoid and mitigate unpleasant consequences—for consumers. That is, the rationale for imposing such unpleasant consequences is a desire to avoid seeing them—seeing them visited *upon consumers.*" *ACRO Servs.*, 2023 WL 351202, at *8. As such, the Court should decline to unfreeze any the individual defendants' assets.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue a preliminary injunction that keeps in place this Court's February 9, 2023 Order that sets forth the terms of the TRO, asset freeze, and appointment of a receiver.

DATED:        February 23, 2023                    Respectfully submitted,


/s/ Samuel Keen                                    /s/ Paul Fata
_____                             _____

SAMUEL KEEN                                        PAUL FATA
(Admitted *Pro Hac Vice*)                          (Admitted *Pro Hac Vice*)
ALICIA DANIELS-HILL                                LYNDSEY ANTOS
(Admitted *Pro Hac Vice*)                          (Admitted *Pro Hac Vice*)
OFFICE OF THE TENNESSEE ATTORNEY GENERAL           OFFICE OF THE KENTUCKY ATTORNEY GENERAL
P.O. Box 20207                                     1024 Capital Center Drive, Suite 200
Nashville, Tennessee 37202                         Frankfort, Kentucky 40601

Attorneys for Plaintiff                            Attorneys for Plaintiff
STATE OF TENNESSEE                                 COMMONWEALTH OF KENTUCKY

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated in the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Samuel Keen
_____

Attorney for Plaintiff
STATE OF TENNESSEE