UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL, | ) ) ) ) ) ) | 3:23-CV-00046-DCLC-JEM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter came before the Court on February 27, 2023 for a preliminary injunction hearing, during which all parties in interest appeared with counsel and presented oral argument on their position of whether the Temporary Restraining Order, issued by the Court on February 7, 2023, should be converted into a preliminary injunction. Based on the evidence contained in the record, the parties' briefing, the arguments presented during the hearing, and for the reasons stated herein, the Court finds the entry of a preliminary injunction is warranted.

**I.     BACKGROUND**

Plaintiffs State of Tennessee ("Tennessee") and Commonwealth of Kentucky ("Kentucky") by and through their respective Attorneys General commenced this civil enforcement action on February 6, 2023, alleging violations of federal and state consumer protection laws by Defendant Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan") and its two members and officer—Sarah Kirkland ("Kirkland"), Richard Atnip ("Atnip"), and

Case 3:23-cv-00046-DCLC-JEM   Document 78   Filed 02/28/23   Page 1 of 38   PageID #: 4768

Craig Kelley ("Kelley") (collectively, "Individual Defendants"). Specifically Plaintiffs allege Solar Titan and the Individual Defendants engaged in acts or practices that violated the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5301 *et seq.*, the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b, the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*, the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat § 367.110 *et seq.*, the Tennessee Home Solicitation Sales Act, Tenn. Code Ann. § 47-18-701 *et seq.*, and the Kentucky Home Solicitation Sales Act, Ky. Rev. Stat. § 367.140 *et seq.* [Doc. 3].

Plaintiffs moved *ex parte* for a Temporary Restraining Order ("TRO") against Solar Titan and the Individual Defendants, for the appointment of a receiver over Solar Titan, and an asset freeze against Solar Titan and the Individual Defendants [Doc. 5]. The Court, finding good cause to believe that Solar Titan and the Individual Defendants had engaged in acts and practices that violate state and federal consumer protection laws and that immediate and irreparable harm would result to consumers due to those ongoing violations, granted the extraordinary relief sought by Plaintiffs. Namely, on February 7, 2023, the Court issued a TRO temporarily enjoining the acts and practices complained of, freezing the assets of Solar Titan and the Individual Defendants, appointing a temporary receiver for Solar Titan, and granting ancillary relief [Doc. 21].

In accordance with the TRO, the Individual Defendants filed responses in opposition to Plaintiffs' request for a preliminary injunction [Docs. 44, 46, 68]. Kirkland also moved to strike the injunctive relief sought in Plaintiffs' Complaint to the extent it applied to her [Doc. 41] and moved to dissolve the TRO as it related to her [Doc. 52]. On February 26, 2023, however, Plaintiffs and Kirkland jointly moved for entry of an Agreed Order modifying the freeze of Kirkland's assets, allowing Kirkland to withdraw her Motion to Dissolve the TRO, and memorializing Plaintiffs' and Kirkland's agreement as to her Motion to Strike [Doc. 73].

2

On February 27, 2023, the parties appeared before the Court to present argument as to why the Court should or should not enter a preliminary injunction enjoining the violations of law alleged by Plaintiffs, continuing the asset freeze, permanently continuing the Receivership, and imposing such additional relief as may be appropriate. The Court entered the Agreed Order proposed by Plaintiffs and Kirkland. Thus, the sole remaining issue to be decided is whether a preliminary injunction should be issued as to Solar Titan, Atnip, and Kelley.

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 73 (6th Cir. 2000)). The factors to consider when determining whether to issue a preliminary injunction in a civil enforcement action are whether the government has demonstrated a likelihood of success, whether the balance of equities tip in the government's favor, and whether an injunction would be in the public interest. *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1212 (9th Cir. 2019) (the irreparable harm showing normally required in private litigation is eliminated in cases involving statutory enforcement).

## III.    DISCUSSION

Plaintiffs assert that the Court should enter a preliminary injunction enjoining the violations of law alleged in the Civil Enforcement Complaint, continuing the Receivership, and continuing the freeze of the assets of Solar Titan, Atnip, and Kelley. Atnip and Kelley object to the entry of a preliminary injunction against them, including the continued asset freeze, and argue primarily that Plaintiffs cannot demonstrate a likelihood of success on the merits as to their personally liability for the alleged violations.

**A.     Likelihood of Success on the Merits**

Plaintiffs allege the evidence before the Court leaves little doubt that Solar Titan engaged in violations of the aforementioned consumer protection laws and the Individual Defendants are personally liable for those violations.  Namely, Plaintiffs claim Solar Titan misleads consumers about the characteristics and benefits of their solar systems and omits material information related to consumer loans used to fund the projects, and the Individual Defendants knew or should have known of the wrongful acts and either participated directly in them or had the authority to control them.  The likelihood of success on each of the alleged consumer protection violations are examined in turn, followed by an analysis of the Individual Defendants' liability for those alleged violations.

**1.     Consumer Financial Protection Act**

The CFPA prohibits a "covered person or service provider" from "engag[ing] in unfair, deceptive, and abusive acts and practices" in the provision of financial services to consumers. 12 U.S.C. § 5536(a)(1)(B).  The parties do not dispute that Solar Titan is a "covered person or service provider" under the CFPA.  Thus, the focus is on whether Solar Titan engaged in unfair, deceptive, or abusive acts or practices in the provision of financial services to its customers.

An act or practice is unfair if it is "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C.A. § 5531(c)(1).  An act or practice is deceptive if "there is a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances and the representation, omission, or practice is material." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1192 (9th Cir. 2016) (citation and internal quotations omitted).  An act or practice is abusive if it "materially interferes with the

4

ability of a consumer to understand a term or condition of a consumer financial product or service" or it "takes unreasonable advantage of—(A) a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service; (B) the inability of the consumer to protect the interests of the consumer in selecting or using a consumer financial product or service; or (C) the reasonable reliance by the consumer on a covered person to act in the interests of the consumer." 12 U.S.C. § 5531(d).

Plaintiffs allege Solar Titan's practices and acts are unfair, deceptive, and abusive because they misrepresent that customers will be eligible for the Federal Tax Credit and fail to inform customers that their loan payments start after the solar system is installed rather than after it is fully commissioned and operational. Both of these acts and practices are discussed in turn.

