UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL,<br><br>    Plaintiffs,<br><br>    v.<br><br>IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, et al.,<br><br>    Defendants. | 3:23-CV-00046-DCLC-JEM |

### DEFENDANTS MICHAEL ATNIP AND CRAIG KELLEY'S EMERGENCY MOTION TO MODIFY ORDER AND RELEASE ASSETS TO PAY LIVING AND LEGAL EXPENSES

Defendants Michael Atnip ("Atnip") and Craig Kelley ("Kelley", and together with Atnip, the "Individual Defendants"), pursuant to Federal Rule of Civil Procedure 65(c) and this Court's February 28, 2023, Memorandum Opinion and Order granting Plaintiff's request to freeze the Individual Defendant's assets (the "Preliminary Injunction Order"), respectfully request that this Honorable Court modify the Preliminary Injunction Order.

The Individual Defendants have conferred with the Plaintiffs in good faith, but the Plaintiffs have not approved the Individual Defendants request. During these negotiations, the Individual Defendants have not had access to any cash to pay living expenses, nor have the attorneys been paid for past due invoices, which has resulted in the need for this request for emergency relief. The Individual Defendants therefore respectfully request that this Honorable Court unfreeze the Individual Defendants' cash and liquid investments, specifically, approximately $377,000 in the

Individual Defendants' personal bank accounts listed in their financial disclosures and approximately $2,400,000[1] from their recently matured Certificates of Deposit (the "Cash Assets").

In the alternative, the Individual Defendants respectfully request that this Honorable Court release $375,000 for attorney fees from the Individual Defendants' checking accounts into the DarrowEverett, LLP IOLTA account which will then be distributed among the law firms representing the Individual Defendants. In addition to the attorney fee request, the Individual Defendants request an immediate release of $30,000 for February and March living expenses (none have been released since the start of this action despite the Order of this Court) and $15,000 a month thereafter. The funds for living expenses can be released from the Individual Defendants' checking accounts, which accrue rental revenue monthly. If the checking accounts are not sufficient for a payment, the Individual Defendants provide that these funds can come from the proceeds of the sale of Lot 2924 Pine Valley at Sandestin requested to be released in Motion to Modify the Preliminary Injunction Order [96], and if that Motion is denied, from the Individual Defendants' HELOC. In support of the Individual Defendants' request, the Individual Defendants provide as follows:

**LAW**

A district court may freeze an asset in which an "equitable interest is claimed." *See III Fin. Ltd. v. Aegis Consumer Funding Grp., Inc.*, 1999 U.S. Dist. LEXIS 10070, 1999 WL 461808, at *4 n.1 (S.D.N.Y. July 2, 1999); *JSC Foreign Econ. Ass'n Technostroyexpoert v. Int'l Dev. And Trade Servs., Inc.*, 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003); s*ee also Turnkey Offshore Project Servs., LLC v. JAB Energy Sols., LLC*, No. 21-672, 2021 U.S. Dist. LEXIS 149733, at *17 (E.D. La. Aug.

---

[1] The Individual Defendants filed a Motion to Modify the Preliminary Injunction Order [96] seeking the release of the funds in the matured Certificates of Deposits in order to close on purchase the investment property in Miramar Beach, FL.

10, 2021) (*citing Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (an injunction to freeze assets must be narrowly drawn to sequester only those funds subject to the equitable claim as necessary to satisfy the potential judgment). While a "court's general equitable power does not reach a defendant's assets unrelated to the underlying litigation or entail the power to freeze such assets so that they may be preserved to satisfy a potential money judgment … [i]f a plaintiff asserts a lien or equitable claim in the particular assets it seeks to freeze, rather than solely a claim for monetary damages, the court may enter a preliminary injunction freezing a defendant's assets pending judgment." *Turnkey Offshore*, 2021 U.S. Dist. LEXIS 149733, at *14-16. "The injunction must be drafted so as not to freeze assets not subject to equitable remedies." *Id*. at *17.

## ANALYSIS

The Individual Defendants are requesting this emergency asset release to pay their living expenses, investment property expenses, and legal fees. Initially, the Individual Defendants have provided the Plaintiffs complete and full financial disclosures. Review of the financial disclosures with the Receiver's Motion [91], which estimated damages of potentially more than $4,400,000, make evident that the Individual Defendants have substantial assets greater than the potential damages in this matter. Thus, the Individual Defendants respectfully request the release of the Individual Defendants' Cash Assets.

