UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, *et al.*,<br><br>Defendants. | 3:23-CV-00046-DCLC-JEM |

## ORDER

This matter is before the Court on court-appointed receiver Richard F. Ray's ("the Reciever") Motion to Sell Property [Doc. 86], Motion to Transfer Frozen Assets of Defendants [Doc. 91], and Application for Interim Compensation and Expense Reimbursement [Doc. 99]. Plaintiffs State of Tennessee and Commonwealth of Kentucky by and through their respective Attorneys General (collectively, "Plaintiffs") filed a Memorandum in Support [Doc. 112] of the Receiver's Motion to Transfer Frozen Assets of Defendants. Defendants Sarah Kirkland, Richard Atnip, and Craig Kelley (collectively, "the Individual Defendants") responded in opposition [Docs. 111, 113, 130], and the Receiver filed a reply [Doc. 131]. No party has responded or otherwise expressed opposition to the Receiver's motions to sell property and for interim compensation and the time for doing so has expired.[1]

---

[1] "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2.

1

Plaintiffs initiated this civil enforcement action against Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan") and the Individual Defendants alleging violations of various federal and state consumer protection laws. On February 7, 2023, the Court issued a Temporary Restraining Order ("TRO") temporarily enjoining the Defendants' alleged unfair and deceptive acts and practices, freezing the assets of Solar Titan and the Individual Defendants, and appointing the Receiver as temporary receiver of Solar Titan [Doc. 21]. On February 28, 2023, the Court converted the TRO into a Preliminary Injunction and continued the receivership and asset freeze, with certain modifications to the freeze of Defendant Kirkland's assets [Doc. 78].

Pursuant to the Preliminary Injunction, which details the Receiver's duties and powers, the Receiver has assumed full control of Solar Titan and has taken possession of Solar Titan's assets. The Receiver now requests (1) permission to sell certain items from Solar Titan's call center location at 9111 Cross Park Drive in Knoxville, Tennessee; (2) an Order unfreezing and transferring $667,266.00 from the Individual Defendants' cash assets to the receivership bank account to fulfill certain contractual obligations and fund the monthly budget for Solar Titan's operations; and (3) interim compensation and expense reimbursement for services rendered from February 7, 2023 through February 28, 2023 [Doc. 99].

## I. Motion to Sell Property

As part of the Receiver's duties, the Court directed him to "[p]revent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with Solar Titan" and "[m]anage and administer the business of Solar Titan . . . by performing all incidental acts that [he] deems to be advisable or necessary" [Doc. 78, § X(H) and (I)]. In support of his request to sell the items located at the Cross Park Drive location, the Receiver asserts that "[s]elling the assets will permit [him] to abandon the call

2

Case 3:23-cv-00046-DCLC-JEM   Document 150   Filed 04/18/23   Page 2 of 6   PageID #: 5949

center space . . . to the landlord, reducing potential rent owed and lowering overhead expenses of the receivership." [Doc. 86, ¶ 6]. The Receiver has provided an enumerated list of the items he proposes to sell at an auction conducted by Furrow Auction, including a shredder, computers, monitors, cubicles, etc., and a description of the terms of that auction [*Id*. at ¶¶ 5, 7; Doc. 86-1]. Finding that, as the Receiver represents, this sale is in the best interests of the receivership estate and due to the lack of opposition by the parties, the Receiver's motion [Doc. 86] is well-taken and **GRANTED**.

II.    **Interim Compensation And Expense Reimbursement**

In imposing the receivership in this action, the Court held:

> [T]he Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Solar Titan.

[Doc. 78, § XVI]. The Court further directed the Receiver to file periodic requests for the payment of such reasonable compensation [*Id.*]. Pursuant to this provision, the Receiver requests interim compensation for time and out-of-pocket expenses in the amount of $12,186.57, attorney's fees in the amount of $12,693.75, and other professional fees and expenses totaling $9,117.30 [Doc. 99, ¶ 5]. Upon review of the documentation submitted in support of the Receiver's request, the Court finds that the compensation for the services performed is reasonable and the fees and expenses incurred were reasonably necessary for the Receiver to perform his duties and responsibilities under the receivership.[2] Accordingly, the Receiver's request [Doc. 99] is **GRANTED**.

---

[2]    Among the Receiver's court-ordered duties are the duty to "[c]hoose engage, and employ such attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by" the Court's Order [Doc. 78, § X(J)].

3

**III.  Motion to Transfer Frozen Assets of Defendants**

By way of background, the Receiver discovered that, prior to his appointment, Solar Titan had ceased sales of new contracts and was concentrating on finishing out warranty claims [Doc. 91, ¶ 5].  The Receiver also learned that Solar Titan was selling assets, had fallen behind on its financial obligations, and had entered into an agreement with a Texas-based solar company to take over certain Solar Titan's assets as part of a wind-up scheme [*Id*. at ¶ 6].  The final portion of that wind-up scheme, the Receiver asserts, was going to be a Chapter 7 bankruptcy filing, which Solar Titan was approximately two weeks away from filing [*Id*. at ¶ 8].

