UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* DANIEL CAMERON, ATTORNEY GENERAL, <br><br> Plaintiffs, <br><br> v. <br><br> IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, *et al.*, <br><br> Defendants. | 3:23-CV-00046-DCLC-JEM |

**ORDER**

This matter is before the Court on court-appointed receiver Richard F. Ray's ("the Reciever") Motion to Approve License Agreement with Salesforce, Inc. [Doc. 145], Motion to Sell Real Property [Doc. 146], and Application for Interim Compensation and Expense Reimbursement [Doc. 148, amended by Doc. 161]. No party has responded or otherwise expressed opposition to the Receiver's motions and the time for doing so has expired.[1]

Plaintiffs initiated this civil enforcement action against Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan") and its individual officers and member alleging violations of various federal and state consumer protection laws. On February 7, 2023, the Court issued a Temporary Restraining Order ("TRO"), which included an asset freeze and the appointment of the Receiver over Solar Titan [Doc. 21]. On February 28, 2023, the Court converted the TRO into a

---

[1] "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2.

1

Preliminary Injunction and continued the receivership [Doc. 78]. The Court later issued an Amended Preliminary Injunction [Doc. 159] to clarify certain aspects of the asset freeze.

Pursuant to the Preliminary Injunction, which details the Receiver's duties and powers, the Receiver has assumed full control of Solar Titan and has taken possession of Solar Titan's assets. The Receiver now requests (1) permission to enter into an agreement with SalesForce, Inc. for software access; (2) permission to sell a warehouse and storage facility owned by Solar Titan in Richmond, Kentucky ("the real property"); and (3) interim compensation and expense reimbursement for services rendered from March 1, 2023 through March 31, 2023. Each of the foregoing motions are examined in turn.

I.      Motion to Approve License Agreement

The Receiver states that Solar Titan used a software owned and licensed by SalesForce, Inc. to manage sales, installation, and warranty work and repairs [Doc. 145, ¶ 5]. He avers that the records contained in that software "encompass nearly all of the core business activities of Solar Titan" and, due to the size of the records, he is unable to print the records or place them into an alternative electronic format [Doc. 145-1, ¶ 5]. Thus, he requests permission to enter into a licensing agreement with SalesForce, Inc. to gain access to the records. In particular, he seeks to purchase "15 user seats" and "'view only' access for interested parties to this litigation" [*Id*. at ¶ 8]. With each license at a cost of $120 per month, the Receiver asserts the total amount due over the life of the contract will be $16,200.00, a sum which he believes he will have sufficient resources to cover following the sale of available assets [Doc. 145, ¶ 9].

The Court directed the receiver, in relevant part, to "[m]ake payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by [the Preliminary Injunction]" [Doc. 159, § X(K)]. The

2

Receiver contends the proposed licensing agreement and consequent access to the SalesForce software is essential to perform his court-ordered duties and to provide access to interested parties [Doc. 145, ¶ 11]. Based on the necessity of the records and the inability to obtain them in another format, the Receiver's motion [Doc. 145] is well-taken and **GRANTED**.

II. **Motion to Sell Real Property**

In addition to the aforementioned duties, the Court directed the Receiver to "[p]revent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with Solar Titan" and "[m]anage and administer the business of Solar Titan . . . by performing all incidental acts that [he] deems to be advisable or necessary" [Doc. 159, § X(H) and (I)]. Pursuant to these provisions, the Receiver seeks to sell the real property at 121 Industry Road in Richmond, Kentucky, a warehouse and storage facility owned by Solar Titan [Doc. 146, ¶ 4]. The Receiver has entered into a proposed purchase agreement with a sales price of $665,000.00 [Doc. 146-1].

Due to a lien on the property with an estimated payoff of $627,022.80 and real estate commission fees, the Receiver does not believe any money will flow into the Receivership Estate after the sale [Doc. 146, ¶ 7]. Nonetheless, he asserts that a sale of the real property will permit him to dispose of an Asset that has no value to the receivership and will prevent the accumulation of unpaid mortgage fees and other expenses [*Id*. at ¶ 8]. Finding that, as the Receiver represents, this sale is in the best interests of the Receivership Estate and due to the lack of opposition by the parties, the Receiver's motion [Doc. 146] is well-taken and **GRANTED**.

III. **Interim Compensation And Expense Reimbursement**

In imposing the receivership in this action, the Court held:

[T]he Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable

> compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, Solar Titan.

[Doc. 159, § XVI]. The Court further directed the Receiver to file periodic requests for the payment of such reasonable compensation [*Id.*]. Pursuant to this provision, the Receiver requests interim compensation for time and out-of-pocket expenses in the amount of $14,797.53, attorney's fees in the amount of $14,370.00, and other professional fees and expenses totaling $34,468.38 [Doc. 148, ¶ 5; Doc. 161, ¶ 5]. Upon review of the documentation submitted in support of the Receiver's request, the Court finds that the compensation for the services performed is reasonable and the fees and expenses incurred were reasonably necessary for the Receiver to perform his duties and responsibilities under the receivership.[2] Accordingly, the Receiver's request [Doc. 148] is **GRANTED**.

### IV. Conclusion

For the reasons provided herein, the Receiver's Motion to Approve License Agreement with Salesforce, Inc. [Doc. 145], Motion to Sell Real Property [Doc. 146], and Application for Interim Compensation and Expense Reimbursement [Doc. 148, amended by Doc. 161] are **GRANTED**. Accordingly, it is hereby **ORDERED**:

1. the Receiver is authorized to enter into the proposed license agreement with SalesForce, Inc., pursuant to the terms provided therein [Doc. 145-2];

---

[2] Among the Receiver's court-ordered duties are the duty to "[c]hoose engage, and employ such attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by" the Court's Order [Doc. 159, § X(J)].

2. the Receiver is authorized to sell the real property located at 121 Industry Road in Richmond, Kentucky pursuant to the terms of the proposed Offer and Agreement to Purchase Real Estate [Doc. 146-1];

3. the Receiver shall be entitled to interim compensation in the amount of $14,797.53 from receivership funds;

4. the Receiver is authorized to use receivership funds to pay reasonable and necessary attorney's fees in the amount of $14,370.00; and

5. the Receiver is authorized to use receivership funds to pay professional fees and expenses totaling $34,468.38.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge