# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

<table>
<tr><td>

**STATE OF TENNESSEE,**
*ex. rel.* **JONATHAN SKRMETTI,**
**ATTORNEY GENERAL and REPORTER**

*and*

**COMMONWEALTH OF KENTUCKY,** *ex.*
*rel.* **DANIEL CAMERON, ATTORNEY**
**GENERAL,**

      **Plaintiffs,**

**vs.**

**IDEAL HORIZON BENEFITS, LLC d/b/a**
**SOLAR TITAN USA,** *a Tennessee Limited*
*Liability Company*,

**CRAIG KELLEY, RICHARD ATNIP,** *and*
**SARAH KIRKLAND,** *individually and as*
*officers of Solar Titan USA,*

*and*

**SOLAR MOSAIC LLC d/b/a MOSAIC,** *a*
*California Limited Liability Company,*

      **Defendants.**

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

No. 3:23-cv-00046-DCLC-JEM

**Jury Demanded**

</td></tr>
</table>

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOLAR MOSAIC LLC'S RULE 12(B) MOTION TO DISMISS

# Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2
    A. Mosaic Is a Third-Party Lender. ................................................................ 2
    B. Mosaic's Non-Exclusive Relationship with Solar Titan Was Governed by the Dealer Agreement. .................................................................................. 5
    C. Plaintiffs Seek to Hold Mosaic—a Lender—Liable for Solar Titan's Conduct. ..................................................................................................... 6

III. LEGAL STANDARD ......................................................................................... 7

IV. ARGUMENT ..................................................................................................... 8
    A. The Commonwealth of Kentucky's Claims Fail for Lack of Personal Jurisdiction and Improper Venue (Counts 1–3, 5, and 7). ........................... 8
        1. The Court Lacks Personal Jurisdiction over Mosaic as It Relates to Kentucky's Claims .......................................................................... 8
        2. Under 12 U.S.C. § 5564(f) and 28 U.S.C. § 1391(b)(2), This District Is Not the Proper Venue for Any of Kentucky's Claims. ........... 10
        3. Kentucky's CFPA and KCPA Claims Cannot Be Brought in This Court. ............................................................................................. 11
            a. Under the CFPA, Kentucky Is the Only Proper Venue for the Kentucky Attorney General's CFPA Claim .......................... 12
            b. The KCPA Limits Venue to Kentucky State Court. .................... 13
    B. Plaintiffs Cannot Assert Claims on Behalf of Residents of Other States. ........... 14
    C. Plaintiffs Lack Standing to Hold Mosaic Derivatively Liable for Solar Titan's Alleged Conduct Under the Holder Rule (Counts 1, 4–7). ..................... 15
        1. The Holder Rule Does Not Permit State Attorneys General to Enforce Private Contract Rights. .................................................... 16
        2. *Parens Patriae* Powers Do Not Give the States the Power to Assert Private Contract Rights. ................................................................. 18
    D. Solar Titan Is Not Mosaic's Agent (Counts 1, 2, 4–7). ............................... 18
        1. Federal, Tennessee, and Kentucky Common Law Each Follow the Restatement (Third) of Agency. .................................................... 19
        2. Courts Have Nearly "Universally" Held That Lenders, Like Mosaic, Are Not Principals of Merchants, Like Solar Titan. ................. 19
        3. Solar Titan Is Not Mosaic's Agent as a Matter of Law. ................... 20
            a. Plaintiffs Fail to Allege Plausibly That Mosaic Controlled Solar Titan. ......................................................................... 20
            b. Mosaic Did Not Set Solar Titan in Motion. ............................. 22
            c. Both Parties Benefitted from the Commercial Relationship. ........ 23
            d. Compensation Weighs Against Agency. .................................. 23
        4. Plaintiffs Fail to Allege an Agency Relationship with Respect to Solar Titan's Marketing, Selling, or Installing of Solar Systems. ....... 24
        5. Plaintiffs Fail to Allege an Agency Relationship Under a Ratification Theory. ..................................................................... 25

a. Plaintiffs Premise Ratification upon Acts That May Not Be Ratified................................................................................ 25

b. Plaintiffs Fail to Allege Plausibly that Mosaic Ratified A Prior Act.......................................................................... 26

c. Plaintiffs Fail to Allege Plausibly that Mosaic Knowingly Accepted A Benefit from Solar Titan's Misconduct ................. 27

d. Extensions of Credit Do Not Amount to Ratification of a Seller's Actions.................................................................. 28

6. The Adverse Interest Exception Defeats the Purported Agency Relationship. .................................................................. 28

E. The Complaint Does Not State a Violation of TILA/ Regulation Z (Count 2). ......................................................................................... 29

1. TILA's Statute of Limitations Bars Pre-February 6, 2022, Claims. ........ 30

2. Mosaic Complied with TILA. ................................................... 31

3. Even If Solar Titan Interfered with Customers' Timely Receipt of Mosaic's TILA Disclosures, Damages Are Unavailable. ...................... 33

4. Plaintiffs' TILA Claim as It Relates to "Dealer Fees" Fails Because The Charges Were Correctly Handled under TILA/ Regulation Z ..................................................................... 34

F. The Complaint Does Not State a Violation of the CFPA (Count 1) ................... 37

1. CFPA Does Not Govern Solar Titan's Conduct as a Merchant of Nonfinancial Goods. ...................................................... 38

a. CFPA Expressly Excludes Merchants Like Solar Titan. ............. 39

b. Solar Titan Is Not a "Related Person," "Service Provider" or "Covered Entity." ........................................................... 39

2. The SAC Does Not Allege an Unfair Act or Practice by Mosaic. .......... 41

a. The SAC Fails to Allege Mosaic's Loan Products Caused or Were Likely to Cause Substantial Injury. ................................. 42

b. Mosaic's Loan Disclosures Were Not Inaccurate or Misleading................................................................... 42

c. Plaintiffs' Conclusory Allegations Do Not Support A Violation of the CFPA Based Upon Mosaic's Alleged Failure to Honor the Three-Day Right of Rescission. ................. 43

d. The Holder Rule Does Not Require Mosaic to Stop Collecting on Loans Whenever a Borrower Complains About a Product. ................................................................. 44

e. The Complaint Does Not Allege Proximate Cause. ................... 45

f. Plaintiffs Fail to Allege That Mosaic's Conduct Resulted in Unavoidable Consumer Harm .......................................... 45

3. Count 1 Fails to Allege Deceptive or Abusive Acts by Mosaic as a Lender. ................................................................... 47

a. Mosaic's Enforcement of Its Loan Agreements Is Not Deceptive or Abusive.................................................... 48

b. Mosaic Informing a Consumer via Portal/Tablet of the Total Repayment Obligation Is Not Abusive............................. 49

c. Offering a Loan Product to Consumers Is Not Abusive. ............ 50

d.  Plaintiffs' CFPA Claim Is Not Assisted By "Catch-All" Allegations. ...................................................................... 50

G.  The TCPA and KCPA Claims Fail as a Matter of Law (Counts 4–5). ................ 51

1.  The TCPA Does Not Apply to Lenders. ................................................. 51

2.  Alleged "Knowledge" Alone Is Insufficient to State a Claim. ............... 52

3.  Continued Collection After Consumer Complaints Regarding a Third Party Does Not Constitute Violations of the TCPA or KCPA. ............................................................................................... 53

4.  Mosaic Is Not Liable for Solar Titan's Alleged Misrepresentations. ...... 54

a.  Mosaic Adequately Disclosed Tax Credit Eligibility. ................. 55

b.  The Possibility of Delay & Timing of First Loan Payment Were Disclosed. ........................................................... 56

c.  Mosaic is Not Liable for Solar Titan's Representations. ............. 56

H.  The THSSA Claim Fails (Count 6). ............................................................ 57

1.  Mosaic Provided Notice of the Right to Cancel. .......................... 57

2.  Mosaic Is Not Liable Under the THSSA for Failure to Cancel Contracts. ...................................................................................... 59

3.  Tennessee's Attempt to Enforce the THSSA Is Not Feasible. ............... 59

I.  The KHSSA Claim Fails (Count 7). ................................................................ 60

V.  CONCLUSION ................................................................................................ 60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angiosystems, Inc. v. Worldwide Innovations & Technologies, Inc.*,
No.1:15-cv-78, 2016 WL 919001 (E.D. Tenn. March 4, 2016) ................................................7

*Avery Outdoors LLC v. Peak Rock Capital, LLC*,
No.16-cv-2229-SHL-TMP, 2017 WL 5186246 (W.D. Tenn. Jan. 23, 2017) ........................52

*Avery v. Holland*,
2 Tenn. 71 (Tenn. Super. Ct. L. & Eq. 1806) ..........................................................................10

*Baker v. American Express Travel Related Servs. Co., Inc.*,
No.CIV.A. 02–26–JBC, 2002 WL 1205065 (W.D. Ky. May 28, 2002) ................................16

*Baker v. Sunny Chevrolet, Inc.*,
349 F.3d 862 (6th Cir. 2003) .............................................................................................34, 35

*BancInsure, Inc. v. U.K. Bancorporation, Inc.*
830 F. Supp. 2d 294 (E.D. Ky. 2011) ................................................................................29, 30

*Beasley v. Metro. Life Ins. Co.*,
229 S.W.2d 146 (Tenn. 1950) .................................................................................................47

*Begala v. PNC Bank, Ohio, Nat. Ass'n*,
163 F.3d 948 (6th Cir. 1998) ...................................................................................................32

*Black v. Sunpath, Ltd.*,
No.3:21-CV-00023, 2022 WL 4241270 (M.D. Tenn. Sept.. 14, 2022) ...................................28

*Bowman v. United States*,
304 F. App'x 371 (6th Cir. 2008) ..............................................................................................8

*Branstetter v. Holland Am. Line N.V.*,
430 F. Supp. 3d 364 (W.D. Tenn. 2019) ...................................................................................9

*Bridgeport Music, Inc. v. Agarita Music, Inc.*,
182 F. Supp. 2d 653 (M.D. Tenn. 2002) ...................................................................................9

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017) ...................................................................................................................9

*Canaday v. Anthem Companies, Inc.*,
9 F.4th 392 (6th Cir. 2021) .........................................................................................7, 8, 9, 10

*CFPB v. Citizens Bank, N.A.*,
 504 F. Supp.3d 39 (D.R.I. 2020)........................................................................11

*CFPB v. Intercept Corp.*,
 3:16-cv-144, 2017 WL 3774379 (D.N.D. Mar. 17, 2017).................................41, 48

*CFPB v. ITT Educ. Servs., Inc.*,
 219 F. Supp. 3d 878 (S.D. Ind. 2015) .............................................................42, 45

*CFPB v. NDG Fin. Corp.*,
 15-cv-5211 (CM), 2016 WL 7188792 (S.D.N.Y. Dec. 2, 2016) .............................8

*Chambers of Commerce of the U.S. of Am. v. CFPB*,
 No.6:22-cv-00381, 2023 WL 5835951 (E.D. Tex. Sept. 8, 2023).........................42

*Chapman v. Tristar Prods., Inc.*,
 940 F.3d 299 (6th Cir. 2019) ...........................................................................18

*Chrysler Credit Corp. v. Barnes*,
 126 Ga. App. 444 (1972) .................................................................................20

*Clark v. Brewer*,
 329 S.W.2d 384 (Ky. 1959) ..............................................................................47

*Commonwealth ex rel. Conway v. Thompson*,
 300 S.W.3d 152 (Ky. 2009)...............................................................................15

*Consumer Financial Protection Bureau v. Gordon*,
 819 F.3d 1179 (9th Cir. 2016) ..........................................................................11

*Cont'l Leasing Corp. of Memphis v. Econ. Leasing Co.*,
 564 S.W.2d 956 (Tenn. Ct. App. 1977) .............................................................10

*Cortez Byrd Chips v. Bill Harbert Constr. Co.*,
 529 U.S. 193 (2000)....................................................................................13, 14

*DaimlerChrysler Motors Co. v. Clemente*,
 294 Ga. App. 38 (2008) ..................................................................................23

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ......................................................................42, 46

*In re Dish Network*,
 28 F.C.C. Rcd. 6574 (2013)..............................................................................28

*Downs v. Ky. Lottery Corp.*,
 No.2011-CA-001074-MR, 2012 WL 4839541 (Ky. Ct. App. Oct. 12, 2012).................53, 54

v

*Dyersburg Fam. Walk-In Clinic, Inc. v. Tenn. Dept. of Fin. and Admin.*,
    No.1:20-CV-1280-STA-JAY, 2021 WL 1566083 (W.D. Tenn. April 21, 2021)....................11

*In re Ellis*,
    152 B.R. 211 (Bankr. E.D. Tenn. 1993) ..........................................................................24

*Ernst & Young, LLP v. Clark*,
    323 S.W.3d 682 (Ky. 2010) ...........................................................................................20

*Fisher v. Chase Home Finance, LLC*,
    No.3:11CV202-HEH, 2011 WL 2268474 (E.D.Va. June 7, 2011) ................................43

*Flodman v. Robinson*,
    864 N.W.2d 716 (Neb. Ct. App. 2015)...........................................................................58

*Forsyth v. Bank of Am., N.A.*,
    No.2:11-CV-191, 2013 WL 5203435 (E.D. Tenn. Sept. 16, 2013)...............................25

*FTC v. IFC Credit Corp.*,
    543 F. Supp. 2d 925 (N.D. Ill. 2008) .............................................................................18

*FTC v. Med. Billers Network, Inc.*,
    543 F. Supp. 2d 283 (S.D.N.Y. 2008)............................................................................48

*FTC v. Neovi, Inc.*,
    605 F.3d 1150 (9th Cir. 2010) .......................................................................................47

*General Med., P.C. v. Azar*,
    963 F.3d 516 (6th Cir. 2020) .........................................................................................11

*Gone to the Beach, LLC v. Choicepoint Services, Inc.*,
    434 F. Supp. 2d 534 (W.D. Tenn. 2006)..........................................................................7

*Harben v. Hutton*,
    739 S.W.2d 602 (Tenn. Ct. App. 1997) .........................................................................21

*Hathaway v. Eckerle*,
    336 S.W.3d 83 (Ky. 2011)..............................................................................................47

*Honeycutt v. First Fed. Bank*,
    278 F. Supp. 2d 893 (W.D. Tenn. 2003).........................................................................55

*Ill. Cent R. v. Fontaine*,
    289 S.W. 263 (Ky. 1926) ...............................................................................................29

*Imhoff Invest., L.L.C. v. Alfoccino, Inc.*,
    792 F.3d 627 (6th Cir. 2015) .........................................................................................20

*Keating v. Peterson's Nelnet, LLC,*
  615 Fed. App'x 365 (6th Cir. 2015) ...................................................21

*Khadher v. PNC Bank, N.A.,*
  577 Fed. App'x 470 (6th Cir. 2014) ...................................................31

*Kimbrel v. Mercedes-Benz Credit Corp.,*
  476 So. 2d 94 (Ala. 1985) ...............................................................29

*Landmark of Iroquois Park Rehab. & Nursing Ctr., LLC v. Gill,*
  No.2020-CA-1362-MR, 2022 WL 2182676 (Ky. Ct. App. June 17, 2022) ...........................18

*Laymance v. Vaughn,*
  857 S.W.2d 36 (Tenn. Ct. App. 1992) .................................................60

*League of United Latin American Citizens v. Bredesen,*
  500 F.3d 523 (6th Cir. 2007) .............................................................8

*Levy-Tatum v. Navient & Sallie Mae Bank,*
  No.CV 15-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016) ....................................33

*Lojewski v. Grp. Solar USA, LLC,*
  No.22 CIV. 10816 (PAE), 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023) ......................33, 50

*Mardis v. Ford Motor Credit Co.,*
  642 So. 2d 701 (Ala. 1994) .........................................................23, 25

*Marr v. Rife,*
  503 F.2d 735 (6th Cir. 1974) ...........................................................20

*In re McKenzie Fin. Ctr., LLC,*
  495 F. App'x 627 (6th Cir. 2012) ......................................................44

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.,*
  45 S.W.3d 588 (Tenn. Ct. App. 2001) ..............................................52, 53

*Middleton v. T-Mobile US, Inc.,*
  No.20CV3276NGGJRC, 2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022) .........................33

*Miller Indus. Towing Equip. Inc. v. NRC Indus.,*
  No.1:19-cv-00095, 2020 WL 1897171 (E.D. Tenn. April 16, 2020) ..........................7

*Moody Realty Co., Inc. v. Huestis,*
  237 S.W.3d 666 (Tenn. Ct. App. 2007) ................................................51

*Morales v. Walker Motors Sales, Inc.,*
  162 F. Supp. 2d 786 (S.D. Ohio 2000) ................................................16

*Nave v. Life Bank*,
    334 B.R. 586 (M.D. Tenn. 2005) ................................................................. *passim*

*One Media IP Ltd. v. S.A.A.R. SrL*,
    122 F. Supp. 3d 705 (M.D. Tenn. 2015) ..................................................... 7

*Orkin Exterminating Co., Inc. v. FTC*,
    849 F.2d 1354 (11th Cir. 1988) ................................................................. 46

*Orlowski v. Bates*,
    No.2:11-CV-01396-JPM, 2015 WL 1485980 (W.D. Tenn. Mar. 31, 2015) .......................... 39

*Papa John's Int'l, Inc. v. McCoy*,
    244 S.W.3d 44 (Ky. 2008) ......................................................................... 28

*Penn. by Shapiro v. Mariner Fin., LLC*,
    No.2:22-cv-03253, 2024 WL 169654 (E.D. Pa. Jan. 12, 2024) .................................. 12, 13, 14

*People of State of N.Y. by Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987) .................................................................... 19

*Pescia v. Auburn Ford-Lincoln Mercury, Inc.*,
    68 F. Supp. 2d 1269 (M.D. Ala. 1999) ........................................................... 22, 25

*Pope v. World Omni Fin. Corp.*,
    599 So. 2d 15 (Ala. 1992) ....................................................................... 20

*Powell v. GMAC Mortgage*,
    No.3:10-CV-87, 2010 WL 2133943 (E.D. Tenn. May 24, 2010) ...................................... 51

*Pritchard v. Thompson*,
    No.22-cv-2838, 2023 WL 5817658 (W.D. Ten. Aug. 3, 2023) ....................................... 8

