UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* | ) | |
| JONATHAN SKRMETTI, ATTORNEY | ) | |
| GENERAL and REPORTER, and | ) | |
| COMMONWEALTH OF KENTUCKY, *ex rel.* | ) | 3:23-CV-00046-DCLC-JEM |
| RUSSELL COLEMAN, ATTORNEY | ) | |
| GENERAL, | ) | |
| | ) | |
| Plaintiffs, | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| v. | ) | |
| | ) | |
| IDEAL HORIZON BENEFITS, LLC d/b/a | ) | |
| SOLAR TITAN USA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO SOLAR MOSAIC, LLC'S MOTION TO DISMISS

STATE OF TENNESSEE
Office of Tennessee Attorney General

Alicia Daniels-Hill
*Assistant Attorney General*
David McDowell
*Deputy Attorney General*
Kelly Walker
*Assistant Attorney General*
Rainey Lankford
*Assistant Attorney General*

COMMONWEALTH OF KENTUCKY
Office of Kentucky Attorney General

Paul Fata
Assistant Attorney General
(Admitted *Pro Hac Vice*)
Lyndsey Antos
Assistant Attorney General
(Admitted *Pro Hac Vice*)

i

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................ 5

   I.   THIS COURT HAS PERSONAL JURISDICTION OVER MOSAIC AS TO THE COMMONWEALTH'S FEDERAL AND STATE LAW CLAIMS. ...................... 5

   II.   THIS COURT IS THE PROPER VENUE FOR KENTUCKY'S CFPA AND KCPA COUNTS. ........................................................................................... 10

   III.   TENNESSEE CAN PURSUE RELIEF FOR CONSUMERS OUTSIDE OF TENNESSEE. ........................................................................................... 15

   IV.   PLAINTIFFS SUFFICIENTLY PLEAD THAT MOSAIC VIOLATED THE CFPA. ...................................................................................................... 16

   V.   PLAINTIFFS ADEQUATELY PLEAD THAT MOSAIC VIOLATED THE TRUTH IN LENDING ACT'S FINANCIAL DISCLOSURE REQUIREMENTS. ...................................................................................... 23

   VI.   PLAINTIFFS STATE A VALID CLAIM UNDER THE TCPA AND KCPA..... 29

   VII. TENNESSEE HAS ADEQUATELY PLED MOSAIC'S VIOLATIONS OF THE THSSA. .................................................................................................. 32

   VIII.THE COMMONWEALTH HAS ADEQUATELY PLED MOSAIC'S VIOLATIONS OF THE KHSSA. ............................................................... 37

   IX.   PLAINTIFFS HAVE ADEQUATELY PLED THAT SOLAR TITAN ACTED AS MOSAIC'S AGENT. ............................................................................. 37

   X.  THE HOLDER RULE APPLIES IN THIS CASE. ...................................... 52

CONCLUSION ...................................................................................................... 60

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*,
458 U.S. 592 602, 607 (1982)...................................................................57

*Am. Greetings Corp. v. Cohn*,
839 F.2d 1164 (6th Cir. 1988) ...................................................................4

*Anderson Bros. Ford v. Valencia*,
452 U.S. 205 (1981)...........................................................................25, 27

*Avery Outdoors LLC v. Peak Rock Cap., LLC*,
No.16-CV-2229-SHL-TMP, 2017 WL 5186246 (W.D. Tenn. Jan. 23, 2017) .......................30

*Baker v. Sunny Chevrolet, Inc.*,
349 F.3d 862 (6th Cir. 2003) .............................................................23, 26

*Beard v. Worldwide Mortg. Corp.*,
354 F. Supp. 2d 789, 2005 WL 281367 (W.D. Tenn. 2005) ...................................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................4

*Bells Banking Co. v. Jackson Ctr.*,
938 S.W.2d 421 (Tenn. Ct. App. 1996)........................................................47

*Com. ex rel. Beshear v. ABAC Pest Control, Inc.*,
621 S.W.2d 705 (Ky. Ct. App. 1981) .........................................................59

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ................................................................28

*Blackwell as Tr. of Gary Blackwell Revocable Living Tr. v. Tennessee Valley
Auth.*,
622 F. Supp. 3d 543 (W.D. Ky. 2022) ........................................................11

*Bowman v. Benouttas*,
519 S.W.3d 586 (Tenn. Ct. App. 2016)........................................................42

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
327 F.3d 472 (6th Cir. 2003) .................................................................5

*Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*,
617 S.W.3d 792 (Ky. 2020) ..................................................................13

iii

*Brown v. Vivint Solar, Inc.*,
    No. 8:18-cv-2838-T-24, 2020 WL 1332010 (M.D. Fla. 2020)................................39

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................................6

*CFPB v. Intercept Corp.*,
    3:16-cv-144, 2017 WL 3774379 (D.N.D. Mar. 17, 2017)................................17, 18

*Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*,
    8 S.W.3d 48 (Ky. Ct. App. 1999) ........................................................................14

*Chapman v. Tristar Prod., Inc.*,
    940 F.3d 299 (6th Cir. 2019) .................................................................57, 58, 59, 60

*Chrysler Credit Corp. v. Barnes*,
    126 Ga. App. 444 (1972) ......................................................................................41

*Coleman v. General Motors Accept. Corp.*,
    220 F.R.D. 64 (M.D. Tenn. 2004) .......................................................................39

*Consumer Fin. Prot. Bureau v. Gordon*,
    819 F.3d 1179 ......................................................................................................31

*Cont'l Cas. Co. v. Theraco, Inc.*,
    437 S.W.3d 841 (Tenn. Ct. App., 2014)..........................................................42, 46

*Cornist v. B.J.T. Auto Sales, Inc.*,
    272 F.3d 322 (6th Cir. 2001) .............................................................................27, 39

*Couch v. Nat. Res. & Env. Prot. Cabinet*,
    986 S.W.2d 158 (Ky. 1999) .................................................................................38

*CSX Transp., Inc. v. First Nat. Bank of Grayson*,
    14 S.W.3d 563 (Ky. Ct. App. 1999) ....................................................................42

*Dare To Be Great, Inc. v. Com. ex rel. Hancock*,
    511 S.W.2d 224 (Ky. 1974) .................................................................................32

*Davenport v. State Farm Mut. Auto. Ins.*,
    756 S.W.2d 678 (Tenn. 1988)................................................................................8

*Dyersburg Fam. Walk-In Clinic, Inc. v. Tennessee Dep't of Fin. & Admin.*,
    No. 1:20-CV-1280-STA-JAY, 2021 WL 1566083 (W.D. Tenn. Apr. 21, 2021)...................12

*E.E.O.C. v. FPM Grp., Ltd.*,
    657 F. Supp. 2d 957 (E.D. Tenn. 2009) ................................................................4

iv

*In re Edmond*,
    934 F.2d 1304 (4th Cir. 1991) ........................................................................57

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002).........................................................................................56

*Emergency Med. Care Facilities*, *P.C.* v. *BlueCross BlueShield of Tennessee*, *Inc.*,
    No. 115CV01014JDBEGB, 2016 WL 7429256 (W.D. Tenn. Apr. 15, 2016) .......36

*Engler v. Arnold*,
    862 F.3d 571 (6th Cir. 2017) ....................................................................4, 27

*Equicredit Corp. of Am. v. Jackson*,
    No. 3 MA 191, 2004 WL 2726115 (Ohio App. 7th 2004) ....................................33

*First of Mich. Corp. v. Bramlet*,
    141 F.3d 260 (6th Cir. 1998) ........................................................................12

*Ford Motor Co. v. Mayes*,
    575 S.W.2d 480 (Ky. Ct. App. 1978) ............................................................32

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021).................................................................................7, 8, 32

*FTC v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014) ........................................................................22

*Gomberg v. Shosid*,
    No. 1:05–cv–356, 2006 WL 1881229 (E.D. Tenn. July 6, 2006)...........................4

*Gone to the Beach, LLC v. Choicepoint Serv., Inc.*,
    434 F.Supp.2d 534 (W.D. Tenn. 2006)..........................................................4, 12

*Grant v. Bill Walker Pontiac–GMC, Inc.*,
    523 F.2d 1301 (6th Cir. 1975) ......................................................................42

*Harber v. Bank of Am., N.A.*,
    274 S.W.3d 649 (Tenn. Ct. App. 2008) ................................................48, 50, 51

*Heinz v. Driven Auto Sales, LLC*,
    603 S.W.3d 890 (Mo. App. Div. 2020) ..........................................................55

*Hussman Refrigeration, Inc. v. South Pittsburg Assocs.*,
    697 S.W.2d 588 (Tenn. Ct. App. 1985) .........................................................38

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) .......................................................................9, 10

v

*Invisible Fence, Inc. v. Fido's Fences, Inc.*,
  687 F. Supp. 2d 726 (E.D. Tenn. 2009) .................................................................. 7

*Johansen v. HomeAdvisor, Inc.*,
  218 F.Supp.3d 577 (S.D. Ohio 2016) ..................................................................... 49

*Keating v. Peterson's Nelnet, LLC*,
  615 F. App'x. 365 (6th Cir. 2015) ......................................................................... 46

*Lee v. Franklin Special Sch. District Board of Education*,
  237 S.W.3d 322,332 (Tenn. Ct. App. 2007) ......................................................... 33

*State of Tennessee ex rel. Leech v. Levi Strauss & Co*.,
  No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) .................................. 59

*Lindsey v. Trinity Commc'ns, Inc.*,
  275 S.W.3d 411 (Tenn. 2009) .........................................................................42, 46

*Lopez v. Davis*,
  531 U.S. 230, 121 S.Ct. 714 (2001) ..................................................................... 10

*Mediacom Se. LLC v. BellSouth Telecommunications, Inc*.,
  672 F.3d 396 (6th Cir. 2012) ................................................................................ 22

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*,
  45 S.W.3d 588 (Tenn. Ct. App. 2001) .............................................................29, 30

*Middleton v. T-Mobile US, Inc*.,
  No. 20-CV3276-NGGJRC, 2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022) .......... 25

*Miller v. Currie*,
  50 F.3d 373 (6th Cir. 1995) .................................................................................... 4

*Morales v. Walker Motors Sales, Inc*.,
  162 F. Supp. 2d 786 (S.D. Ohio 2000) .............................................................56, 57

*Mueller Brass Co. v. Crompton*,
  No. 2:20-cv-02496, Doc. 47 .................................................................................... 7

*Nathan v. St. Luke Hosp., Inc.*,
  No. 2003-CA-001389-MR, 2004 WL 2915344 (Ky. Ct. App. Dec. 17, 2004) ....... 46

*Nave v. Life Bank*,
  334 B.R. 586 (M.D. Tenn. 2005) ....................................................................41, 43, 44

*Neal v. Janssen*,
  270 F.3d 328 (6th Cir. 2001) .................................................................................. 7

vi

*Ocean Acc. & Guarantee Corp. v. Milford Bank*,
    33 S.W.2d 312 (Ky. 1930) .................................................................................13

*Pennsylvania by Shapiro v. Mariner Fin., LLC*,
    No. CV 22-3253, 2024 WL 169654 (E.D. Pa. Jan. 12, 2024) ...........................10, 11

*People of State of N.Y. by Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir.1987).............................................................................59

*PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev.*
    *Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012).......................................................46

*Pope v World Omni Fin. Corp.*,
    599 So. 2d 15 (Ala. 1992)................................................................................41

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148, 96 S. Ct. 1989 (1976).....................................................................11

*Regions Bank v. Bric Const., LLC*,
    380 S.W.3d 740 (Tenn. Ct. App. 2011).............................................................48, 49

*Reynolds v. D & N Bank*,
    792 F. Supp. 1035 (E.D. Mich. 1992).................................................................33

*Rudisell v. Fifth Third Bank*,
    622 F.2d 243 (6th Cir. 1980) ............................................................................25

*S. Mach. Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ...................................................................5, 7, 9, 10

*Saint Joseph Healthcare, Inc. v. Thomas*,
    487 S.W.3d 864 (Ky. 2016)..............................................................................51

*SecurAmerica Bus. Credit v. Southland Transp. Co.*,
    *No.* W2015-00391-COA-R3-CV, 2016 WL 1292087 (Tenn. Ct. App. Apr. 1,
    2016) ............................................................................................................30

*Serras v. First Tennessee Bank Nat. Ass'n*,
    875 F.2d 1212 (6th Cir. 1989) .............................................................................4

*State ex rel. Slatery v. HRC Med. Centers, Inc.*,
    603 S.W.3d 1 (Tenn. Ct. App. 2019)......................................................31, 36, 58

*Smith v. Dearborn Fin. Servs., Inc.*,
    982 F.2d 976 (6th Cir. 1993)............................................................................56

Case 3:23-cv-00046-DCLC-JEM    Document 261    Filed 03/14/24    Page 7 of 72
PageID #: 7623

*State v. New Beginning Credit Ass'n, Inc.,*
  No. M1999-00461-COA-R3CV, 2006 WL 1472284 (Tenn. Ct. App. May 25,
  2006) ........................................................................................................................15

*Stevens v. Motorists Mut. Ins.,*
  759 S.W.2d 819 (Ky. 1988) (Ky. Rev. Stat. § 446.080 requires that the KCPA
  be liberally construed) .........................................................................................13, 14

*Strategic Sols. P'ship v. Nexus Consulting of Alexandria Virginia, LLC,*
  No. 3:13-0894, 2014 WL 4898027 (M.D. Tenn. Sept. 30, 2014) ........................................6, 7

*Stratton v. United Inter-Mountain Tel. Co.,*
  695 S.W.2d 947 (Tenn. 1985) ...............................................................................................42

*Stringer v. Realty Unlimited, Inc.,*
  97 S.W.3d 446 (Ky. 2002) ....................................................................................................13

*Teksystems, Inc. v. Farr,*
  2009 WL 1312835 (Tenn. Ct. App. May 11, 2009) .............................................................46

*Terry v. Cmty. Bank of N. Virginia,*
  255 F. Supp. 2d 817 (W.D. Tenn. 2003) ..............................................................................29

*Union Planters Bank, N.A. v. EMC Mortg. Corp.,*
  67 F. Supp. 2d 915 (W.D. Tenn. 1999) .................................................................10, 11, 13

*V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.,*
  595 S.W.2d 474 (Tenn. 1980) ...............................................................................................38

*In re Vioxx Prods. Liab. Litig.,*
  843 F.Supp.2d 654 (E.D. La. 2012) ...............................................................................14, 15

*Walden v. Fiore,*
  571 U.S. 277 (2014) .........................................................................................................5, 8

*Warren v. Estate of Kirk,*
  954 S.W.2d 722 (Tenn. 1997) ...............................................................................................45

*Wayne v. Vill. of Sebring,*
  36 F.3d 517 (6th Cir. 1994) ..................................................................................................56

*Webber v. State Farm Mut. Aut. Ins.,*
  49 S.W.3d 265 (Tenn. 2001).................................................................................................48

*Wesley v. Schaller Subaru, Inc.,*
  277 Conn. 526 (2006) ...............................................................................................39, 40, 41

viii

*White v. Revco Disc. Drug Centers, Inc.*,
   33 S.W.3d 713 (Tenn. 2000) ...................................................................45

*Williams v. Kentucky Dept. of Educ.*,
   113 S.W.3d 145 (Ky. 2003) ......................................................................38

*Wilson v. State Farm Fire & Cas. Co.*,
   799 F. Supp. 2d 829 (E.D. Tenn. 2011) ....................................................21

**Statutes**

12 U.S.C. 5481(26)(A)(i) ..............................................................................18

12 U.S.C. § 1026.18(g) .................................................................................24

12 U.S.C. § 5481(12) & (14) ........................................................................28

12 U.S.C. § 5481(25)(C) ...............................................................................17

12 U.S.C. § 5481(26)(A) ...............................................................................17

12 U.S.C. § 5517(a)(1) ..................................................................................17

12 U.S.C. § 5517(a)(2)(B)(i) .........................................................................17

12 U.S.C. § 5536(a)(1)(A) .............................................................................28

12 U.S.C. § 5536(a)(B) ..................................................................................21

12 U.S.C. § 5552(a)(1) .............................................................................10, 11

12 U.S.C. § 5564(g) ..................................................................................24, 28

15 U.S.C. § 226.2 (a)(13) ..............................................................................25

15 U.S.C. § 1601(a) ...........................................................................25, 26, 27

15 U.S.C. § 1602(g) .......................................................................................26

15 U.S.C. §§ 1631(b)(1) ................................................................................25

15 U.S.C. § 1638(a)(3) ..............................................................................25, 26

15 U.S.C. § 1638(b) .......................................................................................23

15 U.S.C. § 1640(b) ...................................................................................26, 27

15 U.S.C. § 1640(e) .......................................................................................28

28 U.S.C. § 1391 ...................................................................................................1, 10, 11

28 U.S.C. § 1391(b)(2) ......................................................................................................12

