# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** *ex. rel.* **JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER** | ) ) ) ) | |
| *and* | ) ) | |
| **COMMONWEALTH OF KENTUCKY,** *ex. rel.* **DANIEL CAMERON, ATTORNEY GENERAL,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **vs.** | ) ) | **No. 3:23-cv-00046-DCLC-JEM** |
| **IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA,** *a Tennessee Limited Liability Company*, | ) ) ) ) | **Jury Demanded** |
| **CRAIG KELLEY, RICHARD ATNIP,** *and* **SARAH KIRKLAND,** *individually and as officers of Solar Titan USA,* | ) ) ) ) ) | |
| *and* | ) ) | |
| **SOLAR MOSAIC LLC d/b/a MOSAIC,** *a California Limited Liability Company,* | ) ) ) | |
| **Defendants.** | ) ) ) | |

---

## REPLY IN SUPPORT OF DEFENDANT SOLAR MOSAIC LLC'S RULE 12(B) MOTION TO DISMISS

---

**TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ................................................................................................... 1

      A.    KENTUCKY LOANS DO NOT CONFER JURISDICTION IN
            TENNESSEE. ................................................................................... 1

      B.    TENNESSEE IS AN IMPROPER VENUE FOR KENTUCKY'S
            CLAIMS. ........................................................................................... 2

      C.    TENNESSEE CANNOT SEEK RELIEF FOR OUT-OF-STATE
            CONSUMERS. .................................................................................. 3

      D.    PLAINTIFFS CANNOT INVOKE THE HOLDER RULE. ................. 4

      E.    PLAINTIFFS' AGENCY ALLEGATIONS FAIL ............................... 6

      F.    PLAINTIFFS' TILA CLAIM MUST BE DISMISSED ...................... 10

      G.    THE CFPA CLAIM MUST BE DISMISSED ................................... 13

      H.    THE STATE CONSUMER PROTECTION CLAIMS MUST BE
            DISMISSED. .................................................................................. 16

            1.    The TCPA and KCPA Claims Fail. ....................................... 16
            2.    The THSSA and KHSSA Claims Fail. ................................... 19

II.   CONCLUSION ............................................................................................. 20

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alduridi v. Cmty. Tr. Bank, N.A.*,
No. 01A01-9901-CH-00063, 1999 WL 969644 (Tenn. Ct. App. Oct. 26, 1999) ....................... 6

*Avery Outdoors LLC v. Peak Rock Capital, LLC*,
No.16-CV-2229-SHL-TMP, 2017 WL 5186246 (W.D. Tenn. Jan. 23, 2017) ......................... 22

*Baker v. Sunny Chevrolet, Inc.*,
349 F.3d 862 (6th Cir. 2003) ............................................................................................ 16

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ............................................................................................ 21

*Beard v. Worldwide Mortg. Corp.*,
354 F. Supp. 2d 789 (W.D. Tenn. 2005) ............................................................................ 22

*Bowman v. Benouttas*,
519 S.W.3d 586 (Tenn. Ct. App. 2017) .............................................................................. 12

*Canaday v. Anthem Companies, Inc.*,
9 F.4th 392 (6th Cir. 2021) ................................................................................................. 2

*CFPB v. Citizens Bank, N.A.*,
504 F. Supp. 3d 39 (D.R.I. 2020) ...................................................................................... 15

*CFPB v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) .......................................................................................... 24

*Chrysler Credit Corp. v. Barnes*,
191 S.E.2d 121 (Ga. Ct. App. 1972) ................................................................................. 10

*City of Arlington, Tex. v. F.C.C.*,
569 U.S. 290 (2013) .......................................................................................................... 18

*Com. ex rel. Beshear v. ABAC Pest Control,
Inc.*, 621 S.W.2d 705 (Ky. Ct. App. 1981) ......................................................................... 8

*Cont. Cas. Co. v. Theraco, Inc.*,
437 S.W.3d 841 (Tenn. Ct. App. 2014) .............................................................................. 11

*Cornist v. B.J.T. Auto Sales, Inc.*,
272 F.3d 322 (6th Cir. 2001) ............................................................................................ 17

*Couch v. Nat. Res. & Envt'l Prot. Cabinet*,
986 S.W.2d 158 (Ky. 1999) ................................................................................................ 9

-ii-

*CSX Transp. Inc. v. First Nat'l Bank of Grayson*,
    14 S.W.3d 563 (Ky. Ct. App. 2000) .................................................. 12

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
    No.3:18-00518, 2021 WL 1946645 (M.D. Tenn. May 14, 2021) ........................................... 14

*Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*,
    511 S.W.2d 224 (Ky. 1974) .................................................. 24

*Davenport v. Lockwood, Andrews & Newman, Inc.*,
    854 F. 3d 905 (6th Cir. 2017) .................................................. 25

*Dyersburg Fam. Walk-In Clinic, Inc. v. Tennessee Dep't of Fin. & Admin.*,
    No. 1:20-CV-1280-STA-JAY, 2021 WL 1566083 (W.D. Tenn. Apr. 21, 2021) ..................... 3

*Elvis Presley Enters. Inc. v. City of Memphis*,
    No.W2019-00299, 2022 WL 854860 (Tenn. Ct. App. Mar. 23, 2022) .................................... 9

*Emergency Med. Care Facilities, P.C. v. BlueCross BlueShield of Tenn., Inc.*,
    No. 1:15-cv-01014-JDB-egb, 2016 WL 7429256 (W.D. Tenn. April 15, 2016) ................... 27

*Equicredit Corp. of Am. v. Jackson*,
    No. 03 MA 191, 2004 WL 2726115 (Ohio Ct. App. Nov. 24, 2004) ...................................... 26

*First of Michigan Corp. v. Bramlet*,
    141 F.3d 260 (6th Cir. 1998) .................................................. 3

*Ford Motor Co. v. Mayes*,
    575 S.W.2d 480 (Ky. Ct. App. 1978) .................................................. 25

*FTC v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014) .................................................. 19

*FTC v. Int'l Comput. Concepts, Inc.*,
    No. 5:94 CV 1678, 1995 WL 767810 (N.D. Ohio 1995) .......................................... 19

*Gawry v. Countrywide Home Loans, Inc.*,
    640 F. Supp. 2d 942 (N.D. Ohio July 2009) .................................................. 27

*Gone To The Beach, LLC v. Choicepoint Servs., Inc.*,
    434 F. Supp. 2d 534 (W.D. Tenn. 2006) .................................................. 3

*H.M. v. Commonwealth*,
    No. 2022-CA-1016-MR, 2024 WL 1122572 (Ky. Ct. App. Mar. 15, 2024) ........................... 4

*Hanlin v. Ohio Builders and Remodelers, Inc.*,
    196 F. Supp. 2d 572 (S.D. Ohio 2001) .................................................. 26

-iii-

*Haskin v. Yates*,
    No.88-99-II, 1988 WL 80967 (Tenn. Ct. App. Aug. 5, 1988)................................... 9

*Heinz v. Driven Auto Sales, LLC*,
    603 S.W.3d 890 (Mo. Ct. App. 2020)........................................................................ 7