### i. Federal Tax Credit Eligibility

Plaintiffs allege Solar Titan and the Individual Defendants misrepresent that the Federal Tax Credit will reduce the overall cost of a Solar Titan system and customers' loan amounts, despite the fact that not all customers will be eligible for the tax credit. Consumers who purchase a residential solar system may be eligible to receive a nonrefundable tax credit equal to 26-30% of the cost of the solar system, depending on the year of purchase. 26 U.S.C. § 25D(g). Plaintiffs assert Solar Titan sales representatives use this tax incentive as part of their sales pitch, and the structure of the financing from the lender promoted by Solar Titan, Solar Mosaic, LLC ("Mosaic"), misrepresents that all consumers are eligible for the tax credit. Plaintiffs argue the terms of the loan assume each consumer will pay a balloon payment in approximately the same amount as the tax credit prior to re-amortization, which occurs 18 months after the first payment is due, and these terms are intended to give the impression that the consumer is eligible for the tax credit and that the cost of the system and the associated loan will be lowered as a result.

Although the structure of the loan for the purchase of a Solar Titan system does provide a benefit for consumers who are eligible for the Federal Tax Credit and who put the tax credit toward the loan principal within the first 18 months, the Solar Titan Installation Agreement and the Mosaic Loan Agreement sufficiently explain the terms of the loan and explain that the benefit of the tax credit is not guaranteed. Both agreements explain three possible situations: (1) if a consumer pays down the principal by 26% during the first 18 months following installation, the monthly payment will remain the same after re-amortization; (2) if a consumer does not pay down the principal by at least 26% in the first 18 months, the monthly payment will increase after re-amortization; and (3) if a consumer pays down the principal by more than 26% during the first 18 months, the monthly payment will decrease after re-amortization [Doc. 10-5, pgs. 142, 144, 146, 148, 150, 152; Doc. 68-5, pg. 2]. If the agreements excluded the last two situations, the argument that they were misleading consumers to believe that they would receive the tax credit would have more merit. But the terms clearly contemplate ineligibility for the tax credit.

Both agreements also include a disclosure regarding the Federal Tax Credit. Solar Titan's Installation Agreement provides:

> As the purchaser and owner of a solar photovoltaic system, you may qualify for certain federal, state, local or other rebates, tax credits or incentives (collectively, "Incentives"). If you have any questions as to whether and when you qualify for any Incentives and the amount of such Incentives, please consult and discuss with your personal tax or financial advisor. [Installers] make no representation, warranty or guarantee as to the availability or amount of such Incentives.

[Doc. 10-5, pgs. 142, 144, 146, 148, 150, 152]. Likewise, the Mosaic Loan Agreement contains the following disclaimer:

> You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any such tax credits. We do not provide tax advice and nothing in this Loan

6

Agreement is intended to be used as tax advice. In order to determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your independent tax advisors. Additionally, if you are not eligible to receive a federal solar investment tax credit you will not be able to use the proceeds of your tax credit to make a voluntary prepayment as described below.

[Doc. 68-5, pg. 2].

While the terms of the loan necessarily provide a benefit for those consumers who are eligible for the Federal Tax Credit, consumers who assume they will be eligible for and, as a result, benefit from the tax credit and enter into the Loan Agreement based on that assumption do not act reasonably. Likewise, any substantial injury to consumers who rely on the advertisement or sales pitch regarding the tax credit when purchasing a Solar Titan system is reasonably avoidable. Any representations regarding the possible benefits of the tax credit are not likely to mislead consumers acting reasonably under the circumstances, because a reasonable consumer would confirm eligibility before relying on it. Accordingly, it is unlikely that Plaintiffs will succeed on the merits of their CFPA claim based on the assertion that Solar Titan misrepresents consumers' eligibility for the tax credit.

### ii.        Loan Start Date

Solar Titan represents to customers that the first monthly payment on their loan "is due approximately 60 days after installation." [Doc. 10-5, pg. 142]. Plaintiffs allege this representation is unfair, deceptive, and abusive, because Solar Titan omits the fact that "installation" does not necessarily mean that the system will be fully commissioned and operational. This omission, Plaintiffs assert, leads customers to believe that their loan payments will not commence until after they have a functioning solar system.

Solar Titan initially operated under what was called a "complete install" which means one installation crew would go out to the customer's house and install the panels, run the electrical,

and complete everything in one installation [Doc. 10-2, pg. 42–43]. Thus, "installation" actually meant installation of an operational solar system. However, Solar Titan then split the crews into a panel crew and an electrical crew [*Id.* at pg. 43]. Under that installation operation, "install" began to mean merely that panels were on the roof [*Id.*]. Once the panels were installed, Solar Titan submitted a bill of lading to Mosaic and, in turn, Mosaic disbursed funds to Solar Titan, regardless of whether the electrical crew had completed their installation [*Id.*]. Thus, numerous customers were forced to begin paying on a loan for an incomplete solar system.[1]

Misrepresenting to customers when their first payments will be due is unfair—it is likely to cause substantial injury which is not reasonably avoidable because they are forced to begin payments for a product and service which they have yet to fully receive. Such misrepresentation is also deceptive—it is likely to mislead consumers into believing they will not have to begin paying for the solar system until it is operational. This is a material representation, because it would likely affect a consumer's decision to purchase a Solar Titan system and to finance that purchase through Mosaic. *See E.M.A. Nationwide, Inc.*, 767 F.3d at 631 ("A representation is material if it is likely to affect a consumer's decision to buy a product or service."). Likewise, such misrepresentation is abusive, because it materially interferes with a consumer's ability to understand the most basic term of their loan—when the loan start date begins.

Accordingly, Plaintiffs are likely to succeed on their claim that Solar Titan's acts or practices in the provision of financial services are unfair, deceptive, or abusive due to the omission of material information, which leads consumers to believe they will not be obligated to pay on their loan until their solar system is operational.

---

[1] For example, a Kentucky consumer stated that he or she paid three payments to Mosaic before the Solar Titan system was deemed "operational." [Doc. 67-5, pg. 57].