In the alternative, the Individual Defendants request an emergency release of $375,000 for attorney fees from the Individual Defendants' checking accounts and an immediate release of $30,000 for February and March living expenses (none have been released since the start of this action despite the Order of this Court) and $15,000 a month thereafter. The Individual Defendants provide that the monthly living expenses are reasonable, and the request is in line with what this Court and the Plaintiffs have previously found as reasonable.

I.   The Individual Defendants Have Provided the Required Financial Disclosure.

In the Preliminary Injunction Order, this Court noted the Individual Defendants may move to modify the asset freeze once they provided their financial disclosures. The Individual Defendants have complied with all of Plaintiffs' requests for financial information and additional requests as quickly and fully as possible. The Individual Defendants sent Plaintiffs their combined financial disclosures on February 13, 2023. On February 21, 2023, Plaintiffs emailed counsel for the Individual Defendants requesting the Individual Defendants prioritize sending: (i) their individual tax returns since 2019; (ii) all documentation showing the Individual Defendants' income from Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan") in 2022; and (iii) notarized Consent to Release Financial Records Forms. The Individual Defendants sent Plaintiffs their tax returns for 2109-2021 (their 2022 tax returns have not been filed) later that evening. On March 1, 2023, Plaintiffs requested *individually* executed and notarized financial disclosures and Consents to Release Financial Information, and other financial information. The Individual Defendants provided the Plaintiffs with separately executed and notarized documents and the other financial information requested the next day.[2]

II.   The Value of the Individual Defendants' Real Property is Sufficient to Secure the Potential Disgorgement Claims.

The Individual Defendants are only seeking to have their cash and cash investments released from the asset freeze so they may pay their living expenses, investment property expenses, and legal fees. At this time, the Individual Defendants are not seeking the release any of their real estate investments, which total approximately $8,000,000 and would be available if this Court finds the Individual Defendants liable for any customer claims against Solar Titan.

---

[2] The Individual Defendants' Sworn Financial disclosures are available to the Court for *in camera* review upon request.

Any suggestion by the Plaintiffs that the asset freeze in Preliminary Injunction Order is intended to secure statutory penalties, fees, or interest—which have not even been awarded—should be rejected out of hand. A district court may exercise its full range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award. *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Co.*, 51 F.3d 982, 987 (11th Cir. 1995) (a request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze).

The purpose of disgorgement is to deprive a person of "ill-gotten gains" and prevent unjust enrichment. *See SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("Disgorgement is remedial and not punitive. The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment."); *Hateley v. SEC*, 8 F.3d 653, 655 (9th Cir. 1993) (citing *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). Thus, the equitable remedy of disgorgement goes to preserve the status quo and only extends to the amount approximately equal to the unjust enrichment. *See e.g.*, *Hateley*, 8 F.3d at 656 ("once disgorgement is selected as the method of sanction, the amount must be reasonable, i.e. approximately equal to the unjust enrichment"); *SEC v. Washington County Utility Dist.*, 676 F.2d 218, 227 n.20 (6 Cir. 1982) (where defendant received one half of improperly obtained funds, disgorgement should be ordered in that amount). Accordingly, any argument advanced requesting that an asset freeze should include amounts in excess of the alleged ***actual*** damage—such as those proscribed by statute—would fly in the face of this Court's well-settled power to order disgorgement.

Moreover, an asset freeze may not be used to sequester alleged penalties. *SEC v. ETS Payphones. Inc.*, 408 F.3d 727, 734-35 (11th Cir. 2005). The scope of an asset freeze is required to give a "reasonable approximation of a defendant's ill-gotten gains. *Id*. Indeed, "any further sum would constitute a penalty assessment." *Id*. (emphasis added).

Here, the receiver currently estimates damages may exceed $4,400,000.[3] While that is an admittedly large number, it is speculative in nature and the value of the Individual Defendants' real estate investments is almost double that amount. Further, that amount fails to include their co-defendant's significant assets (one of which, Solar Mosaic, LLC ("Mosaic") is now represented by eight lawyers from three Am Law 200 law firms and hailing from seven different cities). Solar Titan also has claims *in the millions* against Generac for unpaid warranty work and other damages caused by a well-known product defect that Generac has acknowledged was responsible for the vast majority of the system issues in the customer complaints. *See* Exhibit A – Correspondence from Generac to Solar Titan's Customers. Finally, the Receiver's Motion to Transfer states that Solar Titan has approximately 150-200 pending installations. Most of these pending installations only need an inspection (or minor fixes to pass inspection) to be completed, at which point Solar Titan will be entitled to funding for each installation from Mosaic, which funds can then be used to compensate any Solar Titan customers that are entitled to relief. The Individual Defendants estimate the value of the pending installations exceed $6,000,000. All told, the assets available to satisfy any disgorgement claims far exceed the Receiver's estimate of potential customer claims. Accordingly, the Court should release its asset freeze over the Individual Defendants' liquid assets and rental income.