In carrying out his court-ordered duties, the Receiver has prepared a Monthly Operating Budget reflecting the need for $500,000 to continue Solar Titan's operations through June 30, 2023[3] and has earmarked certain contractual obligations totaling $167,226 for rent, utilities, insurance, and administrative costs [*Id*. at ¶¶ 11–14, 16].[4]  As of March 6, 2023, however, the receiver's checking account balance was only $126,808.52 [*Id*. at ¶ 4].  Thus, the Receiver requests that the funds necessary for satisfaction of the monthly budget and contractual obligations, totaling $667,226, be provided from the Individual Defendants' frozen assets—90% from Defendants Atnip and Kelly and 10% from Defendant Kirkland [*Id*. at ¶ 15].[5]

---

[3] These operations include the use of facilities to store assets such as inventory, vehicles, and records prior to the planned auction sales and the continued evaluation of consumer complaints [Doc. 91, ¶ 11].

[4] The Receiver represents that the auction sales of the items at the Cross Park Drive location should reduce the planned monthly budget by generating additional revenue and lowering overhead [Doc. 91, ¶ 11, n.3].

[5] This apportionment is based upon prior distributions to Defendants Atnip and Kirkland from Solar Titan.  Based upon a preliminary review of Solar Titan's financial records, the Receiver states that the Individual Defendants received approximately $16,244,301 in distributions over the life of the company, 90% of which was transferred to Defendant Atnip and 10% to Defendant Kirkland [Doc. 91-1, ¶ 6].

The Receiver bases this request on the Court's order that "[a]ll assets of, or traceable to, Solar Titan" are Receivership Property and are to be transferred to the Receiver [Doc. 78, § XI(A)] and the Court's finding that "[t]he Individual Defendants have financially benefitted from the alleged unfair and deceptive acts and practices" of Solar Titan, which supported the ruling that an asset freeze was "reasonably necessary to preserve the possibility of meaningful consumer redress." [Doc. 78, pg. 20]. Thus, the Receiver asserts "it is appropriate for $667,266 of the frozen assets be transferred to [his] control in order to establish and continue [his] operations" [Doc. 91, ¶ 18]. Plaintiffs express support for the Receiver's request, arguing that "the Individual Defendants' frozen assets are traceable to Solar Titan's unlawful conduct" and they "distributed approximately $3,000,000 to themselves in excess of Solar Titan's net income[,]" leaving "Solar Titan with scarce financial resources" and insufficient funds for the Receiver to operate the receivership estate and perform his court-appointed duties [Doc. 112, pg. 2].

The Individual Defendants vehemently oppose the Receiver's transfer request. Among other arguments, they each assert that the requested transfer of their assets would amount to a court-ordered forfeiture without due process, resulting in the imposition of prejudgment liability prior to any finding of fault or personal liability [Doc. 111, ¶ 6, Doc. 113, pg. 1]. The Court tends to agree. The finding that "Plaintiffs are likely to succeed on the merits of their claims alleging personal liability for consumer protection violations against each of the Individual Defendants" supports a *freeze* of the Individual Defendants' assets during the pendency of this action [Doc. 78, pg. 20]. The sole purpose of such preliminary relief is to preserve those assets in the event permanent relief is granted [*See Id.*] (citing *F.T.C v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996) (the "court may order preliminary relief, including an asset freeze, that may be needed to make permanent relief possible.")). Without a finding of liability on the merits, however, the

5

Court cannot take the Individual Defendants' assets and transfer them to the receivership estate for them to be dissipated. Accordingly, the Receiver's motion [Doc. 91] is **DENIED**.[6]

IV.    **Conclusion**

For the reasons provided herein, the Receiver's Motion to Transfer Frozen Assets of Defendants [Doc. 91] is **DENIED**, and the Motion to Sell Property [Doc. 86] and Application for Interim Compensation and Expense Reimbursement [Doc. 99] are **GRANTED**. Accordingly, it is hereby **ORDERED**:

1. the Receiver is authorized to sell the items listed in Exhibit A to the Motion to Sell Property [Doc. 86-1] pursuant to the terms of the proposed Personal Property Auction Agreement [Doc. 86-2];

2. the Receiver shall be entitled to interim compensation in the amount of $12,186.57 from receivership funds;

3. the Receiver is authorized to use receivership funds to pay reasonable and necessary attorney's fees in the amount of $12,693.75; and

4. the Receiver is authorized to use receivership funds to pay professional fees and expenses totaling $9,117.30.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

---

[6] On April 10, 2023, the Receiver requested a hearing on the Motion to Transfer Frozen Assets of Defendants [Doc. 91] pursuant to Local Rule 7.2 [Doc. 140]. The Court finds a hearing on the motion unnecessary. Therefore, the Receiver's request [Doc. 140] is **DENIED**.