*Pruitt v. Gee*,
    No.2:12-cv-242, 2013 WL 1337345 (E.D. Tenn. April 1, 2013) .................................... 8

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976) ............................................................................. 12, 13

*SecurAmerica Bus. Credit v. Southland Transp. Co., LLC*,
    No.W2015-00391-COA-R3-CV, 2016 WL 1292087 (Tenn. Ct. App. Apr. 1, 2016) ............ 52

*SFDG LLC v. Cincinnati Insurance Co.*,
    558 F. Supp.3d 590 (E.D. Tenn. 2021) ........................................................... 8

*Signature Designs Grp., LLC v. Ramko*,
    No.M2011-01086-COA-R3-CV, 2012 WL 2519037 (Tenn. Ct. App. June 29, 2012) ........... 55

*Smith v. Dearborn Fin. Servs., Inc.*,
 982 F.2d 976 (6th Cir. 1993) ...................................................16

*Sodexho Mgmt., Inc. v. Johnson*,
 174 S.W.3d 174 (Tenn. Ct. App. 2004) ..........................................22, 23

*Sparks v. Fifth Third Mortg. Co.*,
 No.CV 5:17-450-KKC, 2018 WL 6424699 (E.D. Ky. Dec. 6, 2018) ...................25

*State v. Heath*,
 806 S.W.2d 535 (Tenn. Ct. App. 1990) ..........................................15

*Suzich v. Booker*,
 No.W2011-02583-COA-R3CV, 2012 WL 3055991
 (Tenn. Ct. App. July 27, 2012) ................................................25, 44

*Taylor v. First Sec. Tr. Bank, Inc.*,
 No.2006-CA-001508-MR, 2008 WL 4267847 (Ky. Ct. App. Sept. 19, 2008) .........26, 44

*Tenn. Trailways, Inc. v. Ervin*,
 222 Tenn. 523 (1969) .........................................................46

*Teno v. Iwanski*,
 464 F. Supp. 3d 924 (E.D. Tenn. 2020) .........................................20

*Theunissen v. Matthews*,
 935 F.2d 1454 (6th Cir. 1991) .................................................7

*Thompson v. HSBC Bank USA, N.A.*,
 850 F. Supp. 2d 269 (D.D.C. 2012) .............................................32

*U.S. Bank N.A. v. Detz*,
 75 Pa. D. & C.4th 535 (Pa. C.P. Ct. Lancaster Cnty. 2005) .....................54, 55

*Union Planters Bank, N.A. v. EMC Mortg. Corp.*,
 67 F. Supp. 2d 915 (W.D. Tenn. 1999) ..........................................12

*United Food & Com. Workers Unions, Emp'rs Health & Welfare Fund v. Philip*
 *Morris, Inc.*,
 223 F.3d 1271 (11th Cir. 2000) ...............................................46

*United States v. Edington*,
 992 F.3d 554 (6th Cir. 2021) ..................................................12, 14

*Upton v. Tribilcock*,
 91 U.S. 45 (1875) ............................................................47

ix

*In re Vioxx Prods. Liab. Litig.*,
  843 F. Supp. 2d 654 (E.D. La. 2012) ...................................................................14

*Wachtel v. West*,
  476 F.2d 1062 (6th Cir.1973) ..............................................................................31

*Warford v. Memphis City Emps. Credit Union*,
  No.2:19-CV-02403-JPM-CGC, 2020 WL 4819952 (W.D. Tenn. Aug. 19, 2020) ................31

*Watson v. Auto-Owners Ins. Co.*,
  599 So. 2d 1133 (Ala. 1992) .................................................................................28

*Wells v. Craig & Landreth Cars, Inc., et al*,
  No.3:10-CV-00376, 2011 WL 1542121 (W.D. Ky. Apr. 22, 2011)...............................20, 21

*Wike v. Vertrue, Inc.*,
  566 F.3d 590 (6th Cir. 2009) ................................................................................31

**Statutes**

12 U.S.C. § 5481 ............................................................................39, 40, 41, 51

12 U.S.C. § 5511 ......................................................................................38

12 U.S.C. § 5517 ..................................................................................38, 40

12 U.S.C. § 5531 ............................................................................39, 42, 46, 49

12 U.S.C. § 5536 ..................................................................................41, 46

12 U.S.C. § 5552 ............................................................................11, 12, 13, 15

12 U.S.C. § 5564 ..................................................................................10, 11

15 U.S.C. § 45 ........................................................................................42

15 U.S.C. § 1601 ......................................................................................35

15 U.S.C. § 1638 ................................................................................. *passim*

15 U.S.C. § 1640 ............................................................................31, 34, 35

15 U.S.C. § 1681 ......................................................................................16

15 U.S.C. § 7001 ......................................................................................32

28 U.S.C. § 1391 ..................................................................................10, 11

Fair Housing Act ......................................................................................20

Kentucky Consumer Protection Act ........................................................ *passim*

Kentucky Home Solicitation Sales Act..................................................... *passim*

Ky. Rev. Stat. § 15.020 ..................................................................15

Ky. Rev. Stat. § 367.110 ..............................................................15, 54

Ky. Rev. Stat. § 367.170 ..............................................................14, 52

Ky. Rev. Stat. § 367.190 ..........................................................12, 13, 14

Ky. Rev. Stat. § 367.410 ..............................................................15, 61

Tenn. Code § 8-6-109 ....................................................................15

Tenn. Code § 47-18-103 ..................................................................54

Tenn. Code § 47-18-104 ..................................................15, 51, 52, 53

Tenn. Code § 47-18-701 ..............................................................15, 58

Tenn. Code § 47-18-702 ..................................................................60

Tenn. Code § 47-18-703 ..................................................................58

Tenn. Code § 47-18-704 ..................................................................58

Tenn. Code § 47-18-705 ..................................................................60

Tenn. Code § 47-18-706 ..................................................................60

Tennessee Consumer Protection Act ...................................................... *passim*

Tennessee Home Solicitation Sales Act .................................................. *passim*

Truth in Lending Act ..................................................................... *passim*

**Other Authorities**

12 C.F.R. § 1026.4(c)(5)..............................................................35, 36

12 C.F.R. § 1026.17..................................................................32, 33

12 C.F.R. § 1026.18......................................................................37

12 C.F.R. § 1026.23......................................................................35

16 C.F.R. pt. 433 ......................................................................2, 16

16 C.F.R. § 429.1 ................................................................................................58, 59

16 C.F.R. § 433.1 ........................................................................................................17

Fed. R. Civ. P. 12(b) ...............................................................................................7, 8

FTC, *Staff Note Regarding the Holder Rule and Large Transactions* (Apr. 14, 2021) ...........................................................................................................................18

*FTC Staff Issues Note on Holder Rule and Large Transactions*, 2021 WL 1399791 (2021) ..........................................................................................18

Ky. Att'y Gen. Op. 74-729 (1974) .............................................................................61

Ky. Att'y Gen. Op. 92-41 (1992) ...............................................................................61

Restatement (Third) of Agency § 1.01 ...........................................................20, 21, 22

Restatement (Third) of Agency § 4.01 ...............................................................27, 28

Restatement (Third) of Agency § 5.04 .......................................................................29

Solar Mosaic LLC ("Mosaic") through its counsel, and pursuant to Rule 12(b)(2), (3), and (6), submits this Memorandum in Support of its Motion to Dismiss ("Motion") the Second Amended Civil Enforcement Complaint ("SAC") filed by the State of Tennessee *ex rel.* Jonathan Skrmetti ("Tennessee") and the Commonwealth of Kentucky *ex rel.* Daniel Cameron ("Kentucky") (together "Plaintiffs"). As explained below, the SAC allegations added in response to Mosaic's first Motion to Dismiss do not save its deficient claims, and the SAC should be dismissed.

## I.    <u>INTRODUCTION</u>

This lawsuit arises from the allegedly unlawful conduct of Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan") in the sale and installation of residential solar energy systems. Plaintiffs attempt to hold Mosaic, a financial services company, liable for Solar Titan's conduct under novel legal theories that fail to withstand scrutiny.

Plaintiffs' claims also fail to the extent that they are based on allegations against Mosaic as lender. Mosaic complied with its legal obligations as a lender, and the SAC's fact allegations do not support a finding of liability to either Tennessee or Kentucky. Specifically, Plaintiffs' claims fail because:

- Counts 1–3, 5, and 7 fail because this Court is not the proper venue for Kentucky's claims, and the Court lacks personal jurisdiction over Mosaic as to those claims, *see infra* Section IV.A;

- Plaintiffs do not have extraterritorial authority to enforce Tennessee and Kentucky law as to conduct occurring in other states and, in any event, such claims are insufficiently pled, *see infra* Section IV.B;

- The Holder Rule does not permit Plaintiffs to step into the shoes of borrowers to enforce private contract rights against Mosaic for Solar Titan's alleged misconduct, *see infra* Section IV.C;

1

- Solar Titan was not Mosaic's agent, and Mosaic did not "ratify" Solar Titan's conduct, *see infra* Section IV.D;

- Plaintiffs concede, and the documents verify, that Mosaic complied with the Truth in Lending Act ("TILA"), *see infra* Section IV.E;

- Mosaic did not violate the Consumer Financial Protection Act ("CFPA") and the CFPA does not regulate Solar Titan, *see infra* Section IV.F;

- Counts 4 and 5 under the Tennessee and Kentucky Consumer Protection Acts ("TCPA" and "KCPA," respectively) fail for multiple reasons—primarily because the TCPA does not apply to lenders, and the conduct alleged is insufficient to establish a violation of either Act, *see infra* Section IV.G;

- Counts 6 and 7 under the Tennessee Home Solicitation Sales Act ("THSSA") and Kentucky Home Solicitation Sales Act ("KHSSA") fail because Mosaic provided notice of the right to cancel, and because Mosaic is not a "seller" under the THSSA, *see infra* Sections IV.H, IV.I.

## II.     BACKGROUND

### A.     Mosaic Is a Third-Party Lender.

Mosaic's lending platform allows homeowners to finance the purchase and installation of home improvements, including solar energy systems. If a homeowner wants to apply for financing, merchants like Solar Titan can provide them access to an application for a Mosaic loan.

After a particular homeowner applied for credit and was prequalified, Mosaic emailed its Loan Agreement to the homeowner to be signed, along with all legally required disclosures and authorizations. Plaintiffs admit that among these documents is the TILA disclosure required by 15 U.S.C. § 1638(a)(1)-(9). SAC ¶ 161. The Loan Agreement provided notice of a right to cancel the transaction, Ex.1 at 5–6, 17, as well as a notice required by the FTC Holder Rule, 16 C.F.R. pt. 433, that the holder of the loan is subject to all claims and defenses which the borrower could assert against the seller of the goods obtained with the loan provided that any recovery by the borrower cannot exceed the amounts the borrower paid under the loan, *id.* at 12.

The disclosures in the Loan Agreement also included:

- **The required TILA disclosures**. Mosaic disclosed all the statutorily-required information in its TILA disclosures, including the annual percentage rate, finance charge, amount financed, the total amount that the borrower will pay after making all scheduled payments, and when those payments are due. Ex.2; *see* 15 U.S.C. § 1638(a)(1)-(9)(itemizing required disclosures).



**FEDERAL TRUTH IN LENDING ACT ("TILA") DISCLOSURES**

| ANNUAL PERCENTAGE RATE ("APR") (e) | FINANCE CHARGE (e) | Amount Financed (e) | Total of Payments (e) |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all scheduled payments |
| 5.99% (e) | $12,058.06 (e) | $29,250.00 (e) | $41,308.06 (e) |

Variable Rate: The annual percentage rate ('APR') will increase by 0.25% on the first calendar day of the next billing period if you terminate automatic recurring monthly ACH payments or we terminate such ACH payments because you are not current on your payments or we are unable to process your ACH payment. Any increase will take the form of higher payment amounts. For example, if you have a 12 year loan of $29,250.00 at a 5.99% APR with automatic recurring monthly ACH payments of $290.91, and you begin making payments by check on the First Payment Date, your APR would increase to 6.24% and your monthly payments would increase by $3.94 to $294.85.

Payment Schedule (e): You must make ___141 (e)__ monthly payments of __$290.91 (e)__ and then one final payment of __$289.75 (e)__. We estimate that your first payment will be due on __06/19/2020 (e)__ and the final payment will be due on __03/19/2032 (e)__ (the "maturity date").

Ex.2 at 154, ECF No.67-8. [1]

- **When the first payment is due**. In two separate places, Mosaic disclosed that the first payment is due either fifteen days after the installer obtains permission to operate the solar equipment from the homeowner's local power company, or three months after the "Loan Start Date," *i.e.*, the date Mosaic first disburses loan funds to the borrower, whichever is earlier. Ex.1 at 4, 7 (§ 3.a), ECF No.11-1 (Loan Agreement); Ex.2 at 155, ECF No.67-8 (TILA Disclosure). Mosaic also told borrowers that their "Loan Start Date" was an estimate and subject to change. Ex.1 at 4.

The estimated First Payment Date assumes you will begin making payments 3 months after the Loan Start Date. You may actually begin making payments on the earlier of 3 months after the Loan Start Date or 15 days after Mosaic confirms Permission to Operate from your utility company. Interest on this loan begins to accrue from the first disbursement and is calculated on the outstanding principal balance, as described in Section 3(c). You can begin making payments at any time you choose after the Loan Start Date.

---

[1]   For ease of reference, Mosaic is attaching the ECF filings cited herein, and will refer to them as "Ex.__ at __." Citations to Exhibits previously filed with this Court will be to numbered paragraphs or sections in the document where available, or to the ECF page number appearing on the document when a paragraph or section cite is not available.

3

*Id.*

3. **INTEREST AND PAYMENTS.**
a. Payment Timing. The first payment on the Loan is due and payable on the First Payment Date (estimated on the Summary Page and finalized on the Loan Closing Certificate). To the extent permitted by applicable law, such date will be the earlier of: (i) fifteen (15) days after permission to operate your Solar Equipment ("Permission to Operate") is confirmed; or (ii) 3 months after the date we first send funds to your Installation Contractor ("Loan Start Date"), which occurs after the Installation Contractor achieves the first milestone on the "Loan Disbursement Schedule" described on the Summary Page. If the Loan Start Date is on the 29th, 30th or 31st of the month, the first payment will be due on the 1st of the following month. If Permission To Operate is reached early enough to cause an adjustment to First Payment Date, but Permission To Operate plus 15 days will be on the 29th, 30th or 31st of the month, the first payment will be due on the 1st of the following month. All subsequent payments will be due on the 1st of each month.

*Id.* at 7.

Payment Schedule (e): You must make 141 (e) monthly payments of $290.91 (e) and then one final payment of $289.75 (e). We estimate that your first payment will be due on 06/19/2020 (e) and the final payment will be due on 03/19/2032 (e) (the 'maturity date').

*Id.* at 154.

- **The loan's amortization schedule.** In order to maintain the monthly payment set at origination, for many but not all loans, borrowers needed to make a voluntary payment to reduce the principal balance of the loan by a certain percentage within the first 18 months. When applicable, Mosaic disclosed this to homeowners throughout its loan documents. Ex.1 at 4, 8. Although in some instances the funds to make a paydown could become available to a borrower as a result of a tax credit, Mosaic's loan documents are clear that qualification for the tax credit is not guaranteed. Ex.1 at 4.

### PAYMENT TERMS

| Number of Payments | Amount of Payment | When Payments Are Due |
|---|---|---|
| 16 | $405.79 | Monthly, beginning 01/23/2022 |
| 221 | $547.69 | Monthly, beginning 05/23/2023 |
| 1 | $547.18 | Final Payment 10/23/2041 |

| Mosaic Loan | | Mosaic Adjusted Loan | |
|---|---|---|---|
| Initial Monthly Payment(est.): $405.79 | Section 3 | | |
| **To keep your Initial Monthly Payment:** | | Adjusted Monthly Payment(est.): $547.69 | Section 3 |
| Re-amortization Date(est.): 04/23/2023 | Section 3 | | |
| Principal Balance Target(est.): $53,157.22 | Section 3 | | |

*Id.* at 3.

4

> **Impact of Voluntary Prepayments**
> You are not required to make any prepayments on the Loan. If you choose to make voluntary prepayment(s) on the Loan before the eighteenth (18th) month from the Loan Start Date, then when the Loan automatically re-amortizes on the Re-amortization Date denoted in the Summary Page, any prepayments made to date will be taken into account and the monthly loan payment adjusted accordingly. Any adjustment to the monthly loan payment resulting from the automatic re-amortization will be sufficient to fully repay the Loan by the Maturity Date.
>
> You acknowledge that in order to avoid an increase in your Monthly Payment, you must make one or more voluntary prepayments equal to approximately **26%** of your Total Loan Amount within 18 months following your Loan Start Date. So long as you are not in default under this Agreement, and provided that you reduce your unpaid Total Loan Amount to the Principal Balance Target by the Re-amortization Date by making sufficient voluntary prepayments, your monthly payment will not increase. If you pay more than **26%** of your Total Loan Amount, your monthly payments will be adjusted to a lower amount. If you do not make any prepayments, or if your prepayments are less than **26%** of your Total Loan Amount, your monthly payments will be adjusted to a higher amount.

*Id.* at 4.

> **Loan Re-Amortization at Eighteen Months**
> Your Loan will automatically re-amortize on the Re-amortization Date stated on the Summary Page. This re-amortization event will take place 18 months after the Loan Start Date. During the re-amortization, the monthly loan payment will be adjusted in a manner to fully repay the Loan by the Maturity Date. Any new adjusted monthly loan payment will become due on the 19th month after the Loan Start Date. You are strongly encouraged to review the monthly loan statements to stay informed about the Re-amortization Date of the Loan and any adjustments to the monthly loan payments. Please note that the re-amortization of the Loan and any adjustments to the monthly loan payment amount assumes you are not in default or in breach of this Loan Agreement.

*Id.* at 5.

After the borrower signed the loan documents, Mosaic conducted a welcome call with each borrower to confirm that they wanted to move forward with the transaction. If the borrower "passed" the welcome call, Mosaic confirmed the loan could proceed and funded the loan.