28 U.S.C. 1406(a) ...............................................................................................................4

KY. REV. STAT. § 15.020(3) ...............................................................................................14

KY. REV. STAT. §§ 367.120 ...........................................................................................13, 14

KY. REV. STAT. § 367.170(1) .............................................................................................32

KY. REV. STAT. § 367.170(2) .............................................................................................32

KY. REV. STAT. § 367.190 ............................................................................................14, 15

KY. REV. STAT. § 367.190(1) .....................................................................................13, 14, 59

KY. REV. STAT. § 367.430 ..................................................................................................37

KY. REV. STAT. § 446.010(26) ...........................................................................................13

KY. REV. STAT. § 446.080(1)'s ..........................................................................................14

M.C.L. § 445.111(a) ...........................................................................................................34

Tenn. Code Ann. 47-18-113(b).........................................................................................56

Tenn. Code Ann. § 47–18–102(2) .....................................................................................29

Tenn. Code Ann. § 47–18–103(24) ...................................................................................29

Tenn. Code Ann. § 47-18-102(2) & (4) .............................................................................15

Tenn. Code Ann. § 47-18-104(a) .......................................................................................31

Tenn. Code Ann. § 47-18-104(b) .......................................................................................29

Tenn. Code Ann. § 47-18-108 ...........................................................................................59

Tenn. Code Ann. § 47-18-115 ...........................................................................................31

Tenn. Code Ann. § 47-18-702(4) .......................................................................................33

Tenn. Code Ann. § 47-18-702(5) .......................................................................................33

Tenn. Code Ann. § 47-18-703(a)(1) ..................................................................................36

Tenn. Code Ann. § 47-18-704(a)-(b)(1)-(2) ......................................................................34

x

Tenn. Code Ann. § 47-18-704(a)-(c) ...................................................................34, 35

Tenn. Code Ann. § 47-18-704(b)(1) ..............................................................................35

Tenn. Code Ann. § 47-18-704(d) ..................................................................................36

Tenn. Code Ann. § 47-18-705(a) ...................................................................................33

Tenn. Code Ann. § 47-18-706(c) ...................................................................................36

**Other Authorities**

12 C.F.R. § Pt. 1026, Supp. I, Part 1, Paragraph 4(c)(5) .......................................27, 28

16 C.F.R. § 429.1 (a) ...............................................................................................34, 35

16 C.F.R. § 433.1(i) ......................................................................................................53

16 C.F.R. § 433.2 .....................................................................................................53, 55

40 Fed. Reg. 53524 (Nov. 18, 1975)..............................................................................53

41 Fed. Reg. 20022-01, 20023 (May 14, 1976)..............................................................52

41 Fed. Reg. at 20023-24 ...............................................................................................55

84 Fed. Reg. at 18711 .....................................................................................................55

84 Fed. Reg. 18711, 18712 (May 2, 2019) .....................................................................53

This Court should deny Defendant, Solar Mosaic, LLC d/b/a Mosaic's ("Mosaic") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). As explained below, the Plaintiff, Commonwealth of Kentucky's ("Commonwealth's") claims are sufficiently related to Mosaic's unlawful conduct *in Tennessee*; therefore, this Court has personal jurisdiction over Mosaic for these claims. Mosaic's venue arguments likewise fail because neither the Consumer Financial Protection Act ("CFPA") nor the Kentucky Consumer Protection Act ("KCPA") evidence an intention by Congress or the Kentucky legislature to enact restrictive venue provisions that override the application of the general venue statute, 28 U.S.C. § 1391.

This Court should also reject Mosaic's arguments in light of Plaintiffs' thoroughly-pled SAC, which outlines Mosaic's <u>direct</u> participation in federal and state consumer protection violations, as well as Mosaic's derivative liability.[1] As to direct liability, Plaintiffs have sufficiently pled that Mosaic violated several state and federal consumer protection laws by, among other things, misleading consumers about when their monthly loan payments would begin, the timing of disbursements to Solar Titan, and the total amount financed. Mosaic also affirmatively misrepresented consumers' rights under the FTC Holder Rule. Further, the SAC pled that Mosaic failed to provide consumers with a valid notice of cancellation under Tennessee and Kentucky's Home Solicitation Sales Acts, failed to honor timely cancellation requests, and incentivized Solar Titan's unlawful conduct by continuing to fund Solar Titan's business operations, despite being on notice of Solar Titan's fraud, just because Solar Titan referred so much business to Mosaic.

---

[1] Mosaic wrongly suggests that most of Plaintiffs' claims against Mosaic are derivative, though the SAC is replete with allegations showing Mosaic's direct liability under federal and state consumer protection laws. As such, Plaintiffs will first respond to Mosaic's allegations that Plaintiffs failed to state a claim on theories of direct liability, and then respond to Mosaic's failing defenses to Plaintiffs' agency and Holder Rule-related theories of liability.

1

As to derivative liability, Plaintiffs have adequately pled that Solar Titan acted as Mosaic's agent—Mosaic delegated authority to Solar Titan to promote and facilitate Mosaic's loan products and services and exercised control over the manner and means of how Solar Titan sold Mosaic's loan products and services to consumers. Further, Mosaic's position that the FTC Holder Rule does not apply in this enforcement action and thus cannot be a basis for its derivative liability also conflicts with the FTC Holder Rule's well-established principles that consumers should not bear the consequences of Solar Titan's fraud.

This Court should deny Mosaic's Motion, rejecting its efforts to dispute the jurisdiction of this Court and dodge Plaintiffs' well-pled Complaint by taking unsupported and misguided positions, misstating consumer case law, and misconstruing the factual allegations in the SAC.

## BACKGROUND

On February 6, 2023, Plaintiffs filed this *parens patriae* and statutory enforcement case to stop Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan"), Solar Titan's principals ("Individual Defendants"), and Mosaic from violating the CFPA, Tennessee Consumer Protection Act ("TCPA"), Kentucky Consumer Protection Act ("KCPA"), the Tennessee Home Solicitation Sales Act ("THSSA") and the Kentucky Home Solicitation Sales Act ("KHSSA"). Plaintiffs also brought claims against Mosaic for violating the Truth in Lending Act ("TILA").[2]

On February 7, 2023, this Court granted Plaintiffs' request for an *Ex Parte* Temporary Restraining Order (Doc. 21), and on February 28, 2023, this Court entered an Order converting its February 7, 2023 Opinion and Order into a Preliminary Injunction against Solar Titan and the Individual Defendants (Doc. 78). On October 6, 2023, Mosaic filed its first Motion to Dismiss. On

---

[2] Although not at issue for Mosaic's Motion to Dismiss, Plaintiffs also brought a Consumer Review Fairness Act count against Solar Titan and its principal owners, Richard Atnip, Craig Kelley, and Sarah Kirkland.

2

December 14, 2023, Plaintiffs filed a Second Amended Complaint ("SAC"), seeking common law, equitable, and statutory relief for Mosaic's violations of federal and state consumer protection laws, thus mooting Mosaic's first Motion to Dismiss. Mosaic filed its second Motion to Dismiss on January 29, 2024.

Since 2019, Solar Titan and the Individual Defendants managed and operated a Knoxville, Tennessee-based solar system sales and installation business. While selling consumers its solar systems and Mosaic's loan products and services in consumers' homes, Solar Titan misrepresented consumers' potential energy savings if they went solar and misled consumers about the availability of various solar incentives and discounts.[3]

Enter Mosaic. Once Solar Titan convinced consumers to purchase solar systems, it signed them up for financing with Mosaic. Mosaic then funded the sale, transmitting payment directly to Solar Titan. In working with consumers, Mosaic misrepresented or omitted material information about Mosaic's financing products and services. Once a consumer signed the installation agreement and Mosaic's loan contract, Solar Titan immediately submitted loan paperwork to Mosaic. Mosaic regularly disbursed the funds to Solar Titan before the consumer's three-day statutory right of rescission expired. Moreover, Mosaic often ignored consumers' cancellation requests, even when consumers sent documentation to Mosaic that they had canceled their Solar Titan contract, unless and until Solar Titan first agreed to cancel its contract.

Throughout Mosaic's two to three year relationship with Solar Titan, hundreds of consumers complained directly to Mosaic about Solar Titan's unlawful conduct. Nevertheless, Mosaic continued to fund Solar Titan's installations until terminating its partnership with Solar

---

[3] Notably, this Court determined in its February 28, 2023 Order that Plaintiffs were likely to succeed on each of their counts against Solar Titan and the Individual Defendants.

3

Titan around late 2022. This partnership allowed Mosaic to reap enormous profits while facing no consequences for its participation in this harmful and unlawful business scheme.

## LEGAL STANDARD

In considering Mosaic's FRCP 12(b) motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, the following is the proper standard for evaluating each defense:

1. For a 12(b)(2) motion to dismiss, although plaintiffs carry the burden of showing that personal jurisdiction exists, their burden . . . "is relatively slight and the district court must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal quotes omitted). To satisfy its burden, the plaintiff need only make a "*prima facie* showing that personal jurisdiction exists. If [plaintiff] meets that burden the motion to dismiss should be denied, notwithstanding any controverting presentation by the moving party." *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quotes omitted).

2. For a 12(b)(3) motion to dismiss, "[t]he plaintiff bears the burden of proving that venue is proper." *Gomberg v. Shosid*, No. 1:05–cv–356, 2006 WL 1881229, at *9 (E.D. Tenn. July 6, 2006) (citation omitted). On a motion to dismiss for improper venue under Rule 12(b)(3), a court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *See Gone to the Beach, LLC v. Choicepoint Serv., Inc.*, 434 F.Supp.2d 534, 537 (W.D. Tenn. 2006); Fed. R. Civ. Pro. 12(b)(3)." *E.E.O.C. v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 963 (E.D. Tenn. 2009). If the court finds that venue is improper, the case may be dismissed or transferred to the district in which it could have been brought. 28 U.S.C. § 1406(a). As explained below, the Commonwealth respectfully requests that this Court deny Mosaic's motion to dismiss for improper venue. But if this Court were to find that venue was improper, then the Court should transfer venue to an appropriate federal court in Kentucky.

3. For a 12(b)(6) motion to dismiss, the Court must liberally "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal quotations omitted). *See also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). To survive dismissal, the plaintiff must allege facts that are sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

4

**ARGUMENT**

I.  **THIS COURT HAS PERSONAL JURISDICTION OVER MOSAIC AS TO THE COMMONWEALTH'S FEDERAL AND STATE LAW CLAIMS.**

The Commonwealth's claims against Mosaic arise out of or relate to Mosaic's activities in Tennessee; therefore, this Court has personal jurisdiction over Mosaic. A federal court may exercise specific personal jurisdiction[4] over a defendant when the defendant has sufficient "minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014)(quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* at 283–284 (internal quotation omitted). Courts use a three-part test to determine whether the exercise of specific personal jurisdiction over a defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

As fully set forth below, the allegations against Mosaic, as pled by the Commonwealth and as set forth in the declarations and exhibits attached to this memorandum, each prong has been satisfied and Mosaic's Motion to Dismiss for lack of personal jurisdiction should be denied.

1.  *Mosaic purposely availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee.*

---

[4] As long as this Court's exercise of personal jurisdiction satisfies the United States Constitution's guarantee of Due Process, exercising jurisdiction is proper in Tennessee. *See e.g.*, *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003).

5

Mosaic devotes only one sentence to the first step of the specific personal jurisdiction inquiry, stating without any analysis, case-law support, or citations to the complaint that it did not purposefully avail itself of the privilege of conducting business in Tennessee. This threadbare argument overlooks the overwhelming allegations in the SAC, supported by declarations and exhibits, showing that Mosaic did just that. For example, Mosaic:

- Engaged in a continuous business relationship with Tennessee-based Solar Titan for years (SAC, ¶¶ 71, 150, 221); Exhibit 1, Declaration of Stacey Monks ("Dec. Monks") at ¶¶ 7-8; Exhibit 2, Declaration of Robert Anderson ("Dec. Anderson") at ¶ 4.

- Disbursed funds for each sale after Solar Titan's Tennessee staff communicated with Mosaic that it completed the requirements of the sale (SAC, ¶193); Dec. Monks, ¶ 15. Dec. Anderson, ¶ 5.

- Trained Solar Titan staff who were in Tennessee. (SAC, ¶¶ 176, 230-233, 541); Dec. Monks, ¶ 19 and Attachment ("Att.") 1 at pp. 2, 17, 20.

- Discussed consumer complaints with Solar Titan personnel who were based in Knoxville, Tennessee. (SAC, ¶¶ 71 212-213); Dec. Monks, ¶¶ 10-11, Att. 1, pp. 4-10, 13-15; Exhibit 3, Mosaic complaint spreadsheet.[5]

- Transmitted at least $27,572,356.08[6] in loan proceeds on behalf of Kentuckians to Solar Titan in Tennessee, to be held in Solar Titan's Tennessee bank account. (SAC ¶¶ 184-186; Dec. Anderson, ¶¶ 6-7; Dec. Monks, ¶¶ 17-18, Att. 2). *See Strategic Sols. P'ship v. Nexus Consulting of Alexandria Virginia, LLC*, No. 3:13-0894, 2014 WL 4898027, at *3 (M.D. Tenn. Sept. 30, 2014) (multiple transfers into a bank account with statements reflecting account held in the name of Tennessee entity supported finding of purposeful availment).

These examples and the others throughout the SAC show that Mosaic deliberately established minimum contacts by conducting business in Tennessee, satisfying the purposeful availment

---

[5] This spreadsheet (Exhibit 3) was produced by Mosaic on September 21, 2022 in response to an investigative demand from the KY Attorney General's Office. The data in this spreadsheet has not been altered except that the "Contractor Name" column has been filtered to only display "Ideal Horizon Benefits LLC" and consumer names and addresses have been redacted for privacy.

[6] Although this figure varies from the amount initially pled in the SAC, which was based on Plaintiffs' understanding of information available to them at the time, it remains clear that Mosaic disbursed tens of millions of dollars on behalf of KY residents to Solar Titan in Tennessee.

6

prong. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) ("[W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there….") (internal citations omitted); *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (indicating that defendant's regular communications with forum residents, standing alone, may satisfy the purposeful availment prong); *Strategic Sols. P'ship, v. Nexus Consulting of Alexandria Virginia, LLC*, No. 3:13-0894, 2014 WL 4898027, *3 (M.D. Tenn.) (finding personal jurisdiction when nonresident defendant wired $668,000.00 into Tennessee over sixteen months); *see also Mueller Brass Co. v. Crompton*, No. 2:20-cv-02496, Doc. 47, PAGEID#: 434 (W.D. Tenn. 2021) (regarding corporate residents as "citizens" and finding that an out-of-state defendant "should reasonably anticipate being haled into court in Tennessee" when he "reached into the state of Tennessee and created a business obligation to one of its corporate residents."). It is little wonder that Mosaic does not seriously argue otherwise.

2. *The Commonwealth's claims relate to Mosaic's activities in Tennessee.*

The second prong of the *Mohasco* personal jurisdiction inquiry is also satisfied because Mosaic's contacts with Tennessee "arise out of *or relate to* the defendant's contacts" with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (emphasis added) (internal citations omitted). Here, it is sufficient if there is "an *affiliation* between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 359-360 (internal citations and quotations omitted) (emphasis added). The U.S. Supreme Court has explained that the second step is a "lenient standard, and…the cause of action need not formally arise from defendant's contacts." *Id*. (internal quotations omitted); *see also Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp.

2d 726, 738 (E.D. Tenn. 2009) (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 553 (6th Cir.2007)). Indeed, there need not be a "strict causal relationship between the defendant's in-state activity and the litigation…." *Ford Motor*, 592 U.S. 351 at 362; *see also Walden* 571 U.S. at 290 ("[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Davenport v. State Farm Mut. Auto. Ins.,* 756 S.W.2d 678 (Tenn. 1988) (recognizing that, in Tennessee, exercising personal jurisdiction over foreign corporations is not limited to "transactions within or causes of action that accrued within this State").

The SAC demonstrates that the Commonwealth's claims "relate to" Mosaic's contacts with Tennessee. As alleged, the Commonwealth's theories of liability against Mosaic (both directly and derivatively) are based on Mosaic's ongoing, multiyear business relationship with Solar Titan, a Tennessee-based company. And, as discussed below, it is through this ongoing relationship that Mosaic violated federal and state consumer protection laws by disregarding consumer complaints, refusing to honor consumers' valid requests to cancel their loan agreements, and knowingly continuing to finance Solar Titan's fraudulent sales. Through this course of conduct, Mosaic facilitated and incentivized the Solar Titan Defendants'[7] ongoing harm to Kentucky consumers.