*In re Vioxx Prods. Liab. Litig.*,
    843 F. Supp. 2d 654 (E.D. La. 2012)......................................................................... 4

*Johansen v. HomeAdvisor, Inc.*,
    218 F. Supp. 3d 577 (S.D. Ohio 2016) ..................................................................... 13

*Koyo Corp. v. Comerica Bank*,
    No.1:10-cv-2557, 2011 WL 5450957 (E.D. Ohio Sept. 29, 2011)........................... 13

*Lee v. Franklin Special Sch. Dist. Bd. of Educ.*,
    237 S.W.3d 322 (Tenn. Ct. App. 2007) .............................................................. 25, 26

*Lojewski v. Gro. Solar USA, LLC*,
    No. 22 CIV. 10816, 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023) ......................... 18

*Lopez v. Davis*,
    531 U.S. 230, 240 (2001)........................................................................................... 2

*Marie v. Am. Red. Cross*,
    771 F.3d 344 (6th Cir. 2014) ................................................................................... 12

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*,
    45 S.W.3d 588 (Tenn. Ct. App. 2001) ..................................................................... 23

*Middleton v. T-Mobile*, No.20-cv-3276,
    2022 WL 16828226 (E.D.N.Y. Aug. 24, 2022)....................................................... 16

*Midkiff v. Adams Cnty. Reg'l Water Dist.*,
    409 F.3d 758 (6th Cir. 2005) ..................................................................................... 8

*Morton v. Mancari*,
    417 U.S. 535 (1993)................................................................................................... 3

*Nave v. Life Bank*,
    334 B.R. 586 (M.D. Tenn. 2005)............................................................................. 12

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*,
    59 S.W.3d 63 (Tenn. 2001) ....................................................................................... 6

*Pescia v. Auburn Ford-Lincoln Mercury, Inc.*,
    68 F. Supp. 2d 1269 (M.D. Ala 1999) ..................................................................... 10

-iv-

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148 (1975) .................................................................................... 2, 3

*Regions Bank v. Bric Constructors, LLC*,
  380 S.W.3d 740 (Tenn. Ct. App. 2012) ...................................................... 14

*Reynolds v. D & N Bank*,
  792 F. Supp. 1035 (E.D. Mich 1992) .......................................................... 26

*SecurAmerica Bus. Credit v. Southland Transp. Co., LLC*,
  No. W2015-00391-COA-R3-CV, 2016 WL 1292087 (Tenn. Ct. App. Apr. 1, 2016) ........... 21

*State ex rel. Leech v. Levi Strauss & Co.*,
  No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) ................................... 8

*State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*,
  755 N.W.2d 583 (Neb. 2008) ......................................................................... 7

*State v. Excel Mgmt. Servs., Inc.*,
  : 331 N.W.2d 312 (Wis. 1983) ....................................................................... 7

*State v. New Beginning Credit Ass'n, Inc.*,
  No. M1999-00461-COA-R3CV, 2006 WL 1472284 (Tenn. Ct. App. May 25, 2006) ............. 5

*Terry v. Cmty. Bank of N. Virginia*,
  255 F. Supp. 2d 817 (W.D. Tenn. 2003) ...................................................... 22

*Union Planters v. EMC Mortg. Corp.*,
  67 F. Supp. 2d 915 (W.D. Tenn. 1999) ........................................................ 4

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................................... 1

*Weary v. Cochran*,
  377 F.3d 522 (6th Cir. 2004) ....................................................................... 11

*Webber v. State Farm Mut. Aut. Ins. Co.*,
  49 S.W.3d 265 (Tenn. 2001) ......................................................................... 9

*Wesley v. Schaller Subaru, Inc.*,
  277 Conn. 526 (Conn. 2006) ....................................................................... 10

*Ziegler v. IBP Hog Market, Inc.*,
  249 F.3d 509 (6th Cir. 2001) ....................................................................... 22

**Statutes**

12 U.S.C. § 5517 ............................................................................................. 17

Case 3:23-cv-00046-DCLC-JEM     Document 268     Filed 04/04/24     Page 6 of 30
PageID #: 7889

12 U.S.C. § 5552 ........................................................................................................ 2

12 U.S.C. § 5564 ...................................................................................................... 14

15 U.S.C. § 1604 ...................................................................................................... 17

15 U.S.C. § 1607 ...................................................................................................... 14

15 U.S.C. § 1632 ...................................................................................................... 19

15 U.S.C. § 1638 ...................................................................................................... 14

15 U.S.C. § 1640 ...................................................................................................... 14

15 U.S.C. § 7001 ...................................................................................................... 15

15 U.S.C. § 77aa ........................................................................................................ 2

28 U.S.C. § 1391 ........................................................................................................ 2

Ky. Rev. Stat. § 15.020 .............................................................................................. 4

Ky. Rev. Stat. § 367.190 ........................................................................................ 4, 5

Ky. Rev. Stat. § 369.115 .......................................................................................... 15

M.C.L.A. § 445.111 ................................................................................................. 25

Tenn. Code § 47-10-115 .......................................................................................... 15

Tenn. Code § 47-18-108 ........................................................................................ 5, 7

Tenn. Code § 47-18-702 .................................................................................... 24, 25

**Regulations**

12 C.F.R. § 1026.17 ................................................................................................ 14

12 C.F.R. § 1026.4 .................................................................................................. 12

16 C.F.R. § 433.2 .................................................................................................. 4, 5

Solar Mosaic LLC through its counsel, and pursuant to Rule 12(b)(2), (3), and (6), submits this Reply in Support of its Motion to Dismiss. The claims against third party lender Mosaic are based on fatally flawed legal theories and not supported by plausible fact allegations. Plaintiffs tacitly acknowledge these shortcomings by attempting to add amend the SAC via declarations and exhibits, but the Court should ignore this attempt. The SAC and Plaintiffs' Opposition to the Motion to Dismiss ("Opp.") rely on legal assertions with no statutory or case law support. For example, Plaintiffs seek a reimagining of the Holder Rule divorced from the text of the rule, limits on *parens patriae* powers, and any interpretation of the rule ever advanced by the FTC. The CFPA and state claims based on alleged loan disclosure violations are refuted by TILA, Regulation Z, the eSign and Uniform Electronic Transaction Acts, and a commonsense review of Mosaic's TILA and loan documents. The Opposition also does not save the SAC's agency claims and the SAC should be dismissed.

I.  **ARGUMENT**

    A.  **KENTUCKY LOANS DO NOT CONFER JURISDICTION IN TENNESSEE.**

    Kentucky bears the burden of establishing specific personal jurisdiction yet points to ***no case*** in which a court exercised specific personal jurisdiction over an out-of-state defendant for an out-of-state plaintiff's claim.[1] Opp.5–8; *see Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction"). Kentucky ignored *Canaday v. Anthem Companies, Inc.*, which affirmed the district court's finding it did not have specific personal jurisdiction over a nonresident plaintiffs' claims because they did not arise from defendant's conduct in Tennessee. 9 F.4th 392, 397 (6th Cir. 2021).

---

[1] The cases Plaintiffs cite in Argument Part I of the Opposition are inapposite because in-state plaintiffs filed them all.  *See* Opp.5–10 (collecting cases).