### 2. Consumer Review Fairness Act

The CRFA provides that "[i]t shall be unlawful for a person to offer a form contract containing a provision" that "prohibits or restricts the ability of an individual who is a party to the form contract to engage in a covered communication[.]" 15 U.S.C. § 45b(b)(1), (c). A "covered communication" is "a written, oral, or pictorial review, performance assessment of, or other similar analysis of, including by electronic means, the goods, services, or conduct of a person by an individual who is party to a form contract with respect to which such person is also a party." 15 U.S.C.A. § 45b(a)(2).

Solar Titan included a term in its standard form contract that purported to restrain customers from making negative statements about Solar Titan on social media (a "non-disparagement provision"). The provision in the Installation Agreement states:

> Buyer agrees not to use any form of social media to express their opinion that could be portrayed as negative in the eyes of the public towards or about Ideal Horizon Benefits. Breaching acceptance of this clause by buyer can and will deem monetary compensation benefits to Ideal Horizon Benefits, LLC/Solar Titan USA.

[Doc. 10-5, pgs. 142, 144, 146, 148, 150, 152]. This provision clearly prohibits or restricts the ability of a Solar Titan customer to engage in a covered communication in violation of the CRFA.

Defendants Atnip and Kelley concede that the inclusion of this provision was unlawful but assert that they had outside counsel review and approve their contracts and counsel did not raise any objection to this provision [Doc. 68, pg. 27]. They further contend that they had no idea that such provision could potentially be a legal issue until they learned from the Kentucky Attorney General's Office that it was not permissible [*Id.*]. Upon learning of the impermissibility of the provision, Solar Titan removed it from the contract [Doc. 68-11, pg. 2]. But Atnip and Kelley do not state when the provision was removed, so it is unclear how many contracts actually contained the unlawful provision and, as a result, how many consumers are entitled to equitable relief.

Atnip and Kelley wrongfully assert that "only the non-disparagement provision in the contract is void," and that "Plaintiffs are placing themselves in the position of the legislative branch and writing in the law that the CRFA requires contract recission and refund." [Doc. 68, pg. 27]. The CRFA is clear that offering a form contract with the proscribed provision is "treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 18(a)(1)(B) of the Federal Trade Commission Act[.]" 15 U.S.C. § 45b(d)(1). The relief available in a civil enforcement action for such a violation "may include, but shall not be limited to, *recission* or reformation of contracts, *the refund of money* or return of property, the payment of damages, and public notification respective the rule violation or the unfair or deceptive act or practice[.]" 15 U.S.C. § 57b(b) (emphasis added). Thus, although not required, contract recission and refund are available remedies for the violation and Plaintiffs are likely to succeed on the merits of this claim against Solar Titan.

### 3. Tennessee and Kentucky Consumer Protection Acts

The TCPA prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). Similarly, the KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170(1). The TCPA is "interpreted and construed consistently with the interpretations given by the [FTC]." Tenn. Code Ann. § 47-18-115. Thus, the same standards stated above with respect to the federal claims for unfair and deceptive practices apply equally here. To recap, an act or practice is unfair if it is "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers" and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C.A. § 5531(c)(1). An act or practice is deceptive if "first, there is a representation, omission, or practice that, second, is likely

to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994). "A representation is material if it is likely to affect a consumer's decision to buy a product or service." *E.M.A. Nationwide, Inc.*, 767 F.3d at 631.

Plaintiffs allege Solar Titan engages in unfair and deceptive acts and practices by misrepresenting and omitting material information about the characteristics of the solar systems and information related to consumer loans. The alleged misrepresentations and omissions include: (1) claiming consumers will save significant sums of money by purchasing a Solar Titan system; (2) misleading consumers to believe they will be eligible for a Federal Tax Credit by purchasing a Solar Titan system, (3) misleading consumers to believe they will benefit from "net metering"—a program under which local utility companies will "buy back" excess power produced by a Solar Titan system, (4) failing to explain when payments are due on consumers' loans in relation to when they will have an operational solar system; (5) failing to honor consumers' three-day statutory right of recission; and (6) misrepresenting consumers' ability to cancel their loan agreements entered into with Mosaic.

For the reasons stated above with respect to the alleged CFPA violations, Plaintiffs are unlikely to succeed on the merits of any consumer protection claim relating to representations about a consumer's eligibility for the Federal Tax Credit, but Plaintiffs are likely to succeed on the merits of the claim that failing to explain the timing of when a consumer's payments will begin on their loans is an unfair or deceptive practice. Turning to the remaining challenged acts and practices, Plaintiffs are likely to succeed on the merits of their claim that each of these acts and practices are either deceptive or unfair.

### i.    Representations as to Savings

First, Plaintiffs allege Solar Titan deceives customers into believing that they will save large sums of money by purchasing a Solar Titan system [Doc. 6, pg. 18]. Solar Titan claims consumers will save 50-90% on their monthly utility bills by purchasing a Solar Titan system and that they will not spend more on their solar system than they would pay "anyway" towards their electric bills [Doc. 10-5, pg. 121; Doc. 10-14, pg. 3].[2] In making these claims, Solar Titan sales representatives are instructed to tell customers that in the past eight years, the national average annual increase for electric bills has been 8.2%, [Doc. 10-5, pg. 119], when, in fact, the *fastest* annual rate of increase since 2008 has been 4.3% in 2021. U.S. Energy Info. Admin., *Today in Energy*, https://www.eia.gov/todayinenergy/detail.php?id=51438 (last visited February 25, 2023). Sales representatives also claimed they would choose a solar system size that would produce enough power to cover consumers' average monthly consumption, but the size guideline provided for reference overstated how much energy each system size would produce [Doc. 10-3, pg. 47 (Sworn Statement of Jason Horton, former sales consultant at Solar Titan); Doc. 10-5, pgs. 135, 137 (Solar System Sizing Guidelines)].

The practices, if proven, are clearly deceptive. Representations regarding an inaccurate annual increase in the price of utility bills and savings that different sizes of Solar Titan's systems can provide are likely to mislead consumers because such representations are based on false information. Such representations are also material because the extent of savings a consumer will

---

[2]    Solar Titan sales representatives are trained to use an "Anyway Money Pitch" during which they tell prospective customers the national average increase for electric bills over the last eight years and then estimate the money they will spend over the next 20 years on their electric bill [Doc. 10-5, pgs. 119–120]. The sales representative is then instructed to explain that the prospective customer could put the money that would be spent anyway on an electric bill ("anyway money") toward a Solar Titan system to "own and produce their own power versus continuing to rent" their electricity [*Id*. at pg. 121].

actually appreciate, or the lack thereof, would likely influence their decision to purchase such an expensive product. These representations are also likely to cause substantial injury to consumers which is not reasonably avoidable because they get locked into a hefty loan with the impression that their electric bills will decrease, when, in reality, they end up paying for the solar system without seeing any significant difference in their electric bills.