---

[3] The Receiver estimates Solar Titan's claims could exceed $6,500,000, of which $2,100,000 is for general unsecured creditors of Solar Titan.

III. <u>The Court Should Unfreeze Sufficient Assets to Allow the Individual Defendants to Pay Their Reasonable and Necessary Living Expenses, Maintain Their Tenant Occupied Rental Properties, Preserve the Value of Any Assets Subject to the Freeze, and Pay Their Defense Costs</u>.

As an initial matter, the Preliminary Injunction Order permits the Individual Defendants to access their assets to pay their living expenses. At issue is simply the amount the Individual Defendants should be afforded in order to (i) pay their living expenses; (ii) maintain and preserve the value of the assets subject to the asset freeze; and (iii) pay their legal expenses so they can adequately defend themselves in this action. After all, "this suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The basis of our adversary system is threatened when one party gains control of the other party's defense . . ." *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 565 (5th Cir. 1987). The Individual Defendants cannot defend themselves (or keep themselves out of bankruptcy) if they cannot pay their family's living expenses and legal counsel to defend them. Such a result would run contrary to the very core of our judicial system and risk a decision on much less than the actual merits of the case.

    A.    *The Individual Defendants Should be Allowed to Pay Their Reasonable and Necessary Living Expenses*.

"Just as this Court has the authority to freeze assets in a civil enforcement action, it also has the discretion to unfreeze those assets when equity requires." *FTC v. Federal Check Processing, Inc.*, 2016 WL 10988581, at *1 (W.D.N.Y. Mar. 7, 2016) (internal quotations omitted). The blanket asset freeze in the Preliminary Injunction Order has been in place for more than two months and has prevented the Individual Defendants from paying their reasonable and

necessary expenses. The Individual Defendants have a number of one-time, significant obligations that are past due, presently due, or that will be due in the very near future:[4]

| Nature of Expenses | Estimated Amount Owed |
|---|---|
| Preparation of 2022 tax returns | $7,000 |
| Federal tax liability | $1,900,000 |
| Repairs to investment properties | $11,270 |
| Balance of vehicle repairs | $2,184.11 |
| Child's school tuition and expenses | $8,533 |
| Balance of owed to United Midwest piano | $17,637.14 |

Furthermore, Defendants currently owe the following amounts on a monthly basis to cover their reasonable and necessary monthly living and business expenses and to protect the underlying assets in the event such assets are found necessary to satisfy a disgorgement order:

| Monthly Expenses | Estimated Amount |
|---|---|
| HELOC payments | $1,200 |
| Real estate taxes | $1,750 |
| Utilities | $800 |
| HOA fees | $1,500 |
| Vehicle loan/lease payments | $2,255 |
| Food/internet/phone/household expenses | $1,760 |
| Clothing | $300 |
| Transportation expenses | $600 |
| Medical expenses | $2,200 |
| Child's Tuition | $2,276 |
| **Total Monthly Expenses** | **$14,641** |

The Individual Defendants are in the process of obtaining employment in the near future. However, if they are not able to pay the monthly expenses relating to their living and investment property expenses, then the value of their investment properties will be unnecessarily diminished and unavailable to the extent the Court finds that disgorgement is warranted in this case. Further, the Individual Defendants will incur interest, penalties, and fees on their obligations to unrelated

---

[4] Excluding the obligations related to the real estate that is the subject of the Individual Defendants' Emergency Motion to Modify the Preliminary Injunction Order.

third parties, which are improperly punitive before there has been any finding of liability. Plaintiffs base the crux of their claims on making the consumers whole, yet such an objective will be thwarted should the Individual Defendants be precluded from preserving their assets due to a continued freeze on the entirety of the same.