## B.  Mosaic's Non-Exclusive Relationship with Solar Titan Was Governed by the Dealer Agreement.

The Solar Titan and Mosaic relationship was governed by two agreements.[2] On February 13, 2020, Solar Titan executed a Mosaic Home Improvement Dealer Agreement. Subsequently, Mosaic and Solar Titan entered into a Mosaic Program Participation Agreement ("Dealer Agreement"), which superseded the February 13, 2020, agreement and was the operative contract until Mosaic terminated the agreement. *See* Ex.3, ECF No.11-2 (Dealer Agreement).[3] Under the

---

[2]  The provisions of each agreement are similar for purposes of this Motion. Exhibit 3 is the agreement dated December 7, 2021.

[3]  Mosaic made its last loan to a Solar Titan customer on or about October 31, 2022.

Dealer Agreement, Solar Titan had sole responsibility for designing, engineering, and installing the solar energy systems that it agreed to install pursuant to its independent agreements with customers. *Id.* at § 2.2. Mosaic funded loans to approved borrowers in its sole discretion and made no representations as to solar system qualities or capabilities. *Id.* at § 1.3. Solar Titan was required to comply with all applicable laws and regulations. *Id.* at §§ 2.5, 3.1, 4.1, 5.2, 11.2, 11.4.

In keeping with this clear division of responsibilities, Solar Titan was an independent contractor under the Dealer Agreement. *Id.* at § 12.7 (expressly disclaiming an agency relationship). Importantly, the Dealer Agreement **does not** give Mosaic control over: (a) to whom Solar Titan offers its services; (b) solar energy marketing materials prepared by Solar Titan; (c) the hiring, firing, management or training of Solar Titan employees; (d) how Solar Titan installs the solar energy system; or (e) Solar Titan's subcontractors. Moreover, Mosaic was not the only lender making loans to Solar Titan customers. *See* Receiver's Second Status Report at 10, ECF No.102-1 ("Goodleap provided financing towards late 2022 – early 2023").

Under the Dealer Agreement, Solar Titan was entitled to request loan fund disbursements once it completed certain milestone installation events. *See* Ex.4 at § 2.1, ECF No.11-3 (Dealer Agreement Loan Program Addendum). And if a homeowner cancelled their Solar Titan agreement within the three-day cancellation period, Solar Titan was obligated to give Mosaic immediate notice of the cancellation. Ex.3 at § 2.6(b). Mosaic would then process the loan cancellation.

### C. Plaintiffs Seek to Hold Mosaic—a Lender—Liable for Solar Titan's Conduct.

Plaintiffs allege Solar Titan representatives misled homeowners about potential energy savings, incentives, and discounts, such as tax credits or "energy buyback" programs, during solar system sale pitches. SAC ¶¶ 10–12. According to the SAC, Solar Titan's "installation process is heavily flawed," such that "the systems are often not operational until months after" the homeowner started paying for the system. *Id*. ¶ 54. Plaintiffs allege that Solar Titan prioritized

signing up new customers to obtain disbursements from Mosaic, instead of fulfilling its obligations to existing customers. *Id.* ¶ 81. The SAC also alleges that Solar Titan diverted funds to finance "lavish" lifestyles of the Solar Titan owners. *Id.* ¶¶ 69, 389. The alleged Solar Titan scheme benefitted Solar Titan and its owners to the detriment of everyone else, including Mosaic.

Notwithstanding the fact that Solar Titan is solely responsible for the harms alleged in the SAC, Plaintiffs seek to hold Mosaic liable for Solar Titan's actions under six federal and state law claims. However, Plaintiffs have no cognizable claims for multiple independent reasons. Accordingly, the Court should dismiss the SAC with prejudice for the reasons explained below.

## III. <u>LEGAL STANDARD</u>

Rule 12(b) permits a party to assert "the following defenses by motion: . . . (2) lack of personal jurisdiction; (3) improper venue; . . . [and] (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). The appropriate standard for each motion is as follows:

1. Under Rule 12(b)(2), the plaintiff bears the burden of proving that personal jurisdiction over each defendant exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *One Media IP Ltd. v. S.A.A.R. SrL*, 122 F. Supp. 3d 705, 715 (M.D. Tenn. 2015). The court must accept uncontroverted allegations in the complaint as true and resolve any factual conflicts in plaintiffs' favor. *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, No.1:19-cv-00095, 2020 WL 1897171, at *2 (E.D. Tenn. April 16, 2020). Where nonresident plaintiffs do "not claim any relationship with the forum State" and did not suffer any harm in the forum State, there is "insufficient basis" for exercising specific personal jurisdiction. *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th Cir. 2021).

2. A case may be dismissed for improper venue under Rule 12(b)(3) if the case was not filed in a proper venue. *Angiosystems, Inc. v. Worldwide Innovations & Technologies, Inc.*, No.1:15-cv-78, 2016 WL 919001, at *5 (E.D. Tenn. March 4, 2016). "[T]he plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Gone to the Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 536–537 (W.D. Tenn. 2006) (citation omitted). "[G]eneric and unsupported assertion[s]" about a claim's impact in the state are insufficient to prove proper venue. *Angiosystems*, 2016 WL 919001, at *5. Where the Court finds venue is improper, it is within its "sound discretion" to dismiss the action or transfer it to the appropriate district. *Gone to the Beach*, 434 F. Supp.2d at 537 (citation omitted).

3. On a Rule 12(b)(6) motion, a court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Pruitt v. Gee*, No.2:12-cv-242, 2013 WL 1337345, at *1 (E.D. Tenn. April 1, 2013). However, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To meet the requisite showing, "plaintiff's pleading for relief must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bowman v. United States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citation omitted). "Further, the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *SFDG LLC v. Cincinnati Insurance Co.*, 558 F. Supp.3d 590, 593 (E.D. Tenn. 2021) (citation omitted).

## IV. ARGUMENT

### A. The Commonwealth of Kentucky's Claims Fail for Lack of Personal Jurisdiction and Improper Venue (Counts 1–3, 5, and 7).

Claims brought by Kentucky must be dismissed for lack of personal jurisdiction over Mosaic. To the extent this Court can exercise personal jurisdiction over Mosaic, the claims brought by Kentucky should still be dismissed for improper venue.

### 1. The Court Lacks Personal Jurisdiction over Mosaic as It Relates to Kentucky's Claims

A federal court in Tennessee does not have personal jurisdiction over Mosaic, an out-of-state defendant, based on an out-of-state plaintiff's claims for alleged conduct that occurred outside Tennessee's borders. Jurisdiction is only proper "if the plaintiff's claims arise out of or relate to the defendant's forum State activities." *Canaday*, 9 F.4th at 396 (citation omitted).[4] The Sixth Circuit uses a three-factor test to establish specific jurisdiction: (1) the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence

---

[4] General jurisdiction plainly does not exist as Mosaic has not consented to Tennessee's general jurisdiction, nor is it incorporated or headquartered in Tennessee. SAC ¶¶ 38–39; *Pritchard v. Thompson*, No.22-cv-2838, 2023 WL 5817658, at *6 (W.D. Ten. Aug. 3, 2023) (granting defendant's motion to dismiss for lack of personal jurisdiction, holding that an out of state defendant "did not expressly consent to the general personal jurisdiction of Tennessee merely by complying with Tennessee's statute" and finding that the *International Shoe* framework applies.).

in the forum state"; (2) "the cause of action must arise from the defendant's activities" in the forum state; and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Bridgeport Music, Inc. v. Agarita Music, Inc.*, 182 F. Supp. 2d 653, 658 (M.D. Tenn. 2002).[5]

All three prongs weigh against the exercise of personal jurisdiction over Mosaic with respect to Kentucky's claims. First, when providing loans **to Kentucky residents**, Mosaic did not "avail" itself of the privilege of doing business in Tennessee. Similarly, Kentucky's allegations with respect to making home improvement loans in ***Kentucky*** are not based on Mosaic's actions in Tennessee. The consequences of these actions have no connection to Tennessee. In short, there is no "claim-specific and [Mosaic]-specific relationship between [Kentucky's] claims and Tennessee." *Canady*, 9 F.4th at 396–97; *see also Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255 (2017) (reversing the denial of an out-of-state manufacturer's motion to quash because the court did not have personal jurisdiction over out-of-state claims).

Kentucky's attempts to plead around this issue by alleging additional facts regarding the relationship between Mosaic and Solar Titan, but these allegations do not show that the Kentucky claims *arose from* Mosaic's activities in Tennessee. Specifically, Plaintiffs allege that Mosaic directed certain homeowners to contact Solar Titan's Tennessee office *after* their loans had already been originated; Solar Titan's records related to financial transactions were in Tennessee; and loan funds were disbursed in part to Tennessee on behalf of Kentucky residents. SAC ¶¶ 65, 186, 188.

---

[5]   "The jurisdictional limits of Tennessee law and federal due process are identical. The Court need only decide whether exercising personal jurisdiction over [a foreign defendant] is consistent with federal due process requirements." *Branstetter v. Holland Am. Line N.V.*, 430 F.Supp.3d 364, 370 (W.D. Tenn. 2019) (citation omitted).

However, none of these allegations show that the Kentucky claims, which exclusively address Mosaic's provision of loans to Kentucky homeowners, were related to Tennessee. *Canady*, 9 F.4th at 396–97, 400 (affirming dismissal of out-of-state plaintiffs' claims where defendant's interactions with plaintiffs occurred solely in plaintiffs' home states and rejecting the argument that the court should analyze personal jurisdiction "at the level of the suit").

Furthermore, given that the jurisdictional limits of Tennessee law and federal due process are identical, "certain pertinent observations" made by the Tennessee Supreme Court are particularly relevant here. *Cont'l Leasing Corp. of Memphis v. Econ. Leasing Co.*, 564 S.W.2d 956, 959 (Tenn. Ct. App. 1977). The Tennessee Supreme Court held that it was contrary to law to "entertain[ ]" a contract dispute "filed by a non-resident against a non-resident upon a contract entered into in another state." *Avery v. Holland*, 2 Tenn. 71, 71 (Tenn. Super. Ct. L. & Eq. 1806). According to Justice White, "courts were constituted to administer justice in relation to their own citizens; and not to do the business of citizens or subjects of other States." *Id*. at 79. Kentucky's claims should be dismissed because a court in Tennessee has no authority to entertain a dispute filed by the Commonwealth of Kentucky against a California resident based upon a contract entered into in Kentucky.

### 2. Under 12 U.S.C. § 5564(f) and 28 U.S.C. § 1391(b)(2), This District Is Not the Proper Venue for Any of Kentucky's Claims.

Even if personal jurisdiction over Mosaic is met as to the Kentucky claims, a United States District Court in Tennessee is not the appropriate venue. Neither 12 U.S.C. § 5564(f) nor 28 U.S.C. § 1391(b)(2), *contra* SAC ¶ 21, support venue in this Court (or any Court in Tennessee).

Kentucky's reliance on 12 U.S.C. § 5564(f) is improper because it applies only to venue for litigation by the Consumer Financial Protection Bureau ("CFPB"). Located in Subchapter V ("Bureau of Consumer Financial Protection"), § 5564 provides "[i]f any person violates a Federal

10

consumer financial law, ***the Bureau*** may . . . commence a civil action." 12 U.S.C. § 5564(f) (emphasis added). Federal courts interpret the statute ***only*** to "authorize[ ] the CFPB to bring actions in federal court to enforce certain consumer protection statutes." *CFPB v. Gordon*, 819 F.3d 1179, 1188 (9th Cir. 2016), *cert. denied* 582 U.S. 941; *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 46 (D.R.I. 2020). Accordingly, § 5564(f) does not establish venue in this Court as to Kentucky's claims.[6]

Kentucky's reliance on 28 U.S.C. § 1391(b)(2), which provides that "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," is equally misplaced.[7] For Section 1391 "to be meaningful, the adjective substantial must be taken seriously." *Dyersburg Fam. Walk-In Clinic, Inc. v. Tenn. Dept. of Fin. and Admin.*, No.1:20-CV-1280-STA-JAY, 2021 WL 1566083, at *2 (W.D. Tenn. Apr. 21, 2021) (citation omitted) (concluding that communications to the Western District of Tennessee did not establish venue because the events that "truly g[ave] rise" to the plaintiff's claim occurred in another district).

Like the claims in *Dyersburg*, the action that "truly g[ave] rise" to claims brought by Kentucky are based on interactions with Kentucky residents, which occurred exclusively in Kentucky. *Id.* Therefore, Kentucky's reliance on 28 U.S.C. § 1391(b)(2) is misplaced.

**3.** **Kentucky's CFPA and KCPA Claims Cannot Be Brought in This Court.**

This Court is not the proper venue for Count 1 (CFPA) and Count 5 (KCPA). "Where

---

[6]    To the extent Plaintiffs request the Court to interpret 12 U.S.C. § 5564(f) broadly, applying it to *any* civil action brought under Title 12 of the United States Code, that reading would render all other CFPA venue provisions inoperative. *General Med., P.C. v. Azar*, 963 F.3d 516, 521 (6th Cir. 2020) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)); *see also* discussion of 12 U.S.C. § 5552, *infra*. Section IV.C.

[7]    Mosaic does not dispute that the Eastern District of Tennessee is an appropriate venue for the claims brought by Tennessee related to loans made to Tennessee residents.

specific venue statutes exist, they control over the general venue statutes." *Union Planters Bank, N.A. v. EMC Mortg. Corp.*, 67 F. Supp. 2d 915, 18 (W.D. Tenn. 1999). Title 12, Section 5552 of the U.S. Code governs venue for Plaintiffs' CFPA claims (Count 1), and Ky. Rev. Stat. § 367.190 governs venue for Kentucky's KCPA claims (Count 5). Both venue statutes make clear that Kentucky can only bring these claims in a court in the Commonwealth of Kentucky.

### a. Under the CFPA, Kentucky Is the Only Proper Venue for the Kentucky Attorney General's CFPA Claim.

First, 12 U.S.C. § 5552 provides "the attorney general . . . may bring a civil action in the name of such State in any district court of the United States *in that State or in State court that is located in that State*." 12 U.S.C. § 5552(a)(1) (emphasis added). It follows that Kentucky can only bring a CFPA action in a court *located in Kentucky*. Because the statute is unambiguous, the Court should apply its plain language. *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021).

Further, both the Supreme Court and this Court's sister court recognize that specific venue provisions control over general venue statutes. *See, e.g.*, *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 152, 158 (1976) (explaining "specific venue provision of the National Bank Act must prevail over the broader, more generally applicable venue provision of the Securities Exchange Act" even though the provision states suits "may be had" in the federal district court for that association's district); *Union Planters Bank,* 67 F. Supp. 2d at 918 ("Where specific venue statutes exist, they control over the general venue statutes.").

Mosaic notes that a Pennsylvania district court recently denied a motion to dismiss based in part on 12 U.S.C. § 5552(a)(1). *See Penn. by Shapiro v. Mariner Fin., LLC*, No.2:22-cv-03253, 2024 WL 169654 (E.D. Pa. Jan. 12, 2024)*.* However, this Court should not follow *Mariner* because it is a non-binding, out-of-district opinion for which the time to appeal has not yet run and there are at least two problems with *Mariner's* reasoning. First, the decision in *Mariner* gives heavy

weight to Congress' use of the term "may" and reasons that a strict territorial limit would prevent the District of Columbia from bringing suit. With respect to the term "may", there are cases in which courts have construed venue statutes strictly where Congress used "may" instead of "shall." *See, e.g.*, *Radzanower*, 426 U.S. at 152. *Cf. Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 204 (2000) (finding the FAA's use of "may" was permissive, but explaining that the "analysis of special venue provisions must be specific to the statute"). Thus, the use of the term "may" does not preclude a strict territorial venue limit.

The *Mariner* Court also feared that a strict territorial limit would prevent one of the States from suing in its home forum due to a perceived "venue gap." Strict construction, according to the court, could lead to "instances in which States are unable to bring certain actions ***anywhere*** if personal jurisdiction is lacking over the potential defendant[.]" *Mariner*, 2024 WL 169654, *9. However, the parties did not raise, and the court did not address, arguments that *specific* jurisdiction over a defendant would exist for conduct directed at residents of a state upon which a claim is based. *See id.* at *15.[8] Thus, the court's concerns were misplaced.[9]

**b.      The KCPA Limits Venue to Kentucky State Court.**

Similarly, Ky. Rev. Stat. § 367.190 provides that the Attorney General "may immediately move in the name of the Commonwealth ***in a Circuit Court*** for a restraining order" to put an end to a violation of the statute. Ky. Rev. Stat. § 367.170 (emphasis added). Again, the venue provisions require that claim must be brought in a ***Kentucky*** court. This interpretation is consistent

---

[8]    *Cf. McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23 (1957) (basing a finding of specific jurisdiction on the mailing of an insurance contract into the state and the mailing of premiums from the state).

[9]    The *Mariner* Court weighed the perceived venue gap heavily because it was "reasonable to prefer the construction that avoids leaving such a gap." *Mariner*, 2024 WL 169654, at *9 (citing *Cortez Byrd Chips*, 529 U.S. at 194). However, *Cortez*'s venue gap arose because the district court would have jurisdiction over an arbitration award but lacked venue.

with Kentucky's strict reading of the statute in other cases. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 660–64 (E.D. La. 2012) (remanding suit to Kentucky state court based on Kentucky courts' strict interpretation of the venue provisions of the KCPA). Where the statute is clear, the Court's analysis can end. *Edington*, 992 F.3d at 556. Thus, Count 5 should be dismissed due to improper venue.

**B.    Plaintiffs Cannot Assert Claims on Behalf of Residents of Other States.**

Plaintiffs appear to assert claims on behalf of Alabama, Florida, Georgia, and South Carolina residents against Mosaic, but Plaintiffs do not have authority to assert violations of federal, Tennessee, or Kentucky law based on conduct occurring outside their respective jurisdictions. Specifically, in paragraphs 36 and 212 of the SAC, Plaintiffs reference activity that occurred in these states and suggest that they have the authority to seek relief on behalf of residents of other states. However, the SAC does not allege any specific conduct in those states, and neither Tennessee nor Kentucky are authorized to enforce extra-jurisdictional conduct.

*First*, even if Plaintiffs wanted to seek recovery on behalf of Alabama, Florida, Georgia, or South Carolina residents, the SAC does not allege any conduct that occurred in those states. The SAC does not contain any allegations about residents from these states, nor do Plaintiffs plead any claims under Alabama, Florida, Georgia, or South Carolina law.