For example, as to communications into Tennessee, whenever Mosaic's Kentucky borrowers complained to Mosaic about Solar Titan's unlawful conduct, Mosaic would discuss the complaints with Solar Titan personnel based in Knoxville, Tennessee. SAC ¶¶71, 212; Dec. Monks, ¶¶ 10-11, Att. 1, pp. 4-10, 13-15; Exhibit 3. Typically, after reaching out to Solar Titan's Knoxville offices and communicating with Solar Titan's Tennessee-based personnel, Mosaic would disregard borrowers' complaints and allow Solar Titan to retain the borrowers' loan

---

[7] The "Solar Titan Defendants" refers to Ideal Horizon Benefits, LLC d/b/a Solar Titan USA, Richard Atnip, Craig Kelley, and Sarah Kirkland.

proceeds in Tennessee. SAC ¶¶213; Dec. Monks, ¶ 13 (most consumer complaints not escalated); Ex. 3. As demonstrated by Exhibit 3,[8] Mosaic typically chose to believe Solar Titan over consumers and did not follow up to ensure that Solar Titan remedied any issues, *e.g.*, closing a case based solely on Solar Titan's representation that it would contact a consumer.

Next, as for financing, Mosaic disbursed tens of millions of dollars in the form of loan proceeds on behalf of Kentucky consumers to Solar Titan in Tennessee to be held in Solar Titan's Tennessee bank account, the U.S. Bank account ending in 7530. Dec. Anderson, ¶¶ 6-7; Dec. Monks, ¶¶ 17-18, Att. 2. This is the same bank account that this Court placed under the control of the Receiver and the same loan proceeds that the Commonwealth has alleged should have been refunded to Kentucky consumers had Solar Titan and Solar Mosaic honored Kentucky consumers' statutory cancellation rights. *See, e.g.*, Doc. No. 69-1, PageID #: 4228 (Receiver's list of accounts).

In these ways, Kentucky residents were deprived of millions of dollars because of Solar Titan and Mosaic's unlawful activities in Tennessee. All of the Commonwealth's claims, at minimum, relate to Mosaic's ongoing business relationship with Solar Titan, Mosaic's communications with Solar Titan's Tennessee-based staff, and Mosaic's transmission of loan funds into Tennessee. For these reasons, the second *Mohasco* factor is satisfied.

3. *The acts of Mosaic or consequences caused by Mosaic have a substantial enough connection with Tennessee to make the exercise of jurisdiction over Mosaic reasonable.*

Mosaic has not shown that this Court exercising jurisdiction is unreasonable and thus, the Commonwealth is entitled to the inference that it is reasonable to exercise jurisdiction over Mosaic. *See Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005). In fact, Mosaic's only argument is that Tennessee lacks an interest in this case. But as the Tennessee Attorney General's

---

[8] To be clear, Exhibit 3 is not intended to indicate the total number of Kentucky-based consumer complaints received by Mosaic prior to the filing of this lawsuit on February 6, 2023. Rather, this document was provided by Mosaic and Mosaic indicated that these were the complaints known to it at the time of its September 21, 2022 response.

9

participation in this litigation makes clear, Tennessee has a strong interest that entities conducting business in the State behave lawfully. Mosaic has not argued that any other relevant "unfairness" factors—the burden on the defendant, the plaintiff's interest, or the other state's interest—weigh in favor of unfairness. *Id.* Requiring Mosaic to defend a lawsuit in Tennessee, where most of its unlawful conduct took place and where it sent Kentuckians' loan proceeds, is therefore reasonable under the third and final *Mohasco* factor.

## II.   THIS COURT IS THE PROPER VENUE FOR KENTUCKY'S CFPA AND KCPA COUNTS.

1.  *This Court is an appropriate venue for Kentucky's claims under the CFPA and 28 U.S.C. § 1391.*

    Contrary to Mosaic's position that the CFPA's venue provision, 12 U.S.C. § 5552(a)(1), is an exclusive venue provision, it is actually a permissive grant of authority that supplements the general venue provisions of 28 U.S.C. § 1391. Special venue provisions like these "are often interpreted by courts to supplement, rather than preempt, the general venue statute, such that venue may be proper under either, unless there is an explicit, contrary statutory indication." *Pennsylvania by Shapiro v. Mariner Fin., LLC*, No. CV 22-3253, 2024 WL 169654, at *8 (E.D. Pa. Jan. 12, 2024) (internal citations omitted).[9] Although specific venue statutes control over the general venue statutes, the general venue statutes supplement the special venue statutes unless there are "contrary restrictions" in the specific venue statute. *Union Planters Bank, N.A. v. EMC Mortg. Corp.*, 67 F. Supp. 2d 915, 918 (W.D. Tenn. 1999) (citing *Pure Oil Co. v. Suarez*, 384 U.S. 202, 205, 86 S. Ct. 1394, 1396 (1966)).

    Section 5552(a)(1)'s language is unambiguously permissive. It states that the Attorney General "may"—not "shall" or "must"—bring a CFPA action in Kentucky. The word "may"

---

[9] To date, Mariner has not filed an appeal of this decision and the appeal time has run under Federal Rule of Appellate Procedure 4(a)(1).

connotes permissive discretion. *Lopez v. Davis*, 531 U.S. 230, 241, 121 S.Ct. 714, 722 (2001) ("Congress' use of the permissive 'may' ... contrasts with the legislators' use of a mandatory 'shall' in the very same section")); *see also Blackwell as Tr. of Gary Blackwell Revocable Living Tr. v. Tennessee Valley Auth.*, 622 F. Supp. 3d 543, 552 (W.D. Ky. 2022) ("The word 'may,' of course, connotes discretion."). Congress's intentional use of the permissive "may" is not an "explicit, contrary statutory indication" that 12 U.S.C. § 5552(a)(1) was intended to preempt 28 U.S.C. § 1391. *Mariner* at *8. Instead, given the statutory scheme and policies underlying the enactment of the CFPA, 12 U.S.C. § 5552(a)(1) was clearly intended to supplement the general venue statute.

Mosaic's reliance on *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S. Ct. 1989, 1993 (1976) and *Union Planters v. EMC Mortg. Corp.*, 67 F. Supp. 2d 915 (W.D. Tenn. 1999) is misplaced. The issue before the *Radzanower* Court was not the meaning of the phrase "may be had," but whether Congress's enactment of the Securities Exchange Act was intended to be an implied repeal of the National Bank Act given the unique character of national banks. *Id.* at 155–56. The issue before the *Radzanower* court, whether a subsequently enacted specific venue statute was intended to be an implied repeal of a prior specific venue statute, is not before this Court. *See id. Union Planters* similarly was not interpreting a venue provision. The question for that court was whether a forum selection clause in a contract was enforceable. *Id.* at 917. (W.D. Tenn. 1999). Further, Mosaic mischaracterizes *Union Planters*' general statement of venue law by quoting only part of *Union Planters'* general venue statement. (Doc. 250, PageID #: 7409). The *Union Planters* Court stated in full: "Where specific venue statutes exist, they control over the general venue statutes. However, the provisions of the general venue statutes are to be read as supplementing the special venue statutes in the absence of any contrary restrictions in the special statute." *Id.* at 918 (internal citation omitted). Because the CFPA venue provision contains no "contrary restrictions"

11

Case 3:23-cv-00046-DCLC-JEM     Document 261     Filed 03/14/24     Page 22 of 72
PageID #: 7638

indicating that it was intended to override the general venue statute, the venue provision does not prevent the Commonwealth from bringing its claims in Tennessee.

Under the general venue statute 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" § 1391(b)(2) does not require plaintiffs to "file a complaint in the district where the *most* substantial events giving rise to the claim occurred. Instead… venue is proper in 'any forum with a substantial connection to the plaintiff's claim.' *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). As a result, venue may be proper in two or more districts." *Dyersburg Fam. Walk-In Clinic, Inc. v. Tennessee Dep't of Fin. & Admin.*, No. 1:20-CV-1280-STA-JAY, 2021 WL 1566083, at *2 (W.D. Tenn. Apr. 21, 2021); *see also Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 538 (W.D. Tenn. 2006).

As established above, a substantial part of the events giving rise to the Commonwealth's claims occurred in the Eastern District of Tennessee. *Cf. Dyersburg* at *2. In addition to Mosaic's extensive communications and business dealings with Solar Titan staff in Knoxville, there is also substantial evidence in Tennessee. Most of the witnesses with knowledge of the interactions between Solar Titan and Mosaic, including Solar Titan's finance, accounting, and operations staff, reside in this District. *See, e.g.*, Dec. Monks, ¶¶ 1, 10, 13; Dec. Anderson, ¶ 1, 4-5 The Individual Defendants (Atnip, Kelley, and Kirkland), who also know about facts relevant to the Commonwealth's claims against Mosaic reside in this District. Solar Titan's business records, which relate to its interactions with Mosaic, are also in this District. *See, e.g.*, Dec. Monks, ¶ 16.

As a final point, Mosaic does not articulate how litigating this matter in the Eastern District of Tennessee, where most of the witnesses and evidence are located, is somehow "unfair or

inconvenient" to the point of warranting a transfer of venue. *See Union Planters Bank*, 67 F. Supp. 2d 915 at 917. Transferring the Commonwealth's claims out of the Eastern District of Tennessee would only frustrate the goal of judicial economy by imposing unnecessary and duplicative costs on the judicial system, parties, and witnesses from litigating two lawsuits in two separate forums that raise nearly identical issues of fact and law.

2. *The Kentucky Attorney General is empowered to bring KCPA claims outside of Kentucky.*

Kentucky law authorizes the Attorney General to pursue consumer protection claims in jurisdictions other than Kentucky. The Kentucky General Assembly used permissive language in describing where the Attorney General "may" bring an action under the KCPA, KY. REV. STAT. § 367.190(1). *See, e.g.*, *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 798 (Ky. 2020) (Kentucky statutes are interpreted according to their plain meaning and construed to promote their objectives). By statute, Kentucky law requires that the word "may" be given a permissive interpretation unless the context requires otherwise. KY. REV. STAT. § 446.010(26) ("unless the context requires otherwise: … [m]ay is permissive[.]"); *Ocean Acc. & Guarantee Corp. v. Milford Bank*, 33 S.W.2d 312, 314 (Ky. 1930) (unless an entire enactment requires a strict and narrow construction of venue, "may" … ordinarily imports permission or liberty to act."); *see also Stringer v. Realty Unlimited, Inc.*, 97 S.W.3d 446, 448 (Ky. 2002).[10]

Mosaic's reading would frustrate the expressed legislative intent behind the KCPA. *See* KY. REV. STAT. §§ 367.120 (public interest requires a strong and effective consumer protection program), 446.080(1) (statutes shall be liberally construed to promote their objects); *Stevens v.*

---

[10] Mosaic does not challenge whether this Court is an appropriate venue to hear the Commonwealth's claims under the Kentucky Home Solicitations Sales Act. Since Mosaic did not specifically address the KHSSA in its motion, the Commonwealth will only discuss venue under the KCPA. However, the Commonwealth's claims under the KHSSA are properly before this Court for the same reasons that this Court is a proper venue for its KCPA claims discussed herein. The Commonwealth respectfully requests that it be given leave to address any new arguments advanced by Mosaic on Reply directed toward its KHSSA claims.

13

*Motorists Mut. Ins.*, 759 S.W.2d 819, 821 (Ky. 1988) (Ky. Rev. Stat. § 446.080 requires that the KCPA be liberally construed). By enacting the KCPA, "the Kentucky legislature created a statute which has the broadest application to give Kentucky consumers the broadest possible protection for allegedly illegal acts." *Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 55 (Ky. Ct. App. 1999). In addition to the broad public policy objectives underlying the KCPA and KY. REV. STAT. § 446.080(1)'s requirement that statutes be "liberally construed," the Kentucky General Assembly has also mandated that the

> Attorney General shall appear for the Commonwealth in all cases in the Supreme
> Court or Court of Appeals wherein the Commonwealth is interested, and shall also
> commence all actions or enter an appearance in all cases, hearings, and proceedings
> in and before **all other courts**, tribunals, or commissions **in or out of the state**, and
> attend to all litigation and legal business **in or out of the state** required of the office
> by law, or in which the Commonwealth has an interest[.]

KY. REV. STAT. § 15.020(3) (emphasis added).

"May," as used in KY. REV. STAT. § 367.190(1), was intended to have its ordinary and plain meaning as a permissive grant of discretion. Any other interpretation contradicts the plain language of the KCPA and its broad public policy objectives to "curtail unfair, false, misleading, or deceptive practices in the conduct of commerce" no matter how "novel their forms or well disguised their sources." *Com. ex rel. Chandler v. Anthem Ins. Companies, Inc.*, 8 S.W.3d 48, 54-5 (Ky. Ct. App. 1999); *see also* KY. REV. STAT. § 367.120; 446.010(26); 446.080(1), (4); *Stevens v. Motorists Mut. Ins.*, 759 S.W.2d 819, 820 (Ky. 1988); *see also* KY. REV. STAT. § 15.020(3). Accordingly, this Court is a proper venue for the Commonwealth's state law claims.

Mosaic cites no controlling Kentucky authority to support its position that Kentucky follows a "strict" reading of KY. REV. STAT. § 367.190. The lone case that Mosaic cites in support of its position is a decision from the Eastern District of Louisiana, *In re Vioxx Prods. Liab. Litig.*, 843 F.Supp.2d 654 (E.D. La. 2012). However, Mosaic's reliance on *In re Vioxx* is misplaced

14

because, aside from it being a Louisiana case, the court's decision did not turn on an analysis of venue under KY. REV. STAT. § 367.190, let alone conclude that Kentucky follows a "strict" reading of the statute. Instead, *In re Vioxx* focused on the narrow issue of whether a single state court action by the Attorney General under the KCPA, with no related federal claims, was a "class action" subject to removal to federal court under the Class Action Fairness Act ("CAFA"). *See, e.g., id.* at 659, 664–65, and 669.

## III. TENNESSEE CAN PURSUE RELIEF FOR CONSUMERS OUTSIDE OF TENNESSEE.

The TCPA articulates an "abundantly clear interest" in stopping Tennessee-based companies from engaging in unfair and deceptive practices, <u>regardless</u> of the consumers' residency status. *State v. New Beginning Credit Ass'n, In*c., No. M1999-00461-COA-R3CV, 2006 WL 1472284, at *9 (Tenn. Ct. App. May 25, 2006). As such, Tennessee[11] has an interest in seeking relief for all consumers, regardless of their location, when Mosaic joins with and enables a Tennessee-based business to defraud the "consuming public" and "engage[s] in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state[.]" Tenn. Code Ann. § 47-18-102(2) & (4). Further, Mosaic incorrectly claims Plaintiffs have not alleged Mosaic engaged in any unlawful conduct in Alabama, Florida, Georgia, and South Carolina (Doc. 250, PageID #: 7411). Yet the SAC plainly outlines that the unlawful conduct Solar Titan and Mosaic engaged in Tennessee and Kentucky, was the same unlawful conduct it engaged in those states (*Id.* at ¶ 36).

---

[11] Kentucky is not arguing that it can pursue relief on behalf of nonresidents.

15

## IV. PLAINTIFFS SUFFICIENTLY PLEAD THAT MOSAIC VIOLATED THE CFPA.

Mosaic has attempted to escape liability by mischaracterizing the claims that Plaintiffs brought against it showing Mosaic's direct liability under the CFPA. Mosaic is mistaken about its liability in the SAC being predicated on Solar Titan's conduct alone. Instead, the SAC outlines several unfair, deceptive, and abusive acts and practices that Mosaic itself engaged in, in violation of the CFPA. For example, the SAC describes: 1) Mosaic ignoring consumers' timely notices of cancellation (SAC, ¶¶ 17, 416-426); 2) Mosaic failing to disclose that it was disbursing full payments to Solar Titan and deciding to fully fund projects before consumers' solar systems were operational (*Id*. at ¶¶ 427-435); and 3) claiming that consumers have no defense against paying Mosaic when they do (and failing to honor those defenses) (*Id*. at ¶¶ 436-445). These are just some of the many acts and practices Plaintiffs identify as unfair, deceptive, and abusive under the CFPA. Further, the SAC describes how each of Mosaic's acts and practices at issue meet the standard for unfairness, deceptiveness, and/or abusiveness under the CFPA. (*See, E.g., id.* at ¶¶ 416-445).

1. *Regardless of whether Solar Titan is a "covered person" under the CFPA, Mosaic is still liable under the CFPA.*

Mosaic's Motion to Dismiss seems to assert that Mosaic cannot be liable under the CFPA because Solar Titan is not subject to the CFPA as a merchant of solar energy systems.[12] Mosaic misapprehends Plaintiffs' theory of liability under the CFPA. Citing no authority, Mosaic takes the peculiar position that if "Solar Titan cannot have violated the CFPA as a merchant of solar energy systems, [then] Solar Titan's conduct cannot form the primary violation upon which to

---

[12] Mosaic purports to reserve an argument that Plaintiffs have not sufficiently pled that Mosaic and Solar Titan engaged in conspiracy and common course of conduct, but Mosaic fails to properly reserve that argument. Mosaic provides no explanation as to why it claims Plaintiffs' allegations are insufficiently pled and thus Plaintiffs cannot respond to Mosaic's non-argument. Further, Mosaic is mistaken in claiming that the only allegations supporting Plaintiffs' position that Mosaic and Solar Titan conspired to defraud consumers can be found in paragraph 412 of the SAC (*See e.g.*, SAC ¶¶ 71-72, 147-163, 177-178, 184-185, 192-210).