1

Like plaintiffs in *Canady*, nonresident Kentucky alleges harm outside this forum arising from interactions that occurred in Kentucky. Titan's Tennessee operations do not confer jurisdiction.

## B. TENNESSEE IS AN IMPROPER VENUE FOR KENTUCKY'S CLAIMS.

*First*, Plaintiffs' argument that the CFPA's venue provision's—12 U.S.C. § 5552(a)—use of the term "may" makes the section permissive, not exclusive,[2] Opp.10–11, is incorrect. The use of "may" comports with the section's offer of two choices from which the State may choose: "[T]he attorney general . . . *may* bring a civil . . . in any district court of the United States in that State *or* in State court that is located in that State and that has jurisdiction over the defendant . . . ." 12 U.S.C. § 5552(a)(1). Section 5552(a)(1) does not authorize States to bring CFPA claims in *every* district in which the Act is violated, or a defendant does business, or can otherwise be found. *Compare* 15 U.S.C. § 77aa(a) (venue under Securities Exchange Act). Rather, it restricts venue for Kentucky's claims to courts *in Kentucky* with jurisdiction over Mosaic. 12 U.S.C. § 5552(a)(1).

*Second*, Plaintiffs argue that venue is proper under 28 U.S.C. § 1391(b)(2)'s general venue provision, Opp.12, but that ignores the fact that the "narrowly drawn, specific venue provision" of section 5552(a)(1) "must prevail over the broader, more generally applicable" section 1391. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 158 (1975); *Morton v. Mancari*, 417 U.S. 535, 550–51 (1993) (specific statute may not be "controlled or nullified by a general one"). Plaintiffs' cited cases are also all distinguishable. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998) (explaining "substantial part" of claim was the original solicitation in, and calls to, Michigan); *Dyersburg Fam. Walk-In Clinic, Inc. v. Tennessee Dep't of Fin. & Admin.*, No. 1:20-

---

[2] *Lopez v. Davis*, Opp.10, is unavailing: the *same section* used both "may" and "shall"; thus, the Court explained "may" was permissive. 531 U.S. 230, 240 (2001); *see Radzanower*, 426 U.S. 148 ( "may be had" for purpose of venue means "Congress intended that in those courts alone could a [] bank be sued against . . . .").

2

CV-1280-STA-JAY, 2021 WL 1566083, at *2 (W.D. Tenn. Apr. 21, 2021) (transferring where "events truly giving rise to Plaintiff's claim" occurred in a different district); *Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 537 (W.D. Tenn. 2006) (venue proper where Tennessee plaintiff and key conduct was in-state). Here, Kentucky bases its claims on loans made in, and with residents of, Kentucky. Key witnesses (Kentucky borrowers and possible Titan Kentucky representatives) live in Kentucky and fall outside the Court's subpoena power. Thus, this venue presents challenges that would render it "unfair" and "inconvenient." *Union Planters v. EMC Mortg. Corp.,* 67 F. Supp. 2d 915, 917 (W.D. Tenn. 1999).

*Third*, Kentucky's argument that Ky. Rev. Stat. § 15.020(3) authorizes it to act "in all cases," Opp.14, makes Ky. Rev. Stat. § 367.190's geographical limits superfluous and nonsensical. *See H.M. v. Commonwealth*, No. 2022-CA-1016-MR, 2024 WL 1122572, at *10 (Ky. Ct. App. Mar. 15, 2024) (courts should not interpret statutes in a way that "render[s] a portion of it functionally meaningless."). While Section 15.020(3) may authorize Kentucky to pursue civil remedies under the KCPA in any court, Ky. Rev. Stat. § 15.020(3), Section 367.190's permits it to seek a "restraining order or temporary or permanent injunction" only in *Kentucky* courts, *id.* § 367.190(a). Section 367.190 does not authorize Kentucky to pursue injunctive relief outside of the State's borders, and a contrary conclusion would render that statute's geographical limits functionally meaningless. The sole case in which an out-of-state court has considered the issue resulted in remand. *In re Vioxx Prods. Liab. Litig.,* 843 F. Supp. 2d 654 (E.D. La. 2012).

## C. TENNESSEE CANNOT SEEK RELIEF FOR OUT-OF-STATE CONSUMERS.

Tennessee's reliance on *State v. New Beginning Credit Ass'n, Inc.*, No. M1999-00461-COA-R3CV, 2006 WL 1472284 (Tenn. Ct. App. May 25, 2006) for its argument that the TCPA authorizes it to seek relief for nonresidents, Opp.15, is misplaced. Unlike the *New Beginnings*

defendant, Mosaic is not a Tennessee company. *See id.* at \*9. Plaintiffs also fail to respond to Mosaic's argument that none of the relevant statutes apply to extraterritorial conduct and that their CFPA enforcement authority is limited to matters within their respective territories, Mot.14–15, and fail to identify any specific allegations of conduct occurring in North or South Carolina, Alabama, Florida or Georgia. All such claims against Mosaic must be dismissed.

### D.   PLAINTIFFS CANNOT INVOKE THE HOLDER RULE.

Plaintiffs' claims are premised on the erroneous belief that State Attorneys General can represent individual private litigants on personal breach of contract claims, but Plaintiffs have offered no support for this outlandish proposition. The lack of authority is unsurprising because it makes no sense to allow the government to step into the shoes of private, non-party citizens to enforce their private breach of contract claims. Plaintiffs' authority to enforce consumer protection laws against those who violate them already gives them sufficient power to protect consumers. *See* Tenn. Code § 47-18-108; Ky. Rev. Stat. § 367.190. Thus, there is no reasonable basis to expand state power through the courts by allowing them to enforce the Holder Rule on behalf of individual citizens. Applying the Holder Rule here would require the Court adjudicate *each individual consumer's dispute* with Titan to determine viable defenses and counterclaims, and proper remedies for each and offsets—without any consumers before the Court. Plaintiffs' request would weaponize the Holder Rule, wreak havoc in the lending market, and should be rejected.

*First*, Plaintiffs overlook that, by its plain terms, the Holder Rule provides only "*the debtor*" the right to assert "all claims and defenses which *the debtor* could assert against the seller of goods." 16 C.F.R. § 433.2(b) (emphasis added); Mot.15–18.  And while the Holder Rule may permit *consumers* to bring affirmative claims beyond those for breach of contract, Opp.52–57, nothing about that principle expands the scope of derivative liability to claims *brought by non-parties to the underlying contracts*. *See Alduridi v. Cmty. Tr. Bank, N.A.*, No. 01A01-9901-CH-

4

00063, 1999 WL 969644, at *10 (Tenn. Ct. App. Oct. 26, 1999). The right to bring affirmative claims under the Holder Rule is a private contract right, which Plaintiffs have no right to enforce on behalf of individual consumers. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) ("[C]ontracts are presumed to be executed for the benefit of the parties thereto."). Plaintiffs rely on inapposite cases, Opp.55, because they *all involve suits brought by individual consumers and contracting parties. See, e.g.*, *Heinz v. Driven Auto Sales, LLC*, 603 S.W.3d 890, 894 (Mo. Ct. App. 2020) (suit brought by purchaser of vehicle).