Atnip and Kelley assert any reasonable consumer would confirm guaranteed savings versus mere puffery in advertisements prior to entering into such a significant contract [Doc. 68, pg. 25]. Puffery, however, is "unverifiable exaggeration to prove a point." *Louisiana-Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, 928 F.3d 514, 519 (6th Cir. 2019). Representations regarding specific factual information as to the national average annual increase in electric prices and how much power a system is capable of producing convey "quantifiable, objective fact[s]" and, thus, go beyond mere puffery and sales talk. *Id.* ("Puffery protects statements that reasonable consumers would not interpret as reliably factual."). A reasonable consumer would likely interpret such statements as reliably factual. Accordingly, Plaintiffs are likely to succeed on the merits of this claim.

### ii.    Net Metering and Buyback Participation

Next, Plaintiffs allege Solar Titan misrepresents that customers will receive credits on their electric bills for any excess power the solar system generates. Numerous consumers have filed complaints with the Tennessee Division of Consumer Affairs stating that Solar Titan sales representatives told them that they would benefit from a government buyback program, or net metering, under which the local utility company would credit the consumer for, or "buy back," power produced by the solar system above what their household consumed [Doc. 10-19, pgs. 111, 114, 117; Doc. 67-7, pg. 36]. In each of these situations, the consumers found out after the

purchase and installation of the solar system that their local utility company, in fact, did not participate in any government buyback program and any excess power produced by the solar system was returned back to the grid with no benefit to the consumer [*Id*.].

Regularly representing to consumers that they will benefit from net metering or a buyback program despite the fact that their local utility company does not participate in any such program is deceptive. Such a material misrepresentation is likely to mislead consumers acting reasonably under the circumstances. Multiple consumer complaints expressed that they would not have purchased the Solar Titan system had they known they would not benefit from the excess power produced by the system. A customer from Alcoa, Tennessee stated she "would not have bought the solar panels" if she knew the City of Alcoa Utilities would not credit her for her electricity that was not used by her home [Doc. 10-19, pg. 111]. Another customer from Greeneville, Tennessee stated he would not have made the decision to purchase a Solar Titan system if he had known Greeneville Light and Power Service did not participate in a buyback program [Doc. 10-19, pg. 117]. Accordingly, Plaintiffs are likely to succeed on the merits of their claim that the practice of representing consumers will benefit from a buyback program when such programs are not offered in the customer's area is deceptive.

### iii.    Cancellation of Installation and/or Loan Agreement

Plaintiffs assert the most egregious practices by Solar Titan are failing to honor consumers' three-day statutory right of recission and misrepresenting consumers' ability to cancel their loan agreements. Specifically, Plaintiffs allege Solar Titan had a practice of seeking loan disbursements from Mosaic immediately after the consumer signed the Installation Agreement, rather than waiting for the three-day recission period to pass [Doc. 6, pg. 24]. If a consumer cancelled during the three-day period, Solar Titan would hold onto the funds disbursed by Mosaic rather than notify

them that the agreement was cancelled [*Id.*]. As a result, consumers who exercised their statutory right to rescind would receive monthly billing as if they had never cancelled [*Id.*].[3] Sarah Dorismar, Solar Titan's former Finance and Administration Manager, claims that she tried to stop the company's practice of seeking loan funds from Mosaic before the consumer's three-day recission period expired, but "they always said it was a cash flow issue" [Doc. 10-6, pg. 30].[4]

Further exacerbating the issue was Solar Titan's practice of delaying sale cancellations. Initially, the process when a customer exercised their three-day right of recission was that Shawna Helton, the sales manager, would be notified and would reach out to the customer to "try to save the deal." [Doc. 10-2, pg. 71; Doc. 10-6, pg. 31]. If Ms. Helton was unable to talk the customer out of cancelling, she would send finance a form telling them to cancel out the loan [Doc. 10-2, pg. 72; Doc. 10-6, pg. 32]. However, Ms. Helton got behind on processing cancellations, and Ms. Dorismar started processing them for customers who exercised their right to cancel despite not receiving the form from Ms. Helton [Doc. 10-6, pg. 33]. Ms. Dorismar stated that, at one point, one million dollars was taken out of the Solar Titan account due to the number of cancellations and "[Kelley] got really upset" and "didn't believe that there was actually a million dollars' worth of customers that wanted to cancel within the month." [*Id.* at pg. 30]. Thereafter, Kelley required all cancellations to be given to him for final approval [*Id.* at pg. 33]. Ms. Dorismar stated that these forms "sat on his desk for weeks" and finance "never even received a final approval." [*Id.*].

---

[3]     Based on the record, it appears that once a cancellation was processed, Mosaic would reimburse any payments on the loan to the consumer and claw back the funds disbursed to Solar Titan, plus any interest that had accrued on the loan while the cancellation was awaiting processing [Doc. 10-6, pgs. 29, 35, 36].

[4]     It is not clear who Ms. Dorismar is referring to when she says "they." Plaintiffs imply she is referring to Kirkland and Kelley [Doc. 6, pg. 25] but there is no support for that implication in her sworn statement.

Ms. Dorismar then informed Kirkland of the delay in cancellations and Kirkland told her to process four cancellations a week from Kelley's list [*Id*.]. When the queue of cancellations for Ms. Helton to call and/or Kelley to approve reached 90 customers, Ms. Dorismar went to Kirkland again and explained that when a cancellation took months to process, Solar Titan was being charged a $500 fee for missing the three-day period along with interest for every month the loan was open [*Id*. at pg. 35]. Kirkland then gave Ms. Dorismar permission to process eight cancellations a week rather than four and expressed agreement with Ms. Dorismar that the company's finances were not being handled correctly [*Id*. at pg. 36]. After Ms. Dorismar left Solar Titan, she states Kirkland called her and told her that she told the lead of the finance department, Samantha Blaine, to process all of the cancellations pending on the list, but Ms. Dorismar is not sure whether that actually happened [*Id*. at pg. 38].