Moreover, the Individual Defendants' request is in line with what the Court and Plaintiffs have previously found to be reasonable and necessary for the other individual defendant, defendant Kirkland. First, Individual Defendants never received the Court Ordered $7,000 ($3,500 each) that they were entitled to pursuant to Opinion and Order [21], at pg. 16. Second, the Court and the Plaintiffs found it reasonable for **one** individual defendant to have living expenses of $10,000 for the period of February 7, 2023 through March 7, 2023 in Order [63]. Third, the Court and the Plaintiffs found it reasonable for **one** individual defendant to have living expenses of $34,000 for a period of four months, or $8,500 per month, in Agreed Order [75]. Thus, considering **two** individual defendants are making this request, the request for a one-time release of $30,000 for expenses from February and March is in line with the previous Orders because they never received $7,000 from Opinion and Order [21] and the Court and Plaintiffs found $20,000 for **one** defendant reasonable during a similar time period in Order [63] and Agreed Order [75]. Further, the request of a monthly distribution of $15,000 for the Individual Defendants is in line with the $8,500 per month for **one** individual defendant in Agreed Order [75] because that amount was provided to one individual defendant and this request pertains to two individual defendants. Further, Individual Defendants have started looking for employment with their CDL licenses to reduce the need to distribute assets on a monthly basis.

B. The Individual Defendants Should Be Allowed to Retain Counsel of Their Choosing to Defend Them.

"The court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir.1987). In this case, all of the Individual Defendants' assets are frozen pursuant to the Preliminary Injunction Order, so they have no unrestrained assets to pay their legal fees and expenses. "Fundamental fairness requires" that the Individual Defendants "have access to restrained property if that is their only means of securing counsel." *See Payment Processing Ctr., LLC.*, 439 F. Supp. at 440. To be sure, preventing the Individual Defendants from obtaining legal counsel would taint any ultimate determination of their individual liability. Each of the Individual Defendants should be entitled to counsel of their choosing to advocate on their behalf to guarantee a full and fair proceeding on the question of their alleged underlying liability.

This Court has broad discretion to alter the Preliminary Injunction Order to allow the payment of attorney fees. *See, e.g., United States v. Acorn Technology Fund, L.P.,* 429 F.3d 438, 442 (3d Cir. 2005) ("We review for abuse of discretion the procedures the District Court chooses to follow in connection with the receivership proceedings, including decisions to grant, deny, or modify an injunction."); *United States v. Petters*, Civil No. 08-5348, 2009 WL 803482, *3-5 (D. Minn. Mar. 25, 2009) (noting the defendant has the benefit of the presumption of innocence[,]" and authorizing release of funds restrained under 18 U.S.C. § 1345 for payment of attorney's fees in excess of $500,000 and promising to authorize future fees where reasonable).

It is within the sound discretion of a district court to release frozen funds for the payment of attorneys' fees, and such should be done based on a presumption of the Individual Defendants' innocence. *See e.g.*, *Commodities Futures Trading Commission v. America Metals Exchange*

*Corp.*, 991 F.2d 71, 79 (3rd Cir. 1993); *United States v. Payment Processing Center, LLC*, 439 F. Supp. 2d 435, 440-441 (E.D. Pa. 2006).

WHEREFORE, the Individual Defendants respectfully request this Court enter an order:

(i) Modifying the Preliminary Injunction Order to unfreeze the Individual Defendants' cash and liquid investments; or, in the alternative,

(ii) Immediately releasing from the Individual Defendants' cash assets as follows: (a) $375,000 to be deposited in one of the Individual Defendants' counsel's IOLTA for the payment of their legal fees and expenses; and (ii) $30,000 directly to the Individual Defendants for their February and March living and investment property expenses, and an additional $15,000 per month thereafter; and

(iii) For such other and further relief as is just.

| WRIGHT, CORTESI & GILBREATH | DARROWEVERETT LLP |
|---|---|
| BY: /s/*Stephan R. Wright*<br>Stephan R. Wright (#031494)<br>2288 Gunbarrel Rd.<br>Ste. 154/Box 247<br>Chattanooga, TN 37421<br>Telephone: (423) 826-6919<br>Facsimile: (423) 826-6929<br>*swright@wcglegal.com*<br>*Attorneys for Craig Kelley* | BY: /s/ *James G. Atchison*<br>Samuel C. Blink (#036400)<br>James G. Atchison (admitted *pro hac vice*)<br>Fifth Third Center<br>424 Church Street, Suite 2000<br>Nashville, TN 37219<br>(615) 651-7386<br>*sblink@darroweverett.com*<br>*jatchison@darroweverett.com*<br>*Attorneys for Richard Michael Atnip*<br><br>BY: /s/ *William C. Killian*<br>William C. Killian (#002425)<br>801 Broad St., Suite 428<br>Chattanooga, TN 37402<br>(423) 265-8804<br>*billikillian@cawpllc.com*<br>*Attorneys for Richard Michael Atnip* |

## CERTIFICATE OF SERVICE

I do hereby certify that the forgoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 16th day of March, 2023.

BY: /s/ *James G. Atchison*