*Second*, Plaintiffs lack authority to act with respect to loans made in Alabama, Florida, Georgia, and South Carolina. The authority of both Tennessee and Kentucky is limited to matters in which the state may be interested. Tenn. Code § 8-6-109; *State v. Heath*, 806 S.W.2d 535, 537 (Tenn. Ct. App. 1990); Ky. Rev. Stat. § 15.020(3); *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 173 (Ky. 2009) ("It is the Attorney General's responsibility to file suit to vindicate public rights, as attorney ***for the people of the State of Kentucky***." (emphasis added;

citation omitted)). Here, Plaintiffs cannot articulate and have not pled any interest in using the laws of Tennessee and Kentucky to assert claims based on loans made to residents of other states.

Further, Counts 4–7 are based on state statutes that only apply to conduct occurring in Kentucky or Tennessee, respectively. *See* Tenn. Code § 47-18-104(a) and (b); Ky. Rev. Stat. § 367.110 *et seq.*; Tenn. Code § 47-18-701; and Ky. Rev. Stat. § 367.410 *et seq.*, respectively. Title 12, Section 5552 of the U.S. Code also limits the States' CFPA enforcement authority to matters taking place in their own states. Accordingly, to the extent that the SAC asserts claims against Mosaic based on transactions with residents of other states, those claims should be dismissed.

### C.    Plaintiffs Lack Standing to Hold Mosaic Derivatively Liable for Solar Titan's Alleged Conduct Under the Holder Rule (Counts 1, 4–7).

In Counts 1 and 4–7, Plaintiffs seek to hold Mosaic derivatively liable for Solar Titan's alleged conduct under private contractual terms required by the Holder Rule. SAC ¶¶ 437, 602, 635, 662, 692. Plaintiffs, however, do not have the authority to enforce these private contractual rights. As explained below, the FTC did not intend for state attorneys general to enforce the rights created by the language of the Holder Rule. Further, the *parens patriae* powers of Kentucky and Tennessee do not extend to the enforcement of private contract rights. Counts 1 and 4–7 must be dismissed to the extent Plaintiffs seek a judgment against Mosaic for Solar Titan's alleged conduct under the Holder Rule. *See Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993) ("federal regulations cannot themselves create a cause of action"); *Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786, 791 (S.D. Ohio 2000) (holding, in accordance with *Dearborn*, that a private right of action does not exist for a violation of the FTC Holder Rule).

In the late 1970s, the FTC declared that "it is an unfair or deceptive act or practice within the meaning of section 5 of [the FTC] Act for a seller . . . [to] [t]ake or receive a credit contract which fails to contain" the Holder Rule provision. 16 C.F.R. pt. 433.2.[10] Based on the Holder Rule,

---

[10]    Under Tennessee law, courts are required by statute to give deference to interpretations of the FTC Act by the FTC itself and federal courts. *See* Tenn. Code. 47-18-115 ("It is the intent of the general assembly that [the Consumer Protection Act] shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to . . . the Federal Trade Commission Act."). Courts in

15

regulators may bring an enforcement action for the ***failure to include Holder Rule language*** in a credit contract as a potential violation of state and federal unfair trade practice statutes, but that is the extent of Plaintiffs' enforcement authority. The Holder Rule requires lenders such as Mosaic to include the following language in consumer credit contracts:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE ***DEBTOR*** COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER ***BY THE DEBTOR*** SHALL NOT EXCEED AMOUNTS ***PAID BY THE DEBTOR*** HEREUNDER.

16 C.F.R. § 433.2(b) (emphasis added). Plaintiffs concede that the Mosaic loan agreements contain the required Holder Rule language. *See* SAC ¶ 437; Ex.1 at 12. Therefore, any cause of action based on the Holder Rule fails.

### 1. The Holder Rule Does Not Permit State Attorneys General to Enforce Private Contract Rights.

In direct conflict with the plain language of the Holder Rule, Plaintiffs attempt to enforce the individual contract rights of private citizens. However, only debtors, *i.e.*, borrowers, can assert claims under their consumer credit contracts – not state attorneys general (or even the FTC). The language required by the Holder Rule explicitly subjects the seller to those "claims and defenses which ***the debtor could assert*** against the seller," and only contemplates "***recovery*** hereunder ***by the debtor***." 16 C.F.R. § 433.2(b) (emphasis added).[11] Further, "[i]t is also important to note that the Rule does not create new rights or defenses." *See* Ex.5 at 7 (FTC Staff Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses (May 4, 1976)). 16 C.F.R. § 433.2(b). The personal nature of a debtor's recovery, which is limited to "amounts paid

---

Kentucky similarly defer to the FTC's interpretation of statutes. *See Baker v. American Express Travel Related Servs. Co., Inc.*, No. CIV.A. 02–26–JBC , 2002 WL 1205065 (W.D. Ky. May 28, 2002) ("As the agency empowered to administer and enforce the FCRA, 15 U.S.C. § 1681s(a), the FTC is accorded deference in interpreting the Act unless its interpretations conflict with statutory text or FCRA's legislative history.")

[11] "Consumer" means a "natural person who seeks or acquires goods or services for personal, family, or household use." 16 C.F.R. § 433.1(b). It does not include state attorneys general.

by the debtor," further instructs that the Holder Rule language does not create an enforcement mechanism for state attorneys general.

The FTC has reiterated this debtor-focused understanding of the Holder Rule over the years. For example, in its 1975 Promulgation of Trade Regulation Rule and Statement of Basis and Purpose for the Holder Rule, the FTC explained:

> *What the revised rule does. What is meant by eliminating foreclosures of equities.* This rule is directed at the preservation of *consumer claims and defenses*. It will require that all consumer credit contracts generated by consumer sales include a provision which allows *the consumer* to assert his sale-related claims and defenses against any holder of the credit obligation. From *the consumer's standpoint*, this means that *a consumer can* (1) defend a creditor suit for payment of an obligation by raising a valid claim against a seller as a set-off, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account.

40 Fed. Reg. 53506, 53524 (Nov. 18, 1975) (emphasis added). Similarly, in 2021, the FTC Staff issued a "Staff Note," FTC, *Staff Note Regarding the Holder Rule and Large Transactions* (Apr. 14, 2021), reiterating, among other things, that the rule "protects **consumers** who enter into credit contracts by preserving **their right** to assert claims and defenses against any holder of certain loans and credit sales contracts."*FTC Staff Issues Note on Holder Rule and Large Transactions*, 2021 WL 1399791 (2021) (emphasis added).

Federal courts have emphasized the FTC's narrow definition of *consumer* in reference to the Holder Rule. For example, in *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925 (N.D. Ill. 2008), the court noted that the FTC the narrowed the definition of *consumer* in certain contexts, specifically using the Holder Rule as an example. *Id.* at 939–40 (stating that "consumer" is narrowly defined as "a natural person who seeks or acquires goods or services for personal, family, or household use"). Mosaic has not located any reported decisions where the FTC has enforced individual contractual rights of borrowers, nor has Mosaic identified any precedent or statutory authority under Tennessee or Kentucky law that would authorize Plaintiffs to enforce these

individual contractual rights.[12] Accordingly, Counts 4–7 must be dismissed.

### 2. *Parens Patriae* Powers Do Not Give the States the Power to Assert Private Contract Rights.

While Plaintiffs have unique authority under the doctrine of *parens patriae*, that authority does not allow them to enforce the private contracts of consumers. The doctrine of *parens patriae* only extends to injury to "a quasi-sovereign interest." *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 305 (6th Cir. 2019). Resultingly, "the State must articulate an interest apart from the interests of particular private parties." *Id.* (citation omitted). The contractual interest of private parties "are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Id.* (citation omitted). In other words, Plaintiffs may not "litigate as a volunteer the personal claims of its competent citizens." *People of State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (noting that the New York Attorney General lacked standing under *parens patriae* where an "award of money damages will not compensate the State for any harm done to its quasi-sovereign interests.").

Here, Plaintiffs are attempting to "volunteer" to litigate and enforce "personal claims of [their] competent citizens" who are not parties to this lawsuit. *Id.* Plaintiffs have not alleged injury to the states of Tennessee and Kentucky as a whole. Thus, Plaintiffs have not shown any quasi-sovereign interests and do not have standing under *parens patriae* to assert claims against Mosaic based on the Holder Rule. Accordingly, Plaintiffs fail to state a claim for Counts 1, 4–7.

### D. <u>Solar Titan Is Not Mosaic's Agent (Counts 1, 2, 4–7).</u>

Plaintiffs allege that Solar Titan acted as Mosaic's actual agent for the purpose of "sell[ing]

---

[12] If the Court were to find that the States could step into the shoes of the consumers who signed Mosaic loan agreements, then *all* provisions of that agreement should bind Plaintiffs. This would necessarily include the arbitration provision. *See Landmark of Iroquois Park Rehab. & Nursing Ctr., LLC v. Gill*, No.2020-CA-1362-MR, 2022 WL 2182676, at *2 (Ky. Ct. App. June 17, 2022) (reversing the lower court's refusal to enforce an arbitration agreement as to unnamed successor). If the Court determines that the Plaintiffs may step into the shoes of the consumers, then this action should be dismissed in favor of arbitration. *See id.* Mosaic reserves all rights with respect to the arbitration right and other provisions in the loan agreements.

and market[ing]" Mosaic's loan products. SAC ¶¶ 215, 218. Plaintiffs also allege Solar Titan became Mosaic's agent under a ratification theory. *Id*. Plaintiffs then seek to use both theories to hold Mosaic liable for all of Solar Titan's conduct – even that unrelated to loan applications.

Most courts to consider the issue have concluded that a merchant like Solar Titan is not the agent of a third-party lender, like Mosaic, and the SAC does not allege facts that permit the agency theory to survive a motion to dismiss. Further, the SAC's allegations fit squarely into the "adverse interest" exception to agency. As a result, the claims based on agency fail.

### 1. Federal, Tennessee, and Kentucky Common Law Each Follow the Restatement (Third) of Agency.

Neither this Court nor the Sixth Circuit have addressed choice of law for analyzing agency under the CFPA or TILA. However, in the context of other federal statutes, circuit courts of appeal generally apply federal common law, which in turn applies the Restatement (Third) of Agency, to analyze vicarious liability. *See, e.g.*, *Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974) (Fair Housing Act); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015) (TCPA). Both Tennessee and Kentucky generally follow the Restatement (Third) of Agency, so there is no conflict between state law and federal common law. *See, e.g.*, *Teno v. Iwanski*, 464 F. Supp. 3d 924, 940–41 (E.D. Tenn. 2020) (applying Restatement (Third) of Agency § 1.01 to purported agency relationship); *Ernst & Young, LLP v. Clark*, 323 S.W.3d 682, 694 (Ky. 2010) (citing Restatement (Third) Of Agency § 1.01).

### 2. Courts Have Nearly "Universally" Held That Lenders, Like Mosaic, Are Not Principals of Merchants, Like Solar Titan.

Courts routinely hold that an agency relationship does not exist where, as here, a merchant introduces a consumer to a third-party lender to finance a purchase from the merchant. *Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 554 (2006) (collecting cases) (recognizing that courts "are nearly universal in finding that auto dealers are not agents of [] financing companies."); *Chrysler*

*Credit Corp. v. Barnes*, 126 Ga. App. 444, 453 (1972) (holding lender's provision of credit contract forms, right of approval, and general agreement with dealer to finance vehicles were insufficient to overcome defendant's denial of agency relationship); *Nave v. Life Bank*, 334 B.R. 586, 592 (M.D. Tenn. 2005) (discussed *infra* Section IV.D.3.a); *Pope v. World Omni Financial Corp.*, 599 So. 2d 15, 16–17 (Ala. 1992) (finding no agency relationship where financing company informed dealer of financing terms it would accept but did not control the auto dealer's sales or negotiations with customers); *Wells v. Craig & Landreth Cars, Inc.*, No.3:10-CV-00376, 2011 WL 1542121 (W.D. Ky. Apr. 22, 2011) (granting lender's motion to dismiss where dealer who submitted credit application without customer's permission was not lender's agent). The SAC does not allege facts that give this Court reason to rule differently.

### 3. Solar Titan Is Not Mosaic's Agent as a Matter of Law.

Plaintiffs fail to allege plausibly that Solar Titan became Mosaic's agent by offering Mosaic's loan products. The primary factor that demonstrates an agency relationship is the extent of control exercised over the alleged agent in the performance of its work. *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 372 (6th Cir. 2015) (citing Restatement (Third) of Agency § 1.01). Other relevant factors include: (1) who first set the alleged agent in motion; (2) whose interests the alleged agent was working to advance; and (3) who is providing the alleged agent with compensation. *Nave*, 334 B.R. at 591 (citing *Harben v. Hutton*, 739 S.W.2d 602, 607 (Tenn. Ct. App. 1997)). As explained below, all four factors weigh against a finding of agency.

### a. Plaintiffs Fail to Allege Plausibly That Mosaic Controlled Solar Titan.

First, Plaintiffs premise their claims of actual agency-by-control on Mosaic's contract with Solar Titan as memorialized in the Dealer Agreement, which expressly provides that the "[p]arties

are independent contractors." Ex. 3 at 14 (§12.7).[13] According to Plaintiffs, the Dealer Agreement created an agency relationship, notwithstanding its express terms, because it "gave Mosaic the ability to utilize Solar Titan Sales Representatives to sell [its] loan products" and allowed Mosaic to control "various aspects of how Solar Titan worked on its behalf."[14] SAC ¶¶ 220, 222. These allegations are insufficient as a matter of law.

Solar Titan did not become Mosaic's agent simply because Mosaic imposed certain contractual obligations on Solar Titan through the Dealer Agreement. *Nave*, 334 B.R. at 591–592. This is because "every contract for work to be done," including the Dealer Agreement, "reserves . . . a certain degree of control because some degree of control is necessary to assure that work is performed according to expectations or specifications." *Sodexho Mgmt., Inc. v. Johnson*, 174 S.W.3d 174, 178 (Tenn. Ct. App. 2004). Similarly, Mosaic's establishment of guidelines for merchants like Solar Titan "[is] not indicative of . . . control" because such guidelines merely serve as "tools used . . . to facilitate" the selection of borrowers. *Nave*, 334 B.R. at 592; *see Pescia*, *v. Auburn Ford-Lincoln Mercury, Inc.*, 68 F. Supp. 2d 1269, 1282 (M.D. Ala. 1999) (holding no agency relationship created where lender: (1) provided credit application forms to dealer; (2) advised dealer on how to complete applications; (3) gave dealer access to its computers; and (4)

---

[13] The SAC refers to the agreement between Mosaic and Solar Titan as the "Participant Agreement." SAC ¶ 222.

[14] Specifically, Plaintiffs allege the Agreement allowed Mosaic to control:

(1) Policies and procedures related to the manner that Solar Titan sales representatives "market, promote, and sell Mosaic's loan products" while applying for loans, SAC ¶¶ 221, 226;
(2) Solar Titan's promotional efforts surrounding Mosaic's loan products, SAC ¶ 224;
(3) Solar Titan's compliance with Mosaic-created Program Documents, which include the Dealer Agreement, Addenda, and policies, procedures or instructions, SAC ¶ 227;
(4) Mosaic's right to make changes to the aforementioned documents, SAC ¶¶ 227–28;
(5) Certain elements of Solar Titan's employee training related to the Mosaic loans, SAC ¶¶ 230–33; and
(6) Solar Titan's authorization to submit financing applications to Mosaic. SAC ¶ 234.

advised dealers on explaining credit obligations to customers); *see also* Restatement (Third) of Agency § 1.01 cmt. (f)(1) ("[S]etting standards in an agreement for acceptable service quality does not itself create a right of control."). For these reasons, Plaintiffs' reliance on requirements contained in the Dealer Agreement are insufficient as a matter of law to demonstrate that Solar Titan was Mosaic's agent. *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (finding amendment would be futile and affirming dismissal where plaintiff sought to add conclusory allegation that agency relationship was created through fulfillment of contractual obligations).

Here, Plaintiffs must allege that Mosaic controlled the "method of doing business" or the "performance of [Solar Titan's] work," but Plaintiffs do not. *Nave*, 334 B.R. at 591–92. There are no allegations that Mosaic—beyond setting standards for acceptable service quality in the Dealer Agreement—meaningfully exercised control over, for example: (a) whether Solar Titan could offer its customers loans from other lenders, or even whether Solar Titan solicited any loan applications at all, *id*. at 592; (b) Solar Titan's negotiations with customers, *Mardis v. Ford Motor Credit Co.*, 642 So. 2d 701, 704–705 (Ala. 1994); (c) the means and methods of Solar Titan's solar installation operations, *Sodexho*, 174 S.W.3d at 183; *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 45 (2008); (d) the prices charged by Solar Titan, *Clemente*, 294 Ga. App. at 45; (e) the ability to hire or fire Solar Titan employees, *id*; (f) the authority to pay Solar Titan creditors on its behalf, *id*; or (g) the ability to dictate how Solar Titan spent its funds, *id*.

### b.     Mosaic Did Not Set Solar Titan in Motion.

Second, Plaintiffs do not plausibly allege that Mosaic, as a lender, set Solar Titan, a merchant, in motion as necessary to establish agency. Here, when a homeowner sought financing to purchase Solar Titan's products and services (which not all did), Solar Titan could introduce the customer to Mosaic, or any other lender. Mosaic did not have any contact with the potential

borrower until he or she indicated sufficient interest in Solar Titan's products and services and submitted a pre-approval application to Mosaic. *Nave*, 334 B.R. at 593. It was the prospective borrower who set Solar Titan "in motion" to assist him or her in applying for financing with Mosaic. *Id.*; *see* SAC ¶ 152 ("At or around the same time the consumer signs the Solar Titan Agreement, the [Solar Titan] sales representative *helps the consumer apply for financing*.") (emphasis added). Mosaic therefore cannot be said to have set the activity of Solar Titan in motion.

### c. Both Parties Benefitted from the Commercial Relationship.

Third, there was no agency relationship because Mosaic and Solar Titan both entered into a commercial relationship to further their own independent interests, not just the interests of Mosaic. "[A]n essential element of an agency relationship is that the object of the contract is for the benefit of the principal." *In re Ellis*, 152 B.R. 211, 218 (Bankr. E.D. Tenn. 1993); *see also Nave*, 334 B.R. at 593 (finding no agency where alleged agent worked to advance its own interests, as well as the interests of borrowers in arranging the loan). Here, Solar Titan "as a seller of solar systems," advanced its own interests, and the interests of homeowners, "to ensure consumers c[ould] f[inance] [their] products and services." SAC ¶ 148. Solar Titan and Mosaic each acted in their own respective interests, which weighs against an agency relationship as a matter of law.