16

predicate statutory liability." (Doc. 250, PageID #: 7438). As previously stated, Plaintiffs have not predicated Mosaic's liability under the CFPA on Solar Titan's sale of its solar energy systems but instead on Mosaic's and Solar Titan's unfair, deceptive, and abusive acts and practices in offering and providing Mosaic's financial products and services. (*See, e.g.,* SAC ¶¶ 399-407). Further, to the extent that Solar Titan is offering or providing Mosaic's loan products to consumers, Solar Titan is not exempt from the CFPA's coverage. *See* 12 U.S.C. § 5517(a)(1) (stating that merchants and retailers are not exempt to the extent that they are engaged in offering or providing any consumer financial product or service); 12 U.S.C. § 5517(a)(2)(B)(i) (explaining that a merchant or retailer's conduct involving the assignment, sale, or conveyance of a consumer's debt to another is covered by the CFPA); 12 U.S.C. § 5481(25)(C) (including independent contractors and agents of covered persons, like Mosaic, as covered persons under the CFPA); 12 U.S.C. § 5481(26)(A) (including "service providers" among those with potential liability under the CFPA).

Mosaic's reliance on *CFPB v. Intercept Corp.*, 3:16-cv-144, 2017 WL 3774379, at *2 (D.N.D. Mar. 17, 2017) for the position that Solar Titan cannot be a service provider is misplaced. A person is a "service provider" under the CFPA if they:

> provide[] a material service to a covered person in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that-- (i) participate[] in designing, operating, or maintaining the consumer financial product or service; or (ii) process[] transactions relating to the consumer financial product or service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes).

12 U.S.C. § 5481(26)(A). In its motion, Mosaic argues that Plaintiffs do not lodge "plausible allegations in the SAC that Solar Titan…processed transactions relating to the consumer financial products or services." (Doc. 250, PageID #: 7437). In support, Mosaic attempts to limit the scope of "processing transactions," as used here, to only those who "process[] electronic transfers of

17

funds through the Automated Clearing House." (*Id.* at n. 21). Yet nothing in *Intercept* indicates that "processing transactions" is limited to payment processors, as Mosaic claims (*see* Doc. 250, PageID #: 7437, n. 21), and would not also include Solar Titan assisting consumers with applying for Mosaic loans. *Id.* (citing *CFPB v. Intercept Corp.*, 3:16-cv-144, 2017 WL 3774379, at *2 (D.N.D. Mar. 17, 2017). Further, the SAC includes several allegations in support of Solar Titan "operating" and "maintaining" Mosaic's loans by, for example, helping consumers apply for and choose which Mosaic loan to apply for, and explaining Mosaic's loan product terms. (*See, e.g.,* SAC ¶¶ 150-157, 160-162, 175, 177, 179-181); *see also* 12 U.S.C. 5481(26)(A)(i) (explaining that a person who "participates in designing, operating or maintaining the consumer financial product or service" is also acting as a "service provider" under the CFPA). Plaintiffs have adequately pled Solar Titan acted as Mosaic's service provider under the CFPA.

2. *The SAC sufficiently alleges that Mosaic itself engaged in <u>unfair</u> and <u>deceptive acts</u> and practices in violation of the CFPA.*

**A. Plaintiffs adequately allege that Mosaic caused substantial injuries to consumers that were not reasonably avoidable.**

Mosaic argues "as a preliminary matter" that Plaintiffs fail to allege Mosaic's acts or practices caused or were likely to cause substantial injury as required for an "unfairness" claim under the CFPA. (Doc. 250, PageID #: 7439). Mosaic additionally argues that the SAC does not allege Mosaic's conduct is the "proximate cause" of harm to consumers because it does not allege that consumers could not avoid the harm. (Doc. 250, PageID #: 7438). But these arguments ignore the face of the SAC. To be clear, the SAC alleges *substantial harm caused* by Mosaic's unfair acts and practices, that was not reasonably avoidable by consumers. (*See, e.g.,* SAC, ¶¶ 419-20, 442-45, 447-49, 450-52, 460-62, 466-71, 474-78).

**B. Plaintiffs have pled that Mosaic failed to honor consumers' timely cancellation requests.**

18

The SAC alleges that Mosaic failed to honor consumers' attempts to exercise their three-day right of rescission. Mosaic, however, mischaracterizes the SAC as simply alleging that Solar Titan failed to inform Mosaic of consumers' cancellation requests. Mosaic then claims the SAC does not allege "a single instance of Mosaic failing to honor a cancellation request where it was properly notified" (Doc. 250, PageID #: 7441). Confusingly, Mosaic then cites an example from the SAC of Mosaic failing to honor a cancellation request. In that example, Mosaic collected payment from a consumer for several months *after it was notified* of the consumer's timely cancellation. Plaintiffs also allege that Mosaic refused to honor cancellations, even when the consumer showed them their Solar Titan cancellations (SAC, ¶¶ 17, 64, 654, 656). The SAC therefore sufficiently alleges that Mosaic failed to honor cancellations.

3. *The SAC sufficiently alleges that Mosaic itself engaged in <u>abusive</u> acts and practices in violation of the CFPA.*

**A. Plaintiffs have adequately pled that Mosaic's failure to honor consumers' Holder Rule defense to repayment was deceptive and abusive.**

In its Motion to Dismiss, Mosaic argues that it can enforce its loans even when consumers state they have a Holder Rule defense against paying Mosaic and suggests that they have no duty to investigate them (Doc. 250, Page ID #: 7441). As explained in more detail in Section X below, when a consumer has been defrauded by Solar Titan, the FTC Holder Rule allows them to raise that as a defense against paying the loan. Thus, Mosaic's suggesting to consumers that they have no defense against paying Mosaic when they do is deceptive and abusive (SAC, ¶¶ 436-42).

**B. Mosaic misconstrues Plaintiffs' allegations based on Mosaic's use of a digital interface and offering a single loan product in its deceptive and abusive acts or practices.**

Mosaic argues that Plaintiffs failed to properly allege its practices were abusive (Doc. 250, PageID #: 7446). Mosaic also argues that Plaintiffs' abusiveness claim is based solely on Mosaic's

19

use of electronic signatures and offering only one loan product to consumers (Doc. 250, at PageID #: 7447). Mosaic's arguments fail because Mosaic mischaracterizes its own exhibit, Plaintiffs' factual allegations, and applicable law.

As a threshold matter, Mosaic wrongly relies on a TILA disclosure from another lender, WebBank to support its contention that it was offering more than one loan product to consumers (Doc. 250, PageID #: 7447, Exhibit 2). WebBank's disclosure is irrelevant to the loan products Mosaic provided consumers. Also, this exhibit cannot be considered for purposes of the Rule 12(b)(6) motion because it was not included as part of the SAC allegations.[13]

But even if Mosaic were referring to its own loan products, Mosaic's argument still fails. Plaintiffs' abusiveness claim at issue is based, not just on Mosaic's practice of using an online portal, but also on Solar Titan's poorly-trained sales representatives (whom Mosaic trained and had significant right to control), who interfere with consumers' ability to understand the loan agreement (Doc. 250, ¶¶ 456-59.) Plaintiffs do not contend that contractual terms presented in a digital format are inherently unlawful, and Mosaic's attempt to argue otherwise disregards the SAC's factual allegations. Similarly, Plaintiffs' abusiveness claim does not rely solely on Mosaic's practice of only offering a loan product that requires a significant loan balance prepayment within 18 months. Plaintiffs' claim explains that this practice is abusive (notwithstanding any disclaimers in the fine print) because, coupled with Solar Titan's misrepresentations, it leads consumers to think they will qualify for the Federal Tax Credit (which roughly equates to this amount) even though that was often not the case, thereby interfering with consumers' ability to understand the loan's risks and costs (SAC, ¶¶ 487-95.)

---

[13] Mosaic apparently found WebBank's disclosure in a consumer complaint attached to the Supplemental Declaration of Claire Marsalis (Doc. 67-8, PageID #: 3922), which Plaintiffs attached to a supplemental statement in support of their request for a preliminary injunction. (Doc. 67, PageID #: 3155).

20

Further, Mosaic's reliance on contract law to support its argument is misguided. In support of its position, Mosaic cites a New York case holding that Mosaic's contract was enforceable under New York law despite it being reviewed and executed digitally. This Court has already held contract defenses do not apply to Plaintiffs' consumer protection claims (Doc. 218). *See also Wilson v. State Farm Fire & Cas. Co.*, 799 F. Supp. 2d 829, 841–42 (E.D. Tenn. 2011) ("[A]lthough a breach of contract claim and a [Consumer Protection Act] claim may arise from the same course of conduct, they are separate and distinct causes of action, each with its own separate elements and defenses."). Plaintiffs do not rely on common law breach of contract to bring their claims, so another court deciding a contract term was legally enforceable is inapplicable here.

4. *Plaintiffs properly allege that Mosaic's unlawful acts and practices violate multiple state and federal laws.*

Mosaic incorrectly characterizes Plaintiffs' CFPA claim as <u>relying</u> on violations of state law. (Doc. 250, PageID #: 7447.) In support, Mosaic appears to argue the CFPA only prohibits violations of "enumerated consumer laws." (*Id.*, citing 12 U.S.C. § 5481(12).) Yet, the CFPA also prohibits unfair, deceptive, and abusive acts and practices. 12 U.S.C. § 5536(a)(B). Further, Plaintiffs do not base their CFPA claims on state law violations – it just so happens that the acts and practices that violate state consumer protection laws also violate the CFPA.

5. *None of the disclaimers or disclosures Mosaic purportedly included in its loan agreement absolve Mosaic of liability.*

Mosaic's disclaimers or disclosures do not warrant dismissal of Plaintiffs' CFPA claims. Plaintiffs' factual allegations must be taken as true when ruling on a FRCP 12(b)(6) motion to dismiss. Mosaic is not free to use these alleged disclaimers or disclosures to refute the allegations in the SAC that Mosaic misled consumers by failing to provide *clear and conspicuous* disclosures that consumers would have a meaningful opportunity to review (SAC, ¶¶ 13, 161-164, 457-459);

21

*See Mediacom Se. LLC v. BellSouth Telecommunications, Inc*., 672 F.3d 396, 400 (6th Cir. 2012) Thus, according to the allegations which must be taken as true, these disclaimers were not sufficient to overcome Solar Titan and Mosaic's misleading representations. Further, even if the disclaimers or disclosures were found to conflict with Plaintiffs' factual allegations, the presence of buried disclosures and disclaimers in subsequent communications with consumers, does not, as a matter of law, end the inquiry as to whether an earlier act is unfair, deceptive, or abusive.

The relevant test for whether communications are deceptive or unfair is the "net impression" test. *See FTC v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 631 (6th Cir. 2014). The net impression test does not permit defendants to dissect their communications with consumers into discrete sections for the court to assess in isolation. Rather, courts consider communications in their entirety to determine the "net impression that it is likely to make on the general populace." *Id. E.M.A.* at 631 (internal quotation marks and citations omitted). As such, the court should not look to only Mosaic's purported tax disclaimer and noncompliant TILA disclosure (*See* Section V below); *see also FTC v. Int'l Comput. Concepts, Inc*., No. 5:94 CV 1678, 1995 WL 767810, *3 (N.D. Ohio 1995) ("Fine print or ineffective disclaimers do not change the message conveyed if the overall net impression is different.") (citation omitted). The Court also should consider the oral misrepresentations made during these high-pressure sales pitches during which Solar Titan sold Mosaic's loan products and services in a way that was designed to prevent consumers from having a meaningful opportunity to seek review from an accountant or other advisor. (*See* SAC, ¶¶ 10, 87, 118-126, 140-141, 162, 474, 627). This includes, for example, 1) telling consumers they would qualify for a tax credit and thus could make Mosaic's required prepayment in the amount of the tax credit when that was untrue, 2) misrepresenting when loan payments would be due, 3)

22

misrepresenting total repayment obligations, and 4) misrepresenting when loan funds would be disbursed to Solar Titan (*see, e.g.,* SAC ¶¶ 13-15, 123-125, 179-183, 460-477).

Mosaic also incorrectly contends that Plaintiffs concede that Mosaic fully disclosed all relevant terms of the loan to borrowers. The SAC makes clear that many consumers are not provided paper copies of the loan agreement, are unable to meaningfully review an electronic version before signing, and often only hear from Mosaic after consumers are already bound to the purchase price (SAC, 241, at ¶¶ 161-65, 450-55, 466-71.) Plaintiffs also allege that Mosaic conceals terms related to when payments must commence (*Id.*, ¶¶ 496-501, 506-509.) Plaintiffs have pled that Mosaic engaged in unfair, deceptive, and abusive acts and practices when it failed to disclose to consumers, at the point of sale, their total repayment obligation (*Id.*, at ¶¶ 155-62, 446-52, 534-37), or that payments would likely begin before the system was operational (*Id.*, ¶¶ 155-62, 446-52, 461-471, 534-37), when it paid Solar Titan in full before Solar Titan finished installing the system (*Id.,* ¶¶ 155-62, 446-52, 461-471, 534-37), and when it misled consumers about the availability of the federal tax credit (*Id.*, ¶¶ 15, 123-25, 291, 472-495).

## V.     PLAINTIFFS ADEQUATELY PLEAD THAT MOSAIC VIOLATED THE TRUTH IN LENDING ACT'S FINANCIAL DISCLOSURE REQUIREMENTS.

Plaintiffs have adequately pled several TILA violations, including Mosaic's failure to comply with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001, *et seq.*, ("E-Sign Act")  and Mosaic's failure to provide clear and conspicuous financial disclosures to consumers before consummation of the loans in violation of 15 U.S.C. § 1638(b) (SAC, ¶¶ 531-46). As shown below, Mosaic grossly mischaracterizes *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 871 (6th Cir. 2003) in ways that contradict the express purpose of TILA financial disclosure requirements. Plaintiffs further delineate Mosaic's failure to disclose the fees that should have been included as a finance charge. (SAC, ¶¶ 547-51). None of these allegations are "conclusory"

23

as Mosaic claims (Doc. 250, PageID #: 7427), but instead outline the facts supporting each TILA violation.[14]

Finally, Mosaic attempts to bar Plaintiffs' CFPA TILA claims by applying the wrong statute of limitations period to Plaintiffs' TILA count. But as outlined below, the statute of limitations period for the TILA count is three years from the date Plaintiffs discovered Mosaic's TILA violations under 12 U.S.C. § 5564(g).

1. *Plaintiffs have sufficiently pled that Mosaic violated TILA by failing to comply with the E-Sign Act, invalidating any financial disclosure Mosaic provided consumers electronically.*

Mosaic misstates Plaintiffs' claims about its failure to comply with the E-Sign Act. Plaintiffs' TILA claim is not based on Mosaic providing "TILA disclosures on Solar Titan's devices," but on (1) Mosaic using Solar Titan devices without verifying that consumers can access information on these devices or consumers' own devices and (2) Mosaic using Solar Titan's devices and poorly trained sales representatives to interfere with consumers' ability to view disclosures before they bought Mosaic's products (SAC, ¶¶ 534-37). For example, the SAC alleges that Solar Titan's sales representatives maintained possession and "access to the tablet, phone, or computer that has the screen with the TILA disclosures." The SAC also states Solar Titan created an email address for consumers without an email address, even though "the likelihood the consumer will actually receive any emails from Mosaic is low" (SAC, ¶ 155). Thus, these consumers were deprived of the access required for compliance with the E-Sign Act (and, by extension, TILA and CFPA).

---

[14] In the portions of Mosaic's Motion to Dismiss where Mosaic attempts to challenge Plaintiffs' TILA claims, Mosaic seemingly overlooks Plaintiffs' allegations that Mosaic violated 12 U.S.C. § 1026.18(g) by failing to provide consumers clear and accurate disclosures about the "timing of payments scheduled to repay the obligation." (SAC, ¶¶ 496-501, 553). Plaintiffs allege that Mosaic provides an inaccurate explanation of consumers' payments starting after installation because it does not disclose that "installation" does not mean that the solar system is operational. (SAC, ¶¶ 496-501, 553). These allegations are also adequately pled.