*Second*, prohibiting Plaintiffs from using the Holder Rule does not conflict with the Rule's purpose. Opp.55–57. As Plaintiffs recognize, Opp.53, 55, the text of the Rule and the FTC's intent in promulgating it prove it is *consumer-centric* rule. *See* 16 C.F.R. § 433.2(b). And because *consumers* can seek recovery from Mosaic, there is no basis to allow Plaintiffs to usurp that right since they are state actors seeking penalties payable "*to the state*." Tenn. Code § 47-18-108.

*Third*, Plaintiffs' reliance on *parens partiae* powers, Opp.57–60, is unavailing, as neither of Plaintiffs' cited cases analyzed whether a state can enforce individual contract rights against a lender under the Holder Rule, Opp.58. In *State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W.2d 583 (Neb. 2008), the Nebraska Supreme Court relied on the Holder Rule to affirm a judgment against *the assignee* of a consumer loan—who expressly assumed all liability of the assignor *and* "*conce[eded] that the [Holder] rule should be applied*"—for *the assignor's* violations of a state consumer protection statute. *Id.* at 589. Here, Mosaic is not the assignee of Titan, and makes no such concession. Similarly, in *State v. Excel Mgmt. Servs., Inc.*, 331 N.W.2d 312 (Wis. 1983), the Wisconsin Supreme Court held that the *assignee* of consumer contracts could be joined in an action brought by the Attorney General seeking to enjoin *violations of state consumer protection statutes* and restitution for consumers. *Id.* at 314. But that conclusion was not

based on the Holder Rule, the application of which was unnecessary given the attorney general's statutory authority under the consumer protection laws at issue and the lender's status as an assignee. Further, a broad statement about such power to enforce those *statutory* rights is irrelevant to whether State Attorneys General can enforce private contract rights. Plaintiffs' cited cases do not address the Holder Rule or this broader private contract rights issue. *See Com. ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 708 (Ky. Ct. App. 1981) (attorney general could seek restitution for consumers harmed by defendant's *own* violation of consumer protection law); *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *5 (Tenn. Ch. Sept. 25, 1980) (declining to extend *parens patriae* to the recovery of damages).

In sum, Plaintiffs do not have any statutory, common law, *parens partiae,* or any other authority giving them the right to enforce individual consumer rights under the Holder Rule; and none of the cases they cite support this overreach. The Court should dismiss Counts 1, 4, 5, 6, and 7 the extent they are based on the Holder Rule and entirely based on other arguments herein.

### E.     PLAINTIFFS' AGENCY ALLEGATIONS FAIL

*First*, Plaintiffs argue that because agency is fact-intensive, the Court should not dismiss the agency allegations. Opp.37. Plaintiffs are mistaken. *See, e.g., Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (agency allegation "insufficient as a matter of law"); *Elvis Presley Enters. Inc. v. City of Memphis*, No.W2019-00299, 2022 WL 854860, *6 (Tenn. Ct. App. Mar. 23, 2022) (considering agency at pleadings stage).[3] This Court can, and should, dismiss these claims.

---

[3] Further, the Court can evaluate whether, as a matter of law, the Dealer Agreement created an agency relationship. *See Haskin v. Yates*, No.88-99-II, 1988 WL 80967, *2 (Tenn. Ct. App. Aug. 5, 1988) (agency is a question of law where it is based on a written instrument); *Couch v. Nat. Res. & Envt'l Prot. Cabinet*, 986 S.W.2d 158, 161 (Ky. 1999) (existence of agency is a legal conclusion in Kentucky).

6

*Second*, the Opposition does not argue that Titan was Mosaic's agent when marketing, selling, installing, or servicing energy systems. Opp.38–52. The Dealer Agreement was narrow in scope and merely allowed Titan to present financing through Mosaic. Mot. at 6, Ex. 3. It is axiomatic that a principal is not bound by acts of an agent that are beyond the scope of his authority. *Webber v. State Farm Mut. Aut. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

*Third*, Plaintiffs fail to distinguish the auto-financing cases Mosaic relies on that are directly on point here. Opp.39–41. In both the auto financing cases and here, there were agreements between the lender and seller, the lender provided guidelines to the seller and relied on the seller to introduce financing to customers. *See, e.g., Wesley v. Schaller Subaru, Inc*., 277 Conn. 526, 548 n.24 (Conn. 2006) (noting guidebook was "comprehensive," dictating numerous aspects of lease financing activity); *Pescia v. Auburn Ford-Lincoln Mercury, Inc.*, 68 F. Supp. 2d 1269, 1282–83 (M.D. Ala 1999). In both contexts, retailers gave customers information regarding repayment and other financial terms and received or solicited credit applications. *Wesley*, 277 Conn. at 548; *Pescia*, 68 F. Supp. 2d at 1282; *see also Chrysler Credit Corp. v. Barnes*, 191 S.E.2d 121, 128–29 (Ga. Ct. App. 1972). Plaintiffs offer no support for their contention that Mosaic exerted more control over Titan than the auto financiers held over these dealers.

*Fourth*, Plaintiffs rely on the wrong type of alleged control Mosaic allegedly exerted over Titan. Opp.42–47. Plaintiffs acknowledge that "the primary factor in determining a purported agent's status" is "control over the manner and means" of the work. Opp.42–43, but they fail to point to any allegations that Mosaic controlled Titan's manner and means, and contradict their control argument by simultaneously claiming that Mosaic "entrusted" Titan to undertake various loan-related tasks. Opp.40. Plaintiffs point to SAC paragraphs 221-35, which are based primarily

7

on the Dealer Agreement and relate only to Mosaic loan products. Opp.40, 42-43.[4] Each of these allegations, however, are of "limited authority" in the control analysis, and they are "not the type of control" that must be alleged to establish an agency relationship. *Weary v. Cochran*, 377 F.3d 522, 526 (6th Cir. 2004) (quotation omitted).

In *Weary*, the Sixth Circuit held an insurer's "limited authority" over its general agent through legal, ethical, and administrative guidelines set in a manual did not establish control over the means and methods of doing business. *Id*. The types of "limited authority" rejected in *Weary* are the same on which Plaintiffs rely. Specifically, the guidelines in *Weary* contained "precise rules on proper sales presentations" and the "use of e-mail and the internet"; addressed marketing; and gave the insurer the right to require the surrender of transaction records. *Id*. at 526; *id*. at 530-32 (Clay, J., dissenting) (quoting the terms of the relevant provisions from joint appendix). The insurer also trained the independent contractor's employees, held weekly performance reviews, and monthly training meetings. *Id*. at 526.

Other cases Plaintiffs rely on do not support their control arguments. Opp.42. For example, in *Continental Casualty Co. v. Theraco, Inc.*, control over patient selection and a requirement that therapists comply with the law was "control over the quality of the service rather than control over [] means[.]" 437 S.W.3d 841, 843 (Tenn. Ct. App. 2014). (concluding that therapists were independent contractors). In *Bowman v. Benouttas*, the retention of control over result and objective, by requiring delivery be made to specific locations at specific times, was not "control" over the means and manners of a transportation company's conduct. 519 S.W.3d 586, 591 (Tenn.