Plaintiffs assert Solar Titan continued to seek loan disbursements before the consumers' right to cancel expired and cancellations were not being processed or honored, causing numerous consumers to become indebted for large sums of money for a product they did not want [Doc. 6, pg. 27]. These practices are unquestionably unfair. By accepting funds from Mosaic prior to the close of the three-day recission period and delaying the processing of consumers' decisions to exercise their statutory right to cancel, Solar Titan caused substantial financial injury to consumers who attempted to reasonably avoid any injury by cancelling their contract. Thus, Plaintiffs are likely to succeed on the merits of their claim that Solar Titan engaged in unfair and deceptive practices in violation of the TCPA and KCPA.

### 4. Tennessee and Kentucky Home Solicitation Sales Acts

The Tennessee and Kentucky Home Solicitation Sales Acts both require a conspicuous "BUYER'S RIGHT TO CANCEL" notice in any home solicitation sales agreement to inform

16

consumers that they have a three-day right of recission. Tenn. Code Ann. § 47-18-704(b); Ky. Rev. Stat. § 367.430(2). Under both laws, until the seller provides the proper notice of a buyer's right to cancel, the buyer may cancel the sale in any manner and by any means. Tenn. Code Ann. § 47-18-704(d); Ky. Rev. Stat. § 367.430(3).

Solar Titan's Installation Agreement included notice regarding a buyer's right to cancel but such notice was far from conspicuous. Rather, it was, as Plaintiffs put it, "jammed into the middle of the back page of the contract with no distinction from the rest of the convoluted and confusing contractual terms." [Doc. 6, pg. 43]. Thus, it appears that all consumers who purchased a Solar Titan system, to this date, likely retain the right to rescind their purchase agreements and demand a refund of any money paid. *See* Tenn. Code Ann. § 47-18-705(a) ("within ten (10) days after a home solicitation sale has been cancelled . . . the seller must tender to the buyer any payments made by the buyer and any note or other evidence of indebtedness"); Ky. Rev. Stat. § 367.440 (same). Due to the lack of proper notice, Plaintiffs are likely to succeed on the merits of this claim against Solar Titan.

As an additional note, although both the Tennessee law and Kentucky laws are similar in many respects, they diverge regarding compensation to the seller for services performed prior to cancellation. In Tennessee, "the seller is entitled to compensation only to the extent of the fair market value for any such services performed prior to cancellation." Tenn. Code Ann. § 47-18-706(c). In contrast, Kentucky law provides "[i]f the seller has performed any services pursuant to a home solicitation sale prior to its cancellation, the seller is entitled to **no** compensation." Ky. Rev. Stat. Ann. § 367.450(3) (emphasis added). Thus, to the extent consumers are entitled to refunds, the Tennessee consumers' refunds must be offset by compensation to the seller for

services performed prior to cancellation. *See Laymance v. Vaughn*, 857 S.W.2d 36, 37 (Tenn. Ct. App. 1992).

### 5.    Liability of Individual Defendants

To establish individual liability for the alleged consumer protection violations, Plaintiffs must show that the Individual Defendants "participated directly" in the wrongful acts or "had the authority to control them" and that they "knew or should have known" of the wrongful acts. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 636 (6th Cir. 2014); *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 749 (9th Cir. 2022); *Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App. 1981).[5]

Of the Individual Defendants, Kelley and Kirkland are the most involved in the day-to-day operations of Solar Titan. Kelley oversees and decides how Solar Titan navigates its partnerships with lenders, determines whether or when Solar Titan honors cancellation requests, oversees training for sales staff, and has met with the Better Business Bureau ("BBB") about consumer complaints [Doc. 6, pg. 49]. Similarly, Kirkland oversees loan cancellations and Solar Titan's relationships with lenders, has controlled and participated in the hiring and termination of Solar Titan's integral operations personnel, and receives all complaints from the BBB [*Id*.]. Kelley and

---

[5]    Atnip and Kelley argue Tennessee state law regarding piercing the corporate veil is the applicable standard to determine individual liability under the state consumer protection claims. However, the TCPA expressly provides that it "shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act[.]" Tenn. Code Ann. § 47-18-115. Likewise, Kentucky law applies an analogous standard to determine individual liability "when the idea of [a] separate legal entity is used to justify [a] wrong[.]" *Dare to Be Great, Inc. v. Kentucky ex rel Hancock, Ky.*, 511 S.W.2d 224 (1974); *see Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App. 1981) ("There must be evidence that the individual against whom personal liability is sought to be imposed actively participated in the [wrongful] scheme, or was aware of its existence and did nothing about it."). Thus, the Court rejects the notion that state law regarding piercing the corporate veil applies here.

Kirkland undoubtedly had the authority to control Solar Titan's wrongful acts and they directly participated in the delay of cancellations and the timing of loan disbursements from Mosaic.

As for Atnip, although he is a majority owner of Solar Titan, he does not play a substantial management role in the company and has delegated operational authority to Kelley [*Id*. at pg. 13]. Nonetheless, he still retained authority to control the alleged violations by Solar Titan and knew or should have known of, at least, the misrepresentations regarding the government buyback programs. For example, Atnip responded to the Tennessee Division of Consumer Affairs via email on multiple occasions regarding the Greeneville, Tennessee consumer's complaint about the sales representative's misrepresentations that the consumer would be able to sell back their excess power to Greeneville Light and Power System [Doc. 67-8. Pg. 185].

In addition to the foregoing, Kelley and Atnip concede to knowledge of the non-disparagement provision in the Installment Agreement and Kirkland, at least, should have known of the inclusion of the provision. Thus, Plaintiffs are likely to succeed on the merits of their claims alleging personal liability for consumer protection violations against each of the Individual Defendants.