### d. Compensation Weighs Against Agency.

And finally, no agency relationship exists because Solar Titan did not derive its compensation from Mosaic. *Nave*, 334 B.R. 586 at 593–94. The SAC does not allege that Mosaic compensated Solar Titan. To the contrary, the SAC alleges that "Mosaic charges Solar Titan dealer fees," SAC ¶ 548, and the Dealer Agreement obligated Solar Titan to "pay a fee equal to a percentage" of the loan amount in some instances, which Mosaic collected by subtracting it from loan disbursements. Ex.4 at 3 (§ 2.1.2). Plaintiffs have failed to allege an agency relationship between Mosaic and Solar Titan as a matter of law.

### 4. Plaintiffs Fail to Allege an Agency Relationship with Respect to Solar Titan's Marketing, Selling, or Installing of Solar Systems.

Plaintiffs make no effort to allege facts that Solar Titan was Mosaic's agent when Solar Titan was marketing, selling, or installing solar systems, and yet, the SAC seems to allege that Mosaic is liable for Solar Titan's merchant activities on an agency theory. Any assertion that Solar Titan was Mosaic's agent for purpose of Solar Titan's marketing, sales, and/or installation of *solar systems* (as distinguished from Mosaic's loan products) must be rejected because no SAC allegations even suggest that Mosaic exerted any control over these activities. *See, e.g., O'Bryan v. Holy See*, 556 F.3d 361, 382–83 (6th Cir. 2009) (quoting Restatement (Third) of Agency § 7.07) (confining 'control' analysis to the right to control "the manner and means of the agent's *performance of work*" to be done.) (emphasis added). When looking to the control exercised by a purported principal, "it is important to focus on the wrong alleged by" the plaintiff. *Pescia*, 68 F. Supp. 2d at 1282; *Mardis*, 642 So. 2d at 705 (rejecting plaintiff's argument that dealer's method of sales created agency relationship where lender did not control how dealer conducted its business of selling cars to dealer's retail customers). In this case, the "wrong" Plaintiffs seek to impute to Mosaic is based upon Solar Titan's actions as a seller and installer of solar systems. *See, e.g.,* SAC ¶ 242 (attempting to attribute liability to Mosaic for permitting "Solar Titan to continue to sell" its systems as if Mosaic had the authority to shut down Solar Titan's business—it did not).

Importantly, allegations that Mosaic disbursed funds directly to an installer do not alter this result. *See, e.g., Sparks v. Fifth Third Mortg. Co.*, No.CV 5:17-450-KKC, 2018 WL 6424699, at *5 (E.D. Ky. Dec. 6, 2018) (holding that the lender who disbursed payments to builder was not responsible for the "troubled construction" of a residence). Lenders disburse loan proceeds directly to merchants in a variety of contexts without creating an agency relationship or imposing additional duties on the lender. *See, e.g., Forsyth v. Bank of Am., N.A.*, No.2:11-CV-191, 2013 WL

5203435, at *4 (E.D. Tenn. Sept. 16, 2013) (lender that disbursed proceeds to incompetent builder not liable because bank had no duty to monitor construction on behalf of the plaintiffs); *Suzich v. Booker*, No.W2011-02583-COA-R3CV, 2012 WL 3055991, at *1 (Tenn. Ct. App. July 27, 2012) (holding that a lender has no duty to monitor progress of builder to which it disbursed loan proceeds); *Taylor v. First Sec. Tr. Bank, Inc.*, No.2006-CA-001508-MR, 2008 WL 4267847 (Ky. Ct. App. Sept. 19, 2008) (no agency relationship between lender and borrower where construction loan agreement did not give borrower control over the lender).

**5.** **Plaintiffs Fail to Allege an Agency Relationship Under a Ratification Theory.**

Plaintiffs also allege that Solar Titan became Mosaic's agent under a ratification theory because "Mosaic received hundreds of complaints directly from Solar Titan consumers." SAC ¶ 240. Plaintiffs then assert that by continuing to lend to Solar Titan customers, Mosaic had an "actual intent to ratify Solar Titan's unlawful conduct" so that Mosaic "could continue to receive the benefits of Solar Titan's business." *Id.* ¶¶ 2345–46. However, the ratification theory fails because: (1) ratification requires a pre-existing agency relationship or that the purported agent hold itself out as an agent; (2) only prior acts can be ratified; (3) Mosaic did not knowingly ratify Solar Titan's conduct; and (4) extensions of credit do not amount to ratification.

**a.** **Plaintiffs Premise Ratification upon Acts That May Not Be Ratified.**

Plaintiffs allege that Mosaic "became Mosaic's agent by ratification[.]" SAC ¶ 236. However, Plaintiffs' ratification theory necessarily fails because Plaintiffs have not alleged that Solar Titan "acted or purported to act as an agent on [Mosaic's] behalf." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (quoting Restatement (Third) of Agency § 4.03)). Although a principal is liable when it ratifies an originally unauthorized tort, the existence of a principal-agent relationship is a requisite to ratification, and ratification can have no meaning without it. *Id.* (citation omitted). Plaintiffs only allege that Solar Titan representatives

"solicit . . . loan customers and help consumers *apply* for loans." SAC ¶ 13 (emphasis added).

Plaintiffs fail to allege that Solar Titan purported to be Mosaic's agent. As such, "the agency-law

doctrine of ratification is not a basis on which [Mosaic] may become subject to the legal

consequences of [Solar Titan's] actions. Restatement (Third) of Agency § 4.03, cmt. b. Plaintiffs

do not even attempt to allege that  Solar Titan acted as Mosaic's agent with respect to its solar

system sales or installations, or that Solar Titan purported to act on Mosaic's behalf when facing

homeowners. Instead, Plaintiffs limit their theory of actual agency to the offering of loans and base

it entirely on the Dealer Agreement, but such allegations are insufficient to create an agency

relationship. *See infra* Section IV.D.2.

### b. Plaintiffs Fail to Allege Plausibly that Mosaic Ratified A Prior Act.

Plaintiffs also allege that Mosaic ratified Solar Titan's conduct because Mosaic "has had

sufficient information from Solar Titan, consumer complaints, and media outlets to know or be on

notice that Solar Titan . . . [sold] solar systems and installation services to consumers that lacked

the qualities" Solar Titan represented. SAC ¶ 410. Plaintiffs further reason that despite such

knowledge, Mosaic "nevertheless facilitates the commission of [Solar Titan's] unlawful acts,"

SAC ¶ 409, and therefore, conclude Mosaic ratified Solar Titan's misrepresentations.

"The focal point of ratification is an observable indication that the principal has exercised

choice and has consented" to be bound by the purported agent's actions. Restatement (Third) of

Agency § 4.01, cmt. d. Ratification therefore only applies to prior acts. *Johansen*, 218 F. Supp. 3d

at 587 (citing Restatement (Third) of Agency § 4.01(1)). Plaintiffs' generalized, conclusory

allegation that Mosaic had notice of Solar Titan's misconduct does not show Mosaic affirmed *any*

*prior* act with the requisite particularity to show Mosaic *subsequently* consented to Solar Titan's

misconduct. Nor can ratification sustain a theory that Mosaic ratified every future act Solar Titan

undertook. *See generally* Restatement (Third) of Agency § 4.07, cmt. c ("Ratifying one transaction

or act does not encompass multiple independent transactions undertaken at approximately the same time or during the same general course of conduct."). Plaintiffs simply fail to establish a temporal sequence between Solar Titan's misconduct and any conduct by Mosaic indicating its assent to it. For this reason, Plaintiffs' ratification theory must also be dismissed.

### c. Plaintiffs Fail to Allege Plausibly that Mosaic Knowingly Accepted A Benefit from Solar Titan's Misconduct

Plaintiffs have not alleged and cannot show that Mosaic *knowingly* accepted any benefit of Solar Titan's alleged misconduct. The doctrine of liability through ratification provides that one may be liable for acts of another if the principal ratifies those acts by *knowingly* accepting their benefits. *Black v. Sunpath, Ltd.*, No.3:21-CV-00023, 2022 WL 4241270, at *5 (M.D. Tenn. Sept. 14, 2022) (citing *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6587 (2013)); Restatement (Third) of Agency § 4.01, cmt. d (2006)). To ratify an act, a purported principal must have *full knowledge* of the facts and an *intention to ratify* the conduct. *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52–53 (Ky. 2008).

Plaintiffs generically allege that Mosaic "received hundreds of complaints directly from Solar Titan consumers," and then leap to the insupportable conclusion that Mosaic knowingly ratified Solar Titan's actions. SAC ¶ 240. As alluded to above, even if hundreds of complaints were received, the SAC fails to allege specifically what knowledge Mosaic possessed, when Mosaic came into possession of the knowledge, or that Mosaic was "aware of [its own] lack of knowledge" at the time it accepted the purported benefit. *Papa John's Int'l*, 244 S.W.3d at 53 n.21 (quoting Restatement (Third) of Agency § 4.06). The importance of precision is evident as the allegations demonstrate that even as late as 2022, the year Mosaic stopped lending to Solar Titan customers, Tennessee had received only "66 consumer complaints about Solar Titan." SAC ¶ 252.

Importantly, there can be no ratification where a purported agent "duped" the purported principal. *Watson v. Auto-Owners Ins. Co.*, 599 So. 2d 1133, 1136 (Ala. 1992). Here, the SAC alleges that Solar Titan duped everyone – including Mosaic. *See, e.g.*, SAC ¶¶ 59–63. Because Solar Titan obscured material facts from Mosaic, it was impossible for Mosaic to have ratified Solar Titan's conduct.

### d. Extensions of Credit Do Not Amount to Ratification of a Seller's Actions.

A lender like Mosaic does not ratify the conduct of a seller where the lender merely: (1) retains a right of approval over credit decisions; (2) is named in a lending contract; and (3) dictates the loan terms. *See Kimbrel v. Mercedes-Benz Credit Corp.*, 476 So. 2d 94, 97 (Ala. 1985). This conduct is typically viewed by courts as being consistent "with the extending of credit by an institution" even when seller wrongdoing is alleged. *Id*. Here, Mosaic's conduct is consistent "with the extending of credit by an institution" only, and did not create an agency relationship. To hold otherwise would impose duties on all lenders to police merchants and guarantee the satisfaction of consumers with the product or service funded by the loan.

### 6. The Adverse Interest Exception Defeats the Purported Agency Relationship.

Finally, Plaintiffs have failed to state a claim against Mosaic under an agency theory, because their allegations run headlong into the "adverse interest" exception. The Eastern District of Kentucky summarized the "adverse interest" exception in *BancInsure, Inc. v. U.K. Bancorporation, Inc.*, stating:

> The adverse interest exception provides that knowledge of an agent is not imputed to the principal when it is clear the agent would not communicate the fact in controversy to the principal. For example, where the communication of a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating, the agent's knowledge is not imputed to the principal. Based upon this reasoning, Kentucky's highest court has stated that the general rule of imputation does not apply . . . where [the agent's] interests are adverse to those of his principal.

830 F. Supp. 2d 294, 302 (E.D. Ky. 2011) (granting summary judgment and citing *Ill. Cent R. Co. v. Fontaine*, 289 S.W. 263, 267–68 (Ky. 1926) (citation omitted)); *see also* Restatement (Third) of Agency § 5.04 ("notice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes"). For example, in *BancInsure*, the court applied the adverse interest exception to bar rescission of defendant-bank's insurance policy where the bank's president lied about her embezzlement on the insurance application. 830 F. Supp. 2d at 303. The court explained that the exception applied because, had the president told the bank about her embezzlement through the insurance application, it would have prevented the consummation of her fraud. *Id.* at 302. Thus, her knowledge could not be imputed to the bank. *Id.*

Similarly, the adverse interest exception blocks an agency relationship here because imputing Solar Titan's knowledge to Mosaic would "prevent the consummation of [Solar Titan's] fraudulent scheme." *Id.* at 302. As alleged, "[i]f a consumer properly cancel[ed] the contract within the three-day statutory period, Solar Titan *s[ought] to avoid returning the funds to Mosaic* by routinely deceiving consumers, claiming they have not properly canceled the contract." SAC ¶ 62 (emphasis added). Then, Solar Titan would "keep[ ] the consumer locked in and *retain*[ ] *the money that Mosaic paid* to fund the contract." *Id.* (emphasis added). Put another way, had Solar Titan communicated this plan to Mosaic, that communication would have prevented Solar Titan from retaining Mosaic's funds. These allegations fall squarely within the adverse interest exception. No agency relationship exists.

### E. The Complaint Does Not State a Violation of TILA/ Regulation Z (Count 2).

Plaintiffs concede that Mosaic provided borrowers with the required TILA disclosures. *Id.* ¶ 161. Yet, they try to avoid the inexorable conclusion that this is fatal to Count 2 by alleging that Solar Titan interfered with homeowners' ability to review disclosures before they executed loan

documents by allowing them to sign documents on Solar Titan's devices instead of on the homeowners' personal devices. *See* SAC ¶¶ 432–35. Plaintiffs also make conclusory allegations that borrowers did not understand the disclosures or that the disclosures were misleading. These vague allegations of interference or obfuscation are insufficient as a matter of law.

The TILA claim fails for five reasons: (1) TILA's one-year statute of limitations bars most claims; (2) Plaintiffs fail to allege that Mosaic's disclosures were unclear, inconspicuous, or untimely under TILA; (3) even if Plaintiffs could adequately allege that Mosaic's TILA disclosures were untimely due to Solar Titan's interference (which they cannot), Plaintiffs' own allegations show that any tardiness was subsequently cured, and consequently, that no damages are available; and (4) Mosaic's treatment of "dealer fees" that were sometimes paid to it in connection with loans to Solar Titan customers did not violate TILA.

### 1.     TILA's Statute of Limitations Bars Pre-February 6, 2022, Claims.

TILA's one-year statute of limitations bars any claims based on Mosaic Solar Agreements entered into before February 6, 2022, one year before Plaintiffs filed their Complaint. "[A]ny action under [TILA] may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The limitations period for claims alleging violation of disclosure requirements begins running when the agreement is entered into if the lender does not make the required disclosures. *See Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009) (citing *Wachtel v. West*, 476 F.2d 1062, 1065–66 (6th Cir.1973)); *see also Khadher v. PNC Bank, N.A.*, 577 Fed. App'x 470, 479 (6th Cir. 2014) (explaining that the "occurrence of the violation" is the date of the loan agreement). Thus, any TILA claim based on an agreement entered on or before February 5, 2022, is time-barred.

### 2. Mosaic Complied with TILA.

TILA allows consumers to "bring a claim against their creditors for failure to comply with the statutory disclosure requirements . . . or any of the disclosure requirements imposed on creditors by the Act's implementing regulations." *Warford v. Memphis City Emps. Credit Union*, No.2:19-CV-02403-JPM-CGC, 2020 WL 4819952, at *4 (W.D. Tenn. Aug. 19, 2020). Regulation Z requires creditors to provide the disclosures "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 1026.17(a)(1). For "closed ended" credit transactions (such as those at issue here), TILA requires Mosaic to disclose the following information: (1) the identity of the creditor; (2) the "amount financed"; (3) the "finance charge"; (4) the "annual percentage rate"; (5) the "total payments"; (6) the "number, amount, and due dates or period of payments"; (7) the total sale price; (8) descriptive explanations of specified terms; and (9) "[w]here credit is secured, a statement that the security interest has been taken." 15 U.S.C. § 1638(a)(1)-(9). These disclosures must "be made as of the time that credit is extended." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998), *as amended* (Mar. 26, 1999). The failure to allege "what disclosures *required by TILA*" the consumers did not receive is fatal to Plaintiffs' claims. *See*, *e.g.*, *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 277 (D.D.C. 2012).

The SAC concedes that Mosaic complied with the TILA disclosure requirements. According to the SAC, the Mosaic Agreement "includes TILA financial disclosures, which show the annual percentage interest rate . . . , finance charge, amount financed, total amount of payments, and number of payments." SAC ¶ 161. However, Plaintiffs aver that providing the TILA disclosures on Solar Titan's devices, *id.* ¶¶ 161–62 (rather than the consumers' personal devices), does not comport with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 *et seq.* (the "E-Sign Act"); 12 C.F.R. § 1026.17(a) (permitting disclosures in electronic

form). Notably, the E-Sign Act does *not* require use of a consumer's personal device (or the provision of paper copies). Rather, the E-Sign Act provides:

> [I]f a . . . regulation . . . requires that information relating to a transaction . . . be . . . in writing, **the use of an electronic record** to provide or make available . . . such information **satisfies the requirement that such information be in writing if**—

the consumer consented after being provided with a clear and conspicuous statement regarding the consumer's rights, remedies and scope of the electronic consent agreement. 15 U.S.C. § 7001(c) (emphasis added).

As illustrated by Plaintiffs' own allegations regarding the "Disclosure and Consent to Electronic Receipt of Loan Disclosures," Ex.6, ECF No.67-8, Mosaic obtained the consumer's affirmative consent to make the disclosures electronically, and provided the disclosures required by the E-Sign Act.[15] Mosaic also required a customer signature on the Authorization and Consent to Share Application Information; the Truth in Lending Disclosure Statement; and the Loan Agreement. In sum, Mosaic's disclosures were "in writing" and "made available" to the consumer for the purpose of both the E-Sign Act and 12 C.F.R. § 1026.17, establishing that Mosaic complied with TILA and Regulation Z.[16]

In *Middleton v. T-Mobile US, Inc.*, No.20CV3276NGGJRC, 2022 WL 16828226

---

[15]   In granting a motion to compel arbitration, the Court found arguments based on use of the sales representatives' devices unavailing. *Lojewski v. Grp. Solar USA, LLC*, No.22 CIV. 10816 (PAE), 2023 WL 5301423, at *8 (S.D.N.Y. Aug. 17, 2023). In *Lojewski*, Plaintiff claimed that she did not have an opportunity to review the loan terms on the sales representative's device before signing. However, the court rejected this argument, analogizing the iPad agreement to a clickwrap agreement in which clicking satisfies the element of assent (whether the claimant reads the terms or not). *Id.* The court explained that a "reasonable person would understand that her signature on the iPad constitutes assent to those terms and conditions, even if she did not read the terms." *Id.* at *9 (citation omitted). Similarly, here, consumers assented to the terms and conditions, even if they did not read them.