24

Mosaic cites no relevant cases supporting dismissal. The only case that Mosaic cites, *Middleton*, involves the Arbitration Act—not the E-Sign Act (Doc. 250, PageID #: 7429-30 (citing *Middleton v. T-Mobile US, Inc.*, No. 20-CV3276-NGGJRC, 2022 WL 16828226, at *7 (E.D.N.Y. Aug. 24, 2022)). Contrary to Mosaic's suggestion, that case does not establish that the signature process in that case would comply with the E-Sign Act. Instead, the Court held that under the Arbitration Act, the full arbitration clause did not have to be visible to Middleton before he signed the agreement. *Id.* at *5. As such, the *Middleton* decision is wholly inapplicable to Mosaic's failure to comply with TILA's financial disclosure requirements, including that disclosures be visible to consumers before signing, and clear and conspicuous—allegations that are present in the SAC but were not at issue in *Middleton*. *See* 15 U.S.C. § 1638(a)(3).

2.  *Plaintiffs adequately pled that Mosaic violated TILA by failing to provide consumers with the required financial disclosures before loan consummation.*

TILA's purpose is to promote "the informed use of credit" by ensuring that creditors provide customers with "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 220 (1981) (internal citations omitted). To that end, TILA imposes mandatory disclosure requirements on those who extend credit to consumers that must be made "before the transaction is consummated." 15 U.S.C. §§ 1631(b)(1); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir. 1980) (internal quotation omitted). The disclosure must be made before "the time a contractual relationship is created between a creditor and a customer[.]" 15 U.S.C. § 226.2 (a)(13); *Rudisell*, 622 F.2d 243 at 246 (internal quotation omitted). The purpose of the timing requirement is to ensure that consumers have sufficient information "to compare more readily the various credit terms available to him and

25

avoid the uninformed use of credit[.]" 15 U.S.C. § 1601 (a). Consumers cannot do that if they are not provided the disclosures before executing the loan agreement.

Mosaic's only defense on this point is its conclusory statement that Solar Titan's interference with consumers' viewing Mosaic's disclosure before executing the loan does not state a TILA violation. (Doc. 250, PageID #: 7430). If Mosaic is claiming that Solar Titan's interference and failure to provide the disclosures are not Mosaic's responsibility, that misstates the law. Because credit arrangers are expressly exempt from TILA, Mosaic is the ultimate, and only, party responsible for providing those disclosures. *See* 15 U.S.C. § 1602(g) (defining creditor to include only those to "whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness"); 15 U.S.C. § 1638(a)(3) (imposing obligations on "creditor" to disclose finance charges). Solar Titan is not "the person to whom the debt arising from the credit transaction is payable on the face of the [Mosaic loan agreement]." Thus, Mosaic is the only party required to provide these disclosures—which it failed to do.

3. *Mosaic misreads <u>Baker v. Sunny Chevrolet</u>.*

Mosaic's defense of its untimely financial disclosures relies upon a misreading of *Baker*. *Baker* involved a consumer who saw the TILA financial disclosure before being bound to the terms at issue. *Baker*, 349 F.3d 862 at 863-864 (6th Cir. 2003). Thus, the Sixth Circuit did not apply 15 U.S.C. § 1640(b)'s error correction provision to a creditor's complete failure to provide the disclosure before loan consummation, but instead only to a creditor's failure to provide the consumer with a *copy* of the disclosure. *Id.* at 863. Thus, *Baker* stands only for the finding that creditors can correct their failure to provide a copy of the disclosure at the time of signing. Interpreting *Baker* to excuse creditors' complete failure to provide disclosures before consummation would misread *Baker* and contravene TILA's purpose, which is to promote "the

26

informed use of credit." (15 U.S.C. § 1601(a)); *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 220 (1981) (internal citations omitted). The Sixth Circuit has never held that creditors can completely fail to provide disclosures before loan consummation and then use 15 U.S.C. § 1640(b) to correct that failure.

4. *Plaintiffs have adequately pled that Mosaic's Failure to Disclose the Dealer fees as Part of the Finance Charge Violated TILA.*

Mosaic argues that it did not have to disclose its dealer fee as part of the finance charge because (1) Solar Titan allegedly agreed not to pass the dealer fee on to consumers and (2) the dealer fees are seller's points that cannot be finance charges as a matter of law. (Doc. 250, PageID #: 7433-7434). This Court should reject both of these arguments. First, to the extent Mosaic is trying to dispute Plaintiffs' allegations that the fee was passed along to the consumer because Solar Titan purportedly agreed not to pass the fee along to the consumer, Mosaic's argument is an inappropriate factual dispute that should not be considered at this stage. Plaintiffs' factual allegations that Solar Titan passed the dealer fee on to consumers (SAC, at ¶¶548-549) must be taken as true for this FRCP 12(b)(6) motion. *Engler*, 862 F.3d 571 at 574-75. When a seller charges customers who finance a purchase a higher price than the price paid in a comparable cash transaction, the price differential is a finance charge that must be disclosed, and Plaintiffs have alleged such a price differential in this case. *See, e.g.*, *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001).

Second, Mosaic has also not shown that its dealer fees are "seller's points," and thus exempt from TILA's disclosure requirements, as a matter of law. Under TILA, seller's points "include any charges imposed by the creditor [Mosaic] upon the noncreditor seller [Solar Titan] for providing credit to the buyer or for providing credit on certain terms." 12 C.F.R. § Pt. 1026, Supp. I, Part 1, Paragraph 4(c)(5). But, "[b]uyer's points (that is, points charged to the buyer by

27

the creditor) [] are finance charges" that must be disclosed. *Id.* Plaintiffs have alleged that Mosaic is imposing its dealer fees on consumers directly because the dealer fee is withdrawn from consumers' loan proceeds prior to the funds being transferred to Solar Titan (*See, e.g.,* SAC, ¶ 550). Because consumers, not Solar Titan, pay Mosaic's dealer fees, the fees are buyer's points that must be disclosed as a finance charge under TILA. The SAC states a claim that Mosaic was required to disclose the dealer fee as a finance charge and it failed to provide that disclosure in violation of TILA.

5. *The statute of limitations applicable to state enforcement actions is three years and did not lapse before Plaintiffs filed this enforcement action against Mosaic.*

Mosaic's reliance on 15 U.S.C. § 1640(e) for their statute of limitations argument is misplaced. Plaintiffs did not bring their TILA count under 15 U.S.C. § 1640(e), but are challenging violations of TILA's requirements as violations of the CFPA (*See* SAC, ¶¶ 2, 526- 27). *See also* 12 U.S.C. § 5536(a)(1)(A) (violation of the CFPA to violate Federal consumer financial law); 12 U.S.C. § 5481(12) & (14) (Federal consumer financial law includes TILA). As such, the applicable statute of limitations is provided by the CFPA: three years from Plaintiffs' discovery of Mosaic's TILA Violations. *See* 12 U.S.C. § 5564(g). There is nothing on the face of the Complaint showing that any of Plaintiffs' TILA claims are barred by the relevant statute of limitations. Thus, this Court should not hold that the relevant statute of limitations bars Plaintiffs' TILA Count because courts should not apply a statute of limitations defense unless it is "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'" *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 521 (6th Cir. 2008) (internal citations omitted).

## VI.    PLAINTIFFS STATE A VALID CLAIM UNDER THE TCPA AND KCPA.

1. *The TCPA also applies to lenders like Mosaic.*

Mosaic argues that it is not subject to the TCPA because lending is not "trade," "commerce," or a "consumer transaction" to which the Act applies. (Doc. 250, PageID #: 7448 (referencing Tenn. Code Ann. § 47-18-104(b)).  First, Mosaic ignores those terms' statutory definition.  These terms are defined in the TCPA as "*the advertising, offering for sale*, lease or rental, or distribution of *any* goods, *service*s, or property, *tangible or intangible*, real, personal, or mixed, and other articles, commodities, or things of value wherever situated." Tenn. Code Ann. § 47–18–103(24). The legislature also instructed that the Consumer Protection Act be liberally construed to protect consumers and legitimate business enterprises from "unfair or deceptive acts or practices in the conduct of any trade or commerce." Tenn. Code Ann. § 47–18–102(2). Here, Mosaic advertises and offers for sale its service of extending credit for consumers' purchase of solar equipment and installation, which is conduct that fits within the act's broad scope. *See Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 2005 WL 281367 (W.D. Tenn. 2005) (finding cognizable TCPA claim against lender alleged to have engaged in predatory lending practices); *Terry v. Cmty. Bank of N. Virginia*, 255 F. Supp. 2d 817, 823 (W.D. Tenn. 2003) (finding "misrepresentations made during the course of extending loans sufficient to plead a cause of action for violation of the TCPA.")

Mosaic also mischaracterizes *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588 (Tenn. Ct. App. 2001) to argue that lenders cannot be held liable under the TCPA based on Solar Titan's acts or practices. In *Messer Griesheim*, a seller of carbon dioxide sued the operator of a gas purification facility that sold the plaintiff carbon dioxide with toxic levels of cyanide. The seller also sued a lender that financed the facility. Importantly, the court found that

29

the lender was not liable under the TCPA after concluding on summary judgment that there was "no evidence in the record… even remotely suggesting that [the lender] exercised any control over the day-to-day operations of the . . .facility" and that the lender was not "the one conducting the activity here[.]" *Id.* at 602-03. *Messer Griesheim* does not, as Mosaic contends, hold that lenders are not subject to the TCPA. Further, unlike in *Messer Griesheim*, in this case, Plaintiffs allege facts (which are assumed true for purposes of this motion) that Mosaic itself engaged in unfair and deceptive acts or practices.

Similarly, Mosaic's reliance on *Avery* and *SecurAmerica* misses the mark because those cases also do not hold that the TCPA is categorically inapplicable to lenders. (*See* Doc. 250, PageID #: 7448-49.) Rather, the court in those cases determined that the lenders' *alleged conduct in the course of their lending activities* did not involve consumer transactions of a kind contemplated by the plain language of the TCPA, unlike the conduct alleged in this case. *Avery Outdoors LLC v. Peak Rock Cap., LLC*, No.16-CV-2229-SHL-TMP, 2017 WL 5186246, at *6-7 (W.D. Tenn. Jan. 23, 2017) (lender's conduct in making misrepresentations in a payoff demand to borrower in default did not affect "trade or commerce" when borrower had already executed promissory note and was already in default at the time the misrepresentations were made ); *SecurAmerica Bus. Credit v. Southland Transp. Co., No*. W2015-00391-COA-R3-CV, 2016 WL 1292087, at *6-7 (Tenn. Ct. App. Apr. 1, 2016) (lender allowing borrower to bypass blocked account and receive funds on inaccurate borrowing base certificates did not affect trade or commerce). Mosaic's argument that it cannot be held liable under the TCPA ignores Plaintiffs' allegations regarding Mosaic's unlawful conduct and Solar Titan's unlawful conduct when acting as Mosaic's agent.

2. *Plaintiffs adequately plead Mosaic's direct and indirect liability under the TCPA and KCPA.*

30

Mosaic purports that it cannot be held liable under the TCPA and KCPA based solely on its knowledge of Solar Titan's unlawful conduct and that the SAC is vague as to the degree of its knowledge (PageID #: 7449-50.) However, its argument mischaracterizes the SAC as relying exclusively on Mosaic's knowledge to state a claim. Plaintiffs rely on much more than just Mosaic's knowledge of Solar Titan's misconduct—they allege both that Mosaic engaged in independent misconduct and that Mosaic was directly involved in Solar Titan's misconduct. Mosaic knew of Solar Titan's unlawful conduct but continued to do business with the company, enabling its predatory sales scheme. And Mosaic's business practices themselves further victimized consumers. Further, as explained in Section IX below, Plaintiffs' allegations that Mosaic actually or constructively knew about Solar Titan's fraud support Plaintiffs' agency-related claims.

3. *Tennessee and the Commonwealth have sufficiently pled facts to state a claim against Mosaic for violating the TCPA and KCPA.*

Both the CFPA and TCPA look to FTC precedent when delineating the standards for deception and unfairness. *See* Tenn. Code Ann. § 47-18-115; *see Consumer Fin. Prot. Bureau v. Gordon,* 819 F.3d 1179, 1192–93; n.7 (9th Cir. 2016) (internal citations omitted) (indicating that the court relies on the FTC cases interpreting the FTC Act to determine what constitutes a deceptive act or practice under the CFPA).[15] Further, under Kentucky law, "false, misleading, or deceptive" are given their ordinary and plain meaning and are "no less broad" than the FTC Act's

---

[15] Mosaic wrongly contends that Plaintiffs' claims against Mosaic for violating Tenn. Code Ann. § 47-18-104(a) are improperly before this Court, suggesting that the section is only for charging criminal misdemeanors. (Doc. 250, PageID #: 7448, ft. 26). However, 47-18-104(a) also provides that "Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts." *Id.* As such, Plaintiffs' allegations that Mosaic violated that provision of the TCPA by engaging in unfair or deceptive acts or practices are properly before this court. *See State ex rel. Slatery v. HRC Med. Centers, Inc*., 603 S.W.3d 1, 18 (Tenn. Ct. App. 2019) (citing Tenn Code Ann. 47-18-104(a) (explaining in Tennessee civil enforcement action, "[u]nfair or deceptive acts or practices affecting the conduct of trade or commerce" are violations of the TCPA.); *see also State ex rel. Slatery v. Witherspoon L. Grp.* PLLC, No. E202101343COAR3CV, 2022 WL 17828855, at *18 (Tenn. Ct. App. Dec. 21, 2022).

prohibition against "unfair or deceptive acts or practices in commerce." *Dare To Be Great, Inc. v. Com. ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky. 1974); KY. REV. STAT. § 367.170(1). As such, Mosaic's conduct described in the CFPA section also constitutes unfair and deceptive conduct under the TCPA and false, misleading, or deceptive conduct under the KCPA.

The Commonwealth has also sufficiently pled that Mosaic engaged in "unfair" conduct in violation of the KCPA. For purposes of the KCPA, "unfair shall be construed to mean unconscionable." KY. REV. STAT. § 367.170(2). For example, it is "unconscionable" for a business to refuse to honor a consumer's right to cancel a contract under a statute providing a right of revocation. *See Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978). In *Ford*, the Kentucky Court of Appeals held that Ford Motor Company acted "unconscionably" when it had an established policy of refusing to honor consumers' right of revocation under Kentucky's version of the UCC. *Ford* at 485–86. Likewise, Mosaic "has an established business practice or policy of failing to cancel loan agreements even though consumers have properly exercised their right to cancel the agreement under the KHSSA." SAC at ¶634-635. By refusing to honor consumers' exercise of their right of cancellation under the KHSSA, Mosaic "acted 'unconscionably'" and engaged in an "'unfair' trade practice which was unlawful under the Consumer Protection Act." *Ford* at 486.

## VII. TENNESSEE HAS ADEQUATELY PLED MOSAIC'S VIOLATIONS OF THE THSSA.

1. *The THSSA applies to any company engaging in home solicitations, including lenders like Mosaic.*

Without citing any law in support of its arguments, Mosaic claims the THSSA does not apply to lenders, like Mosaic (*See* Doc 250 at PageID #: 7456). Mosaic bases this argument entirely on the THSSA's definition of "seller" as "seller or lessor" and Mosaic's own self-serving

conclusion that a lender is not a "'seller' under the law." (*Id.*) *See also*, Tenn. Code Ann. § 47-18-702(5). Although the THSSA does not define "seller," Mosaic's narrow interpretation defies the statute's language, which broadly defines "home solicitation sale" as "a consumer sale or lease of goods . . . or services, . . .in which the seller or a person acting for the seller engages in the personal solicitation of the sale or lease at any residence other than . . . the seller[.]" Tenn. Code Ann. § 47-18-702(4). The categories of transactions expressly exempted from the THSSA are listed in Tenn. Code Ann. § 47-18-702(4). None of these exclusions exist in this case. Because courts are "to presume that the [Tennessee] General Assembly selected their words deliberately," the THSSA's explicit exemptions for certain transactions, and the absence of an exception for lending services shows that the THSSA governs lenders like Mosaic. *Lee v. Franklin Special Sch. District Board of Education*, 237 S.W.3d 322,332 (Tenn. Ct. App. 2007). Further, the THSSA contemplates sales of loan products and services as it requires the cancellation of "any note or other evidence of indebtedness" when a consumer has properly exercised their right to rescind. Tenn. Code Ann. § 47-18-705(a). Because lenders generally control notes and "other evidence of indebtedness," the THSSA necessarily encompasses *sellers of loan services* within its definition of seller. Mosaic's narrow definition of "seller" is thus at odds with the THSSA.

Finally, although Mosaic's argument that the THSSA does not apply to lenders is one of first impression in Tennessee, it has been implicitly rejected by multiple jurisdictions in the Sixth Circuit. *See Equicredit Corp. of Am. v. Jackson*, No. 3 MA 191, 2004 WL 2726115, (Ohio App. 7th 2004) (holding that providing mortgage broker services constitutes a home solicitation sale under the Ohio HSSA); *Reynolds v. D & N Bank*, 792 F. Supp. 1035, 1038–39 (E.D. Mich. 1992) (finding lender was a "seller" under the Michigan HSSA). Like Tennessee, these jurisdictions broadly define a home solicitation sale as a sale of goods and services at a consumer's residence.