---

[4] Plaintiffs also rely on unpled allegations relating to "Titan's handl[ing] [of] consumer complaints[.]" Opp.42. Plaintiffs' reliance on these allegations must be disregarded because they are not pled in the SAC, and it is improper for Plaintiffs to use their response brief to amend their pleadings. *See* Mosaic's evidentiary objection filed contemporaneously herewith.

8

Ct. App. 2017); *see also CSX Transp. Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563 (Ky. Ct. App. 2000) (principal trained agent for the exclusive purpose of managing the principal's operations; oversaw and modified language in the agent's subcontract agreements; and directed the agent's communications with subcontractors).

*Fifth*, the Opposition also fails to address the other agency factors Mosaic argued. Mot.19–20; Opp. at 45. Tthe Sixth Circuit requires that *all* factors be considered because "control is embodied in many of the specific factors, the analysis of which reflects upon, and is relevant to, th[e] core issue of control." *Marie v. Am. Red. Cross*, 771 F.3d 344, 356 (6th Cir. 2014) (quotation omitted).[5] Consideration of the other factors, including critically the fact that Titan received no compensation from Mosaic, further shows that agency has not been adequately pled. Mot. 22-24.

*Sixth*, Plaintiffs' ratification-based agency argument fail. Opp.47–52. The Opposition merely re-states the SAC's conclusory allegations that Mosaic had "full knowledge" of Titan's misconduct and knowingly "accepted the benefits" of it. Opp.49. However, Plaintiffs fail to allege what Mosaic knew or when. *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (dismissing ratification theory where plaintiff failed to plead with particularity). Plaintiffs only allege that by continuing to originate loans to Titan's customers despite receiving customer complaints about Titan's sales tactics, Mosaic actually intended to ratify, or constructively ratified, Titan's alleged unlawful conduct. SAC ¶¶ 240, 245. Such allegations fail to plausibly allege that Mosaic had full knowledge of Titan's actions, particularly with respect to any other loan. *See Koyo Corp. v. Comerica Bank*, No.1:10-cv-2557, 2011 WL 5450957, *8 (E.D. Ohio Sept. 29, 2011)

---

[5] Plaintiffs note that some courts consider the principal's "ability to unilaterally terminate a relationship" a relevant factor. Opp.43. *citing Nave v. Life Bank*, 334 B.R. 586 (M.D. Tenn. 2005). But the Dealer Agreement here expressly provides that "[e]ither party may terminate th[e] Agreement at any time[.]" Mot. Ex. 3.

(granting motion to dismiss where the complaint was devoid of allegations of specific conduct in relation to specific transactions that would permit the court to infer that misrepresentations were ratified). Plaintiffs ask this Court to conclude that Mosaic, by continuing to originate loans after receiving unspecified complaints at unspecified points in time, "demonstrated its intent to ratify" Titan's conduct, Opp.51, but Plaintiffs' allegations are conclusory and insufficient to support ratification, especially given the "multitude of individualized, factual inquiries" required, which Plaintiffs recognize, Opp.39.

Plaintiffs' argument that Mosaic ratified Titan's conduct through silence is inadequately alleged. For silence to serve as grounds for ratification, Plaintiffs must allege facts showing that Mosaic had full knowledge of the acts to be ratified. *Regions Bank v. Bric Constructors, LLC*, 380 S.W.3d 740, 764 (Tenn. Ct. App. 2012) (remanding question of ratification where trial court relied solely on receipt of benefit without evaluating whether party had full knowledge of facts and remained silent for a year). At best, Plaintiffs have alleged that, in hindsight, it was not impossible that Mosaic could have discovered Titan's actions. Such conjecture, however, is insufficient to "move the alleged misconduct across the line between 'sheer possibility' and plausibility." *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No.3:18-00518, 2021 WL 1946645, *9-10 (M.D. Tenn. May 14, 2021) (quotation omitted) (holding plaintiffs failed to state claim under ratification theory where defendants continued to work together by receiving applications and sharing information). This Court should dismiss claims based on actual agency or ratification.

## F. PLAINTIFFS' TILA CLAIM MUST BE DISMISSED.

*First*, Plaintiffs incorrectly argue that the CFPA's three-year limitations period applies to their TILA claims, Opp.28, but Count 2's heading identifies the claim as arising under TILA and Regulation Z. SAC at 89. Specifically, the claim arises under 15 U.S.C. § 1638, to which 15 U.S.C. § 1640(e)'s one-year limitations period applies. 12 U.S.C. § 5564(g)—the CFPA's three-year

10

period—applies only to the "litigation authority" of the CFPB, and which TILA incorporates only with respect to CFBP enforcement actions. *See* 15 U.S.C. § 1607. Because "TILA's plain language dictates that § 1640[(e)] governs civil suits brought by individuals *and state attorneys general*." *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 49 (D.R.I. 2020), Plaintiffs' TILA claims based on loans made on or before February 6, 2022 are time barred.[6]

*Second*, Plaintiffs' insistence that Mosaic's TILA disclosures were ineffective because "many customers" did not consent to receive electronic loan documents under the E-Sign Act, Opp.31–33, misses the mark. The E-Sign Act requires that electronic records be given effect if the recipient has consented to receiving records in that form, which turns on whether the consumer can "access information in the electronic form that will be used to provide the information." 15 U.S.C. § 7001(c)(1)(C)(ii). The SAC does not identify a single consumer who was allegedly "unable to access" the electronic documents, Opp.31–33; SAC ¶¶ 255–79, nor a single instance where Titan "create[d]. . . email address[es] on behalf of any consumer that does not have" one, SAC ¶ 155, rendering allegation about consumer's ability to access the records conclusory.

*Third*, Plaintiffs' allegations about consumer's ability to view or access the disclosures, Opp.31–33, fail to acknowledge controlling law. As Plaintiffs concede, Mosaic's loan documents contained all necessary TILA disclosures, SAC ¶ 161, and under the Uniform Electronic Transactions Act—the state analog to the E-Sign Act—a document is received when it lands in a system designated by the recipient, such as an email inbox. *See* Ky. Rev. Stat. § 369.115; Tenn. Code § 47-10-115. Because Plaintiffs have not identified a single consumer who was unable to

---

[6] Section 1640(e)'s one-year statute of limitation applies to "*any action*" except actions brought by state attorney generals to "enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h"—*none of these subsections are involved in this lawsuit. See* 15 U.S.C. 1640(e) (providing three-year limitations period for enforcement actions involving these enumerated subsections only).

"retrieve the electronic record[s]" at issue, Ky. Rev. Stat. § 369.115; Tenn. Code § 47-10-115, the TILA disclosures were properly provided, and consumers had a duty to read them. *See Middleton v. T-Mobile*, No.20-cv-3276, 2022 WL 16828226, *5 (E.D.N.Y. Aug. 24, 2022). Thus, the individual consumers here had reasonable notice of TILA disclosures at the time of financing— *regardless of whether they actually read those documents or disclosures*.