### B. Balance of the Equities and Public Interest

Turning to the remaining preliminary injunction factors—the balance of the equities and the public interest—the competing interests here are, on one hand, Plaintiffs' interests in protecting consumers of the State of Tennessee and the Commonwealth of Kentucky from unfair and deceptive trade practices and, on the other hand, Solar Titan and the Individual Defendants' interest in running their company and accessing their assets. While an injunction, including an asset freeze and a Receivership, may have adverse effects, Plaintiffs' interests in consumer protection and consumer redress heavily outweigh any interest Defendants have in continuing to use their

business to engage in unfair and deceptive practices and harm consumers. The public interest also supports the entry of a preliminary injunction. This case is not the normal civil litigation between two private parties. Rather, the Tennessee and Kentucky Attorneys General brought this action pursuant to the authority granted to them by Congress to enforce consumer protection laws. A preliminary injunction designed to prevent future harm to consumers and ensure availability of consumer redress certainly serves the public interest.

### C.      Asset Freeze

Based on the likelihood of success on the claims of individual liability for the various alleged consumer protection violations, the Court further finds it appropriate to continue the freeze of the Individual Defendants' assets. The Individual Defendants have financially benefitted from the alleged unfair and deceptive acts and practices. Thus, an asset freeze during the pendency of this action is reasonably necessary to preserve the possibility of meaningful consumer redress. *F.T.C v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996) (the "court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible.")

Due to Atnip and Kelley's failure to provide financial disclosures, however, the Court is unable to make a reasonable approximation of Atnip and Kelley's ill-gotten gains to narrow the scope of the asset freeze. Accordingly, following the proper disclosure of financial information, Atnip and Kelley may move to modify the asset freeze.

### IV.      CONCLUSION

Accordingly, for the reasons stated herein, the Temporary Restraining Order entered on February 7, 2023 and further extended on February 14, 2023, is hereby **CONVERTED** into a Preliminary Injunction. Based on the above-mentioned findings and pursuant to Fed.R.Civ.P. 65

and 66, this Court's equitable powers, Tenn. Code Ann. § 47-18-101, *et. seq*., and Ky. Rev. Stat. Ann. § 367.110, *et. seq*., it is hereby **ORDERED**:

## I. PROHIBITED BUSINESS ACTIVITIES

Solar Titan and the Individual Defendants ("Solar Titan Defendants") are hereby preliminarily enjoined from:

A. Making, or assisting the making of, expressly or by implication, any false or misleading statement or representation of material fact,[6] including, but not limited to:

    (1) that an installed solar system will eliminate a homeowner's electric utility bill or reduce the homeowner's electric utility bill by an amount that is not achievable based on the specifications of the installed solar system; and

    (2) that a consumer will benefit from net metering or a government buyback program by purchasing a solar system;

B. Refusing or failing to cancel a sales agreement when a consumer has exercised their right to cancel within the period of the consumer's statutory right of rescission as defined by applicable state and federal law;

C. Failing to conspicuously inform a consumer who purchases a solar system that they have the right to cancel the sales agreement at any time prior to midnight of the third business day after the date of the transaction;

D. Failing to disclose material facts about a consumer retail installment loan offered by Defendant Solar Mosaic, LLC d/b/a Mosaic or another lender for the purchase of a Solar Titan solar system;

---

[6] For purposes of this Order, "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

E. Asserting that the sales agreement provided to the consumer contains a legally enforceable term preventing the consumer from posting a negative review about Solar Titan online;

F. Refusing or failing to take reasonable and necessary steps to complete the installation of a solar system;

G. Entering into installation agreements without the intent or ability to provide the services described in the agreement in accordance with applicable laws, rules, regulations, codes, and industry standards;

H. Submitting a bill of lading or otherwise seeking loan disbursement, in whole or in part, before a consumer's statutory right to rescind has expired.

## II. ASSET FREEZE

**IT IS FURTHER ORDERED** that Solar Titan Defendants are preliminarily enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Asset, or any interest therein, wherever located, whether within the United States or within a jurisdiction outside the United States, that is:

(1) owned or controlled by any Solar Titan Defendant, in whole or in part;

(2) held for the benefit of any Solar Titan Defendant;

(3) in the actual or constructive possession of any Solar Titan Defendant;

(4) owned, controlled by, or in the actual or constructive possession of any Person directly or indirectly owned, managed, or controlled by any Solar Titan Defendant, including, but not limited to, any Assets held by or for, or subject to access by, any

Solar Titan Defendant at any bank or savings and loan institution, broker-dealer escrow agent, title company, commodity trading company, precious metals dealer, or other financial institution or depository of any kind;

B. Physically opening or causing to be opened any safe deposit boxes titled in the name of, or subject to access by, any Solar Titan Defendant;

C. Obtaining a personal or secured loan encumbering the Assets of any Solar Titan Defendant; and

D. Incurring liens or other encumbrances on any Assets titled in the name, singly or jointly, of any Solar Titan Defendants.

E. Except as set forth below in this Section, the Assets affected by this Section shall include:

(1) all Assets of Solar Titan Defendants as of the time of issuance of this Order; and

(2) Assets obtained after the time of issuance of this Order if the Assets are derived from the conduct alleged in the Plaintiffs' Complaint or conduct that is prohibited by this Order.

F. As further provided in the Agreed Order [Doc. 75], the Assets affected by this Section **shall not include** the following accounts:

(1) Defendant Kirkland's ORNL FCU Account ending in 8490

(2) Defendant Kirkland's US Bank Account ending in 9484

(3) Defendant Kirkland's First Horizon Bank Account ending in 7814

(4) Defendant Kirkland's US Bank Account ending in 4611.

**III. RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS**

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, or person served with a copy of this Order that holds, controls, or maintains custody of any account

23

or Asset of any Solar Titan Defendant shall:

A. Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, conversion, sale, or other disposal of any such Asset, except by further order of the Court;

B. Deny any person, except the Receiver[7] acting pursuant to Section X of this Order, access to any safe deposit box that is titled in the name of, individually or jointly, or otherwise subject to access by, any Solar Titan Defendant;

C. To the extent not already provided pursuant to the TRO, provide the Receiver, within five business days of receiving a copy of this Order, a sworn statement setting forth:

    (1) The identification number of each such account or Asset titled in the name, individually or jointly, of any Solar Titan Defendant, or held on behalf of, or for the benefit of any Solar Titan Defendant;

    (2) The balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is served, and if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

    (3) The identification of any safe deposit box that is titled in the name of, individually or jointly, or otherwise subject to access by, any Solar Titan Defendant;

D. Upon request of the Receiver, promptly provide copies of all records or other documentation pertaining to each such account or Asset, including, but not limited to,

---

[7] For purposes of this Order, "Receiver" means the temporary receiver appointed in Section IX of this Order and any deputy receivers that shall be named by the receiver

originals or copies of all account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## IV. PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that the Solar Titan Defendants and their Representatives[8] are preliminarily enjoined from:

A. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents[9] that relate to the business, business practices, Assets, or business or personal finances of any Solar Titan Defendant; and

B. Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect the Solar Titan Defendants' incomes, disbursements, transactions, and use of money.