[16]   The E-sign Act contains no rights-creating language and manifests no intent to create either a public or private right or remedy. The E-Sign Act simply establishes that contracts and signatures cannot be denied legal effect merely because they are in electronic form. *Levy-Tatum v. Navient & Sallie Mae Bank*, No. CV 15-3794, 2016 WL 75231, at *5 (E.D. Pa. Jan. 7, 2016). It does not matter if the consumer executed on a Solar Titan iPad or their own device—the effect is the same and the E-Sign Act does not provide a cause of action here.

(E.D.N.Y. Aug. 24, 2022), the plaintiff alleged that he was not shown the *full* terms before signing because the screen on a device provided by T-Mobile (note that this was not the consumer's own device) at the point of sale used to complete the transaction was too small and he was unable to review the full text of the sales agreement. The court granted T-Mobile's motion to dismiss holding that the plaintiff had reasonable notice of the terms and conditions, which were provided in browser-wrap and accessible through a link – even if the plaintiff never actually clicked on the links or reviewed the terms and conditions. Plaintiffs' argument that Mosaic violated TILA (or the E-Sign Act) because consumers did not use their own electronic devices has no merit.

### 3. Even If Solar Titan Interfered with Customers' Timely Receipt of Mosaic's TILA Disclosures, Damages Are Unavailable.

Solar Titan's alleged interference with the consumers' ability to review TILA disclosures does not state a claim against Mosaic. *See, e.g.,* SAC ¶¶ 432–35. Even if it is assumed that Solar Titan interfered in this way, Plaintiffs fail to allege a violation as to Mosaic because Plaintiffs concede that the customer "receives [the disclosures] via email." *Id.* ¶ 156. Therefore, customers had continuous access to the disclosures from the time Mosaic emailed them. *Id*. To the extent that TILA requires a creditor to make disclosures "before the credit is extended," *see* 15 U.S.C. §§ 1638(b), 1640(b), this ultimately allows a creditor to cure an untimely disclosure and there is no cause of action.

The Sixth Circuit applies § 1640(b)'s "provisions for the correction of errors" to § 1638(b)(1)'s timing requirement to foreclose liability and the recovery of damages even when the consumer receives the mandatory disclosure after consummating the transaction. *See Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 871 (6th Cir. 2003). In *Baker,* the Sixth Circuit looked to § 1640(b)'s plain language and legislative history, noting that the "subsection appear[ed] to give creditors a sixty-day window to correct *any* errors made as long as certain requirements are made"

and concluded that the plaintiff could not recover damages for an alleged violation of § 1638(b)(1)'s timing requirement where the creditor provided the retail installment contract to the consumer after the transaction but within the sixty-day window. *Id.* (emphasis added). Therefore, the defendants complied with § 1640(b) and the plaintiff was not entitled to actual *or* statutory damages. *Id.*

Here, there is no dispute that Mosaic provides borrowers with the necessary TILA disclosures during the loan application process. Plaintiffs' only allegation is that Solar Titan interfered with borrowers' ability to review them. *See* SAC ¶ 545 (alleging " those who cannot see their TILA disclosure before consummation have no opportunity to decline the extension of credit"). However, even if that were true, Mosaic has not violated TILA. Both the statute and *Baker* establish that so long as Mosaic provided the disclosure within sixty days, Mosaic complied with § 1640(b)'s provisions for the correction of errors. *Baker*, 349 F.3d at 871. Thus, even if Solar Titan interfered with customers' ability to review Mosaic's TILA disclosure at the time that they signed them, Plaintiffs are not entitled to any relief.[17]

### 4. Plaintiffs' TILA Claim as It Relates to "Dealer Fees" Fails Because The Charges Were Correctly Handled under TILA/ Regulation Z.

TILA requires creditors to "meaningful[ly] disclos[e]," among other things, the "amount financed" and the "finance charge" associated with any consumer credit transaction. 15 U.S.C. §§ 1601(a), 1638. A "finance charge" is "the cost of consumer credit as a dollar amount," which includes "any charge payable directly or indirectly by the consumer and imposed directly or

---

[17] In the First Amended Complaint, Plaintiffs alleged that Mosaic violated Regulation Z, which provides that consumers have a right to rescind a transaction and prohibit the lender from disbursing funds where the lender acquires a security interest in real property. *See* 12 C.F.R. § 1026.23(a)(1). It appears that Plaintiffs removed these allegations in the SAC, which do not apply because Mosaic does not take a security interest in real property. Mosaic reserves the right to address this argument in its Reply should the Plaintiffs raise it in their response brief.

indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a).

Plaintiffs allege that Mosaic violated TILA by failing to disclose certain fees Solar Mosaic charged Solar Titan on some loans because Solar Titan allegedly improperly inflated the cash price of the systems to cover those fees. SAC ¶¶ 547–51. Plaintiffs contend that because "Mosaic charges Solar Titan dealer fees, and Solar Titan increases the price it charges consumer for the solar systems," *id.* ¶ 548, Mosaic then "withdraws the amount of the dealer fee from consumers' loan proceeds," *id.* ¶ 550, but fails to disclose the "dealer fee, which constitutes a finance charge," *id.* ¶ 551.

These allegations fail to state a claim for violations of TILA's disclosure requirements because the dealer fees at issue were "seller's points"—which are categorically *not* finance charges under section 1024.4(c)(5). Seller's points are charges imposed by a creditor on a non-creditor for providing credit to a buyer, and are a ubiquitous feature of consumer lending across a variety of industries. 12 C.F.R. § 1026.4(c)(5). In fact, seller's points are so common in consumer finance transactions that Regulation Z expressly provides rules for how they should be addressed. Section 4(c)(5) of Regulation Z, 12 C.F.R. § 1026.4(c)(5), expressly provides that "[s]eller's points" ***are not*** **"**finance charges." Rather, as the Official Staff Interpretation of Paragraph 4(c)(5) explains:

> The seller's points mentioned in § 1026.4(c)(5) include any charges imposed by the creditor [here, Mosaic] upon the noncreditor seller of property [here, Solar Titan] for providing credit to the buyer or for providing credit on certain terms. ***These charges are excluded from the finance charge even if they are passed on to the buyer, for example, in the form of a higher sales price.***[18]

---

[18]  In this case, the seller's points paid to Mosaic were <u>not</u> passed on to the buyer of the solar system because Mosaic's Dealer Agreement prohibits the solar sellers from passing on the cost of the seller's points to the buyers. Ex.4 § 3.1 (Titan "agrees that it will not require, through a price increase, additional fee, surcharge, or otherwise, any Customer to pay any fees in connection with obtaining a Loan through the Financing Program (including seller's points. . .").

CFPB, *Supplement I to Part 1026—Official Interpretations, Comment for 1026.4 - Finance Charge* (emphasis added) ("*Supplement I to Part 1026*").

Here, the Mosaic Loan Agreements all identify the Finance Charge ("the dollar amount the credit will cost you"). In addition, although not required by TILA, the Mosaic Loan Agreements disclose the potential use of seller's points:

> To incent us to make the Loan to you at the APR shown in the Truth in Lending Act Disclosure ("TILA Disclosure"), the Installation Contractor has agreed that we can satisfy the Amount Financed on your behalf by disbursing less than the Amount Financed. Regardless of the amount paid to the Installation Contractor, you agree to be bound to repay the full Amount Financed amount set forth in the TILA Disclosure.

Ex.1 at 7. Further, the Dealer Agreement makes clear that these "dealer fees" are, in fact, seller points:

> 2.1.2. Program Administrator may require Participant to pay a fee equal to a percentage of the Loan Amount for each Loan ("**Seller's Points**"). The Seller's Points are "seller's points" for purposes of the Truth in Lending Act and Regulation Z promulgated thereunder. Participant agrees to accept the Loan Amount, minus the applicable Seller's Points and any outstanding amounts owed by Participant to Program Administrator or any Financing Provider under the Mosaic Program Documents (the "**Net Loan Amount**") in full satisfaction of the amount owed by the applicable Customer for an Eligible Product under the Purchase Agreement. Subject to <u>Section 4</u>, Program Administrator, on behalf of the applicable Financing Provider, will pay Participant the Net Loan Amount in installments within ten (10) business days following the achievement of certain Funding Stages as notified by Program Administrator to Participant (the "**Funding Schedule**"). Program Administrator reserves the right, in its sole discretion, to change Seller's Points, the Funding Schedule and any other payment terms upon written notice to Participant in accordance with Section 1.4 of the Participation Agreement.

Ex.4 at 3 (§ 2.1.2).

In this case, the seller's points paid to Mosaic were <u>not</u> passed on to the buyers of the solar systems because the Dealer Agreement prohibited Solar Titan from passing on the cost of the seller's points to the homeowners. Ex. 4 at 4 (§ 3.1) (Titan "agrees that it will not require, through a price increase, additional fee, surcharge, or otherwise, any Customer to pay any fees in connection with obtaining a Loan through the Financing Program (including seller's points. . .")). However, because seller's points are not (and cannot be) "finance charges" under Regulation Z

"even if they are passed on to the buyer, for example, in the form of a higher sales price," Plaintiffs' assertion that these amounts constituted an "undisclosed Finance Charge" is incorrect—even if Solar Titan violated the Dealer Agreement and passed some charges along. SAC ¶ 551; *see* Supplement I to Part 1026—Official Interpretations, Comment 4(c)(5)-1.

Plaintiffs' allegations that the amount financed was inflated and thus, erroneously disclosed, fare no better. Creditors must calculate the Amount Financed per TILA's and Regulation Z's requirements. Under TILA and Regulation Z, the Amount Financed is the principal loan amount (or cash price) plus any other amounts that are financed by the creditor and not part of the finance charge, less down payments and prepaid finance charges. *See* 15 U.S.C. § 1638(a)(2)(A); 12 C.F.R. § 1026.18(b). Because seller's points are *not* down payments or prepaid finance charges, they *cannot* be subtracted from the Amount Financed—to do so would be a violation of TILA and Regulation Z. *See id.* Thus, Mosaic has not violated TILA as Plaintiffs assert, and this claim should be dismissed.

### F. The Complaint Does Not State a Violation of the CFPA (Count 1).

Count 1 must be dismissed for two reasons. First, Congress expressly excluded *merchants*, like Solar Titan, from coverage under the CFPA. 12 U.S.C. § 5517(a)(1). Specifically, "a person who is a merchant, retailer, or seller of any nonfinancial good or service and is engaged in the sale or brokerage of such nonfinancial good or service" is not subject to the Act. 12 U.S.C. § 5517(a)(1). This carve-out is equally applicable to State Attorneys General seeking to enforce the CFPA. *Id.* at (a)(2)(E). As such, Plaintiffs' claims cannot survive dismissal.

Second, Count 1 contains 127 paragraphs (and the remainder of the SAC by reference) yet still fails to allege facts with specificity that would plausibly show that Mosaic, *as a lender subject to the CFPA*, engaged in practices that were unfair, deceptive, or abusive. Moreover, Plaintiffs

proclaim that Counts 2, 4, 5, 6, and 7 somehow "also constitute unfair, deceptive or abusive acts and practices." SAC ¶ 521. None are sufficient to state a claim against Mosaic.

The purpose of the CFPA is "to implement and, where applicable, enforce Federal consumer financial law consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products and services and that markets for consumer financial products and services are fair, transparent, and competitive." 12 U.S.C. § 5511(a). Consistent with this purpose, the CFPA authorizes regulatory action to prevent a "covered person" from "engaging in an unfair, deceptive, or abusive act or practice . . . in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." *Id.* § 5531. Plaintiffs have failed to allege a violation of the CFPA.

### 1. CFPA Does Not Govern Solar Titan's Conduct as a Merchant of Nonfinancial Goods.

Plaintiffs attempt to hold Mosaic liable for Solar Titan's conduct under the CFPA. However, this theory fails as a matter of law because Solar Titan's activities as a merchant are not subject to the CFPA.

Specifically, Plaintiffs claim that Mosaic is liable for Solar Titan's conduct in the sale of solar systems either because: (1) Solar Titan is a "related person" under the CFPA and therefore a "covered person," SAC ¶ 400; or (2) Solar Titan is Mosaic's agent, *id.*.[19] To the extent that Plaintiffs seek to hold Mosaic liable under the CFPA for Solar Titan's conduct, this claim fails

---

[19] Plaintiffs also say in passing that Mosaic and Solar Titan "engaged in a conspiracy and common course of conduct" to "use unlawful sales acts and practices to sell solar systems and installation services." SAC ¶¶ 412, 413. Plaintiffs have not pled the elements of conspiracy: common design between two or more persons; accomplished by concerted action and an unlawful purpose; an overt act in furtherance; and resulting injury. *Orlowski v. Bates*, No.2:11-CV-01396-JPM, 2015 WL 1485980, at *10 (W.D. Tenn. Mar. 31, 2015). When conspiracy sounds in fraud, it must "comport with the standards of Rule 9(b)". *Id.* Plaintiffs do not appear to allege conspiracy seriously, and so Mosaic will not address it further, but reserves all rights to address the argument on reply.

because (1) Solar Titan's merchant conduct is expressly exempt from the CFPA; and (2) Solar Titan is not a "related person," "service provider," or "covered person" as defined by the statute.[20] *See* 12 U.S.C. § 5481.

### a. CFPA Expressly Excludes Merchants Like Solar Titan.

Solar Titan's conduct in selling solar systems is expressly excluded from coverage under the CFPA. *Id.* § 5517(a)(1). Plaintiffs concede that Solar Titan is a merchant, retailer, or seller of solar energy systems and services. SAC ¶¶ 10–11. Therefore, its marketing, sale, installation or servicing of solar systems cannot form the basis of a CFPA claim.

### b. Solar Titan Is Not a "Related Person," "Service Provider" or "Covered Entity."

Solar Titan's conduct is also not subject to regulation under the CFPA because it is not a "related person" or a "service provider," and cannot be a "covered person" under any reasonable interpretation of the CFPA. An entity may qualify as a "covered person" in three ways: (1) as a direct provider of consumer financial products—loans—to its customers; (2) as a "broker" of those loans; or (3) by providing "financial advisory services" to customers. 12 U.S.C. § 5481(15)(A). The SAC does not allege that Solar Titan performed any of these functions.

The definition of "related person" applies only to: (1) directors, officers, employees, shareholders or agents of a covered person; (2) shareholders, consultants, or joint venture partners of a covered person; or (3) independent contractors of a covered person who knowingly or recklessly participate in a violation of the law. *Id.* § 5481(25). Plaintiffs do not allege facts demonstrating that Solar Titan falls within any of the three classes of "related persons." The only allegations that could support treating Solar Titan as a "related person" is the baseless assertion

---

[20] As discussed in Section IV.D, *supra*, Solar Titan is not Mosaic's agent.

that Solar Titan is Mosaic's agent, which has been addressed in Section IV.D, *supra*. Solar Titan does not have status as a related person and, therefore, is not treated as a "covered person" under the CFPA.

Likewise, Solar Titan is also not a "service provider" to whom the CFPA applies. Under the CFPA, a "service provider" must be integral to the provision of a consumer financial product or service. 12 U.S.C. § 5481(26). A "service provider" does not include a person who simply provides "a support service of a type provided to businesses generally or a similar ministerial service." *Id.* § 5481(26)(B). There are no plausible allegations in the SAC that Solar Titan participated in any way in "designing, operating, or maintaining" the consumer financial products that Mosaic offered, or processed transactions relating to the consumer financial products or services.[21] Plaintiffs seek to hold Mosaic liable for Solar Titan's merchant activities on this basis, but the statute does not provide any basis for this theory.

Moreover, Plaintiffs' attempt to hold Mosaic liable for Solar Titan's conduct renders the exemption for merchants, retailers, and sellers of non-financial goods and services under the CFPA meaningless and would subject "covered persons" to liability for conduct not regulated under the CFPA. Plaintiffs' theory would represent a significant expansion of the scope of the CFPA that is not supported by its text and was not intended by Congress.

Title 12, Section 5536 of the U.S. Code describes the limited circumstances under which a person who is not a covered entity may have liability under the CFPA: one who provides substantial assistance to a covered entity "shall be deemed to be in violation of that section to the

---

[21] While the term "processes transactions" is undefined under the CFPA, the CFPB typically considers payment processors to be involved with processing electronic transfers of funds through the Automated Clearing House. *See, e.g.*, *CFPB v. Intercept Corp.*, 3:16-cv-144, 2017 WL 3774379, at *2 (D.N.D. Mar. 17, 2017). There are no allegations that Solar Titan is in the business of processing transactions for Mosaic as the term is used in the context of the financial products and services industry.

same extent as the person to whom such assistance is provided." This language states that conduct for which "any person" can be held liable under the CFPA must be a violation of the CFPA in and of itself. Stated differently, a primary violation *by a covered person* related to a consumer financial product is a prerequisite to establish liability over a non-covered person's otherwise-unregulated conduct. Solar Titan cannot have violated the CFPA as a merchant of solar energy systems, and as such Solar Titan's conduct cannot form the primary violation upon which to predicate statutory liability. There is no reading of the CFPA that would hold Mosaic liable for Solar Titan's alleged conduct. Therefore, Count 1 should be dismissed.