*See* O.R.C. § 1345.21(A); M.C.L. § 445.111(a). This Court should conclude that lenders are also covered by the THSSA.

2. *Tennessee has adequately pled Mosaic's per se violations of the THSSA.*

Mosaic argues Tennessee's THSSA claims against Mosaic hinge "solely" on a Holder Rule theory based on Solar Titan's failure to provide valid cancellation notices to buyers. Mosaic argues this theory of liability fails because both Mosaic and Solar Titan provided valid THSSA cancellation notices (Doc. 250 PageID #: 7454-55). Mosaic is wrong on both counts.

**A. Solar Titan's cancellation notice violates the THSSA.**

First, Mosaic suggests that Solar Titan's cancellation notices do not violate the THSSA. (SAC, at ¶¶ 645-647) (Doc. 250, PageID #: 7555). The THSSA requires sellers to provide consumers with written cancellation notices that comply with the THSSA or "federal statutes, rules, or regulations governing the form of notice of the right of cancellation in door-to-door sales." Tenn. Code Ann. § 47-18-704(a)-(c). To the extent that Mosaic is claiming that Solar Titan's cancellation notice satisfies the FTC's Cooling-Off Rule for door-to-door sales and is thus valid under the THSSA, Mosaic is wrong.

The THSSA states the written notice of cancellation shall "[a]ppear on the front side of the receipt or contract, or immediately above the buyer's signature, under the conspicuous caption: "BUYER'S RIGHT TO CANCEL," and include specific language. Tenn. Code Ann. § 47-18-704(a)-(b)(1)-(2). Similarly, the FTC Cooling-Off Rule requires sellers to place a written notice of cancellation in "bold face type of a minimum size of 10 points" on the front of "any contract about such sale at the time of its execution" or "in immediate proximity to the space reserved in the contract for the signature of the buyer." 16 C.F.R. § 429.1 (a). Unlike the THSSA, the FTC requires two notices of cancellation: a written notice of cancellation in the contract pertaining to the sale

34

and a separate explanation of the notice of cancellation attached to the contract. *Id*. (a)-(b). The FTC requires the use of a model form for the separate notice of cancellation and specifies the cancellation notice must "substantially" include the following:

> "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

*Id*.

As outlined in the SAC, Solar Titan's cancellation notice, which fails to include the required notice language and is neither conspicuous nor on the front page or immediately above the signature line, also falls short of the THSSA and FTC requirements (SAC, ¶¶ 645-651.)

### B. Mosaic violated the THSSA by failing to provide a legally valid notice of cancellation.

The SAC states a claim that Mosaic's notice of cancellation itself violates the THSSA. Tenn. Code Ann. § 47-18-704(a)-(c). In the SAC, Plaintiffs allege that Mosaic's cancellation provision falls short of both the THSSA and FTC's placement requirements. Mosaic's 14-page loan agreement includes a cancellation provision on the third page and a separate attached cancellation notice (Doc. 250-1, PageID #: 7663-7678). The cancellation provision on the third page is not located "immediately above" a buyer's signature line, as required by the Tenn. Code Ann. § 47-18-704(b)(1), or "in immediate proximity" of a buyer's signature line as required by 16 C.F.R. § 429.1 (a) (*Id*. at 7665).

### C. Plaintiffs adequately plead that Mosaic violated the THSSA when it failed to cancel consumer contracts.

Tennessee specifically alleges that Mosaic also violated the THSSA by failing to honor consumers' timely cancellations (SAC, ¶¶ 64, 654, 656). The THSSA states that a buyer may cancel a home solicitation sale within three business days if the seller provided a valid cancellation

35

notice or at any time if the seller failed to do so. Tenn. Code Ann. § 47-18-703(a)(1), *Id*. at Tenn. Code Ann. § 47-18-704(d). Plaintiffs allege that Mosaic failed to honor consumers' timely cancellations, violating the THSSA (SAC, ¶¶ 64, 654, 656).

Mosaic argues that even if it violated the THSSA, it cannot be held liable because of the THSSA's offset provision. Specifically, it contends that Tenn. Code Ann. § 47-18-706(c) entitles Mosaic to an offset "for each instance where a solar energy system has been installed (regardless of the system's operational status)," which would be "impossible" to calculate. (Doc. 250, PageID #: 7456). However, even if Mosaic was entitled to an offset, this does not automatically render THSSA claims "inappropriate" or "impossible" (Doc. 250, PageID #: 7456). The sole case that Mosaic cites, *Laymance v. Vaughn*, does not address this issue and states only that an offset for the seller's services rendered under the specific facts of that case (which were not discussed) was appropriate. 857 S.W.2d 36, 37 (Tenn. Ct. App. 1992). The hypothetical possibility of individualized evaluations of damages is not unusual in mass consumer suits—and it certainly is not a bar to litigation. *See Emergency Med. Care Facilities*, *P.C*. v. *BlueCross BlueShield of Tennessee*, *Inc*., No. 115CV01014JDBEGB, 2016 WL 7429256, at *8 (W.D. Tenn. Apr. 15, 2016) (noting that computing individual damages in consumer actions is "rarely" an "impediment"). Indeed, the Tennessee Court of Appeals recently upheld an individualized assessment of damages in a suit involving similar claims of deceptive advertising. *See, e.g., State ex rel. Slatery* v. *HRC Med. Centers*, *Inc*., 603 S.W.3d 1, 30 (Tenn. Ct. App. 2019). Mosaic's feasibility argument asks this Court to bar all mass-consumer THSSA claims and most mass-consumer actions without a shred of legal support. This Court should reject the invitation.

## VIII.   THE COMMONWEALTH HAS ADEQUATELY PLED MOSAIC'S VIOLATIONS OF THE KHSSA.

The Commonwealth has stated a claim for violating the KHSSA, and whether each affected consumer received the notice and information required KY. REV. STAT. § 367.430 or Mosaic honored proper cancellation requests are factual questions not proper for resolution by way of a motion to dismiss under FRCP 12(b)(6).

Mosaic moves to dismiss the Commonwealth's KHSSA claim because Mosaic's loan agreements allegedly used a form that complied with the FTC Cooling-Off Rule's notice requirements. But, as outlined above, Mosaic has not complied with the FTC Cooling-Off Rule. Further, even assuming for the sake of argument that Mosaic's form complied with the FTC's Cooling-Off Rule, factual issues would remain as to whether (1) Mosaic actually provided a legally compliant notice to each affected consumer; and (2) whether it honored consumers' timely request for cancellation. The Commonwealth has pled that Mosaic failed to provide consumers with a compliant Buyers' Right to Cancel notice and refused to honor proper cancellation requests (SAC, at *e.g.*, ¶¶17, 64-65, 278, 280, 285, 287-290, 385, 415, 420-421, 633-635, 668). That states a claim for violating the KHSSA and Mosaic's motion to dismiss the KHSSA claim should be denied.

## IX.   PLAINTIFFS HAVE ADEQUATELY PLED THAT SOLAR TITAN ACTED AS MOSAIC'S AGENT.

Moving beyond Plaintiffs' direct liability claims, Plaintiffs allege Mosaic is liable for Solar Titan's unlawful promotion and sales of Mosaic's loan products and services because Solar Titan acted as Mosaic's agent. The SAC alleges Solar Titan served as Mosaic's agent, and Mosaic's factual disputes to the contrary are irrelevant at this stage.

37

1. *Plaintiffs have pled that Mosaic engaged in an actual agency relationship with Solar Titan.*

Plaintiffs have pled—in considerable detail—that because Mosaic had the right to control Solar Titan's actions regarding its use of Mosaic's financing program, Solar Titan acted as Mosaic's agent while engaging in unfair, deceptive, and abusive practices. (SAC, ¶¶ 220-235). These facts are sufficient at this stage to plead that Solar Titan was Mosaic's actual agent.

State and federal courts in Tennessee and Kentucky follow The Restatement (Third) of Agency when analyzing purported agency relationships. (*See* Doc. 250, PageID #: 7417.) Under that framework, a principal is liable for its agent's acts when the acts fall within the scope of an actual agency relationship. *See V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.*, 595 S.W.2d 474, 483 (Tenn. 1980); *see also Williams v. Kentucky Dept. of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). For actual agency, the primary question is whether when "the principal authorizes the agent to act for the principal's benefit . . .[the principal] retains the right to control the agent's conduct." *Hussman Refrigeration, Inc. v. South Pittsburg Assocs.*, 697 S.W.2d 588, 592 (Tenn. Ct. App. 1985); *see Williams*, 113 S.W.3d at 151; *see also Couch v. Nat. Res. & Env. Prot. Cabinet*, 986 S.W.2d 158, 161 (Ky. 1999) ("the issue of whether the principal has a right to control the agent is critical to the determination of whether an agency relationship exists.") (citations omitted).

Plaintiffs have pled sufficient allegations in support of a finding that Mosaic authorized Solar Titan to take action for Mosaic's benefit while maintaining the right to control Solar Titan's conduct, thus stating a claim that Solar Titan was Mosaic's agent.

### A. Mosaic's suggestion that this Court apply a purported "universal" holding to Plaintiffs' agency argument is misguided.

As a threshold matter, Mosaic begins its arguments on agency by claiming that courts "universally" hold that an agency relationship does not exist where a merchant introduces a consumer to a lender to finance a purchase from the merchant. (Doc. 250, PAGEID#; 7416).

38

Importantly, however, Plaintiffs allege that Mosaic relied on and authorized Solar Titan to do much more than simply introduce the company to consumers and much of the case law Mosaic cites involved the largely hands-off relationship between *automobile* retailers and *automobile* financing companies. *See, e.g., Wesley v. Schaller Subaru, Inc.*, 277 Conn. 526, 554 (2006) (stating that courts "are nearly universal in finding that auto dealers are not agents of **auto** financing companies[.]") (emphasis added). Thus, contrary to Mosaic's contention, courts have—at best— only held that *auto* lenders, unlike Mosaic, are not principals of automobile merchants, and this Court should decline to apply this supposedly "universal" conclusion beyond the automotive industry in answering such an individualized, fact-intensive question.

First, it is inappropriate to consider the nature of an agency relationship as "universally" established when the inquiry itself is incredibly fact-intensive. Tennessee's Middle District has opined that adhering to "universal" conclusions regarding an agency relationship is inappropriate "because such an action would require a multitude of individualized, factual inquiries to determine whether an agency relationship existed in each particular case." *Coleman v. General Motors Accept. Corp.*, 220 F.R.D. 64, 92 (M.D. Tenn. 2004); *see also Brown v. Vivint Solar, Inc.*, No. 8:18-cv-2838-T-24, 2020 WL 1332010, at *6 (M.D. Fla. 2020) (declining to grant Mosaic's Motion for Summary Judgment on agency even when the plaintiffs alleged significantly less facts than Plaintiffs assert in the case before this Court) (citation omitted).

Even if it were appropriate to consider an application of a "universal" conclusion, the cases cited by Mosaic as factually similar to the present case are distinguishable on this issue. For example, Mosaic first cites *Wesley v. Schaller Subaru* to support its contention that retailers are not agents of lenders. However, the court in *Wesley* did not hold that an agency relationship did not exist at all between the lender and the retailer, but instead that the lender's conduct supported

39

a finding that the parties' agency relationship was limited to titling vehicles on the lender's behalf. 277 Conn. at 545-46. Here, Plaintiffs have pled various factual allegations demonstrating Mosaic's intent that the scope of the agency relationship extend to Solar Titan's marketing and sales of Mosaic's loan products. Unlike in *Wesley*, Mosaic entrusts Solar Titan sales representatives to go well beyond simply "introduc[ing] a consumer to a third-party lender," relying on the sales representatives to, among other things, market its loan products, explain its loan terms, advise the consumer on the loan product most applicable to their circumstances, dictate the borrower's monthly repayment obligation based on the electric bill provided to the sales representative, explain the tax credit's application to the borrower's repayment obligation, and review Mosaic's financial disclosures with consumers (*See, e.g.*, SAC ¶¶ 177-83, 219, 221-24, 293, 456-58, 495).

To this end, Mosaic also exercised a significant right to control the contents of Solar Titan's trainings, required access to all sales, marketing, and "other business development meetings," and determined which sales representatives were permitted to sell its loan products or access its portal by requiring that sales representatives pass Mosaic Program training tests or quizzes (SAC, ¶ 221-32). As such, Mosaic is liable for Solar Titan's conduct taken in furtherance of marketing and selling Mosaic's loan products. Second, the plaintiff in *Wesley* had attempted to rely primarily on "guidebooks" provided by the lender to show that it had control over the transaction at issue such that an agency relationship existed. 277 Conn. at 541. By contrast, and as outlined throughout this section, Plaintiffs have pled extensive facts regarding the extent of Mosaic's right to control Solar Titan's marketing and sales of its loan products that extends well beyond that which the *Wesley* plaintiff relied upon (*See, e.g.*, SAC, ¶¶ 221-235).

The remaining cases Mosaic cites to support this argument are similarly distinguishable. For example, Mosaic cites *Wells v. Craig & Landreth Cars, Inc.* to argue that courts have

"routinely held" retailers are not lenders of agents; importantly, however, this case did not actually consider any facts to make a determination on the merits of an agency argument. No. 3:10-CV-00376, 2011 WL 1542121, *2 (W.D. Ky. April 22, 2011). Rather, the court declined to meaningfully analyze the question because the plaintiff failed to assert any agency allegation in her complaint. *Id.*

The facts each court considered concerning the extent of the right to control and the lender's reliance on the retailer to conduct its business were also markedly different in the cases Mosaic cites from the facts of the present case. Importantly, and as Plaintiffs allege in the SAC, the relationship between Mosaic and Solar Titan extends beyond what is typical or consistent with the extension of credit, especially regarding the extent of the lenders' reliance on the retailer to do its business and the extent of control given to the lender under the parties' agreement. *See Chrysler Credit Corp. v. Barnes*, 126 Ga. App. 444, 453 (1972) (holding that the lender's provision of credit contract forms, right of approval, and general agreement with dealer to finance vehicles were insufficient to create an agency relationship); *Nave v. Life Bank*, 334 B.R. 586, 592 (M.D. Tenn. 2005) (holding that a broker was not an agent of a lender because the broker was "not a mere conduit through which [the lender] did its business."); *Pope v World Omni Fin. Corp.*, 599 So. 2d 15, 16–17 (Ala. 1992) (finding that an agency relationship did not exist when the financer's actions were not "inconsistent with the extending of credit by an institution."). By contrast, Plaintiffs have pled sufficient facts to show that Mosaic used Solar Titan to do its business and maintained a relationship that is not typical of the extension of credit. (*See, e.g.*, SAC, ¶¶ 177-83, 219, 221-24, 293, 456-58, 495); *see Nave*, 334 B.R. at 592; *see also Pope*, 599 So. 2d at 16-17.

41

### B. Plaintiffs have pled that Mosaic had the right to control various aspects of Solar Titan's business.

Plaintiffs pled substantial facts showing Mosaic's right to control Solar Titan. As Plaintiffs outlined in the section above, the primary factor for determining whether an actual agency relationship exists is the extent of the purported principal's right to control the purported agent. While actually exercising control can demonstrate that an agency relationship exists, it is not essential—the control test is, instead, based on a party's *right* to control the conduct. As the Tennessee Court of Appeals has clarified,

> [t]hough no one factor is entirely determinative, the primary factor in determining [the purported agent's] status will be [the purported principal's] right to control the conduct of their work. *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 419 (Tenn. 2009). 'The test is not whether the right to control was exercised but merely whether the right to control existed.' *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985).

*Cont'l Cas. Co. v. Theraco, Inc*., 437 S.W.3d 841, 849 (Tenn. Ct. App., 2014); s*ee also*, *Grant v. Bill Walker Pontiac–GMC, Inc.*, 523 F.2d 1301, 1305 (6th Cir. 1975); *Bowman v. Benouttas*, 519 S.W.3d 586, 597 (Tenn. Ct. App. 2016); *CSX Transp., Inc. v. First Nat. Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999).

The SAC alleges that Mosaic had the right to control nearly every aspect of Solar Titan's sales of Mosaic's loan products and services. As stated in the SAC, Mosaic and Solar Titan executed a Merchant Agreement whereby Mosaic would fund Solar Titan's solar sales and Solar Titan would market, promote, and sell Mosaic's loan products (SAC, ¶ 22.) Solar Titan would also facilitate consumers' applications for credit with Mosaic during the in-home sales presentation. (*Id.*) Throughout their relationship, Mosaic retained significant control over Solar Titan's solicitation and promotion of Mosaic's products, how Solar Titan handled consumer complaints, the procedures governing its funding, and the training of Solar Titan employees among other things alleged in the SAC (*Id.* at ¶¶ 224, 225, 226, 227-228, 230-234.) All of these facts show Mosaic's

42

significant control of Solar Titan's promotion, marketing, and sale of Mosaic's loan products and Solar Titan's facilitation of applications with and for Mosaic.