*Fourth*, Plaintiffs attempt to rebut Mosaic's reliance on *Baker v. Sunny Chevrolet, Inc.*, Opp.25–27, is unavailing. In *Baker*, the Sixth Circuit held that Section 1640(b) plainly gives "creditors a sixty-day window to correct *any errors* made as long as certain requirements" are satisfied. 349 F.3d 862, 871 (6th Cir. 2003) (emphasis added). The fact that *Baker* involved a creditor's purported failure to provide a *copy* of a contract is irrelevant because Section 1640(b) unambiguously gives Mosaic a sixty-day window to correct "any [disclosure] errors," *id.*, including any created by Titan's purported interference with consumer's ability to review them.

*Finally*, Plaintiffs' seller's points-based TILA claim, Opp.27–28, also fails because Mosaic's disclosures follow TILA requirements. Sums paid by Titan to Mosaic are "seller's points." Seller's points are categorically *not* finance charges. 12 C.F.R. § 1026.4(c)(5). Because Congress was concerned, when enacting TILA, with the possibility of "information overload," *see, e.g.*, S. Rep. No. 368, 96th Cong., 1st Sess. 16–17 (1979), TILA requires financial disclosures to "reflect the terms to which the *consumer* and *creditor* are legally bound as of the outset of the transaction," 12 C.F.R. Part 1026, Supp. I, Cmt. 17(c)(1)-1 (emphasis added). Therefore, any other information—including a separate agreement between the creditor and the seller of goods for the provision of seller's points—falls *outside* of the required disclosures. Whether the dealer fee is passed onto the customer in the form of a higher sales price makes no difference under TILA. 12 C.F.R. Part 1026, Supp. I, Cmt. 17(c)(5)-1 And while Plaintiffs rely on *Cornist v. B.J.T. Auto*

*Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001) to support their claim that a "price differential" violates TILA, Opp.27, *Cornist* is distinguishable because the auto dealer acted as *both* the seller of goods and the creditor, which means the dealer/creditor was responsible for the cost of the good, the cost of credit *and* for disclosing it as a finance charge. *Id.* at 325. A *third-party* creditor like Mosaic, however, is not in a position to know a seller's pricing practices and cannot be subject to direct TILA liability for them. Finally, Plaintiffs' suggestion that "Mosaic is imposing its dealer fees on consumers directly because the dealer fee is withdrawn from consumers' loan proceeds prior to the funds being transferred to Solar Titan," Opp.28, is irrelevant. A lender's disbursement of a lesser amount than the full contract price to account for fees contractually owed to the lender by the seller in no way changes the nature of the transaction as involving seller's points under TILA and Regulation Z.

### G. THE CFPA CLAIM MUST BE DISMISSED.

*First*, Plaintiffs ignore that Mosaic cannot be liable for Titan's conduct as a merchant under the CFPA, Mot.38–41, which *expressly exempts* merchants from regulation. 12 U.S.C. § 5517(a)(1); *see City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296 (2013) (courts "give effect to the unambiguously expressed intent of Congress"). Thus—as a matter of law—Mosaic is not liable for Titan's merchant conduct alleged in SAC ¶¶ 411, 414, 435, 439, 461, 474-495.

*Second*, and relatedly, Plaintiffs' argument that Titan's sales representatives "interfere with consumers' ability to understand the loan agreement," Opp.20; SAC ¶¶ 456-459, does not support a CFPA violation against Mosaic. As an initial matter, Titan is not Mosaic's agent and its conduct cannot be imputed to Mosaic. *See supra* pp.6–10. Plaintiffs also fail to rebut that a consumer is bound by the contracts he or she executes, Mot.49-50, and that it is their responsibility to ensure

they understand its terms *before executing it*.[7] Finally, Plaintiffs misconstrue Mosaic's reliance on *Lojewski v. Gro. Solar USA, LLC*, No. 22 CIV. 10816, 2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023), Mot.33, which confirms that consumer contracts are clear and conspicuous even when the consumer alleges a third-party interfered with her ability to understand the agreement that she executed. Plaintiffs offer no contrary authority. Opp.21.

*Third*, Plaintiffs' reliance on the "net impression" test does not save their CFPA claim based on alleged "oral misrepresentations made during [] high-pressure sales pitches." Opp.22–23. The SAC does not allege that that Titan told consumers anything about their loans that was inconsistent with Mosaic's disclosures. Notably, SAC paragraphs 10, 87, 118-126, 140-141, 162, 474 and 627 do not involve representations Titan made about a Mosaic loan; rather, they speak only to Titan's promises about the timing, qualities and savings of energy systems it sold.[8] Further, neither *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014), nor *FTC v. Int'l Comput. Concepts, Inc.*, No. 5:94 CV 1678, 1995 WL 767810 (N.D. Ohio 1995), are applicable here. Opp.22. Unlike those cases, the SAC does not allege that a Titan employee orally misrepresented the terms of a Mosaic loan and neither case involved a lender's federally-required disclosures.

*Fourth*, Plaintiffs' allegations concerning Mosaic's *own* liability under the CFPA, Opp.18-19, 23, fail to demonstrate that Mosaic's conduct was unfair, deceptive, or abusive under the statute. With respect to Plaintiffs' disclosure-based CFPA arguments, Plaintiffs contend that Mosaic failed to provide "clear and conspicuous" disclosures[9] and buried disclosures and

---

[7] The SAC does not allege that any consumer was entirely unable to read the Mosaic loan documents, or that the Mosaic loan documents were not provided to them at all.

[8] These allegations are not actionable because Plaintiffs conceded that Mosaic is not liable for Titan's merchant conduct under the CFPA. *See supra* p. 13.

[9] Plaintiffs appear to borrow "clear and conspicuous" from TILA, but that requirement only applies to specific loan terms. 15 U.S.C. § 1632; 12 C.F.R. § 1026.17(a)(1). Moreover, Reg Z clarifies that

14

disclaimers in its documents, Opp.21–23, but neither the SAC nor the opposition identifies *which* disclosures were allegedly unclear or "buried." This failure is fatal. Mot.31. Further, Plaintiffs contend Mosaic did not provide paper copies of loan agreements to consumers, Opp.23, and failed to disclose that Titan "would be unlikely" to complete delivery within the promised time frame, SAC ¶¶ 460-462, but cite no authority that Mosaic's failure to do either of these things is actionable under the CFPA (and there is no such obligation). Nor do Plaintiffs rebut the fact that Mosaic does not owe consumers a duty about the distribution of loan funds to merchants like Titan, rendering its allegations on this point, SAC ¶¶ 466-471, fatally deficient, Mot.43.

Regarding the disclosures Plaintiffs do identify—namely, the total repayment obligation (SAC ¶¶ 447–449), the consumer's eligibility for the Federal Tax Credit (SAC ¶¶ 474–478), and when payments would commence (SAC ¶¶ 463–471)—those allegations are directly rebutted by Mosaic's loan documents, which contain these express disclosures. *See* Mot.3–5, 43, 54–56; *see also* Ex. A and Table A appended hereto.[10] Plaintiffs nevertheless ask the Court to disregard Mosaic's disclosures entirely, Opp.20—a request that violates the basic principle that a court may rely on documents that are "referred to in the Complaint and are central to the claims contained therein" at the pleading stage. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

With respect to Plaintiffs' allegation that Mosaic's failure to cancel loans pursuant to a consumer's request violated the CFPA, Opp.18–19; SAC ¶¶ 634–635; Plaintiffs fail to identify a

---

clear and conspicuous means "disclosures be in a reasonably understandable form." Use of approved forms, like that used by Mosaic, presumptively satisfies these requirements.