## V. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that each Solar Titan Defendant, within 48 hours of service of this Order, who has not already done so, shall prepare and deliver to Plaintiffs' counsel and the Receiver completed financial statements on the forms attached to the TRO as Attachment A (Financial Statement of Individual Defendant) for each Individual Defendant, and Attachment B

---

[8]    For purposes of this Order, "Representatives" means Defendants' successors, assigns, officers, agents, servants, employees, or attorneys, and any person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

[9]    For purposes of this Order, the term "document" is equal in scope and synonymous in meaning to the usage of the term in Federal Rule of Civil Procedure 34, and includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form.

(Financial Statement of Corporate Defendant) for Ideal Horizon Benefits, LLC d/b/a Solar Titan USA, LLC, and Solar Titan Charters, LLC d/b/a Titan Charters.

The financial statements shall be accurate as of the date of entry of this Order. Each Defendant shall include in the financial statements a full accounting of all Assets, whether located inside or outside of the United States, that are: (a) titled in the name of such Defendant, jointly, severally, or individually; (b) held by any person or entity for the benefit of such Defendant; or (c) under the direct or indirect control of such Defendant.

## VI. CONSUMER CREDIT REPORT

**IT IS FURTHER ORDERED** that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(I), any consumer reporting agency may furnish a consumer credit report concerning any Defendant to Plaintiffs.

## VII. FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, to the extent the Solar Titan Defendants have not done so already, within five business days following entry of this Order, each Solar Titan Defendant shall:

A. Provide Plaintiffs and the Receiver with a full accounting of all funds, documents, and Assets outside of the United States, which are:

(1) titled in the name, individually or jointly, of any Solar Titan Defendant; or

(2) held by any person or entity for the benefit of any Solar Titan Defendant; or

(3) under the direct or indirect control, whether jointly or singly, of any Solar Titan Defendant;

B. Transfer to the territory of the United States and deliver to the Receiver all funds, documents, and Assets located in foreign countries which are:

(1) titled in the name, individually or jointly, of any Solar Titan Defendant; or

(2) held by any person or entity for the benefit of any Solar Titan Defendant; or

(3) under the direct or indirect control, whether jointly or singly, of any Solar Titan Defendant; and

C. Provide Plaintiffs access to all records of accounts or Assets of any Defendant held by financial institutions located outside the territory of the United States by signing the Consent to Release of Financial Records appended to this Order within Attachments A and B.

## VIII. INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that the Solar Titan Defendants and their Representatives are hereby preliminarily enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section VII of this Order, including but not limited to:

A. Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the rules of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to Section VII of this Order; and

B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all Assets have been fully repatriated pursuant to Section VII of this Order.

## IX. APPOINTMENT OF A TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Richard Ray shall continue as Receiver of Solar Titan with full powers of an equity receiver, except as otherwise specified in this Order. The Receiver shall be solely the agent of this Court, in acting as Receiver under this Order, and shall be accountable directly to this Court.

## X. RECEIVER'S DUTIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A.  Maintain full control of Solar Titan by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of Solar Titan, including any Solar Titan Defendant, from the control of, management of, or participation in, the affairs of Solar Titan;

B.  Maintain exclusive custody, control, and possession of all Assets and documents of, or in the possession, custody, or control of, Solar Titan, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all Assets and documents of Solar Titan and other persons whose interests are under the direction, possession, custody, or control of, Solar Titan. The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to Solar Titan. Provided, however, that the Receiver shall not, without prior Court approval, attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices or other violations of law alleged in the Complaint in this matter;

C.  Maintain exclusive custody, control, and possession of all Solar Titan Assets;

D. Take all steps necessary to secure each location from which Solar Titan operates its business. Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable:

    (1) serving this Order;

    (2) completing a written inventory of all Receivership Assets[10];

    (3) obtaining pertinent information from all employees and other agents of Solar Titan, including, but not limited to, the name, home address, Social Security Number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent;

    (4) photographing and videotaping any or all portions of the location;

    (5) securing the location by changing the locks and disconnecting any computer modems or other means of remote access to the computer or other records maintained at that location; and

    (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or Assets of Solar Titan. Law enforcement personnel, including, but not limited to, highway patrol, police, sheriffs, or U.S. Marshals may assist the Receiver in implementing these provisions in order to keep the peace and maintain security;

E. Conserve, hold, and manage all Assets of Solar Titan, and perform all acts necessary or

---

[10] For purposes of this Order, "Receivership Asset" means any Asset, as defined above, which the Receiver is entitled to control and/or monitor as part of the Receivership Estate.

advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of Solar Titan, including, but not limited to, obtaining an accounting of the Assets, and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

F. Obtain all of Solar Titan's computer hardware, software, and database information from any consultant or service provider, including, but not limited to, Solar Titan's user identification, passwords, software, and backup data files:

G. Enter into contracts and purchase insurance as advisable or necessary;

H. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with Solar Titan;

I. Manage and administer the business of Solar Titan until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes but is not limited to retaining, hiring, or dismissing any Solar Titan employees, independent contractors, or agents;

J. Choose, engage, and employ such attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K. Make payments and disbursements from the Receivership Estate[11] that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this

---

[11] For purposes of this Order, "Receivership Estate" means the totality of all money and property, real or otherwise, from the Receivership Defendant subject to the control and/or monitoring of the Receiver.

Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendant[12] prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

L.  Suspend business operations of Solar Titan if, in the judgment of the Receiver, such operations cannot be continued legally and sustainably;

M.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of Solar Titan, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

N.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against Solar Titan, as the Receiver deems necessary and advisable to preserve the Assets of Solar Titan, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

O.  Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership Estate;

P.  Open one or more bank accounts as designated depositories for funds of Solar Titan. The Receiver shall deposit all funds of Solar Titan in such a designated account and shall make all payments and disbursements from the Receivership Estate from such an account. The

---

[12]    For purposes of this Order, "Receivership Defendant" means Ideal Horizon Benefits d/b/a Solar Titan USA, LLC.