**2.      The SAC Does Not Allege an Unfair Act or Practice by Mosaic.**

Under the CFPA, an act or practice is only "unfair" where: (1) "in connection with a transaction with a consumer for a consumer financial product or service"; (2) "it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers"; and (3) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1). This definition is based on the FTC Act. *See Chambers of Com. of the U.S. of Am. v. CFPB*, No.6:22-cv-00381, 2023 WL 5835951, at *9 (E.D. Tex. Sept. 8, 2023); 15 U.S.C. § 45(n). Significantly, Plaintiffs must allege that Mosaic's conduct is not just the natural cause of the alleged injury, but the proximate cause. *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 918 n.34 (S.D. Ind.) ("proximate cause is indeed a necessar[y] element of a theory of liability" under the CFPA). Plaintiffs must also allege the harm was not "reasonably avoidable"—meaning the consumer was not able to make a free and informed choice. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–69 (9th Cir. 2012).

a. **The SAC Fails to Allege Mosaic's Loan Products Caused or Were Likely to Cause Substantial Injury.**

As a preliminary matter, there are no allegations that the loan products offered by Mosaic to Solar Titan's customers were likely to or in fact caused harm in and of themselves. For example, the SAC does not allege that Mosaic charged usurious interest. This is critical because under the CFPA, conduct that is "unfair" must be "in connection with a transaction with a consumer for a consumer financial product or service." 12 U.S.C. § 5531(c)(1). Plaintiffs allege many specific facts that speak to Solar Titan's alleged misconduct, but none plausibly speak to Mosaic's conduct in connection with a transaction for a consumer financial product or service.

b. **Mosaic's Loan Disclosures Were Not Inaccurate or Misleading.**

First, Plaintiffs have failed to allege with any specificity how Mosaic's loan disclosures were unfair or that they caused or were likely to cause substantial harm. Dismissal is appropriate when a plaintiff fails to identify a specific disclosure that was required by law, but not provided. *Fisher,* No.3:11CV202-HEH, 2011 WL 2268474, at *3. Here, Plaintiffs allege Mosaic failed to disclose (a) "the total amount consumers would have to repay Mosaic," SAC ¶ 450; (b) "consumers [would have] to pay Mosaic before the solar system is operational and performing as promised," *id*. ¶ 506; (c) Mosaic would disburse "nearly the entire amount of the sale of the solar system" before the solar energy system was operational, *id*. ¶ 466; and Mosaic failed to (d) "meaningfully inform consumers about the qualifications for the Federal Tax Credit" or permit them to consult with a tax professional, *id*. ¶ 474. But, Plaintiffs concede that Mosaic made the required TILA disclosures, which defeats the claim that Mosaic's disclosure conduct was unfair. *Id.* ¶ 161.

The first three alleged disclosure violations (total repayment amount, first payment timing, and disbursement of the loan) are all contradicted by the SAC and its exhibits. The Loan Agreement discloses the total amount that a consumer would have to repay Mosaic, *see* Ex.1 at 3

(Total of Payments), and when consumers would begin repayment, *see id.* at 4 ("the estimated First Payment Date assumes you will begin making payments 3 months after the Loan Start Date. You may actually begin making payments on the earlier of 3 months. . . or 15 days after Mosaic confirms Permission to Operate."). Moreover, Mosaic also discloses the disbursement schedule to consumers.[22] Not only did Mosaic make the disclosure regarding disbursements—it did so in the complete absence of any legal duty to time or condition its disbursement of loan proceeds "for the benefit of the borrower or third parties." *In re McKenzie Fin. Ctr., LLC*, 495 F. App'x 627, 633 (6th Cir. 2012); *see also Suzich*, 2012 WL 3055991, at *1; *Taylor*, 2008 WL 4267847 (affirming summary judgment for lender on KCPA claim where plaintiffs' home remained incomplete after full disbursement of the construction loan).

Fourth, the Loan Agreement also discloses that borrowers "may [not] be eligible for a federal solar investment tax credit" and advises them to "make an independent assessment or consult with [a] tax advisor." Ex.1 at 4. This Court has previously determined that Plaintiffs are not likely to succeed on a theory that consumers were misled about their eligibility for the Federal Tax Credit. Mem. Order and Op. 7; *see also* Section IV.G.4.a, *infra*. There is nothing "unfair" about Mosaic's disclosures.

### c. Plaintiffs' Conclusory Allegations Do Not Support A Violation of the CFPA Based Upon Mosaic's Alleged Failure to Honor the Three-Day Right of Rescission.

Plaintiffs' conclusory allegations that Mosaic failed to comply with the three-day right of rescission, SAC ¶ 419, should also be rejected.

---

[22] The Mosaic Loan Agreement further provides that the consumer will be notified of the Loan Start Date in the Loan Closing Certificate, which "will be sent to you following our first disbursement of loan proceeds" and that the "Loan Closing Certificate is fully incorporated [into the Loan Agreement]." Ex.1 at 4. Plaintiffs have not attached a copy of the Loan Closing Certificate to their Complaint.

43

The SAC's factual allegations show that what Plaintiffs really contend is that Solar Titan failed to notify Mosaic of cancellations. SAC ¶¶ 66, 67, 198, 283. Remarkably, the SAC does not allege with *any* specificity a single instance of Mosaic failing to honor a cancellation request where it was properly notified.[23] For example, Plaintiffs do not allege that a specific borrower: (1) took out a loan from Mosaic; (2) provided adequate notice within the three-day cooling off period; or (3) Mosaic failed to honor a specific borrower's rescission request. The conclusory allegations are insufficient to sustain a claim for a violation of the CFPA as a matter of law.

### d. The Holder Rule Does Not Require Mosaic to Stop Collecting on Loans Whenever a Borrower Complains About a Product.

Next, Plaintiffs assert that Mosaic violated the CFPA by continuing its collection efforts after "failing to honor consumers' defenses to repayment" and by disabling or threatening to disable solar energy systems in which Mosaic holds a security interest. *See, e.g.*, SAC ¶¶ 442, 436, 513. Again, Plaintiffs use of the Holder Rule in this manner is incorrect. See Section IV.C, *supra*. Even if these allegations were true, they fail to allege a violation of the CFPA by Mosaic based upon unfair acts or practices because Mosaic's act of expecting performance from borrowers is neither unlawful nor unfair.

The Holder Rule does not obligate Mosaic to adjudicate a homeowner's complaints and unilaterally modify its contractual relationship with that homeowner. Plaintiffs' contention that lenders must pause payments and cease collecting on past-due accounts whenever a borrower complains about a merchant finds no support at law. Defendants are unable to identify a single point of authority in support of or in opposition to this novel argument.

---

[23] The SAC appears to allege a single instance of a delay between a cancellation and the cessation of monthly payments, SAC ¶ 286, but Plaintiffs admit that Mosaic honored the cancellation, *id.* ¶ 287. Plaintiffs do not allege that Mosaic failed to return the drawn payments.

44

### e. The Complaint Does Not Allege Proximate Cause.

The CFPA claim of unfair conduct also fails because the SAC does not allege that Mosaic's actions as a lender caused harm. "[P]roximate cause is indeed a necessar[y] element of a theory of liability" for an unfairness claim under 12 U.S.C. §§ 5531 and 5536. *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d at 918 n.34. It is axiomatic that *actionable* injury "must be the natural and proximate consequence of the act complained of. It is not enough if it be the natural consequence; it must be both natural and proximate." *United Food & Com. Workers Unions, Emp'rs Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1273 (11th Cir. 2000) (citation omitted) (affirming dismissal of complaint based on the doctrine of proximate cause); *see also Tenn. Trailways, Inc. v. Ervin*, 222 Tenn. 523, 529–30 (1969) (upholding directed verdict for the defendant where plaintiff failed to identify facts that showed defendant's statutory violation proximately caused the injury).

The SAC does not allege that Mosaic's acts proximately caused damage to borrowers. Indeed, Mosaic did not make any representation as to the savings borrowers might obtain by purchasing a system from Solar Titan, when consumers would receive an operational system or that a Federal Tax Credit would necessarily be available, nor did it warrant that Solar Titan's installation would be free of defect. Any alleged harms resulting from these allegations were not proximately caused by Mosaic.

### f. Plaintiffs Fail to Allege That Mosaic's Conduct Resulted in Unavoidable Consumer Harm.

Plaintiffs have not alleged any facts to show that consumers could not reasonably avoid "the substantial injury of having to start making payments to Solar Titan before their system was operational." SAC ¶ 468.

An injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it, or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact. *Davis*, 691 F.3d at 1168–69 (quoting *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365–66 (11th Cir. 1988)). Thus, in determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice. *Id*. at 1158 (quoting *FTC v. Neovi, Inc.*, 605 F.3d 1150, 1158 (9th Cir. 2010)). The requirement that a substantial injury not be reasonably avoidable preserves the default rule that consumer choice governs the free market. *See* FTC Policy Statement on Unfairness, Letter from the FTC to Hon. Wendell Ford and Hon. John Danforth, Senate Comm. On Com., Sci., and Transp. (Dec. 17, 1980).

As Plaintiffs concede, Mosaic fully disclosed the payment start date and all other relevant terms of the loan to borrowers, meaning they were free to accept or reject the loan. As detailed above at IV.E.2,   Mosaic clearly disclosed that the first payment would be due at the <u>earlier</u> of three months after Mosaic first sent money to the installer or fifteen days after permission to operate was confirmed. Moreover, Mosaic performed welcome calls to answer questions and to confirm that the borrower understood the terms of the loan. See SAC ¶ 161; Exs.1, 2.

In both Tennessee and Kentucky, consumers are charged with knowledge of the contracts they sign. *See, e.g.*, *Beasley v. Metro. Life Ins. Co.*, 229 S.W.2d 146, 148 (1950) (citing *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("contracts would not be worth the paper on which they are written" if the counterparty could simply allege he or she did not read or understand the terms of the contract before signing); *Hathaway v. Eckerle*, 336 S.W.3d 83, 89–90 (Ky. 2011) (citing *Clark v. Brewer,* 329 S.W.2d 384, 387 (Ky. 1959)) (so long as one had an opportunity to "read the contract which he signs" that person is "presumed to know its contents" and "bound by its

provisions"). Here, the content of the loan-related documents is not in dispute nor do Plaintiffs allege that signatures were obtained by fraud or under duress. The SAC is devoid of allegations that the *financial products* and services offered by Mosaic were "unfair" nor does it provide concrete examples of Mosaic failing to act consistently with their terms.

### 3. Count 1 Fails to Allege Deceptive or Abusive Acts by Mosaic as a Lender.

Plaintiffs repeat much of the same conduct alleged to be "unfair" as either "deceptive" and/or "abusive" and the assertions fail for the same reason previously discussed. In addition to complaining about loan disclosures and cancellations, Plaintiffs allege that it was "deceptive" or "abusive" to: (1) hold homeowners to the terms of the Mosaic Loan even when Solar Titan committed violations of consumer protections laws, and threatening to disable solar energy systems when the homeowner failed to make required payments, SAC ¶¶ 436–443, 513–15; (2) use "the online merchant portal and tablet to explain and provide information" to consumers about their loan obligations and failed to "properly train Solar Titan sales representatives on reviewing" the information, *id.* ¶ 456; and (3) allow "Solar Titan to only offer the Mosaic loan product" that requires consumers to make a principal payment within 18 months (an amount roughly equal to the federal tax credit) to prevent re-amortization, *id.* ¶ 491.

To state a CFPA claim based on deceptive acts, Plaintiffs must adequately allege that Mosaic engaged in "(1) a representation, omission, or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3), [that] the representation, omission, or practice is material." *CFPB v. NDG Fin. Corp.*, 15-cv-5211 (CM), 2016 WL 7188792 at *14 (S.D.N.Y. Dec. 2, 2016) (quoting *FTC v. Med. Billers Network, Inc.*, 543 F. Supp.2d 283, 303 (S.D.N.Y. 2008)). An act or practice is only abusive under the CFPA if it "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service; or . . . takes unreasonable advantage" of: (a) a lack of understanding by the consumer

47

of the "material risks, costs, or conditions" of the financial products; (b) the inability of the consumer to protect his or her interest in selecting the financial product; or (c) the consumer's reasonable reliance on a lender to act in his or her interest. 12 U.S.C. § 5531(d); *see Intercept Corp.*, 2017 WL 3774379. Once again, the offending conduct must take place with respect to a *financial* product or service. Issues relating to a non-financial product or service are not governed by the statute, and here, the SAC is devoid of facts to support a theory that Mosaic engaged in conduct that is either deceptive or abusive.

The SAC's allegations that Mosaic's loan disclosures or cancellation-related conduct were abusive or deceptive under the CFPA fail to state a claim for the same reasons that the "unfair" CFPA prong fails and Mosaic will not repeat here the detailed arguments above that proper disclosures were made and the SAC is really complaining about Solar Tian's delay in notifying Mosaic of cancellations. *See* Section F.2.c, *supra*.

### a. Mosaic's Enforcement of Its Loan Agreements Is Not Deceptive or Abusive.

Plaintiffs allege that Mosaic committed deceptive and abusive acts by "threatening to disable or disabling [consumer] solar systems because Mosaic incorrectly decided that those consumers" defaulted on their loans,[24] or otherwise continued to expect performance under the Mosaic Loan Agreement, even when Solar Titan committed alleged violations of consumer protection acts. SAC ¶¶ 436–443, 513–15. But this allegation makes no sense because Plaintiffs know that the Loan Agreements contain the Holder Rule language, which provides that borrowers can assert the claims or defenses against the holder of their loan that they can assert against Solar

---

[24] The SAC does not explain what is meant by "incorrectly decided that those consumers defaulted on their loans," and no examples of Mosaic making a mistake about a customer's payment history are provided. Further, the loans are secured by a security interest in the solar equipment and the Loan Agreement grants Mosaic the right (among other things) to disable the solar equipment in the event of a payment default. Ex. 1 at 11 (§10(a)(3)). Mosaic reserves the right to further address this on reply.

Titan in the appropriate forum. Thus, an allegation that Mosaic should have ceased its enforcement the terms of the consumer loan outside the bounds of an appropriate forum is baseless. Based on the Holder Rule language, *borrowers* can assert their claims or defenses against Solar Titan in the appropriate proceeding. The question of what remedies are available by law ***to borrowers*** who allege that Solar Titan breached its contractual duties or committed fraud is not before the Court in this case. The outcome of these individual disputes will be dependent on the facts for each customer. However, there is simply no basis for alleging that Mosaic's conduct in this regard was deceptive or abusive.

### b. Mosaic Informing a Consumer via Portal/Tablet of the Total Repayment Obligation Is Not Abusive.

Plaintiffs allege that Mosaic's practice of using "the online merchant portal and tablet to explain and provide information about consumers' total repayment obligation" and alleged failure to "train Solar Titan sales representatives on reviewing the total payment obligation" finds no support at law. *Id.* ¶ 456. Plaintiffs suggest that using electronic devices to "provid[e] consumers the information about their loan conditions and terms" is somehow abusive. *Id.* ¶ 458. The theory is without merit—especially in this digitally connected world where consumers receive much of their information from a screen. *See, e.g., Middleton*, 2022 WL 16828226 (holding that the plaintiff's signature was valid and binding notwithstanding the fact that he executed the contract on the merchant's tablet which did not permit full review of document). Indeed, at least one other court has confirmed that Mosaic's use of a tablet device to allow consumers to execute the Mosaic Loan Agreement is appropriate. *See Lojewski*, 2023 WL 5301423, at **9–12 (compelling arbitration even though consumer argued that her execution of the contract was invalid where she "was not given an opportunity to review the documents" when she used a tablet device to execute the Mosaic Loan Agreement).

### c.  Offering a Loan Product to Consumers Is Not Abusive.

Whether Mosaic "allow[ed]" Solar Titan to offer only one loan products cannot be abusive or deceptive. SAC ¶ 491. As an initial matter, these allegations are demonstrably false because Plaintiffs attach the TILA disclosure for a loan product to a Solar Titan customer that does not include the 18-month pay-down feature. *See* Ex.2. However, even assuming that Plaintiffs were correct that Solar Titan only offered consumers a single Mosaic financing option, neither the Dealer Agreement, nor statute, regulation or precedent compels Mosaic to ensure that Solar Titan offer more than one loan product to homeowners. Regardless of the number of financing options presented to the homeowner, he or she is free to accept or reject the financing, seek financing from a different lender, or reject the transaction in its entirety. This is true even if Solar Titan employed high-pressure sales tactics. *Powell v. GMAC Mortgage*, No.3:10-CV-87, 2010 WL 2133943, at *3 (E.D. Tenn. May 24, 2010) (observing that even if contract were construed as a contract of adhesion, the Court would still enforce the contract unless its terms were beyond the reasonable expectation of an ordinary person); *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 679 (Tenn. Ct. App. 2007) ("parties to a contract are under a duty to read written agreements and are thus responsible for what they sign").

### d.  Plaintiffs' CFPA Claim Is Not Assisted By "Catch-All" Allegations.

In a last-ditch effort to save its CFPA claim, Plaintiffs assert that the violations alleged in Counts 2, 4, 5, 6 and 7 also "constitute unfair, deceptive or abusive acts or practices in violation of the CFPA." SAC ¶ 521. To the extent that Plaintiffs allege that a violation of a state statute can be predicate for a CFPA violation, this is not supported by the text of the CFPA. *See* 12 U.S.C. § 5481(12). To the extent that this is a catchall to capture conduct alleged in Counts 2 and 4–7, this effort fails for the same reasons that Counts 2 and 4–7 independently fail.

### G.    The TCPA and KCPA Claims Fail as a Matter of Law (Counts 4–5).

Plaintiffs fail to state a claim against Mosaic under the TCPA and KCPA.[25] The TCPA makes it unlawful to engage in certain unfair or deceptive acts affecting the conduct of any trade or commerce. Tenn. Code § 47-18-104(b). The TCPA enumerates 62 unlawful acts or practices, including a catchall provision for conduct that is "deceptive to the consumer or to any other person." *Id.* § 47-18-104(b)(27). This catchall provision is the only violation of the TCPA alleged as to Mosaic. SAC ¶ 600.[26] The KCPA also makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.170(1). The term "unfair" means "unconscionable." *Id.* § 367.170(2).

These claims fail because: (1) the TCPA does not apply to lenders like Mosaic; (2) Plaintiffs do not allege any "act or practice" that Mosaic, as opposed to Solar Titan, committed; and (3) again, Plaintiffs cannot enforce private contracts.

### 1.    The TCPA Does Not Apply to Lenders.

The plain language of the TCPA and related precedent make it clear that lending is not "trade," "commerce," or a "consumer transaction" subject to the TCPA. Tennessee courts have found that "merely" financing a transaction does not fall under the purview of the TCPA. *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 610 (Tenn. Ct. App. 2001) (affirming dismissal of a TCPA claim in part because the defendant was "merely a financing lessor" who did not offer goods for sale or distribution); *Avery Outdoors LLC v. Peak Rock Capital, LLC*, No.16-CV-2229-SHL-TMP, 2017 WL 5186246, at *7 (W.D. Tenn. Jan. 23, 2017) (denying

---

[25]   While Mosaic contends that the KCPA claims are not within this Court's jurisdiction and venue is improper under the KCPA, should the Court reach the merits, these claims still fail.