Additionally, courts have noted that, in evaluating whether sufficient right to control existed, courts should look to whether the purported principal had the right to control the means of the work. *See Nave*, 334 B.R. at 591. To this end, courts have reiterated that the ability to unilaterally terminate a relationship if the agent does not conduct itself in a manner the principal approves can be indicative of a principal's ability to control the means. *Id*. ("a principal controls the means of the work performed by an agent when, for example, the principal has the power to terminate the agent's contract if the agent conducts itself in a manner of which the principal does not approve."). Here, the language of Defendants' agreement gave Mosaic—Solar Titan's primary lending partner—the ability to terminate the agreement in its *sole discretion*, giving Mosaic significant control over Solar Titan's business structure. (SAC, ¶ 234).

Even more, the parties' agreement gave Mosaic significant rights to control the means of Solar Titan's business—namely, the sales presentations. As discussed above, Mosaic obligated Solar Titan to train its employees a certain way and reserved the right to demand that Solar Titan engage in certain training "as deemed necessary" by Mosaic in its sole discretion (*Id.* at 233). Perhaps most significantly, the same agreement mandated that Solar Titan comply with all Mosaic Program Documents. (*Id.* at 227). Importantly, Mosaic retained the right to "add new Mosaic Program Documents" at any time, as well as the right to "modify the terms of [the Agreement] or any other Mosaic Program Document" at any time. (*Id.* at 228). This is especially relevant to the Court's analysis of this issue because the agreement broadly defines Mosaic Program Documents to include "any other policies, procedures, or instructions communicated" by Mosaic (*Id.* at 227). Thus, Plaintiffs have pled that Mosaic retained the right to obligate Solar Titan's compliance with

43

any policy, procedure, or instruction it deemed fit in its sole discretion, evidencing Mosaic's right to control any aspects of Solar Titan, including the means of conducting its business, whenever it so chose. As such, Plaintiffs have sufficiently pled Mosaic's right to control Solar Titan.

Finally, Mosaic argues that "setting standards in an agreement does not itself create a right of control" (Doc. 250, PageID #: 7419). In making this argument, Mosaic once again mischaracterizes Plaintiffs' arguments. Plaintiffs have not pled that Solar Titan is Mosaic's agent purely because Mosaic imposed contractual standards on Solar Titan (Doc. 250, PAGEID#: 7418). Instead, Plaintiffs have pled that the agreement between Mosaic and Solar Titan evidences Mosaic's significant right of control over Solar Titan, alleging that the agreement did far more than simply set standards for the work (*See* SAC at ¶¶ 221-35).

The agreements discussed in the cases Mosaic relies on gave the purported principals significantly less right to control the purported agent than the agreement at issue here. Neither *Nave* nor *Sodexho* discussed the inclusion of provisions that allowed the principal to unilaterally change or add to the parties' agreement whenever it so chose. Also, neither case discussed the inclusion of provisions permitting the purported principal to obligate the purported agent to any additional requirements, oversight, or controls at any time and in the purported principal's sole discretion. *See Sodexho*, 174 S.W.3d at 179-81; *see Nave*, 334 B.R. at 592. As another example, while the *Sodexho* court concluded that the principal's right of access to Sodexho's facilities was not sufficient to show control, the agreement at issue here included a right of access to all of Solar Titan's sales meetings, marketing events, and "other business development meetings" (SAC, ¶ 232). As such, unlike in *Nave*, the extensive agreement between Mosaic and Solar Titan acted as more than a "mere tool[] used by [the lender] to facilitate its selection of qualified borrowers." *Nave*, 334 B.R. at 692.

44

The agreement at issue, in this case, gave Mosaic the right to control significantly more than that which would be necessary to facilitate selecting qualified borrowers; for example, reserving the right to control training programs and monitor the implementation of training programs, requiring the ability to attend all meetings, relying on Solar Titan sales representatives to explain its loan products, and relying on sales representatives to explain loan terms and repayment obligations, among other things (*See, e.g.*, SAC, ¶¶ 177-83, 219, 221-24, 293, 456-58, 495). Importantly, these examples represent only some of the allegations Plaintiffs have asserted showing Mosaic's right to control Solar Titan. Indeed, while the court in *Sodexho* noted that "every contract for work to be done reserves . . . a certain degree of control because some degree of control is necessary[,]" the rights granted to Mosaic under the agreement in this case far exceed a degree of control necessary to "assure that the work is performed according to expectations . . . ." 174 S.W.3d at 178.

Finally, Mosaic's reliance on its express agency disclaimer in its agreement with Solar Titan (*see* Doc. 250, PageID #: 7417-18) misunderstands the law. When the facts establish the existence of an agency relationship, the relationship will be found to exist whether the parties intended to create one or not. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 725 (Tenn. 1997); *see also White v. Revco Disc. Drug Centers, Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000). Thus, Mosaic's disclaimer is not dispositive because its conduct and the extent of its right to control Solar Titan's work under their agreement all support the existence of an agency relationship.

Mosaic also wrongly asserts that various other factors—compensation, the party that initiated the agency relationship, and the parties' interests—are dispositive of the agency question. While some courts have considered these factors in determining whether an agency relationship exists, other courts have found that the factors to be considered are not limited to those Mosaic

raises. *See, e.g., Peters*, 2015 WL 12531995, at *2 (internal citations omitted). More importantly, courts only consider those factors in service of the primary inquiry: the extent of a party's right to control its purported agent. *See, e.g., Teraco, Inc.*, 437 S.W.3d at 849 (quoting *Stratton*, 695 S.W.2d at 950); *Lindsey*, 275 S.W.3d 411 at 419; *Teksystems, Inc. v. Farr*, 2009 WL 1312835, at *19 (Tenn. Ct. App. May 11, 2009) ("The *long-settled test* in Tennessee for agency is 'whether the principal has a right to control the conduct of the agent concerning matters entrusted to the agent.'") (emphasis added). As previously explained, Plaintiffs have pled that Mosaic had the right to control nearly every aspect of Solar Titan's Mosaic loan sales—the primary factor indicative of an agency relationship and from which, without more, a factfinder could find the existence of an agency relationship. *See PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 537 (Tenn. Ct. App. 2012). For the reasons outlined above, Plaintiffs sufficiently pled that Mosaic maintained significant right of control over Solar Titan such that dismissal of the issue is not appropriate. *See Nathan v. St. Luke Hosp., Inc.*, No. 2003-CA-001389-MR, 2004 WL 2915344, at *5 (Ky. Ct. App. Dec. 17, 2004) (explaining that *any evidence* of right to control could have been sufficient on summary judgment to show a genuine issue of material fact regarding the existence of an agency relationship).

Finally, and as a matter of policy, this Court should decline to set the impractical and dangerous precedent that Mosaic asks it to here. The agency "doctrine is based on the moral and economic principle that a person must bear the foreseeable consequences of her voluntary actions." Paula J. Dalley, A Theory of Agency Law, 72 Univ. of Pittsburgh L. Rev. 495, 498 (2011). To this end, the classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Keating v. Peterson's Nelnet,*

*LLC*, 615 F. App'x. 365, 372 (6th Cir. 2015) (internal quotations and citations omitted). Mosaic now asks this Court to hold that despite its total reliance on retail sales representatives to market and sell its loan products and regardless of its significant ability under the Partnership Agreement to exercise control over Solar Titan's marketing and sale of its loan products, it did not manifest any assent that Solar Titan act on its behalf or subject to its control. Even more, Mosaic argues that—irrespective of its decision to move forward on consumers' loans despite the hundreds of complaints it received regarding Solar Titan—this Court should find that it could not, *as a matter of law*, have ratified Solar Titan's conduct. Such a result would be contrary to the public policy consideration underlying agency law and would only motivate unethical lenders to create the illusion of a hands-off relationship to avoid liability for harming consumers.

2. *Plaintiffs have Sufficiently Pled that Solar Titan was Mosaic's Agent by Ratification.*

Because agency can also be established through Mosaic's ratification of Solar Titan's unlawful conduct, the SAC also states a claim that Mosaic is liable for Solar Titan's conduct under the theory of agency by ratification. Mosaic's arguments to the contrary mischaracterize both (1) what is required to establish an agency relationship by ratification and (2) the application of the "adverse interest exception".

**A. Ratification does not require a prior actual agency relationship.**

Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority. Restatement (Third) of Agency § 4.01. Mosaic misstates the agency by ratification standard, claiming that ratification requires a preexisting agency relationship (Doc. 250, PageID #: 7422). Instead, "[r]atification may create a relationship of agency when none existed before." Restatement (Third) of Agency, § 4.03(a); *see also Bells Banking Co. v. Jackson Ctr.*, 938 S.W.2d 421, 427 (Tenn. Ct. App. 1996) ("Ratification is the

47

express or implied adoption and confirmation by one person of an act …[on] his behalf by another who *assumed to act as his agent without authority to do so*.").

### B. Plaintiffs have pled that Solar Titan purported to be Mosaic's Agent.

Mosaic next argues that agency by ratification requires that "the purported agent hold himself out as an agent," suggesting that Solar Titan was not Mosaic's agent unless Solar Titan affirmatively represented it was Mosaic's agent to consumers (Doc. 250, PageID #: 7422). Notably, the Restatement (Third) of Agency observes that this principle, while "often-stated," rarely controls whether agency by ratification exists. § 4.03(b). In Tennessee, courts have not included any such formal requirement in the test for ratification. Instead, courts have reiterated that ratification requires that a principal's express or implied conduct can ratify an agency relationship where that conduct confirms that the agent is acting on its behalf—without consideration of whether one affirmatively told the third party that it was acting as another's agent. *See Webber v. State Farm Mut. Aut. Ins.,* 49 S.W.3d 265, 270 (Tenn. 2001); *Harber v. Bank of Am., N.A.,* 274 S.W.3d 649, 655 (Tenn. Ct. App. 2008) (citation omitted); *Regions Bank v. Bric Const., LLC,* 380 S.W.3d 740, 764-65 (Tenn. Ct. App. 2011) (utilizing a test that does not look to holding oneself out as an agent for purposes of finding ratification); *see also* Black's Law Dictionary (defining "purported" to include that which is conveyed, rather than only that which is directly expressed).

Moreover, Plaintiffs sufficiently allege that Solar Titan purported to act as Mosaic's agent. As previously discussed, Solar Titan marketed, promoted, and sold Mosaic's loan products and services, facilitated consumers' applications for those products and services, and explained Mosaic's loan terms to consumers (SAC, at ¶¶ 175, 221-22, 456, 458, 495). Mosaic also relied on Solar Titan sales representatives to direct consumers on the type of loan product Mosaic would

48

use for the consumer (*Id.* at ¶ 179.) Thus, Plaintiffs have sufficiently pled that Solar Titan sales representatives, with or without an express representation, conveyed that they were acting as Mosaic's agent such that this dispute, at minimum, cannot be resolved in Mosaic's favor at this stage.

### C. Plaintiffs have pled that Mosaic knowingly ratified Solar Titan's acts.

Mosaic contends that Plaintiffs have not pled agency by ratification because Plaintiffs have not alleged that "Mosaic affirmed any prior act with the requisite particularity to show that Mosaic subsequently consented to Solar Titan's misconduct" (Doc. 250, PageID #: 7423). That is wrong. Plaintiffs allege that Mosaic knew that Solar Titan engaged in unlawful conduct to induce sales—and that Mosaic accepted the benefits of such misconduct (SAC, ¶¶ 236, 240-46). "[W]here a party with full knowledge of the facts involving him in liability acquiesces in what has been done, he thereby sanctions it; and silence and inaction on his part in such a case, after a reasonable time, will amount to a ratification, and make him liable." *Regions Bank*, 380 S.W.3d at 764 (quotations and citations omitted); *see also Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 587 (S.D. Ohio 2016) (noting that both actual and constructive knowledge can support agency by ratification). Plaintiffs also allege that Mosaic knew or should have known that Solar Titan misled consumers about their energy savings, their eligibility for Tax Credits, and when consumers' financing payments would begin (*Id*). The SAC alleges Mosaic knew—based, at minimum, on the hundreds of consumer complaints it received directly from its borrowers—that Solar Titan made misrepresentations to induce sales of not just Solar Titan's solar systems—but ultimately Mosaic's financial products and services (*Id.* at ¶ 411). Despite knowing about Solar Titan's unlawful conduct, Mosaic nevertheless chose to profit from it (*Id.*, ¶¶ 236, 240-246). Taken as true, these

49

factual allegations sufficiently pled a plausible claim that Mosaic ratified the prior unlawful acts of Solar Titan.

Moreover, Mosaic cannot claim lack of knowledge about Solar Titan's misconduct. Here, Plaintiffs pled that Mosaic received hundreds of complaints detailing Solar Titan's unlawful conduct (SAC, ¶¶ 240, 410, 554).[16] Under these circumstances, Mosaic cannot plead ignorance as a defense to Plaintiffs' claims (*See* Doc. 78, PAGE ID#: 4786 at ¶ 2) (looking to Defendant Atnip's awareness of, and response to, a consumer complaint to find knowledge)).

### D. Plaintiffs sufficiently pled that Mosaic intended to ratify Solar Titan's unlawful conduct.

Mosaic next argues that Plaintiffs have not sufficiently pled Mosaic's intent to ratify Solar Titan's unlawful acts. Ratification "is usually a question of the principal's intent, an issue that is generally regarded as a question of fact to be determined from the surrounding circumstances." *Harber*, *159* S.W.3d at 552 (citing *Webber*, *49* S.W.3d 265 at 270). Tennessee courts have determined that,

> Because ratification is a function of the principal's intent, it is a question of fact. Yet, when the actions of the principal evidence an intent to ratify the unauthorized act or are justifiable only if there is a ratification, a court may find that ratification has occurred as a matter of law. *Id.* Under such a circumstance, the question of whether the principal contemplated ratification may become immaterial so long as the principal pursues this course of conduct with full knowledge of the facts relevant to the unauthorized acts. *See id.*

---

[16] Notwithstanding the fact that Plaintiffs pled that Mosaic knew of Solar Titan's unlawful conduct, Plaintiffs also sufficiently allege that Mosaic should have known of Solar Titan's unlawful conduct. Mosaic has not challenged Plaintiffs allegations that Mosaic could have but chose not to exercise reasonable diligence. Since the standard is what they knew or should have known of the unlawful conduct, Plaintiffs have pled that if Mosaic exercised reasonable diligence, it would have uncovered that Solar Titan unlawfully induced sales of Mosaic products. (*Id*. at ¶ 241). But as the SAC contends, Mosaic instead elected to bury its head in the sand and continue to collect profits—disregarding consumers' complaints and its own duties to exercise due diligence.  (*Id*. at ¶ 242.)

50

*Id.* at 655 (internal citations omitted); *see also Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 874–75 (Ky. 2016) (ratification may be proven by reasonable inferences from circumstantial evidence).

As explained above, Plaintiffs pled that Mosaic chose to accept sales from Solar Titan after knowing about Solar Titan's unlawful scheme (SAC, ¶ 71.) This included Mosaic making milestone payments on loans to Solar Titan even after the homeowner associated with that account complained to Mosaic about Solar Titan's unlawful conduct (*Id.*, ¶ 244.) This was not an isolated incident: Plaintiffs pled that Mosaic continued disbursing consumers' loan proceeds to Solar Titan and continued collection activity on consumers' loans even after those consumers communicated to Mosaic their efforts to cancel their Solar Titan contract and complained about the pervasive misrepresentations (*Id.*, ¶¶ 214, 633). Based on allegations like these, the Court can determine that Mosaic's ongoing conduct demonstrated its intent to ratify Solar Titan's unlawful conduct—and dismissal is not proper.

### E.  The adverse interest exception does not apply.

Finally, Mosaic wrongly argues that Plaintiffs are imputing Solar Titan's knowledge to Mosaic (Doc. 250, PageID #: 7425-26). As explained in Section 4 above—Plaintiffs allege that Mosaic itself knew facts sufficient to ratify Solar Titan's conduct. This argument does not impute Solar Titan's knowledge to Mosaic; rather, it holds Mosaic accountable for its own knowledge and its intent to continue the same course of conduct in spite of it. For this reason, Mosaic's argument regarding the adverse interest exception is inapplicable to the case at bar.

Because Plaintiffs have sufficiently pled facts supporting that Solar Titan is Mosaic's agent such that the issue is not appropriate for dismissal and because a decision to the contrary would

51

frustrate the purpose of the agency doctrine, this Court should reject Mosaic's argument that Plaintiffs failed to sufficiently plead agency.

## X. THE HOLDER RULE APPLIES IN THIS CASE.

The Holder Rule applies to the states' enforcement of their consumer protection laws, in their *parens* capacity, against Mosaic. Mosaic's cursory treatment of FTC guidance distorts the purpose of the FTC Holder Rule and misstates FTC guidance about the intent of the Rule. Nothing in its text or history precludes this Court from applying the Rule here. Further, Mosaic's incorrect interpretation of the Rule—that it only applies as a breach of contract defense—conflicts with the rule language and the cases applying it. Finally, although the applicability of the Holder Rule in an enforcement case is an issue of first impression for this jurisdiction, other courts, recognizing the purpose of the Rule and attorneys general's statutory authority to protect consumers from fraud, have held that the Holder Rule applies in *parens* consumer enforcement cases.