[10] Mosaic attached a TILA form to the Motion that Plaintiff filed on the docket in connection with the TRO. While Mosaic is not listed as the lender, the form is substantially the same as the Mosaic TILA form. For the sake of clarity, Mosaic attaches a Mosaic loan package (including Mosaic's TILA form) as Exhibit A. The Mosaic Loan Agreement attached as Exhibit 1 to the Motion is a copy of the same Mosaic Loan Agreement and Plaintiffs have not challenged it.

single instance where Mosaic actually failed to cancel a loan as request. Instead, Plaintiffs point to a single instance where the refund on a canceled loan was *delayed*, SAC ¶¶ 286-290; Opp.19, which is insufficient to plausibly plead a CFPA violation.

*Fifth*, the Holder Rule language in a consumer loan does not create a self-enforcing right of recission under the CFPA. Opp.19. The Holder Rule simply eliminates the holder-in-due-course defenses in court. It does not mean that the supplier of the financed good no longer has any obligation to address complaints. Further, Mosaic has no legal obligation because of the Holder Rule language to adjudicate a borrower's complaint and offer relief or to automatically refrain from collections if a borrower complains about a financed good. Plaintiffs do not cite any authority supporting their characterization of or attempted use of the Holder Rule, and this Court should reject this requested expansion of the Rule.

## H. THE STATE CONSUMER PROTECTION CLAIMS MUST BE DISMISSED.

### 1. The TCPA and KCPA Claims Fail.

*First,* Plaintiffs' argument that Mosaic's conduct as a lender falls within the TCPA's "broad scope," Opp.29, fails. As Mosaic explained, Mot.52, *SecurAmerica Bus. Credit v. Southland Transp. Co., LLC*, No. W2015-00391-COA-R3-CV, 2016 WL 1292087, *5 (Tenn. Ct. App. Apr. 1, 2016)—in which the court held lender's activities do not "affect trade or commerce within the meaning of the TCPA"—is on point. *See Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 517 (6th Cir. 2001) (federal court must consider "decision law of the state's lower courts" in the absence of "a controlling decision of the highest state court"). The *SecurAmerica* court rejected *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789 (W.D. Tenn. 2005) and *Terry v. Cmty. Bank of N. Virginia*, 255 F. Supp. 2d 817, 823 (W.D. Tenn. 2003)—upon which Plaintiffs now rely, Opp.29—as unpersuasive. *See also Avery Outdoors LLC v. Peak Rock Capital, LLC*, No.16-

16

CV-2229-SHL-TMP, 2017 WL 5186246, *7 (W.D. Tenn. Jan. 23, 2017) (acknowledging the persuasive authority of *SecurAmerica* without addressing *Terry* or *Beard*).[11] And while Plaintiffs assert that *Avery Outdoors LLC* and *SecurAmerica Bus. Credit* do not support the proposition that the TCPA is inapplicable to lenders, Opp.30, Plaintiffs do not dispute that those courts held that the lenders' alleged conduct in the course of their lending activities did not involve consumer transactions of a kind contemplated by the plain language of the TCPA, and they fail to distinguish the facts of those cases from the facts presented here. Opp.30. Plaintiffs similarly fail to address, let along distinguish, *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.,* 45 S.W.3d 588, 610 (Tenn. Ct. App. 2001). Mot.51–52. Like in that case, there is "no evidence in the record. . . even remotely suggesting that [the lender] exercised any control over the day-to-day operations of the" defendant, nor are there allegations demonstrating that Mosaic is "the one conducting the activity." 45 S.W.3d at 602–03; *see also* SAC ¶¶ 598–605.

*Second*, Plaintiffs fail to provide any case law that supports their TCPA and KCPA claims, and fail to address Mosaic's three independent arguments regarding the SAC's failure to plausibly plead TCPA and KCPA claims. Opp.30–23.

With respect to Mosaic's argument that Mosaic's alleged "knowledge" alone is insufficient to state a claim, Mot.52–53, Plaintiffs mischaracterize and fail to respond to Mosaic's position, Opp.30–31. Mosaic does not contend that Plaintiffs' *only* theory of TCPA and KCPA liability is indirect liability, but argues that the facts alleged are insufficient to establish knowledge, and even

---

[11] Further, *Beard* and *Terry* do not apply to the facts here. While *Beard* involved "predatory lending practices," the relevant defendants were a settlement agent and its principal, and plaintiff did not allege that either was the lender. 345 F. Supp. at 800; 810. In *Terry*, the Court found that based on the allegations, the defendant bank "could not be the 'lender' as to [the relevant] loan." 255 F. Supp. 2d at 822–23. The Court held that plaintiffs' "allegations regarding [the bank's] misrepresentations," were sufficient to plead a TCPA claim. *Id.* at 823. Here. Mosaic was a lender and the TCPA claims are based on alleged statements made by *Titan. See e.g.* SAC ¶¶ 598–605.

17

if knowledge was sufficiently alleged, it is not a basis for a violation of either law. Mot.52–53. Plaintiffs state that they "rely on much more than just Mosaic's knowledge of Titan's misconduct," but do not contest that knowledge alone is insufficient to state a claim. Opp.31.

With respect to Mosaic's argument that continued collection after consumer complaints regarding a third party does not violate either statute, Mot.53–57, Plaintiffs merely assert that the SAC is sufficient because both the TCPA and KCPA must be interpreted consistently with the FTC Act. Opp.31–32. To support this argument, Plaintiffs cite *CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) and *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224 (Ky. 1974), but these cases do not suggest that the facts alleged here are enough to state a claim for a violation of *any* consumer protection statute because the facts are so different. *Gordon*, 819 F.3d at 1198 (attorney's misrepresentations regarding loan modification program constituted "deceptive" actions); *Dare To Be Great, Inc.* 511 S.W.2d at 227 (upholding injunction prohibiting defendants from selling motivational tapes).

Plaintiffs do not identify any authority stating that a lender whose contract includes Holder Rule language is required to stop collecting payments whenever a customer complains. Opp.32. Instead, they refer to the unremarkable proposition that Kentucky courts have "held that [a defendant] acted unconscionably when it had an established policy of refusing to honor consumers right of revocation under" Kentucky law. Opp.32 citing *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978). In *Ford*, the defendant "followed a warranty policy which refused to recognize the rights of buyers under the Uniform Commercial Code." *Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 486 (Ky. Ct. App. 1978). The Holder Rule has never been interpreted as establishing a warranty or to require lenders to accede to every borrower complaint as Plaintiffs would have this Court require.

18

With respect to Mosaic's argument that Mosaic is not liable for Titan's alleged misrepresentations, Mot.54–57, Plaintiffs do not address these arguments at all. Opp.30–32.