Receiver shall serve copies of monthly account statements on all parties;

Q. Maintain accurate records of all receipts and expenditures incurred as Receiver;

R. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S. Distribute funds, to the extent available, recovered from the Solar Titan Defendants, by:

(1) Distributing $3,500 per month to the Defendants Atnip and Kelley for the purpose of providing for reasonable housing and other living expenses, including the payment of any home mortgage, food, health insurance, recurring expenses or charges, or other reasonable living expenses;

(2) Distributing funds for the purpose of paying any non-residential mortgages.

T. Defendants Atnip and Kelley, with or without the agreement of Plaintiffs, may move to adjust the reasonable living expense amount stated above for good cause shown.

## XI. TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER

**IT IS FURTHER ORDERED** that the Solar Titan Defendants, their Representatives, and any other person or entity with possession, custody, or control of property of or records relating to the Receivership Defendants shall, upon notice of this Order, immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A. All Assets of, or traceable to, Solar Titan;

B. All documents of Solar Titan, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents, and other papers;

C. All computers and data in whatever form used to conduct the business of Solar Titan;

D. All Assets belonging to other persons or entities whose interests are under the direction, possession, custody, or control of Solar Titan; and

E. All keys, codes, and passwords necessary to gain or to secure access to any Assets or documents of Solar Titan, including but not limited to access to any Solar Titan business premises, means of communication, accounts, computer systems, or other property. In the event that any person or entity fails to deliver or transfer any Asset or otherwise fails to comply with any provision of this Section, the Receiver may file ex parte an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct any sheriff or deputy sheriff of any county, or any other law enforcement officer, to seize the Asset, document, or other item covered by this Section and to deliver it to the Receiver.

## XII. PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that the Solar Titan Defendants shall provide to the Receiver, immediately upon request, the following:

A. A list of all Assets and property, including accounts, in which Solar Titan holds a legal or equitable interest, that are held in any name other than the name of Solar Titan, or by any person or entity other than Solar Titan; and

B. A list of all agents, employees, officers, servants, or those persons in active concert and participation with the Solar Titan Defendants, who have been associated or done business with Solar Titan.

## XIII. COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that the Solar Titan Defendants, their Representatives, and all other persons or entities served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets of Solar Titan. This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, electronic file, or telephonic data in any medium; advising all persons who owe money to Solar Titan that all debts should be paid directly to the Receiver; transferring funds at the Receiver's direction; and producing records related to the Assets and sales of Solar Titan. The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, and other financial institutions and depositories of any kind, and all third-party billing agents, common carriers, and telecommunications companies that have transacted business with the Receivership Defendants.

## XIV. NON-INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that the Solar Titan Defendants and their Representatives are hereby preliminarily enjoined from directly or indirectly:

A.  Interfering with the Receiver managing, or taking custody, control, or possession of the Assets or documents subject to this Receivership;

B.  Transacting any of the business of Solar Titan except at the express direction of the Receiver;

C.  Transferring, receiving, altering, selling, encumbering, pledging, ass1gnmg, liquidating, or

otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, Solar Titan, or the Receiver; and

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XV. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during pendency of the Receivership ordered herein, the Solar Titan Defendants, their Representatives, and all investors, creditors, stockholders, lessors, customers, and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of the Solar Titan Defendants, and all others acting for or on behalf of such persons, are hereby enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or documents of Solar Titan, including, but not limited to:

A. Petitioning, or assisting in the filing of a petition that would cause Solar Titan to be placed in bankruptcy;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against Solar Titan, including the issuance or employment of process against Solar Titan, except that such actions may be commenced if necessary to toll any applicable statute of limitation;

C. Filing or enforcing any lien on any Asset of Solar Titan, taking, or attempting to take possession, custody, or control of any Asset of Solar Titan; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of Solar Titan, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; and

D. Initiating any other process or proceeding that would interfere with the Receiver managing

or taking custody, control, or possession of the Assets or documents subject to this receivership. Provided that this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XVI. COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Solar Titan. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVII. RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of **$25,000** with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs, pursuant to 28 U.S.C. § 754.

## XVIII. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiffs, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or document of any Defendant or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure. For purposes of this Section, service upon any branch, subsidiary, affiliate, or office of any entity shall effectuate service upon the entire entity.

## XIX. DEFENDANTS' DUTY TO DISTRIBUTE ORDER

**IT IS FURTHER ORDERED** that the Solar Titan Defendants shall immediately provide a copy of this Order to each of their affiliates, subsidiaries, divisions, sales entities, successors, assigns, officers, directors, employees, independent contractors, client companies, agents, attorneys, spouses and representatives, and shall, within ten days from the date of entry of this Order, provide Plaintiffs with a sworn statement that: (A) confirms that the Solar Titan Defendants have provided copies of the Order as required by this paragraph; and (B) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order. Furthermore, the Solar Titan Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities to disregard this Order or believe that they are not bound by its provisions.

## XX. CORRESPONDENCE AND SERVICE ON PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purposes of this Order, all correspondence and

service of pleadings on Plaintiffs shall be addressed to:

For Tennessee:

*Electronic Mail*
Samuel Keen at samuel.keen@ag.tn.gov
Alicia Daniels-Hill at alicia.daniels-hill@,ag.tn.gov

*Mail*
Office of the Tennessee Attorney General
ATTN: Consumer Protection Division
P.O. Box 20207
Nashville, Tennessee 37202

*Hand Delivery*
Office of the Tennessee Attorney General
Consumer Protection Division
315 Deaderick Street, 20th Floor
Nashville, Tennessee 37243

For Kentucky:

*Electronic Mail*
Paul Fata at paul.fata@ky.gov
Lyndsey Antos at lyndsey.antos@ky.gov

*Mail and Hand Delivery*
Office of the Kentucky Attorney General
ATTN: Office of Consumer Protection
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40222

## XXI. DURATION OF THIS ORDER

**IT IS FURTHER ORDERED** that this Order, including the provisions of the Asset Freeze

in Section II, will expire upon entry of a final judgment in this matter.

## XXII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter.

**SO ORDERED:**

_____
United States District Judge