[26]   Plaintiffs also allege a violation of Tenn. Code § 47-18-104(a), which is an uncharged criminal misdemeanor violation that is not properly before the Court in this civil action.

amendment to TCPA claim on basis of futility because conduct of the holder of a promissory note did "not affect trade or commerce"); *SecurAmerica Bus. Credit v. Southland Transp. Co., LLC*, No.W2015-00391-COA-R3-CV, 2016 WL 1292087, at *5–6 (Tenn. Ct. App. Apr. 1, 2016) (holding that lender's actions did not impact conduct of any "trade or commerce" within the meaning of the TCPA).

In *Messer Griesheim*, the plaintiff alleged a TCPA violation by a financing-lessor based upon the conduct of financing-lessor's co-defendant. 45 S.W.3d at 609–10. The court rejected the plaintiffs' theory of TCPA liability where the alleged representations were made by the co-defendant. *Id*. at 610. The court held that the financing-lessor was not subject to the TCPA because it "did not offer the [product] for sale or distribution." *Id.* Therefore, the financing-lessor could not be held liable under the TCPA. *Id.*

The Court should reach the same conclusion as in *Messer Griesheim*: Mosaic cannot be held liable as a lender for products that were advertised, sold, distributed, and installed by Solar Titan. The TCPA claim is predicated upon *Solar Titan* allegedly "lying to consumers" about the capabilities of the solar energy systems. SAC ¶ 598. There are no allegations that Mosaic sold, advertised, or distributed Solar Titan's products or represented that those products were "of a certain standard, quality, or grade." *Messer Griesheim*, 45 S.W.3d at 610. As a lender, Mosaic is not subject to the TCPA.

### 2. Alleged "Knowledge" Alone Is Insufficient to State a Claim.

Plaintiffs seek to hold Mosaic liable under the TCPA and KCPA for allegedly knowing that Solar Titan was lying to consumers about the capabilities of the solar system and that they were not performing installations as represented. SAC ¶¶ 598, 632. The SAC is fatally vague and conclusory with respect to what Mosaic allegedly knew and when. *See, e.g.*, *id.* ¶ 598 (stating in a conclusory fashion that "Mosaic knew . . . that the Solar Titan defendants were lying to consumers

about the capabilities of the solar systems being sold."). The SAC does not even allege basic facts as to *when* Mosaic knew of or should have known of Solar Titan's alleged conduct.

Further, even if Mosaic knew about the misrepresentations, neither the TCPA nor KCPA impose liability for merely having knowledge of a third party's misrepresentations. *See* Tenn. Code § 47-18-104(b) (knowledge is not among the 62 enumerated violations). Merely having knowledge of a third party's conduct is not engaging in trade or commerce as defined by the TCPA or KCPA. *Id.* § 47-18-103(20); Ky. Rev. Stat. § 367.110(2); *see Downs v. Ky. Lottery Corp.*, No.2011-CA-001074-MR, 2012 WL 4839541, at \*5 (Ky. Ct. App. Oct. 12, 2012) (claims that do not concern the purchase of goods and services cannot be brought under the KCPA). Thus, Mosaic is not liable under the TCPA or KCPA.

### 3. Continued Collection After Consumer Complaints Regarding a Third Party Does Not Constitute Violations of the TCPA or KCPA.

Plaintiffs' theory that Mosaic's continued collection efforts, despite knowledge of consumer complaints against Solar Titan, violated the TCPA and KCPA by way of ratification is not supported by the law. SAC ¶¶ 597, 637. A third-party creditor is not required to cancel a loan merely because the borrower complains about the merchant or the purchased product or service.

As noted in Section IV.G.2, knowledge of Solar Titan's misrepresentations is insufficient to state a claim under the TCPA and KCPA. And as addressed in Section IV.D.5, Mosaic did not ratify Solar Titan's conduct. Solar Titan's misconduct is not ratifiable because Mosaic did not control Solar Titan, and Solar Titan did not purport to act on Mosaic's behalf. Moreover, the fact that a consumer directs a complaint to Mosaic regarding an issue with alleged misrepresentations by Solar Titan or the quality of the product provided by Solar Titan does not trigger a legal obligation on the part of Mosaic to immediately cancel the consumer's loan. There is no authority

requiring Mosaic to compromise its own contractual rights due to unsubstantiated alleged misconduct of the merchant.

Considering a similar question under different circumstances, a court in Pennsylvania found consumer protection laws expressly do *not* require lenders or creditors to bear the responsibility of a merchant's misrepresentations, even where the creditor was aware of the consumer's claims. *U.S. Bank N.A. v. Detz*, 75 Pa. D. & C.4th 535, 541–42 (Pa. C.P. Ct. Lancaster Cnty. 2005) (holding that, absent statutory authority, consumer had no right to compromise contractual rights of a creditor while she pursued a claim against the manufacturer). Moreover, this lawsuit is not brought by consumers, but rather the Attorneys General of Tennessee and Kentucky, neither of which entered into an agreement with Solar Titan or Mosaic.

Here, as in *Detz*, there is no statutory authority that "allows a consumer to compromise the contractual rights of a creditor . . . by refusing to pay for" a product because of a claim against the merchant. *Id.* at 542 (citation omitted). Given that there is no authority that would require Mosaic to cancel consumers' payments under the circumstances described in the SAC, its failure to do so cannot constitute a violation of the TCPA or KCPA.

### 4. Mosaic Is Not Liable for Solar Titan's Alleged Misrepresentations.

Mosaic is not liable for Solar Titan's alleged misrepresentations relating to the federal tax credit, capabilities of the solar system, delays, or certifications because Plaintiffs do not have standing to bring claims against Mosaic based on the Holder Rule. Regardless, Mosaic made all required disclosures to consumers in its loan documents. *See Honeycutt v. First Fed. Bank*, 278 F. Supp. 2d 893, 896–97 (W.D. Tenn. 2003) (finding no TCPA violation where the mortgage approval letter set forth clear conditions for the issuance of a mortgage); *Signature Designs Grp., LLC v. Ramko*, No.M2011-01086-COA-R3-CV, 2012 WL 2519037, at *14 (Tenn. Ct. App. June

29, 2012) (finding no error in dismissing TCPA claim where home contractor disclosed all potential costs and therefore did not act deceptively).

### a. Mosaic Adequately Disclosed Tax Credit Eligibility.

Plaintiffs cannot assert a TCPA or KCPA claim based on the availability of a federal tax credit. The Loan Agreement included extensive disclosures about the consumer's eligibility for tax credits. Ex.1 at 4. In particular, the Mosaic Loan Agreement disclosed the following:

> **Tax Credit**
> You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any such tax credits. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. In order to determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your independent tax advisors. Additionally, if you are not eligible to receive a federal solar investment tax credit you will not be able to use the proceeds of your tax credit to make a voluntary prepayment as described below.

*Id*. In addition, the Solar Titan Home Improvement Agreement ("HIA") provided:

> Tax Credit Disclosure: As the purchaser and owner of the solar photovoltaic system, you may qualify for certain federal, state, local or other rebates, tax credits or incentives (collectively, "Incentives"). If you have any questions as to whether and when you qualify for any Incentives and the amount of such incentives, please consult, and discuss with your personal tax or financial advisor. [Installers] make no representation, warranty, or guaranty as to the availability or amount of such Incentives. . . .

> Rebates and incentives: Ideal Horizon Benefits, LLC/Solar Titan USA and buyer(s) agree that any rebates tax credits and power company incentives are not guaranteed by Ideal Horizon Benefits, LLC/Solar Titan USA all items known to exist to the best of our knowledge will be presented but it is the responsibility of the buyer(s) to ensure incentives are available and they will qualify. There are qualifications for all programs and if the buyer(s) do not qualify or if the item is unavailable at the time of application, Ideal Horizon Benefits, LLC/Solar Titan USA will not be held liable.

Ex.7 at 142, ECF No.10-4. Further, Solar Titan's "anyway money" sheet allegedly used during sales presentations referred customers to a government website: "What is a Tax Credit? Refer to Energy.gov[.]" SAC ¶ 119. Thus, the Mosaic Loan Agreement and HIA made clear that eligibility for a federal tax credit is not guaranteed and urged customers to seek independent tax advice.

Therefore, as the Court has concluded, a reasonable consumer could not rely on these statements against Solar Titan and thus they cannot be used to hold Mosaic, the lender, liable. *See* Mem. Order and Op. 7, ECF No.78.

### b. The Possibility of Delay & Timing of First Loan Payment Were Disclosed.

Mosaic disclosed when repayment would begin in the Loan Agreement where it states that the "first payment . . . is due and payable on . . . the earlier of: (i) fifteen (15) days after permission to operate your Solar Equipment ("Permission to Operate") is confirmed; or (ii) 3 months after the date we first send funds to your Installation Contractor ("Loan Start Date")." Ex.1 at 7 (§ 3.a.).

Mosaic is not liable for Solar Titan's alleged misrepresentations. But even if the Court were to entertain the theory, Solar Titan's HIA disclosed a possibility of a delay in installation:

> Delay/Unknown conditions: Events beyond the control of the contractor, such as power company delays, homeowner Association [sic] delays, acts of nature, labor strikes, act of God, explosion, action of the elements, war, invasion, insurrection, riot, mob violence, sabotage, general shortage of labor, equipment, materials, or supplies in the open market, failure of transportation, lock out, action of labor unions, condemnation, requisition, order of government of civil or naval authorities, pandemics, inclement weather, terrorism, buyer(s) inability to qualify for or obtaining financing, or other events resulting and delays in performance of this agreement do not constitute abandonment or breach by Ideal Horizons Benefits, LLC/Solar Titan USA and are not included in the circulation time frames for performance by Ideal Horizon Benefits, LLC/Solar Titan USA.

Ex.7 at 142.

### c. Mosaic is Not Liable for Solar Titan's Representations.

Mosaic is not liable for Solar Titan's representations about solar energy performance or cost savings. But even if the Court entertains some theory of derivative or vicarious liability, Solar Titan's HIA provided:

> All examples and recommendations by energy sales consultants are explicitly deemed as an example and figures. There are many variables and usage, weather patterns, electricity company programs, etc. Buyer(s) in no capacity shall hold Ideal Horizon Benefits, LLC/Solar Titan USA liable for actual production of the system or expectation.

*Id.*

Solar Titan's alleged misrepresentations pertaining to licensing, certifications, and affiliations are also not actionable. Plaintiffs do not allege that consumers relied on Solar Titan's website or social media platforms before entering the HIA, or even that consumers would have appreciated the significance of that information. Under these circumstances, Solar Titan's alleged conduct did not constitute a material representation or omission that was likely to mislead a reasonable consumer to their detriment. Moreover, Solar Titan's alleged conduct does not support a viable legal claim against Mosaic, which necessitates dismissal of Counts 4 and 5.

**H.**     **The THSSA Claim Fails (Count 6).**

Plaintiffs allege Solar Titan violated the THSSA, Tenn. Code §§ 47-18-701 *et seq.*, by failing to include the "buyer's right to cancel" notice in its installation agreement, SAC ¶ 650, and then attempt to hold ***Mosaic*** liable for Solar Titan's omission solely under the Holder Rule, *id.* ¶ 662. Even if the Plaintiffs were allowed to enforce the Holder Rule language (which they are not), the THSAA claim fails as a matter of law for three reasons: (1) Mosaic provided notice of the right to cancel; (2) Mosaic cannot be held liable as a "seller" under the THSSA; and (3) Tennessee's attempt at enforcement is not feasible.

**1.**     **Mosaic Provided Notice of the Right to Cancel.**

Under the THSSA, the buyer has a right to cancel the sale for three business days after the date of the agreement. Tenn. Code § 47-18-703(1). The written agreement must contain a "readily legible statement" describing the buyer's right to cancel that is consistent with the specific requirements of the THSSA. *Id.* § 47-18-704(a)–(b).

However, a seller may also conform with the THSSA by complying with "federal statutes, rules, or regulations governing the form of notice of the right of cancellation in door-to-door sales." *Id.* § 47-18-704(c); *see* 16 C.F.R. § 429.1; *cf. Flodman v. Robinson*, 864 N.W.2d 716, 724 (Neb.

Ct. App. 2015) ("[T]he language in [defendant]'s standard notice of cancellation complies with Nebraska law" because it adopts the language from the FTC's rule).

Federal regulation concerning the cooling-off period for home solicitation sales requires that a seller furnish the buyer with a completed copy of the agreement containing the date of the transaction, and name and address of the seller. 16 C.F.R. § 429.1(a). The three-day notice of cancellation must appear "in immediate proximity" to the signature line, and the seller must also attach a separate "notice of cancellation form" that further explains the right. *Id.* § 429.1(a)–(b).

Here, Solar Titan's HIA included the required information on the back page in close proximity to the signature line. Ex.7. The notice explained that "The Buyer(s) have the right to cancel this agreement by midnight on the third business day following the date on the front of this agreement" by sending cancellation via email or U.S. Certified mail to specific addresses provided in the notice. *Id.* at 142.

The Mosaic Loan Agreement (which listed Solar Titan's name and date of the agreement on the first page) also included a "BUYER'S RIGHT TO CANCEL" notice in close proximity to the signature block in larger, bold font, which stated verbatim the language required by the federal rule:



BUYER'S RIGHT TO CANCEL

ALL BORROWERS: You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

Ex.1 at 5–6, 17. The notice (including all state-specific notice requirements) ended right above the signature line. *Id.* at 6. The Loan Agreement also attached a separate "notice of cancellation" form that recited the language required by the federal rule. *Id.* at 17. The THSSA claim should be dismissed because customers received proper notice of their right to cancel.

**2.      Mosaic Is Not Liable Under the THSSA for Failure to Cancel Contracts.**

Mosaic cannot be liable under the THSSA because Mosaic is not a "seller" under the law. Tenn. Code § 47-18-702(5) (defining "seller" as the "seller" or "lessor"). The THSSA provides that ten days after the sale has been cancelled or revoked "the *seller* must tender to the buyer any payments made by the buyer and any note or other evidence of indebtedness." *Id.* § 47-18-705(a) (emphasis added). Mosaic is a lender, not a seller or lessor. Therefore, Plaintiffs' claim against Mosaic for violation of the THSSA fails.

**3.      Tennessee's Attempt to Enforce the THSSA Is Not Feasible.**

To the extent the THSSA is enforceable against Mosaic, enforcement through this lawsuit is inappropriate because Plaintiffs do not represent individual consumers and this Court is not able to undertake the individualized analysis necessary to establish damages under the THSSA. Specifically, Tenn. Code § 47-18-706(c) provides "[i]f the seller has performed any services pursuant to a home solicitation sale prior to its cancellation, the seller is entitled to compensation only to the extent of the fair market value for any such services performed prior to cancellation." As described in the SAC, Solar Titan installed many solar energy systems at residential properties. Because an offset is necessary in each instance where a solar energy system has been installed (regardless of the system's operational status), it is impossible for the Plaintiffs to act on behalf of all consumers in a consolidated manner. Instead, consumers must bring their claim, and the trier of fact must make an individualized determination of the damage to each consumer based on what, if any, services were provided to them. *Laymance v. Vaughn*, 857 S.W.2d 36, 37 (Tenn. Ct. App. 1992) (upholding award that allowed an offset for the "fair cash market value of services performed before cancellation"). Because Tennessee's suit makes this impossible, the State's attempt to enforce the THSSA is defective, and the claim should be dismissed.

59

## I. __The KHSSA Claim Fails (Count 7).__

Plaintiffs also seek to hold Mosaic liable for Solar Titan's alleged violation of the KHSSA, Ky. Rev. Stat. § 367.410 *et seq.* Plaintiffs similarly claim that the Solar Titan HIA does not contain the legally compliant buyer's right to cancel notice. SAC ¶ 683. Plaintiffs further allege that the Loan Agreement did not contain the buyer's right to cancel notice. *Id.* ¶ 689. However, as explained above, the Agreement contained the required language and therefore Plaintiffs' KHSSA claim fails. Ex.1 at 5–6, 17.

Under the KHSSA, for home solicitation sales, the buyer may generally cancel a sales contract within three business days of the date of the agreement pursuant to prescribed notice obligations that must appear in the contract. Ky. Rev. Stat. §§ 367.420(1), 367.430(1)-(2). However, the Kentucky Attorney General's office has expressly stated that "if a business complies with the notice provision of the Federal Trade Commission trade regulation rule involving a home solicitation, such compliance would be interpreted by Kentucky courts to be in substantial compliance with the Kentucky law, thereby making any dual notice provision unnecessary." Ex.8, Ky. Att'y Gen. Op. 74-729 at 3 (1974); Ex.9, Ky. Att'y Gen. Op. 92-41 at 3–4, 8 (1992). As discussed above, the buyer's right to cancel notice in the Mosaic Loan Agreement fully complied with federal law. Thus, Plaintiffs' KHSSA claims against Mosaic fail.

## V. __CONCLUSION__

For the foregoing reasons, the SAC should be dismissed.

60

Respectfully submitted,

**FROST BROWN TODD LLP**


/s/ *Tanya Bowman*
Tanya Bowman, KY Bar No. 89772
(Admitted *Pro Hac Vice*)
Hannah Catherine Lackey, TN BPR No. 39345
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
(615) 251-5550 Telephone
(615) 251-5551 Facsimile
tbowman@fbtlaw.com
hlackey@fbtlaw.com

**SHEPPARD   MULLIN   RICHTER   &
HAMPTON LLP**

/s/ *Robert J .Guite*
Robert J. Guite
(Admitted *Pro Hac Vice*)
Shannon Petersen
(Admitted *Pro Hac Vice*)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 774-3176 Telephone
(415) 403-6014 Facsimile
rguite@sheppardmullin.com
spetersen@sheppardmullin.com

**TROUTMAN   PEPPER   HAMILTON
SANDERS LLP**

/s/ *Amy P. Williams*
Amy Williams
(Admitted *Pro Hac Vice*)
301 S. College Street, 34th Floor
Charlotte, NC 28202
(704) 998-4050 Telephone
Amy.Williams@troutman.com

Michael Yaghi
(Admitted *Pro Hac Vice*)
5 Park Plaza, Suite 1400
Irvine, CA 92614
(949) 622-2735 Telephone
Michael.Yaghi@troutman.com

Ryan J. Strasser
(Admitted *Pro Hac Vice*)
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1478 Telephone
Ryan.Strasser@troutman.com

*Attorneys for Solar Mosaic LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, I electronically filed the foregoing document with the clerk of the court by using CM/ECF system. I further certify that Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

*/s/ Amy P. Williams*
Amy Williams