To combat consumer fraud enabled by third-party financing, the FTC Holder Rule "reallocat[es] the costs of seller misconduct in the consumer market [to the creditors]." Promulgation of Trade Regulation Rule, Statement of Basis and Purpose, 40 Fed. Reg. 53523 (Nov. 18, 1975) ("Statement of Basis and Purpose") (Exhibit 4). As designed, the Rule prevents sellers and creditors from making "the consumer's duty to pay independent of the seller's duty to fulfill his obligations," ensuring that creditors are held accountable for the relationships they enter into with merchants. Guidelines on Trade Regulation Rule Concerning Preservation of Consumers' Claims & Defenses, 41 Fed. Reg. 20022-01, 20023 (May 14, 1976) ("1976 Guidelines").

After conducting several hearings and reviewing comments during the administrative rulemaking process, the FTC found that "[a]s a practical matter, the creditor is always in a better position than the buyer to return seller misconduct costs to sellers...." *Id*. Thus, the Holder Rule

makes it an unfair act or practice for a seller to take or receive consumer credit contracts or accept

full or partial payment for sales involving purchase money loans without including a notice stating,

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS

AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF

GOODS OR SERVICES . . . ." *See* 16 C.F.R. § 433.2. "Consumer credit contracts" include "any

instrument which evidences or embodies a debt arising from a 'Purchase Money Loan' transaction

or a 'financed sale'…" 16 C.F.R. § 433.1(i).

When applying the Holder Rule, the ceiling on the right to affirmative recovery is "monies

paid under the contract." Confirmation of Trade Regulation Rule Concerning Preservation of

Consumer's Claims and Defenses ("Confirmation of FTC Holder Rule"), 84 Fed. Reg. 18711,

18712 (May 2, 2019). "From the consumer's standpoint, this means that a consumer can (1) defend

a creditor suit for payment of an obligation by raising a valid claim against the seller as a set-off,

and (2) maintain an affirmative action against a creditor who has received payments for return of

monies paid on [the] account." 40 Fed. Reg. 53524 (Nov. 18, 1975). Thus, the Holder Rule allows

affirmative recovery even in circumstances where rescission is unwarranted and where the goods

or services have some value. *Id*. Ensuring consumers "recover funds already paid under the

contract if such recovery is necessary to fully compensate the consumer for misconduct" gives

"full effect to the Commission's original intent to shift sellers' misconduct costs away from

consumers." *Id*.

1. *The FTC's Stated Purpose of the Holder Rule Supports its Application in this case.*

When the FTC promulgated the Holder Rule, it explained the Rule's purpose, noting

"widespread evidence of abuse and [consumer] injury. . . ." *Id.* As explained in the Statement of

Basis and Purpose of the FTC Holder Rule, the FTC found abuses began when courts imported

"holder in due course" rules from the commercial transaction context into the consumer context. *Id*. The holder in due course rule prevents holders of instruments from being required to "look behind the instrument which on its face was negotiable." *See id.* at 5307 citing *Miller v. Race*, 97 Eng. Rep. 398 (K.B. 1758).

The Holder Rule rejects applying the holder in due course doctrine to consumer transactions because doing so "places the risk of a seller's misconduct on the party least able to bear the burden—the individual consumer." Statement of Basis and Purpose, 40 Fed. Reg. at 53509. Thus, the Rule was created to prevent finance companies like Mosaic from obligating consumers to pay them for a fraudulent sale. As the FTC noted, "[b]etween an innocent consumer, whose dealings with an unreliable seller are, at most, episodic, and a financial institution… the financer is in a better position to both protect itself and to assume the risk of a seller's reliability." Statement of Basis and Purpose, 40 Fed. Reg. at 5307-08. Through the Holder Rule, the FTC places the burden of investigation of consumer sales fraud on the finance companies, which are in the best position to investigate fraud, assess the risks of their transactions, and absorb the financial consequences of disreputable seller activities.

When promulgating the Holder Rule, the FTC also recognized how prevalent it had become for financial institutions to partner with unscrupulous merchants and demand consumers' payments despite rampant merchant fraud. *Id.* at 53510 (internal citations omitted); *see also* Office of Economic Opportunity Report to Congress, *The Legal Services Program—Accomplishments Of And Problems Faced by Its Grantees* (Mar. 21, 1973). The FTC found widespread abuse is even worse in the context of home improvement projects, which "have long been an area subject to considerable deceptions and outright fraud." Statement of Basis and Purpose, 40 Fed. Reg. at 53511-12. To that end, the Rule was intended to ensure recourse against the finance company

funding these fraudulent sales because unscrupulous contractors—like Solar Titan—often become bankrupt before complete relief can be afforded to consumers. *Id.*

Notably, in 2019, after soliciting comments about the necessity of the FTC Holder Rule, the FTC opted to maintain the rule that "provide[s] recourse to consumers who otherwise would be legally obligated to make full payment to a creditor or assignee despite breach of warranty, misrepresentation, or even fraud on part of the seller." Confirmation of FTC Holder Rule, 84 Fed. Reg. at 18711.

2. *The Holder Rule applies in consumer protection enforcement cases.*

### A. Mosaic misstates the scope of Holder Rule claims that may be raised against creditors.

This Court should reject Mosaic's constrained and distorted reading of the Holder Rule. Contrary to Mosaic's argument, the Holder Rule is not just applicable to contract cases, but instead submits Mosaic to "all claims and defenses" that could be asserted against the seller. *See* 16 C.F.R. § 433.2. "[A]ll claims and defenses" include "those things, which as a matter of applicable law, constitute legally sufficient claims and defenses in a sales transaction." 1976 Guidance, 41 Fed. Reg. at 20023-24; *see also Heinz v. Driven Auto Sales, LLC*, 603 S.W.3d 890, 897-98 (Mo. App. Div. 2020) (citation omitted) (finding that "the 'subject to all claims" language from the FTC holder rule is broad and encompasses the [Missouri Merchandising Practices Act]" because the "the liability of the holder is as broad as that of the seller under the FTC holder rule."); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1097, (W.D. Mich. 2000) ("[N]either the text nor the commentary to the Holder Rule limits the availability of affirmative consumer claims against assignee-creditors to those who assert a right of recission [sic] under common law.")

The Holder Rule history confirms that the Holder Rule applies in consumer enforcement cases. As discussed above, its purpose is to reallocate the costs of seller misconduct to the creditor.

Statement of Basis and Purpose, 40 Fed. Reg. at 53524. The Rule was drafted for circumstances like these—arranged financing through a disreputable contractor employing illegal and unethical sales practices; here, to the detriment of thousands of consumers. *Id.* at 53511-13. Plaintiffs do not seek to use the Holder Rule to "enforce private contract rights," but, through this consumer protection enforcement action, to fully compensate the consumers for seller misconduct. *Id.*[17]

Further, the cases cited in Mosaic's Motion to Dismiss do not support Mosaic's position. Mosaic cites *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993), and *Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786, 791 (S.D. Ohio 2000), to support its argument that "Counts 1 and 4-7 must be dismissed to the extent Plaintiffs seek a judgment against Mosaic for Solar Titan's alleged conduct under the Holder Rule." (Doc. 250, PageID # 7412). *Smith's* holding that "federal regulations cannot create a cause of action" is not pertinent to this action where Plaintiffs are not basing their cause of action on a regulation.

The FTC Holder Rule does not attempt to create a cause of action, but allows causes of action that a plaintiff already has authority to bring against a seller to be brought against a holder. Thus, applying the Holder Rule in this case would only allow Plaintiffs to raise causes of action against Mosaic that they already have the statutory authority to pursue against *Solar Titan*. Thus, the rule from *Smith* has no bearing on the application of the Holder Rule in enforcement actions. *See, e.g., Wayne v. Vill. of Sebring*, 36 F.3d 517, 528 (6th Cir. 1994) (holding that the *Smith* rule did not bar the plaintiff's action when the Plaintiffs sued under a local ordinance that created a

---

[17] In cases such as this where consumer harm is widespread, Plaintiffs' enforcement of state consumer protection laws consistent with the Holder Rule and its pursuit of relief for harmed consumers would better serve the interests of justice and efficiency, as compared to a multitude of individual private consumer actions challenging the defendants' misconduct. Mosaic's arbitration clauses do not apply to states' enforcement of their own consumer protection laws. *See* Tenn. Code Ann. 47-18-113(b) (stating that "no action of a consumer or other person can alter, amend, obstruct or abolish the right of the attorney general and reporter to proceed to protect the state of Tennessee and consumers or other persons within this state or from other states who are victims of illegal practices of persons located, wholly or in part, in Tennessee's borders."); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (holding that an arbitration clause did not apply to the EEOC, which was not a party to the contract).

56

private right of action.) Likewise, the *Morales* holding is not relevant to Plaintiffs' case. In *Morales*, the court only held that private plaintiffs could not bring a cause of action for a violation of the FTC Act. Plaintiffs are not private citizens trying to enforce the FTC Act, but instead, as previously stated, are enforcing laws they themselves have the statutory authority to enforce for the protection of consumers.

### B. Tennessee and Kentucky have *parens patriae* authority to raise Holder Rule claims against Mosaic for the protection of consumers.

Plaintiffs have *parens patriae* authority to pursue claims for monetary relief in consumer protection enforcement cases like this one. In *Chapman v. Tristar Prod., Inc*., the Sixth Circuit Court of Appeals held that states have *parens patriae* authority to pursue injuries to their quasi-sovereign interests. *Chapman v. Tristar Prod., Inc*., 940 F.3d 299, 305 (6th Cir. 2019). For states to show they have a quasi-sovereign interest, they must (1) "articulate an interest apart from the interests of particular private parties" and (2) show that they are "more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592 602, 607 (1982). States' quasi-sovereign interests include their desire to protect the "health and well-being—both physical and economic—of its residents in general." *Id.* As Justice Brennan explained in *Snapp*,[ "A] State is no ordinary litigant. As a sovereign entity, a State is entitled to assess its needs, and decide which concerns of its citizens warrant its protection and intervention." *Id*. at 612.

A quintessential example of an alleged injury affecting a state's quasi-sovereign interest is when the "injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers.'" *Id.* at 607; *Chapman*, 940 F.3d 299 at 305. Applying this principle, *Chapman* recognized that states exercise sovereign law-making power by outlawing consumer fraud. *Id*.; *see also In re Edmond*, 934 F.2d 1304, 131 (4th Cir. 1991) (internal citations omitted) (explaining that when enforcing a consumer protection statute, a state attorney general is

57

exercising "a quasi-sovereign interest, the presence of which confers *parens patriae* standing."); *see also State ex rel. Slatery* v. *HRC Med. Centers*, *Inc*., 603 S.W.3d 1, 30-31 (Tenn. Ct. App. 2019) (upholding an $18,141,750.00 award to the Tennessee Attorney General towards restitution for consumers harmed by HRC's violations of the TCPA).

Courts have recognized states' authority to invoke the Holder Rule in consumer fraud enforcement cases. In *State ex. rel. Stenberg v. Consumer's Choice Foods Inc*., the Nebraska Supreme Court allowed Nebraska to bring claims it had against a seller against the holder, recognizing that the purpose of the Holder Rule was to "'reallocate the cost of seller misconduct to the creditor.'" 755 N.W.2d 583, 589-590 (Neb. 2008) (internal quotation marks and citations omitted). As such the court held that the FTC Holder Rule allows Nebraska to seek and obtain restitution for $96,308.21 for consumers against the holder because of the sellers' misconduct. *Id.* at 488.

Similarly in *State of Wisconsin v. Excel Mgmt. Services, Inc*., the Wisconsin Supreme Court held that allowing the Attorney General to prosecute its seller-focused consumer protection claims against a lender is consistent with the purpose of the Wisconsin Consumer Protection Act and the principles of the FTC Holder Rule. 331 N.W.2d 312, 316-317 (Wis. 1983). In making its decision, the court considered the authority the Act gave the Wisconsin Attorney General to "commence an action to enjoin a violation" and the statutory language that "[t]he court may in its discretion…. make such orders… as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action…." *Id*. at 314 (internal citations omitted). Thus, the court found that "what is clear from the statutes is that the legislature intended to provide remedies for those persons who had been damaged as a result of fraudulent and deceptive trade practices." *Id*. at 316. In recognizing the intention of the legislature to allow the Attorney General

to prosecute these cases, the court held that the Holder Rule is applicable in an enforcement action. *Id*. at 316-317.

Like other states that have enacted consumer protection laws, Tennessee and Kentucky's legislatures have expressed a quasi-sovereign interest in prohibiting persons, like Mosaic and Solar Titan, from engaging in various consumer protection violations harming their citizenry **and obtaining relief for those harmed**. *See* Tenn. Code Ann. § 47-18-108 (emphasis added) (authorizing Tennessee's Attorney General to pursue equitable relief against companies violating the TCPA **and allowing the court to "make orders…. as may be necessary to restore to any person who has suffered any ascertainable loss…. any money or property…. or thing of value**") (emphasis added); *State of Tennessee ex rel. Leech v. Levi Strauss & Co*., No. 79-722-III, 1980 WL 4696, at *5 (Tenn. Ch. Sept. 25, 1980) (internal citations omitted) (recognizing that Tennessee's consumer protection law includes state authority to pursue *parens patriae* claims); *see also* Ky. Rev. Stat. §§ 367.190(1); 367.200 (providing that a court may make such additional orders or judgments as may be necessary to restore to any person money or property lost as a result of conduct in violation of KCPA); *Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 707 (Ky. Ct. App. 1981) ("[O]nly by recognizing the right of the Attorney General to seek restitution under KRS 367.200 can we give effect to the expressed intention of our legislature[.]"). Thus, Tennessee and Kentucky have a quasi-sovereign interest in protecting their citizens from Mosaic and Solar Titan's fraudulent sales practices and redressing consumer injury.

Mosaic's reliance on P*eople of State of N.Y. by Abrams v. Seneci*, 817 F.2d 1015 (2d Cir.1987) for its position that "Plaintiffs may not 'litigate as a volunteer the personal claims of its competent citizens'" is misplaced (Doc. 250, 7415). In *Seneci*, the Second Circuit found that the federal Racketeer Influence and Corrupt Organizations Act did not give states authority to seek

59

restitution for consumers. By contrast, Tennessee and Kentucky's consumer protection statutes allow the states to seek restitution, and thus, Plaintiffs are addressing the very type of injuries that the states could and have attempted to address through their sovereign lawmaking powers. *See Chapman*, 940 F.3d 299 at 305.

For these reasons, this Court should reject Mosaic's improper attempts to narrow and disregard the Holder Rule in this *parens patriae* enforcement case.

## CONCLUSION

Mosaic attempts to defeat Plaintiffs' well-pled complaint and challenge the personal jurisdiction of this Court, as well as the venue, by misstating the applicable legal standards and rules governing them. Plaintiffs respectfully request that this Court reject Mosaic's attempts to dodge Plaintiffs' claims and this Court's jurisdiction. Mosaic has failed to put forward any valid factual or legal arguments in support of its position, and for this reason, Mosaic's Motion to Dismiss should be denied.

Respectfully submitted:

OFFICE OF TENNESSEE ATTORNEY GENERAL

BY:   /s/ *Alicia Daniels-Hill*
      Alicia Daniels-Hill
      (TN BPR # 040672)
      David McDowell
      (TN BPR # 024588)
      Kelly Walker
      (TN BPR # 039554)
      Rainey Lankford
      (TN BPR # 03654)
      P.O. Box 20207
      Nashville, Tennessee
      615-253-3819 (Daniels-Hill)
      615-741-5857 (Walker)
      615-253-5808 (Lankford)

OFFICE OF KENTUCKY ATTORNEY GENERAL

BY:   /s/ *Paul Fata*
      Paul Fata
      (Admitted *Pro Hac Vice*,
      KY Bar # 99528)
      Lyndsey Antos
      (Admitted *Pro Hac Vice*;
      KY Bar # 99971)
      1024 Capital Center Drive, Suite 200
      Frankfort, Kentucky 40601
      502-696-5578 (Fata)
      502-696-5641 (Antos)
      paul.fata@ky.gov
      lyndsey.antos@ky.gov
      *Commonwealth of Kentucky*

60

alicia.daniels-hill@ag.tn.gov
kelly.walker@ag.tn.gov
*State of Tennessee*

<u>**CERTIFICATE OF SERVICE**</u>

      I do hereby certify that on Thursday, March 14, 2024, the forgoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

BY:    <u>/s/ Alicia Daniels-Hill</u>
          Assistant Attorney General
          *State of Tennessee*