### 2.    The THSSA and KHSSA Claims Fail.

*First*, a lender is not a "seller" under the THSSA and Plaintiffs offer no authority to the contrary. Opp.32–34. The dispositive question here is whether a "seller," defined in Tenn. Code § 47-18-702(5) as a "seller or lessor", includes a lender. The plain meaning of these words does not include lender, and as Plaintiff's recognize, Opp.33, the Court must assume that these words were "selected deliberately." *Lee v. Franklin Special Sch. Dist. Bd. of Educ.*, 237 S.W.3d 322, 332 (Tenn. Ct. App. 2007); *see also Davenport v. Lockwood, Andrews & Newman, Inc.*, 854 F. 3d 905, 909 (6th Cir. 2017).

Plaintiffs urge the Court to ignore the plain text of the statute and extend liability to lenders because the THSSA does not contain any applicable exemptions. Opp.32–34. Specifically, Plaintiffs point to the definition of "home solicitation sale" and its exclusion of "sales of farm animals or produce or similar perishable items" and conclude that, because none of the exclusions exist in this case, lenders must somehow be sellers as defined by the statute. Opp.33. But Plaintiffs' cited cases interpreting other states' home sale solicitation acts belie their position. The court in *Equicredit Corp. of America v. Jackson*, held that Ohio's HSSA applied to a mortgage broker, and did not address the statute's application to a lender. No. 03 MA 191, 2004 WL 2726115, *1 (Ohio Ct. App. Nov. 24, 2004). Furthermore, in a case that did address a lender's alleged violations of Ohio's HSSA, the court found that there was no basis on which to hold a lender "derivatively liable under the HSSA." *Hanlin v. Ohio Builders and Remodelers, Inc.*, 196 F. Supp. 2d 572, 577 (S.D. Ohio 2001). *Reynolds v. D & N Bank* is similarly inapplicable here because the Michigan HSSA specifically addresses extensions of credit, while the THSSA does not. *See* 792 F. Supp. 1035 (E.D. Mich 1992); *compare* M.C.L.A. § 445.111(d) and (e) *with* Tenn. Code § 47-18-702(5).

Plaintiffs failed to provide any authority justifying deviation from the plain language of the statute "deliberately" selected by the General Assembly. *See Lee*, 237 S.W.3d at 332.

*Second*, Plaintiffs concede that notices that comply with federal law satisfy the THSSA and KHSSA and therefore cannot be deficient. Opp.34. However, even though Mosaic's notice of right to cancel (together with required state notices) appears immediately before the borrower's signature line, Plaintiffs persist in claiming that it does not comply. *See* Ex.A at 3-4; *see also* Mot.57–58, 60. Plaintiffs provide no authority suggesting this placement is not sufficient. Finally, Plaintiffs' argument that Mosaic failed to cancel consumer contracts is addressed *infra* at 15–16.

*Third*, Plaintiffs fail to rebut that individualized liability and damage considerations make broad relief under the THSSA and KHSSA impracticable in this case. Opp.59. Plaintiffs argue that "[t]he hypothetical possibility of individualized evaluations of damages is not unusual in mass consumer suits," but rely on a class action case where "common liability . . . predominate[d] over any individualized damage issues." *Emergency Med. Care Facilities, P.C. v. BlueCross BlueShield of Tenn., Inc.*, No. 1:15-cv-01014-JDB-egb, 2016 WL 7429256, *6 (W.D. Tenn. April 15, 2016); Opp.36. That case is inapposite. For one thing, this is not a private class action, and no consumer is a party to the suit. And even if comparison to the class action context was appropriate, Plaintiffs seek broad relief that is tantamount to a request for rescission for thousands of customers, which remedy is "purely personal" and "incompatible with class action suits." *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 962 (N.D. Ohio July 2009). Thus, the relief available would be wholly dependent on whether the customer received the system sold and the inherently individualized interactions with Titan, which renders any recovery under the statutes infeasible in this context.

## II.  <u>CONCLUSION</u>

For the foregoing reasons, the SAC should be dismissed.

20

Respectfully submitted,

**FROST BROWN TODD LLP**

/s/ *Tanya Bowman*
Tanya Bowman, KY Bar No. 89772
(Admitted *Pro Hac Vice*)
Hannah Catherine Lackey, TN BPR No. 39345
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
(615) 251-5550 Telephone
(615) 251-5551 Facsimile
tbowman@fbtlaw.com
hlackey@fbtlaw.com

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

/s/ *Robert J .Guite*
Robert J. Guite
(Admitted *Pro Hac Vice*)
Shannon Petersen
(Admitted *Pro Hac Vice*)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 774-3176 Telephone
(415) 403-6014 Facsimile
rguite@sheppardmullin.com
spetersen@sheppardmullin.com

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

/s/ *Amy P. Williams*
Amy Williams
(Admitted *Pro Hac Vice*)
301 S. College Street, 34th Floor
Charlotte, NC 28202
(704) 998-4050 Telephone
Amy.Williams@troutman.com

Michael Yaghi
(Admitted *Pro Hac Vice*)
5 Park Plaza, Suite 1400
Irvine, CA 92614
(949) 622-2735 Telephone
Michael.Yaghi@troutman.com

Ryan J. Strasser
(Admitted *Pro Hac Vice*)
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1478 Telephone
Ryan.Strasser@troutman.com

*Attorneys for Solar Mosaic LLC*

21

Table A
**Summary of At-Issue Loan Disclosures**

| Disclosures in Documents provided to Customer by Mosaic | Required by TILA? | Where Disclosed? |
|---|---|---|
| First Payment Due Date[12] | Yes | Mosaic TILA Disclosure at 1 |
| | | Page Two of Ex. A (Itemization of Amount Financed) |
| | | Mosaic Loan Agreement at 1, 2 |
| First Payment Due Before System Operational | No | Page Two of Ex. A (Itemization of Amount Financed) |
| | | Mosaic Loan Agreement at 2, 5 |
| Timing of Disbursements | No | Page Two of Ex. A (Itemization of Amount Financed) |
| | | Mosaic Loan Agreement at 1 and 6-7 |
| Amount of Total Repayment Obligation | Yes | Mosaic TILA Disclosure at 1 |
| | | Mosaic Loan Agreement at 1 |
| Monthly Payment Increase in Absence of a Paydown | Yes | Mosaic TILA Disclosure at 1 |
| | | Mosaic Loan Agreement at 1, 3 & 6 |
| Federal Tax Credit | No | Mosaic Loan Agreement at 2 |
| Seller's Points | No[13] | Page Two of Ex. A (Itemization of Amount Financed) |
| Notice of Right to Cancel | No | Mosaic Loan Agreement at 3-4 (just before signature) Notice of Cancellation[14] |

---

[12] Disclosed as estimates as permitted under 12 CFR 1026.17(c)(2)(i) ("If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.")

[13] As required by TILA and Regulation Z, seller's points cannot be included in the finance charge. 12 C.F.R. Part 1026, Supp. I, Cmt. 17(c)(5)-1; 12 C.F.R. § 1026.17(a)(1).

[14] This is a separate form, and in Exhibit A, it is right after the last page of the Loan Agreement.

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2024, I electronically filed the foregoing document with the clerk of the court by using CM/ECF system. I further certify that Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

/s/ Tanya Bowman
Tanya Bowman, KY Bar No. 89772
(Admitted Pro Hac Vice)

23