DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net



# HOME SOLAR LOAN DOCUMENTS

## TABLE OF CONTENTS

**Disclosure and Consent to Receive Electronic Receipt of Loan Disclosures** ...............................................................
This document reviews the terms and conditions for Mosaic to provide loan disclosures and communicate electronically.

**Authorization and Consent to Share Application Information** ...............................................................
This document authorizes Mosaic to share your information with the installation contractor and related parties.

**Truth in Lending Disclosure Statement** ...............................................................
This document discloses the terms and costs of financing associated with the loan.

**Home Solar Loan Agreement** ...............................................................
This is the legally binding agreement between you and Mosaic that reviews the terms of the home solar loan.

**Notice of Cancellation** ...............................................................
This document outlines how and when you may cancel your Mosaic Home Solar Loan.

**Authorization for Direct Payment via ACH** ...............................................................
This is the form where you may provide bank information to automate monthly payments.

**California Finance Lenders Law Statement of Loan** ...............................................................
This document reviews your rights and requires your consent to receiving disclosures related to your loan from CA lenders.

**What Does Solar Mosaic, Inc. ("Mosaic") Do With Your Personal Information?**...............................................................
This document discloses and explains what kinds of information Mosaic can share.

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

MOSAIC

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631

## DISCLOSURE AND CONSENT TO ELECTRONIC RECEIPT OF LOAN DISCLOSURES

You understand that in order to submit a credit application to Solar Mosaic, Inc. ("we", "us", "our", or "Mosaic") and view and retain a copy of the related notices, disclosures, agreements, authorizations, acknowledgements, terms and conditions, and other documents during the course of our relationship with you (collectively, "Loan Disclosures") you must consent to receive Loan Disclosures electronically. Described below are the terms and conditions for providing Loan Disclosures to you electronically. Please read the information below carefully and thoroughly.

You acknowledge and agree that we may provide you with the Loan Disclosures in electronic format, and that we are not required to send a paper document to you, unless and until you withdraw your consent as described below. All Loan Disclosures that we provide to you in electronic format will be provided either (i) via e-mail, (ii) by access to our online platform including the DocuSign, Inc. ("DocuSign") electronic signing system, or (iii) by requesting you to download a PDF through the DocuSign system.

### 1. Getting paper copies.

You may request from us a paper copy of any Loan Disclosure that we have provided or made available to you electronically without charge, provided that such request is made within a reasonable time after we first provided the Loan Disclosure to you. To request paper copies, you must send an e-mail to loannotices@joinmosaic.com with the subject line "Past Paper Copy Request" and in the body of the e-mail you must state your e-mail address, full name, US Postal address, and telephone number.

### 2. Withdrawing your consent.

You may withdraw your consent to receive Loan Disclosures in electronic form by either (i) declining to sign a document within the DocuSign system, and on the subsequent page, selecting the checkbox indicating you wish to withdraw your consent, or (ii) sending an e-mail to loannotices@joinmosaic.com with the subject line of "Future Paper Copy Request" and in the body of the e-mail request you must state your e-mail address, full name, US Postal Address, and telephone number. Your withdrawal of consent will be effective only after we have had a reasonable period of time to process your request. Please be aware that if you elect to receive Loan Disclosures only in paper format we will be unable to process your application and if you elect to receive Loan Disclosures only in paper format after your loan is approved, it may slow the speed at which we can deliver services to you.

### 3. To advise Solar Mosaic of your new e-mail address.

You are required to provide us with an accurate and complete e-mail address and update any changes to the information promptly. To let us know of a change in your e-mail address, you must send an e-mail message to us at loannotices@joinmosaic.com with the subject line "Email Address Change" and in the body of the e-mail you must state your previous e-mail address and your new e-mail address. At our discretion, we may treat your failure to provide us with a valid e-mail address or the malfunction of a previously valid e-mail address as a withdrawal of your consent to receive electronic documents.

### 4. Required hardware and software.

In order to access, view and retain the Loan Disclosures we make available to you in electronic form, you must provide at your own expense an Internet connected device. You must have the following hardware and software:

| Operating System | Windows® 2000, Windows® XP, Windows Vista®, Windows® 7, Windows® 8, Mac OS® X. Pre-release (e.g. beta) versions of operating systems are not supported. |
|---|---|
| Browsers | Final release versions of Internet Explorer® 8.0 or above (Windows only); Google® Chrome™ (Windows or Mac), Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only). Pre-release (e.g. beta) versions of browsers are not supported. |
| PDF Reader | Software that enables you to view and print Portable Document Files (PDF) such as Adobe® Acrobat Reader or similar |
| E-Mail Account | An e-mail account with an Internet service provider and e-mail software in order to receive electronic communications from us |
| Storage Capacity | Sufficient electronic storage capacity on your computer's hard drive or other data storage unit |

Current as of: May 1, 2018

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631

| | to retain the Loan Disclosures and/or a printer to print them |
|---|---|
| Screen Resolution | 800 x 600 minimum |
| Browser Settings | Allow per session cookies |

**5. Federal Law.**

All Loan Disclosures we provide to you in either electronic or paper format will be considered "in writing". You should print or download for your records a copy of this Disclosure and Consent of Electronic Receipt of Loan Disclosures ("E-Sign Consent") and any other Loan Disclosures. You agree and we both intend the federal Electronic Signatures in Global and National Commerce Act to apply to (i) this E-Sign Consent and (ii) our ability to conduct business with you by electronic means.

**6. Termination/Changes.**

We reserve the right, in our sole discretion, to provide you with any Loan Disclosures in paper format and to discontinue electronic provision of Loan Disclosures at any time. We will provide you with notice of any such termination or change as required by law.

**7. Acknowledging your access and consent to receive materials electronically.**

By signing below, you: (i) confirm your consent to receive Loan Disclosures in electronic format; (ii) affirmatively demonstrate your ability to access and read, and also print or save, this E-Sign Consent and the Loan Disclosures; (iii) confirm that you have provided a valid e-mail address at which we can send electronic Loan Disclosures to you; (iv) have access to software and hardware that satisfies the above requirements; (v) agree to the terms and conditions of this E-Sign Consent; and (vi) affix your electronic signature to this E-Sign Consent.

I AGREE:   10/8/2021

Current as of: May 1, 2018

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631



### AUTHORIZATION AND CONSENT TO SHARE APPLICATION INFORMATION

I agree to submit an application to Solar Mosaic, Inc. ("Mosaic") for a loan to finance the purchase and installation of Solar Equipment including Purchased Goods to be installed at my home by the installation contractor indicated on my home improvement agreement with such contractor.

I authorize the installation contractor including its employees and third party service providers (collectively the *"Installation Contractor"*), to assist me in completing and submitting my application to Mosaic. I recognize that in connection with providing me with this assistance, the Installation Contractor will have access to my application, my signed home solar loan agreement, including personal information contained on my application and other information obtained by Mosaic. I expressly authorize Mosaic to share all such personal information related to my application with the Installation Contractor such as information I provide, credit bureau reports, third party information, and Mosaic's underwriting decision.

I understand that I can revoke this authorization, at any time, in writing to Mosaic at ___loannotices@joinmosaic.com___. I understand that if I revoke this authorization, my application cannot be processed by Mosaic and Mosaic will treat the application as withdrawn.

I understand and agree that in order to apply for a loan to finance the purchase and installation of solar equipment, I must agree to receive certain documents electronically as further described in the Disclosure and Consent to Electronic Receipt of Loan Disclosures.

BY SIGNING BELOW, I UNDERSTAND AND AGREE (1) THAT I AM AUTHORIZING MOSAIC TO SHARE PERSONAL INFORMATION RELATED TO MY APPLICATION WITH THE INSTALLATION CONTRACTOR INCLUDING INFORMATION I PROVIDE, CREDIT BUREAU REPORTS, THIRD PARTY INFORMATION AND MOSAIC'S UNDERWRITING DECISION; (2) THAT I HAVE RECEIVED A COPY OF THIS AUTHORIZATION FOR MY FUTURE REFERENCE; AND (3) TO THE TERMS OF THE DISCLOSURE AND CONSENT OF ELECTRONIC RECEIPT OF LOAN DISCLOSURES.

Name: _____

Date: 10/8/2021 _____

Signature: _____

Current as of: March 22, 2019

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631



# Federal Truth in Lending Act ("TILA") Disclosure

Loan Number:**356698**

Date: **10/8/2021**

Borrower Name ▇▇▇▇▇▇▇

| ANNUAL PERCENTAGE RATE (the cost of your credit as a yearly rate) | FINANCE CHARGE (the dollar amount the credit will cost you) | Amount Financed (the amount of credit provided to you or on your behalf) | Total of Payments (the amount you will have paid after you have made all payments as scheduled) |
|---|---|---|---|
| **6.28% (e)** | **$47,074.17 (e)** | **$59,500.00** | **$106,574.17 (e)** |

| Monthly Payment Schedule: | | | |
|---|---|---|---|
| **Number of Payments** | **Amount of Payments** | **When Payments are Due** | |
| **16 (e)** | **$337.64 (e)** | Monthly, beginning **02/22/2022 (e)** | |
| **221 (e)** | **$455.73 (e)** | Monthly, beginning **06/22/2023 (e)** | |
| 1 | **$455.60 (e)** | **11/22/2041 (e)** | |

**Variable Rate: The annual percentage rate ("APR") will increase by 0.25% on the first calendar day of the next billing period if you terminate ACH payments or we terminate ACH payments because you are not current on your payments or we are unable to process your ACH payment. Any increase will take the form of higher payment amounts. For example, if you have a 20 year loan of $59,500.00 at a 6.28% APR with monthly payments of $337.64, and you begin making payments by check on the First Payment Date, your APR would increase to 6.53% and your monthly payments would increase by $7.20 to $344.84. Any increase may cause your Principal Balance Target to increase.**

**Security:** You are giving a security interest in the personal property you are purchasing in this transaction and your rights under any related agreement.

**Late Charge:** If a payment is more than fifteen (15) days late, we will charge you a non-refundable late fee of no more than 5% of the amount due or ten dollars ($10), whichever is less.

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty.

**Contract Reference:** See your Loan Agreement ("Agreement") for any additional information about nonpayment, default, and any required repayment in full before the scheduled date.

**Insurance:** You will be required to maintain a homeowners' insurance policy or equivalent insurance policy in an amount equal to the full replacement and installation cost of the solar system financed or the outstanding balance of the loan financed. The insurance carrier providing the insurance coverage may be chosen by you.

"(e)" means an estimate.

November 2020

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

## Itemization of Amount Financed

Amount Financed: **$59,500.00 (e)**
Amount Due To: **Ideal Horizon Benefits LLC**

The Installation Contractor may provide us a fee or discount against the Amount Financed noted herein. The Amount Financed shown is not reduced by any such fee or discount. Irrespective, of the Amount Due to the Installation Contractor, you remain contractually bound to repay the full Amount Financed.

The “Loan Start Date” is the date we first send funds to your Installation Contractor (or send directly to the equipment manufacturer/distributor if directed to do so by the Installation Contractor) as described in the “Loan Disbursement Schedule” in the Agreement. The first payment is due on the earlier of: (i) fifteen (15) days after we receive confirmation from your Installation Contractor that your system is operational; or (ii) three (3) months after the Loan Start Date. After the Loan Start Date, we will deliver a final Loan Closing Certificate. The Loan Closing Certificate will update your Payment Schedule.

The Payment Schedule shown above assumes that you make no voluntary prepayments on your Loan. However, approximately eighteen (18) months after the Loan Start Date, we will change your subsequent loan payments to the level required to repay the Loan in full over its scheduled term in light of any early, late or additional payments you have made and/or any missed payments. We have designed the Loan so that, if you make all scheduled payments on time and also make sufficient voluntary prepayment(s) to reduce your total loan amount to at least the “Principal Balance Target” described in your Agreement, your subsequent monthly payments will not increase.

**By signing below, you acknowledge that you have read and received a complete copy of this Federal Truth In Lending Act Disclosure (“TILA”) to keep for future reference before you signed your Loan Agreement.**

**BORROWER:**

DocuSigned by:
[redacted]

COPY VIEW

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

# ◆ MOSAIC

## LOAN AGREEMENT

**Borrower Name:** ▮▮▮▮▮▮     **Project Address** ▮▮▮▮▮▮

**Email:** ▮▮▮▮▮▮     **Borrower Address (if different from Project Address):**
**Phone:** ▮▮▮▮▮▮

**Loan Number: 356698**     **Loan Agreement Date: 10/08/2021**

This document describes the terms and conditions of your loan ("Summary Page").

| $0 | $59,500.00 | 6.29% |
|:---:|:---:|:---:|
| LOAN DOWN PAYMENT | LOAN AMOUNT | ANNUAL PERCENTAGE RATE |

### SYSTEM DESCRIPTION

Installation Contractor: **Ideal Horizon Benefits LLC**     Date of Loan Agreement: **10/08/2021**

Equipment Manufacturer/Distributor (if applicable):

### PAYMENT TERMS

| Number of Payments | Amount of Payment | When Payments Are Due |
|:---:|:---:|:---|
| 16 | $337.64 | Monthly, beginning **02/22/2022** |
| 221 | $455.73 | Monthly, beginning **06/22/2023** |
| 1 | $455.60 | Final Payment **11/22/2041** |

**Mosaic Loan**              **Mosaic Adjusted Loan**

Initial Monthly Payment(est.): **$337.64**    Section 3         Adjusted Monthly Payment(est.): **$455.73**    Section 3

**To keep your Initial Monthly Payment:**

Re-amortization Date(est.): **05/22/2023**    Section 3

Principal Balance Target(est.): **$44,226.20**    Section 3

### LOAN SUMMARY

Term: **20 Years**         Total Amount Financed: **$59,500.00 (e)**

Loan Start Date(est.): **11/22/2021**         Total of Payments: **$106,574.17 (e)**

First Payment Date(est.)1: **02/22/2022**

Maturity Date(est.): **11/22/2041**         **Loan Disbursement Schedule**

Annual Percentage Rate ("APR")*: **6.29%**      Initial Disbursement: **$35,700.00**

                                         Install Complete Disbursement: **$23,800.00**

                                         Final Loan Disbursement: **$0.00**

Solar Mosaic, Inc. | www.joinmosaic.com |300 Lakeside Drive, 24th Floor, Oakland, CA 94612     Page 1
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 6054631     Version 05.27.2021

Case 3:23-cv-00046-DCLC-JEM Document 208-1 Filed 04/04/24 Page 7 of 27 PageID #: 7920

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

\* **If you will make loan payments by Automated Clearing House ("ACH"), your Interest Rate includes a 0.25% reduction from the annual percentage rate ("APR"). If you terminate ACH payments or are not current on your loan payments, the APR will increase by 0.25% on the first calendar day of the next billing period. An increase will take the form of higher payment amounts. If you indicated in your application that you will make loan payments by check, your interest rate does not include such a reduction, but we will reduce your rate if you subsequently authorize ACH payments as described in Section 3(g).**

(est.) **The Loan Start Date is subject to change. The Loan Start Date will be finalized and accurately reflected in the Loan Closing Certificate, which will be sent to you following our first disbursement of loan proceeds to your Installation Contractor (or sent directly to the equipment manufacturer if directed to do so by the Installation Contractor). The Loan Closing Certificate is fully incorporated herein.**

**The estimated Loan Start Date assumes the Contractor completes installation and the "Install Complete Disbursement" is made within 180 days from the date of you are prequalified for a loan. The actual Loan Start Date will be the date that we first disburse loan proceeds to your Contractor. That date will be shown on the Loan Closing Certificate we send to you.**

**The estimated First Payment Date assumes you will begin making payments 3 months after the Loan Start Date. You may actually begin making payments on the earlier of 3 months after the Loan Start Date or 15 days after Mosaic confirms Permission to Operate from your utility company. Interest on this loan begins to accrue from the first disbursement and is calculated on the outstanding principal balance, as described in Section 3(c). You can begin making payments at any time you choose after the Loan Start Date.**

**We may re-review your application if it looks like the Loan Start Date will not occur within 180 days. This can happen if your Contractor is not able to make sufficient progress during your 180-day approval period for the Loan Start Date to occur. If we re-review your application, we will request a new credit report from the credit bureaus, to make sure that you continue to meet the requirements for loan approval. This may impact your credit score.**

**Tax Credit**
You may be eligible for a federal solar investment tax credit. You acknowledge that eligibility for this tax credit is not guaranteed. In order to realize the benefits of the solar investment tax credit, you must have federal income liability that is at least equal to the value of the credit. We are not financially responsible for your receipt of any such tax credits. We do not provide tax advice and nothing in this Loan Agreement is intended to be used as tax advice. In order to determine your eligibility for any federal solar investment tax credit, you should make an independent assessment or consult with your independent tax advisors. Additionally, if you are not eligible to receive a federal solar investment tax credit you will not be able to use the proceeds of your tax credit to make a voluntary prepayment as described below.

**Impact of Voluntary Prepayments**
You are not required to make any prepayments on the Loan. If you choose to make voluntary prepayment(s) on the Loan before the eighteenth (18th) month from the Loan Start Date, then when the Loan automatically re-amortizes on the Re-amortization Date denoted in the Summary Page, any prepayments made to date will be taken into account and the monthly loan payment adjusted accordingly. Any adjustment to the monthly loan payment resulting from the automatic re-amortization will be sufficient to fully repay the Loan by the Maturity Date.

You acknowledge that in order to avoid an increase in your Monthly Payment, you must make one or more voluntary prepayments equal to approximately **26%** of your Total Loan Amount within 18 months following your Loan Start Date. So long as you are not in default under this Agreement, and provided that you reduce your unpaid Total Loan Amount to the Principal Balance Target by the Re-amortization Date by making sufficient voluntary prepayments, your monthly payment will not increase. If you pay more than **26%** of your Total Loan Amount, your monthly payments will be adjusted to a lower amount. If you do not make any prepayments, or if your prepayments are less than **26%** of your Total Loan Amount, your monthly payments will be adjusted to a higher amount.

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 6054631
Case 3:23-cv-00046-DCLC-JEM Document 36-1 Filed 04/04/24 Page 8 of 27 Page ID #:
7921
Page 2
Version 09.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

[1] The estimated First Payment Date and actual First Payment Date will be different. The actual First Payment Date will be disclosed in your Loan Closing Certificate.

**Loan Re-Amortization at Eighteen Months**
Your Loan will automatically re-amortize on the Re-amortization Date stated on the Summary Page. This re-amortization event will take place 18 months after the Loan Start Date. During the re-amortization, the monthly loan payment will be adjusted in a manner to fully repay the Loan by the Maturity Date. Any new adjusted monthly loan payment will become due on the 19th month after the Loan Start Date. You are strongly encouraged to review the monthly loan statements to stay informed about the Re-amortization Date of the Loan and any adjustments to the monthly loan payments. Please note that the re-amortization of the Loan and any adjustments to the monthly loan payment amount assumes you are not in default or in breach of this Loan Agreement.

**Liens**
You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and a county fixture filing required to perfect our security interest in the Collateralized Goods. Our security interest in the Collateralized Goods takes priority over any mortgage on the Residence, whether such mortgage is granted before or after the date of this Agreement. It is possible that a lender making a loan secured by the Residence, including but not limited to a mortgage refinancing of an existing mortgage, will deem the Solar Equipment to be part of the Residence and will object to our interest in the Solar Equipment taking priority over its interest in the Residence. Upon request, we will confirm to any mortgage lender that our lien is limited to the Solar Equipment and does not extend to any part of the Residence. Alternatively, upon request, we may agree to lift our county fixture filing, if any on the Solar Equipment for a limited period for a cost of $250 or more depending on costs incurred and whether we will be able to refile upon closing of the mortgage refinancing.

**BUYER'S RIGHT TO CANCEL**

**ALL BORROWERS: You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

**CALIFORNIA BORROWERS ONLY: If you are 65 years of age or older: You, the buyer, may cancel this transaction at any time prior to midnight of the fifth business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

**CONNECTICUT BORROWERS ONLY: This instrument is based upon a home solicitation sale; which sale is subject to the provisions of the home solicitation sales act. This instrument is not negotiable. You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.**

**DISTRICT OF COLUMBIA BORROWERS ONLY: Buyer's Right to Cancel-If this agreement was solicited at or near your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and it must be mailed before midnight of the third business day after you signed this agreement. The notice must be mailed to Solar Mosaic, Inc., Attn: Loan Department, 300 Lakeside Drive, 24th Floor, Oakland, CA 94612.**

**KANSAS BORROWERS ONLY: Notice to Consumer**
1. **Do not sign this agreement before you read it.**
2. **You are entitled to a copy of this agreement.**
3. **You may prepay the unpaid balance at any time without penalty.**

Solar Mosaic, Inc. | www.joinmosaic.com 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 60DBO-43631

Case 3:23-cv-00046-DCLC-JEM Document 26-1 Filed 04/04/24 Page 9 of 27 PageID #: 7922

Page 3
Version 05.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**ARIZONA, RHODE ISLAND AND WASHINGTON BORROWERS ONLY: Notice to Buyer**

(1) **Do not sign this agreement if any of the spaces intended for the agreed terms of the extent of then available information are left blank.**

(2) **You are entitled to a copy of this agreement at the time you sign it.**

(3) **You may at any time pay off the full unpaid balance due under this agreement, and in so doing you may be entitled to receive a partial rebate of the finance and insurance charges.**

(4) **The seller has no right to enter unlawfully your premises or commit any breach of the peace to repossess goods purchased under this agreement.**

(5) **You may cancel this agreement if it has not been signed at the main office or a branch office of the seller, provided you notify the seller at his main office or branch office shown in the agreement by registered or certified mail, which shall be posted not later than midnight of the third calendar day after the day on which the buyer signs the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. See the attached notice of cancellation form for an explanation of buyer's rights.**

**SOUTH DAKOTA BORROWERS ONLY:**
**You may contact the South Dakota Division of Banking at 1601 N Harrison Ave., Suite 1, Pierre, SD 57501, or by phone at 605-773-3421, or by email at banking@state.sd.us if any improprieties in making loans or loan practices occur.**

**NORTH DAKOTA BORROWERS ONLY:**

**NOTICE: MONEY BROKERS ARE LICENSED AND REGULATED BY THE DEPARTMENT OF FINANCIAL INSTITUTIONS, 2000 SCHAFER STREET, SUITE G, BISMARCK, NORTH DAKOTA 58501-1204. THE DEPARTMENT OF FINANCIAL INSTITUTIONS HAS NOT PASSED ON THE MERITS OF THE CONTRACT AND LICENSING DOES NOT CONSTITUTE AN APPROVAL OF THE TERMS OR OF THE BROKER'S ABILITY TO ARRANGE ANY LOAN. COMPLAINTS REGARDING THE SERVICES OF MONEY BROKERS SHOULD BE DIRECTED TO THE DEPARTMENT OF FINANCIAL INSTITUTIONS.**

**ALABAMA BORROWERS ONLY:**

**CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT. ALA. CODE § 5-19-6.**

**WISCONSIN BORROWERS ONLY:**

**NOTICE TO CUSTOMER**
**(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED.**
**(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.**
**(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**You specifically agree that we may remotely disable the Solar Equipment if you default under this Loan Agreement.**

**Accepted and agreed to by:**

BORROWER:

DocuSigned by:

2780220226AF4E3...

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 6054631
Case 3:23-cv-00046-DCLC-JEM Document 268-1 Filed 04/04/24 Page 10 of 27 PageID #: 7923
Page 4
Version 08.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

THIS AGREEMENT IS LEGALLY BINDING AS OF AND FOLLOWING THE EFFECTIVE DATE INDICATED ON THE PRECEDING PAGE ONE ("SUMMARY PAGE"). IN THIS AGREEMENT, THE WORDS "YOU" AND "YOUR" REFER TO BORROWER AND BORROWER'S PERMITTED ASSIGNEES AND THE WORDS "LENDER," "WE," "US" AND "OUR" REFER TO SOLAR MOSAIC, INC. INCLUDING BUT NOT LIMITED TO ITS ASSIGNEES, SUCCESSORS, AFFILIATES, THIRD PARTY BANKING PARTNERS, SUBSIDARIES, AND LOAN SERVICE PROVIDERS.  CAPITALIZED TERMS USED HEREIN THAT ARE NOT OTHERWISE DEFINED BELOW ARE DEFINED ON THE SUMMARY PAGE.  THIS AGREEMENT SUPERSEDES ANY PRIOR AGREEMENT BETWEEN YOU AND US CONCERNING THE SAME SUBJECT MATTER.

**1.   INTRODUCTION.** The parties (each, a "Party" and collectively, "Parties") to this Agreement are you and Solar Mosaic, Inc. Your solar installation contractor ("Installation Contractor") has provided us with a copy of a signed home improvement agreement between you and the Installation Contractor (the "Home Improvement Agreement") under which it will install solar panels, inverters, battery storage, hot water solar systems, racking systems, wiring, electrical and mechanical connections, metering, monitoring and/or  other  distributed generation interconnect equipment ("Solar Equipment") and may, in addition, include the installation of home improvement products (together with the Solar Equipment, "Purchased Goods") at your home ("Residence") located at the Project Address listed on the first summary page of this Agreement ("Summary Page").  Your loan must be used to finance Purchased Goods installed at the Residence, which shall be limited to a one-to-four family dwelling that is permanently affixed to the ground and shall specifically exclude (1) any business or commercial establishment, (2) mobile homes which are not attached to a permanent foundation and (3) condominiums and townhomes where you do not own the roof on which the Solar Equipment is installed. In addition, to the extent the Summary Page indicates that you will receive an Operations and Maintenance Loan Amount, the Installation Contractor and/or your operations and maintenance contractor ("Operations and Maintenance Contractor") has provided us with a copy of a signed operations and maintenance agreement ("Operations and Maintenance Agreement") between you and the Operations and Maintenance Contractor under which it will provide certain operations and maintenance services for the Solar Equipment for a specified period.  Your Loan Start Date is estimated on the Summary Page and will be the actual date of our first loan disbursement as described in Section 5 below.

**2.   PROMISE TO PAY.** For value received, you promise to pay to us the principal sum of the Total Loan Amount, which includes the Purchased Goods Loan Amount and the Operations and Maintenance Loan Amount (if any) indicated on the Summary Page, with interest as set forth in Section 3 ("Interest and Payments") below. You understand that we will make the Loan to you by disbursing to the Installation Contractor (or sending directly to the equipment manufacturer if directed to do so by the Installation Contractor) the amounts required to satisfy your obligations under the Home Improvement Agreement between you and the Installation Contractor. To incent us to make the Loan to you at the APR shown in the Truth In Lending Act Disclosure ("TILA Disclosure"), the Installation Contractor has agreed that we can satisfy the Amount Financed on your behalf by disbursing less than the Amount Financed. Regardless of the amount paid to the Installation Contractor, you agree to be bound to repay the full Amount Financed amount set forth in the TILA Disclosure.

**3.   INTEREST AND PAYMENTS.**
a.   Payment Timing. The first payment on the Loan is due and payable on the First Payment Date (estimated on the Summary Page and finalized on the Loan Closing Certificate). To the extent permitted by applicable law, such date will be the earlier of: (i) fifteen (15) days after permission to operate your Solar Equipment ("Permission to Operate") is confirmed; or (ii) 3 months after the date we first send funds to your Installation Contractor ("Loan Start Date"), which occurs after the Installation Contractor achieves the first milestone on the "Loan Disbursement Schedule" described on the Summary Page. If the Loan Start Date is on the 29th, 30th or 31st of the month, the first payment will be due on the 1st of the following month. If Permission To Operate is reached early enough to cause an adjustment to First Payment Date, but Permission To Operate plus 15 days will be on the 29th, 30th or 31st of the month, the first payment will be due on the 1st of the following month. All subsequent payments will be due on the 1st of each month.
b.   Payment Application. Payments will be allocated in our discretion, subject to applicable law, including to any fees or costs or expenses payable to us under this Agreement or that we incur related to enforcement of this Agreement as further described in Section 10 ("Remedies") below. To the extent permitted by law, we reserve the right to report to consumer reporting agencies any delinquent payments under this Agreement that are not paid within thirty (30) days of the applicable due date.
c.   Accrual.  As provided for in this Section 3(c), interest on your loan will be calculated on the unpaid principal balance in accordance with applicable law.  Interest will accrue on the loan amounts actually disbursed, with the first accrual starting on the first calendar day following our first loan disbursement (the "Loan Start Date"). Interest will continue to accrue until all amounts owed under this Agreement are paid in full.  Unpaid interest will not be added to the principal balance.
d.   Interest Rate. Your interest rate is stated on the Summary Page. If you indicated in your loan application that you will make loan payments by ACH, your interest rate includes a 0.25% reduction from the annual percentage rate that would

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 6054631                                    Version  08.27.2021

Case 3:23-cv-00046-DCLC-JEM   Document 268-1   Filed 04/04/24   Page 11 of 27   PageID #: 7924

Page 5

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

otherwise apply. The interest rate will increase by 0.25% on the first calendar day of the next billing period **if you terminate ACH payments or we terminate ACH payments because you are not current on your payments or we were unable to process your ACH payment.** Any increase in the interest rate will take the form of higher payment amounts. If you indicated in your application that you will make loan payments by check, your interest rate does not include such a reduction, but we will reduce your rate if you subsequently authorize ACH payments as described in Section 3(g).

e.  <u>Monthly Payment Amounts</u>.   The monthly loan payments you must make, assuming you make all payments in full and on time, are set forth in your Loan Closing Certificate. You understand that the Loan will automatically re-amortize on the 18th month following the Loan Start Date that is estimated in the Summary Page and finalized in the Loan Closing Certificate you receive.  This event is referred to the Re-Amortization Date in the Summary Page.  On the Re-amortization Date, the Loan will adjust in a manner necessary to ensure that it is fully repaid by the Maturity Date. Any adjustment that occurs on the Re-amortization Date will impact the monthly loan payment, and it may either stay the same, increase or decrease (but **in no case will it equal less than $35**). **If the calculated payment based on re-amortization is less than $35, you will owe a minimum of $35 and your Maturity Date may change.**  The re-amortization and any corresponding adjustments to the Loan assumes you are not in default under this Loan Agreement.

So long as you are not in default under this Agreement, and provided that you reduce your unpaid Total Loan Amount to the Principal Balance Target by the Re-amortization Date by making sufficient optional prepayments, your monthly payment will remain the Initial Monthly Payment.  If you do not reduce your unpaid Total Loan Amount to at least the Principal Balance Target by the Re-amortization Date, then immediately following the Principal Balance Date, your monthly payment will increase for the remainder of the Term as follows:

(i)     If you do not make <u>any</u> optional prepayments before the Re-amortization Date and you have made all your Monthly Payments by the due date, then your new monthly payment will be the Adjusted Monthly Payment; and

(ii)    If you make optional prepayments before the Re-amortization Date but such prepayments total less than the Principal Balance Target, then your new monthly payment will be an amount greater than your Initial Monthly Payment but less than the Adjusted Monthly Payment.

f.  <u>Maturity Date.</u> Unless your loan is due earlier and payable as provided in this Loan Agreement, your loan will mature on the Maturity Date.  On the Maturity Date, you agree to pay in full any unpaid amounts payable under this Loan Agreement.

g.  <u>Payment Method.</u>   You may pay by ACH or check. To pay by ACH, complete the "Authorization for Direct Payment via ACH" (the "ACH Authorization"). To pay by check, include your Loan Number on your check made payable to Solar Mosaic, Inc. and mail it to Solar Mosaic, Inc. c/o Concord Servicing Corporation, 4150 NORTH DRINKWATER, STE #200, SCOTTSDALE, AZ 85251. You may change your payment method by following the instructions in the ACH Authorization or managing your account online at https://joinmosaic.myaccountinfo.com/Account/LogOn If you change your payment method, it will change your interest rate as described in Section 3(d).

h.  <u>Prepayment</u> *Before* <u>Automatic Re-Amortization.</u> On or before the 18th month from the Loan Start Date, you may make any prepayment on the loan at any time without penalty. These prepayments (if any) will be taken into account when the loan automatically re-amortizes, and the monthly loan payment amount will be adjusted in order to ensure the loan is fully repaid by the Maturity Date. Depending on whether you are in default on the Loan Agreement, the adjustment to the monthly loan payment amount may result in an amount that stays the same, increases, or decreases (but in no case will it equal less than $35).

i.  <u>Prepayment</u> *After* <u>Automatic Re-Amortization</u>.  After the loan automatically re-amortizes on the 18th month from the Loan Start Date, you may still make any prepayment on the loan without penalty.  These prepayments (if any) will not impact or result in an adjustment of your monthly loan payment.  Instead, and assuming you are not in default under the Loan Agreement, the prepayments may result in repayment of the entire loan earlier than the Maturity Date.

j.  <u>Payment of Disputed Balance</u>. If you wish to make a payment in satisfaction of a disputed balance, you must send it to Solar Mosaic, Inc. c/o Concord Servicing Corporation, 4150 NORTH DRINKWATER, STE #200, SCOTTSDALE, AZ 85251, ATTN: Disputed Balance, together with a letter of explanation. We may deposit any such payment without such deposit constituting a satisfaction of the disputed balance.

**4.  FEES.**  We will also charge you the following fees to the extent permitted by applicable law.
a. <u>Insufficient Funds Fee.</u> You will be charged a non-refundable fee of ten dollars ($10) for each failed electronic or check payment attempt. Your bank may assess its own fee in addition to the fee we assess.
b. <u>Late Payment Fee.</u> If a payment is more than fifteen (15) days late, we will charge you a non-refundable late fee of no more than 5% of the amount due or ten dollars ($10), whichever is less.

**5.  LOAN DISBURSEMENTS.** We will disburse the loan proceeds on your behalf to your Installation Contractor (or the equipment manufacturer if directed to do so by the Installation Contractor) and, if applicable, to your Operations and Maintenance Contractor, upon achievement of certain conditions described on the Loan Disbursement Schedule on the Summary Page.  Loan disbursements will be disbursed to your Installation Contractor (or the equipment manufacturer if directed to do so by the Installation Contractor) after certain conditions we establish at our discretion are met. We reserve the right to update, revise and/or remove the conditions necessary for loan disbursements to be transmitted to the

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License #60DBO-74631

Page 6
Version 08.27.2021

Case 3:23-cv-00046-DCLC-JEM   Document 268-1   Filed 04/04/24   Page 12 of 27   PageID #: 7925

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

Installation Contractor (or the equipment manufacturer if directed to do so by the Installation Contractor) without prior verbal or written notice. You understand that in order for us to make disbursements on your behalf, we may require you to confirm (verbally or electronically) that the Installation Contractor has satisfied certain conditions in the installation process. In the event that you fail to confirm that certain conditions have been met, we may decide in our discretion to still disburse loan proceeds to your Installation Contractor (or the equipment manufacturer if directed to do so by the Installation Contractor) if we determine that all conditions were satisfactorily met.

Notwithstanding anything to the contrary in this Agreement, Mosaic may suspend or terminate its obligations under this Agreement (including but not limited to its obligations described in this Section 5 to disburse loan proceeds) upon a Force Majeure Event. "Force Majeure Event" shall mean, any act or event which delays our performance of our obligations or renders us unable to comply, totally or partially, with our obligations, including our inability to access funding from third party institutions to make loan disbursements, war (whether or not declared), riot, acts of God including storms, floods, lightning, earthquakes, hailstorms, ice storms, tornados, typhoons, hurricanes, landslides, volcanic eruptions, fires, excessive wind speeds; sabotage or destruction of facilities or equipment; and labor strikes. During any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement, we reserve the right to (i) suspend our performance of such obligations until such time as we determine our performance is no longer prevented, limited or otherwise impaired and/or (ii) terminate this Agreement.

6. **ADDITIONAL OBLIGATIONS AND REPRESENTATIONS.**
a. <u>Collateral.</u> To the extent permissible by law, you irrevocably grant us a limited power of attorney with full power of substitution and re-substitution, to sign any documents and perform any acts, in your name and on your behalf, for the exclusive purpose of exercising our rights with respect to the Collateral under this Agreement. You also agree not to pledge, mortgage, encumber or otherwise permit the Collateral at any time to be subject to any lien or encumbrance that is superior to our security interest. Subject to applicable law (including any notice, cure and/or redemption rights provided by applicable law), upon default, we may remotely disable the functioning of the Purchased Goods, whether or not we then attempt to remove the Purchased Goods, enter upon the Residence and disable and/or remove the Purchased Goods, sell or otherwise dispose of the Purchased Goods including any environmental incentives, assume your rights under any environmental incentives and give notice to the other parties thereto that payments thereunder shall be made to us and not to you, initiate a collection action against you, recover our costs of repossession, storage and collection and exercise any other rights provided by this Agreement or applicable law. If we disable the functioning of the Purchased Goods, you understand that any fees and costs associated with that action may be added to your Loan.

b. <u>Ownership</u>. **You represent and covenant that you are over the age of 18 and that you are a U.S. citizen or a lawful resident.** You further represent and covenant that (1) the Residence is a one-to-four family dwelling that is permanently affixed to the ground and it is not (a) a business or commercial establishment, (b) a mobile home which is not attached to a permanent foundation or (c) a condominium or townhome where you do not own the roof on which the Solar Equipment is installed; (2) you, or a trust controlled by you, are the fee simple owner of the Residence and the Collateral; and (3) you are not, and will not, be in breach of your Home Improvement Agreement.

c. <u>Collateral Access.</u> You agree to provide us or our designees after receiving reasonable notice, with access to the Residence for the purposes of: (1) inspecting the Purchased Goods until this Agreement terminates; or (2) in the case of a foreclosure on the Collateral, removing the Collateral from the Residence. You agree to provide to us all available access to any energy production data or other data related to your Purchased Goods or generated in connection with any operations and maintenance service, in each case throughout the Term of this Agreement. You hereby authorize any third party in control or possession of your energy production data (or other data related to or generated in connection with your Purchased Goods) to provide us or our designees with such energy production data. You agree to promptly provide such third party with any documentation required by that third party to authorize the third party to provide this data to us.

d. <u>Personal Property.</u> You and we both expressly intend that no portion of the Collateralized Goods will constitute a "fixture" attached to any real property, and that the Collateralized Goods will be removable personal property. You also agree not to take any action that might cause the Collateralized Goods to be treated as real property or as fixtures to real property. However, you agree that we may make a fixture filing, if we choose, out of an abundance of caution, provided that you and we agree that we may enforce rights in the Collateralized Goods under the Uniform Commercial Code and not under state real estate or mortgage law.

e. <u>Installation and Purchased Goods.</u> You will take all steps necessary to enable the installation and proper functioning of the Purchased Goods to be completed in accordance with the Home Improvement Agreement and, if you receive an Operations and Maintenance Loan Amount, to be maintained in accordance with the Operations and Maintenance Agreement. You agree to keep the Purchased Goods in good working order and in compliance with manufacturing specifications, the operating and maintenance manuals, warranty requirements provided by your Installation Contractor and, if applicable, your Operations and Maintenance Contractor, and all applicable law, and not to remove or modify the Purchased Goods without our prior written consent. You agree to maintain at all times an internet connection sufficient to ensure that monitoring data for the Solar Equipment can be fully transmitted.

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 60DBO-44631
Page 7
Version 08.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

f. <u>Taxes.</u> You agree to pay, when due, any taxes, assessments, governmental charges, or other similar fees related to this Loan. If you do not separately pay these taxes and/or other fees when due, we will pay them on your behalf and add the amount we pay to the principal of our loan to you under this Agreement. In the event that we choose pay these taxes and/or other fees on your behalf, you agree to not only repay the amount paid by us as part of your Loan but also agree to assist us in effectuating these payments.

g. <u>Required Insurance.</u> To the extent permissible by law, you agree to maintain and pay any deductibles under a homeowners' insurance policy or equivalent insurance policy reasonably acceptable to us covering the Purchased Goods in an amount equal to the full replacement and installation cost of the Purchased Goods or the outstanding balance of the loan. If there is a payout under the property coverage for damage to the Purchased Goods, you agree to deliver those insurance proceeds to us, and we will apply those proceeds to the loan in the order of priority set forth in Section 3(b) of this Agreement.

h. <u>Credit Inquiries.</u> You authorize us to obtain a credit report on you for any legal purpose in connection with this loan, including any update, extension of credit, review, or collection of this loan. If you request, we will tell you whether any credit report was requested and, if so, the name and address of the credit bureau furnishing the report.  You agree that your loan application approval is good for 180 days. If after 150 days it appears that your Installation Contractor may not start the installation of the Solar Equipment before the approval period expires and we have not made a Loan Disbursement, then we may re-evaluate your application and obtain another credit report on you.

i. <u>Bankruptcy.</u> You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your loan number, and must be sent to Solar Mosaic, Inc. c/o Concord Servicing Corporation, 4150 NORTH DRINKWATER, STE #200, SCOTTSDALE, AZ 85251, ATTN: Bankruptcy Notice.

**7.     GRANT OF SECURITY INTEREST IN COLLATERAL.** As consideration for the loan we are providing to you and to secure your obligations under this Agreement, you hereby grant to us a security interest in the following property (collectively "Collateral"), whether you own it now or acquire it later, whether now existing or hereafter arising, regardless of where the Collateral is located:

- all Purchased Goods excluding Fixtures (as defined in Article 9 of the UCC), if any (such Purchased Goods which excludes Fixtures are referred to in this Agreement as "Collateralized Goods");

- all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the Collateralized Goods;

- all proceeds from warranty claims related to the Collateralized Goods, the Home Improvement Agreement and (if you receive an Operations and Maintenance Loan Amount) the Operations and Maintenance Agreement;

- all rebates and incentives that are payable as a result of installing the Collateralized Goods except for such rebates and incentives which have been assigned to your Installation Contractor or Operations Maintenance Contractor;

- all your rights, title, interests, and remedies under all agreements, statements and other documentation relating to the Collateralized Goods (including, without limitation, the Home Improvement Agreement, and Operations and Maintenance Agreement); and

- all consideration received from the collection, sale or other disposition of any property that constitutes Collateralized Goods, including any payment received from any insurer arising from any loss, damage or destruction of any Collateralized Goods and any other payment received as a result of possessing any Collateralized Goods, or any other proceeds of Collateralized Goods.

You authorize us to file on your behalf any documentation, including but not limited to a copy of this Agreement, a UCC financing statement and a county fixture filing required to perfect our security interest in the Collateralized Goods. It is possible that a lender making a loan secured by the Residence, including but not limited to a mortgage refinancing of an existing mortgage, will deem the Solar Equipment to be part of the Residence and will object to our interest in the Solar Equipment taking priority over its interest in the Residence. Upon request, we will confirm to any mortgage lender that our lien is limited to the Solar Equipment and does not extend to any part of the Residence. Alternatively, upon request, we may agree to lift our county fixture filing, if any, on the Solar Equipment for a limited period for a cost of $250 or more depending on costs incurred and provided we will be able to refile upon closing of the mortgage refinancing.

**8.  INDEMNIFICATION.** You agree to indemnify, defend and hold harmless us and our affiliates against any loss, liability, or damage that arises out of or relates to the transactions contemplated by this Agreement.

Solar Mosaic, Inc. | www.joinmosaic.com |300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License #60DBO-54631

Case 3:23-cv-00046-DCLC-JEM   Document 268-1   Filed 04/04/24   Page 14 of 27   PageID #: 7927

Page 8
Version 08.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**9. DEFAULT.** You will be in default under this Agreement if:

a. you fail to make any payment under this Agreement within fifteen (15) days of the date such payment is due;

b. you fail to perform any of your obligations under this Agreement and you fail to cure such failure to perform to our reasonable satisfaction within thirty (30) days after receiving notice from us of your failure to perform;

c. you terminate the Home Improvement Agreement without our prior written consent;

d. you remove, modify, sell or otherwise transfer the Collateral without our prior written approval;

e. any representation made by you in, or in connection with, your loan application or this Agreement is false in any material respect when made;

f. any of the following occurs (each a "Bankruptcy Event"): (1) you make an application for the appointment of a receiver, trustee or custodian or a receiver, trustee or custodian is appointed for you or a majority of your assets; (2) you initiate or consent to any legal proceedings under the Bankruptcy Code, or equivalent law providing for the relief of debtors; (3) you make an assignment for the benefit of creditors; or (4) you have a petition in bankruptcy or similar relief of debtors filed against you, which is not withdrawn or discharged within thirty (30) days of being filed.

**10. REMEDIES.** Our remedies if you default on this Agreement include the following (to the fullest extent permitted by law):

a. <u>General.</u> In the event that you are in default under this Agreement, we may:

    (1) declare our loan to you immediately due and payable, except that your loan will become immediately due and payable to us under a Bankruptcy Event, regardless of whether or not we take any action;

    (2) provide a report to the credit bureaus regarding your payment history and status of default; As required by law, you are hereby notified that a negative report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement. **Late payments, missed payments or other defaults on this Agreement may be reflected in your credit report.**

    (3) foreclose on the Collateral (and exercise any other rights with respect to the Collateral that we have under this Agreement or applicable law, including entering upon your property and disabling the Solar Equipment and/or any monitoring services provided for such Solar Equipment); and/or

    (4) pursue any other remedies available to us under applicable law, including those of a secured creditor as permitted by applicable law.

b. <u>Loan Acceleration.</u> If your loan is immediately due and payable, you must promptly pay in full the unpaid principal amount of the loan, all accrued interest, and any other amounts and fees payable under this Agreement.

c. <u>Taking Possession.</u> If we choose to foreclose on the Collateral, we may, among other things, take possession of the Collateral and then sell, lease or otherwise dispose of this property.

d. <u>Cost Reimbursement; Application of Proceeds.</u> Unless otherwise prohibited by state law, you are to promptly reimburse us, with interest, for all costs and expenses incurred in exercising our remedies related to this Agreement, including reasonable attorneys' fees, the cost of collection after default, the costs we incur in stabilizing and restoring your roof if we take possession of the Solar Equipment, the cost of disabling the Solar Equipment and subsequent reactivation in cases of delinquency, and the costs we incur in selling or otherwise disposing of the Collateral.  If we choose to foreclose on the Collateral, we will apply any cash proceeds in the order of priority set forth in Section 3(b) of this Agreement and then to you or as a court may otherwise direct.

e. <u>Deficiency Judgment.</u> To the fullest extent permitted by law, regardless of whether or not we foreclose on the Collateral, we may require that you pay any amounts payable by you under this Agreement less any proceeds that we realize from our exercise of remedies under this Agreement.

TO THE FULLEST EXTENT PERMITTED BY LAW, YOU ARE PERSONALLY LIABLE FOR ALL AMOUNTS PAYABLE UNDER THIS AGREEMENT. WE ARE NOT REQUIRED TO FORECLOSE ON THE COLLATERAL BEFORE INITIATING PROCEEDINGS AGAINST YOU AND YOUR ASSETS.

Our rights under this Agreement are cumulative and we may exercise these rights at any time if you default. In the event that we exercise any of our rights or remedies under this Agreement, you will continue to be in default until such time that you pay to us all amounts due and payable to us and you have cured any and all defaults. OUR FAILURE TO TAKE ANY ACTION OR DELAY TAKING ANY ACTION RELATED TO YOUR DEFAULT, OR SIMILAR OR UNRELATED DEFAULT, DOES NOT WAIVE, OR IMPLY A WAIVER OF ANY OF OUR RIGHTS UNDER THIS AGREEMENT.

**11. TERMINATION.** We may terminate this Agreement (i) during any period in which a Force Majeure Event prevents, limits or otherwise impairs our ability to perform our obligations under this Agreement, (ii) if the first loan disbursement does not occur within one hundred eighty (180) days of the date you first received credit approval by us to enter into this Agreement and if you no longer satisfy the minimum credit requirements we used to approve your credit application for your loan at that time, (iii) if the final loan disbursement does not occur within one hundred and eighty (180) days of your Loan Start Date, (iv) if you are approved for a loan but fail to provide additional information and/or documentation requested in relation to your loan application; (v) if any representation made by you in, or in connection with, your loan application or this Agreement is false in any material respect when made (inclusive of providing any falsified or forged documentation); or **or (vi) if your Installation Contractor is no longer an approved contractor on Mosaic's lending platform.** No delay in our exercise of the

Solar Mosaic, Inc | www.joinmosaic.com | 300 Lakeside Drive, 24ᵗʰ Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 6054631

Case 3:23-cv-00046-DCLC-JEM   Document 268-1   Filed 04/04/24   Page 15 of 27   PageID #: 7928

Page 9
Version 08.27.2021

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

foregoing termination rights shall constitute a waiver of our continuing rights to terminate the Agreement. You authorize us to obtain your credit report to confirm that you continue to satisfy the minimum credit requirements. In addition, this Agreement (a) may be terminated, prior to our first disbursement of the loan proceeds, by you, upon providing at least ten (10) days' advance written notice to us (which notice, for the avoidance of doubt, may be sent more than three (3) business days following the Effective Date of this Agreement) and (b) may be terminated if the first loan disbursement is not made within one hundred eighty (180) days of the Effective Date. If this Agreement is terminated for any of the reasons mentioned in this Section, the termination will not, in and of itself, trigger an event of default. This Agreement will terminate after you have paid in full all amounts payable by you under this Agreement. The terms of this Agreement that would, by their express nature, survive the termination of this Agreement (including the provisions under "Additional Obligations and Representations," "Indemnification," "Governing Law, Arbitration and Miscellaneous," "Notices and Other Information," "Limitation of Liability" and "Termination") will survive and be enforceable under this Agreement. Upon termination of this Agreement, our security interest in the Collateral will terminate.

**12. NOTICES AND OTHER INFORMATION.** You consent to receipt through electronic mail to the email address set forth by you on the Summary Page ("Designated Email") of all notices, records, disclosures and other information related to this Agreement ("Electronic Records"). We may in our discretion deliver in paper form to your last postal service mailing address of record certain records. You agree that you have or will have access at all times to capabilities that support the requirements in this Section. You must advise us immediately of any changes or updates to, inactivity of or operational problems with your Designated Email. All provisions of any Electronic Records are binding on you just as if they were delivered in paper to one of the addresses listed on the Summary Page, which can be updated by providing written notice to the email address of record for the other party.

As described when you provided your phone number in the credit application, we may contact you at any phone number you provide. When you give us your mobile phone number, we have your consent to contact you at that number about your loan. Your consent allows us to use text messaging, automatic dialing technology and artificial or prerecorded voice messages for informational and loan service calls, but not for sales or telemarketing calls. It may include contact from companies working on our behalf to service your loan. Message and data rates may apply. You may contact us at any time to change these preferences.

**13. ASSIGNMENT**. You may not assign or transfer your rights or obligations under this Agreement without our prior written consent. If you are selling your home, with our prior written consent, you may request a transfer the loan obligations to the potential new home owner if: (a) the potential new homeowner meets our credit and underwriting criteria in place for loan transfers at that time by notifying us in writing at least thirty (30) days in advance; (b) the warranties and operations and maintenance service obligations (if any) pertaining to the Purchased Goods are transferred to the potential new home owner; and (c) you pay a fee equal to $250. Mosaic reserves the right to not allow assignment or transfer of the loan. We may assign or transfer all or a portion of this Agreement, including but not limited to ownership of the loan and loan servicing, and the related documents to a third party or affiliate without prior notice to you. YOU HEREBY AUTHORIZE US TO PROVIDE TO A THIRD PARTY OR AFFILIATE ANY INFORMATION THAT THEY MAY REQUEST IN CONSIDERING OR IMPLEMENTING A PURCHASE OF OUR RIGHTS UNDER THIS AGREEMENT.

**14. LIMITATION OF LIABILITY.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, OUR LIABILITY TO YOU UNDER THIS AGREEMENT, IF ANY, SHALL BE LIMITED TO DIRECT, ACTUAL DAMAGES ONLY. YOU AGREE THAT IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL OR INDIRECT DAMAGES.

**15. GOVERNING LAW, ARBITRATION AND MISCELLANEOUS.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

Except for the Arbitration agreement below, this Agreement shall be governed by federal law and, to the extent state law applies, the substantive laws of the state where the Residence is located. If any provision of this Agreement cannot be enforced, the rest of this Agreement will stay in effect. No amendment of this Agreement will be valid unless in writing and signed by both Lender and you (the Loan Closing Certificate shall not be deemed an amendment of this Agreement and is fully incorporated into this Agreement). This Agreement represents the entire agreement between the Parties regarding your loan. Our rights under this Agreement shall inure to the benefit of our successors and assigns, and your obligations under this Agreement shall be binding upon your heirs, personal representatives and permitted assigns.

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loaninquiries@joinmosaic.com | CA Finance Lenders License #60DBO-43631      Version 09.27.2021
Page 10

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

If the residence is located in California, then the loan is made pursuant to the California Finance Lenders Law, Division 9 (commencing with Section 22000) of the Financial Code. FOR INFORMATION CONTACT THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION, STATE OF CALIFORNIA.

**16. ARBITRATION AGREEMENT**

**PLEASE READ THE FOLLOWING ARBITRATION TERMS CAREFULLY AS THEY WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.** If either you or we elect to arbitrate a Claim rather than have a court (a judge or a jury) decide the Claim, it will be resolved by individual (not class or class-wide) binding arbitration in accordance with the terms specified in this Arbitration Agreement.

**YOU HAVE THE RIGHT TO REJECT (NOT BE BOUND BY) THIS ARBITRATION AGREEMENT AS DESCRIBED BELOW. If you do not reject this Arbitration Agreement and a Claim is arbitrated, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action, private attorney general or other representative action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.**

**Special Definitions.** Some words have special definitions just for purposes of this Arbitration Agreement. The terms "we," "us" and "our," in addition to the meanings set forth at the beginning of this Loan Agreement, also refer to Solar Mosaic, Inc., its assignees, and their employees, officers, directors, parents, controlling persons, subsidiaries, affiliates, successors and assigns. "We," "us" and "our" also apply to third parties if you assert a Claim against such third parties in connection with a Claim you assert against us.

**Definition of "Claim."** A "Claim" is any claim, dispute or controversy between you and us, whether preexisting, present or future, which arises out of or relates to the Loan Agreement, any prior agreement you have had with us, the events leading up to your loan (for example, any disclosures, advertisements, promotions or oral or written statements made by us), any product or service provided by us or third parties in connection with your loan, any transaction conducted with us, the collection of amounts you owe us and the manner of collection or the relationship between you and us.

The term "Claim" has the broadest possible meaning. It includes initial claims, counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.

However, the term "Claim" does not include:

**a.** any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof (including, without limitation, the Class Action Waiver set forth below and/or this sentence); all such disputes or controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Loan Agreement as a whole is for the arbitrator, not a court, to decide.

**b.** any individual action brought by you or us in small claims court or a state's equivalent court, unless such action is transferred, removed or appealed to a different court;

**c.** the exercising of any self-help or non-judicial remedies by you or us;

**d.** any individual action in court by one party that is limited to preventing the other party from using a self-help or non-judicial remedy and that does not involve a request for damages or monetary relief of any kind; and

**e.** our right to exercise the lawful remedies of a secured creditor under applicable law, including, but not limited to, repossession, foreclosure, and set off.

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 60DBO-44631

Page 11
Version 09.27.2021

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

The institution and/or maintenance of any right, action or litigation specified above will not waive the right of either of the parties to compel arbitration regarding any other dispute subject to arbitration pursuant to this Arbitration Agreement.

**Federal Arbitration Act.** The parties agree and acknowledge that the Loan Agreement evidences a transaction involving interstate commerce and, therefore, the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA") shall govern the interpretation and enforcement of this Arbitration Agreement and proceedings pursuant thereto. To the extent state law is applicable under the FAA, the Residence state law will apply.

**Class Action Waiver. Notwithstanding any other provision of the Loan Agreement, if either you or we elect to arbitrate a Claim, neither you nor we will have the right: (a) to participate in a class action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision or to issue any relief that applies to any person or entity other than you and/or us individually.**

**The parties acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between them and is non-severable from this Arbitration Agreement. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' Arbitration Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

**Arbitration Procedures.**

**a.** **Electing arbitration**. If you or we elect to arbitrate a Claim rather than have a court (a judge or a jury) decide the Claim, the party electing arbitration must notify the other party in writing. This notice can be given after the beginning of a lawsuit and can be given in papers filed in the lawsuit (for example, a motion by the defendant to compel arbitration of claims asserted by the plaintiff in a lawsuit filed in court). Otherwise, your notice must be sent to 300 Lakeside Drive, 24th Floor, Oakland, CA 94612, Attn: Legal Department, and our notice must be sent to the most recent address for you in our files. Any arbitration hearing that you attend will take place in a venue reasonably convenient to where you reside unless you and we agree otherwise.

You can choose the one of the arbitration administrators listed below in your written notice electing to arbitrate, or by giving us written notice of your selection within 20 days after you notify us of your election to arbitrate. If you do not do so, we will select the administrator.

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party asserting the Claim(s) to select an arbitration administrator pursuant to the paragraph below and start the arbitration proceeding in accordance with the administrator's rules and procedures.

**b.** **Arbitration administrators and rules**. The arbitration administrator will be either:

| | | |
|---|---|---|
| American Arbitration Association ("AAA") 1633 Broadway, 10th Floor New York, NY 10019 www.adr.org 1-800-778-7879 | or | JAMS 1920 Main Street Suite 300 Irvine, CA 92614 www.jamsadr.com 1-800-352-5267 |

You may contact these organizations directly if you have any questions about the way they conduct arbitrations or want to obtain a copy of their rules and forms (which are also available on their websites). However, if the AAA and JAMS are unable or unwilling to serve as administrator, the parties may agree upon another administrator or, if they are unable to agree, a court shall select the administrator or arbitrator. No company may serve as administrator, without the consent of

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 60DBO-43631
Page 12
Version 09.27.2021
Case 3:23-cv-00046-DCLC-JEM Document 266-1 Filed 04/04/24 Page 18 of 27 PageID #: 7931

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

all parties, if it adopts or has in place any formal or informal policy that is inconsistent with and purports to override the terms of the Class Action Waiver in this Arbitration Agreement.

In the event of a conflict between the provisions of this Arbitration Agreement, on the one hand, and any applicable rules of the AAA or JAMS or other administrator used or any other terms of the Loan Agreement, on the other hand, the provisions of this Arbitration Agreement shall control.

**c.      The arbitrator**. A single arbitrator will be appointed by the administrator and must be a practicing attorney with ten or more years of experience or a retired judge.

**d.      What law the arbitrator will apply**. The arbitrator will not be bound by judicial rules of procedure and evidence that would apply in a court, nor by state or local laws that relate to arbitration proceedings. The arbitrator will apply the same statutes of limitation and privileges that a court would apply if the matter were pending in court.

In determining liability or awarding damages or other relief, the arbitrator will follow the applicable substantive law, consistent with the FAA, that would apply if the matter had been brought in court. The arbitrator may award any damages or other relief or remedies that would apply under applicable law to an individual action brought in court, including, without limitation, punitive damages (which shall be governed by the constitutional standards employed by the courts) and injunctive, equitable and declaratory relief (but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim).

The arbitrator will have the authority to award fees and costs of attorneys, witnesses and experts to the extent permitted by the Loan Agreement, the administrator's rules or applicable law. However, with respect to Claim(s) asserted by you in an individual arbitration, we will pay your reasonable attorney, witness and expert fees and costs if and to the extent you prevail, if applicable law requires us to or if we must bear such fees and costs in order for this Arbitration Agreement to be enforced.

**e.      Arbitration costs**. At your written request, we will pay all filing, hearing and/or other fees charged by the administrator and arbitrator to you for Claim(s) asserted by you in an individual arbitration after you have paid an amount equivalent to the fee, if any, for filing such Claim(s) in state or federal court (whichever is less) in the judicial district in which you reside. (If you have already paid a filing fee for asserting the Claim(s) in court, you will not be required to pay that amount again). In addition, the administrator may have rules or procedures whereby you may be responsible for a different amount and can seek a waiver of fees charged to you by the administrator and arbitrator. We will always pay any fees or expenses that we are required to pay by law or the administrator's rules or that we are required to pay for this Arbitration Agreement to be enforced.

**f.      The arbitrator's decision**. At the timely request of either party, the arbitrator shall write a brief explanation of the grounds for the decision. A judgment on the arbitrator's decision (the "award") may be entered by any court having jurisdiction.

**Severability and Survival.** If any part of this Arbitration Agreement, other than the Class Action Waiver, is deemed or found to be unenforceable for any reason, the remainder shall be enforceable. This Arbitration Agreement shall survive repayment of your loan, the termination of your Loan Agreement and the termination of any relationship between us.  It will also survive any bankruptcy to the extent consistent with applicable bankruptcy law.

**Effect of Arbitration Award; Appeal.** The arbitrator's award shall be final and binding on all parties, except for any right of appeal provided by the FAA.

**Right to Reject Arbitration Agreement.** You may reject this Arbitration Agreement, and therefore not be subject to being required to resolve any claim, dispute or controversy by arbitration, by sending us a Written Rejection Notice so that we receive it within forty-five (45) days after the Effective Date stated in this Loan Agreement.  In order for a Written Rejection Notice to be valid and effective, it must: (a) state that you (or both or all of you, if more than one) wish to reject the Arbitration Agreement; (b) state your name, address and account number; (c) be signed by you and any other person who is rejecting the Arbitration Agreement; and (d) be sent by certified mail, return receipt requested, to Legal Department, 300 Lakeside Drive, 24th Floor, Oakland, CA 94612, Attn: Arbitration Rejection. Upon receipt of this notice, we will reimburse you for the standard cost of a certified letter.  These are the only procedures you can use to reject the Arbitration Agreement.

Solar Mosaic, Inc. | www.joinmosaic.com | 300 Lakeside Drive, 24th Floor, Oakland, CA 94612
855.746.7849 | loannotices@joinmosaic.com | CA Finance Lenders License 60DBO-43631
Case 3:23-cv-00046-DCLC-JEM   Document 268-1   Filed 04/04/24   Page 19 of 27   PageID #: 7932
Page 13
Version 09.27.2021

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

Rejection of this Arbitration Agreement will not affect any remaining terms of the Loan Agreement and will not result in any adverse consequence to you or your loan. **This Arbitration Agreement will apply to you and us and to your loan as of the date of your Loan Agreement unless you reject it by providing proper and timely notice as stated above.**

**17.     WAIVER OF TRIAL BY JURY.**  IF A DISPUTE IS RESOLVED IN COURT RATHER THAN ARBITRATION, YOU KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVE ANY RIGHT YOU HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING BY US AGAINST YOU OR BY YOU AGAINST US INVOLVING THIS LOAN AGREEMENT, TO THE EXTENT PERMITTED BY APPLICABLE LAW.   IF ANY PROVISION OF THIS SECTION 17 CANNOT BE ENFORCED, THE REST OF THIS AGREEMENT WILL STAY IN EFFECT.

**Arbitration Agreement Accepted and agreed to by:**

BORROWER



THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631
Loan Agreement Number:   __356698_____



## NOTICE OF CANCELLATION

### 10/8/2021

(Enter date of transaction)

**You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.**

**If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.**

**If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the sellers expense and risk.**

**If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.**



**To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice, or any other written notice, or send a telegram to Solar Mosaic, Inc., Attn.: Loan Department, 300 Lakeside Drive, 24th Floor, Oakland, California 94612 NOT LATER THAN MIDNIGHT OF __10/14/2021__ .**

**I HEREBY CANCEL THIS TRANSACTION.**

(Date)

_____

(Buyer's Signature)

Version 5.22.2020

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631
Loan Agreement Number: _____





DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net



Solar Mosaic, Inc. | www.joinmosaic.com

# Authorization for Direct Payment via ACH

I authorize ("Authorization") Solar Mosaic, Inc. and its assignees and loan servicers (together "Mosaic," "we," or "us") to electronically debit (also known as "ACH debits") my account designated below, or any additional accounts I designate to Mosaic in the future.

The amount debited will be the **monthly payment** owed on my Loan Agreement (or any modified amounts we may later agree to or as set forth in the Loan Agreement). I also authorize Mosaic to automatically debit any of the following payment(s): (i) any prepayments or other payments I schedule through the Mosaic website, or otherwise authorize (verbally or in writing); or (ii) the amount of any late charges or NSF fees due under my Loan Agreement from time to time.

**IMPORTANT**: I acknowledge that I entered into a Loan Agreement that automatically re-amortizes eighteen (18) months after the Loan Start Date identified in the final Loan Closing Certificate I received. While I am not required to make any prepayment under the Loan Agreement, if I choose to do so, any prepayments made on or before the 18th month following the Loan Start Date will be calculated as part of the re-amortization that occurs on the 18th month.

The payment amount debited from the designated account will be the monthly payment identified in my Loan Closing Certificate as my loan payment. If the amount debited will vary from this amount, Mosaic will provide notice at least ten (10) days before the scheduled date of the debit. The payment will be debited monthly on or after the dates set forth in my Loan Closing Certificate until this Authorization is revoked.

By signing below, I authorize Mosaic to electronically debit account (and, if necessary, electronically credit my account to correct erroneous debits). Mosaic may also re-submit electronic debits that are not honored **up to two additional times**, and I may be liable to the Depository for resulting charges if I do not have sufficient funds in the account at the time of re-submission. The account information is as follows:

Loan Number: 356698

Account Holder's Name(s): ████████████

Account Number: █████████

ABA Routing Number: ████████

Bank/Savings Association/Credit Union Name ("Depository"): ███████

Account type: ☒ Checking ☐ Savings *

*Transfers from Savings Accounts and Money Market Deposit Accounts are limited. If an automatic debit exceeds my limit it may be declined by the Depository or I may be charged a fee by the Depository.*

I promise that I am authorized to agree to ACH debits from the account at the Depository described above and I am not required to obtain the agreement or consent of any other person who owns or has a claim to funds in that account (and that I have obtained all required agreements and consents from other persons who own or have a claim to funds in that account). I also acknowledge that this account is a non-business account. If I inadvertently

November 2019

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948



THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

transpose a digit or make a similar error in providing Mosaic with information about the account, I authorize Mosaic to correct the error after verifying the information with me. I understand that if my account at the Depository does not have enough available collected funds to cover the scheduled debit, the Depository may charge me overdraft or other fees, and I may owe Mosaic an NSF and/or late fee.

I acknowledge that this Authorization will remain in full force and effect until I notify Mosaic that I wish to revoke this Authorization.  I acknowledge that I can revoke this Authorization or any payment(s) under this Authorization by contacting Mosaic at loannotices@joinmosaic.com (or any subsequent email address or point of contact Mosaic provides) and this cancellation will be effective within three (3) business days after receipt. I may also cancel this Authorization by giving the Depository notice of termination or by stopping payment of any scheduled debit at least three (3) business days before the scheduled date of the next debit. I may obtain additional information about the Depository's preauthorized ACH debit stop payment requirements. I may authorize direct payments from a new account by contacting Mosaic at loannotices@joinmosaic.com (or any subsequent email address or point of contact Mosaic provides) at least three (3) business days prior to my payment due date. Such new account will replace the account designated in this Authorization and will be subject to these terms and conditions.

I understand that if I terminate this Authorization or stop payment of any scheduled debit(s), I will still be required to make the monthly payments due under the Loan Agreement.

I further understand that my Loan Agreement offers a 0.25% rate reduction on loans that are paid under this Authorization. If I terminate this Authorization, my interest rate will increase by 0.25%. An increase will take the form of higher payment amounts. If I switch from check to ACH payments by consenting to this Authorization, it may take one billing cycle for the interest rate reduction to take effect.

BY SIGNING BELOW, I AGREE AND UNDERSTAND THAT I AM AUTHORIZING MOSAIC TO DEBIT AND CREDIT MY ACCOUNT AT THE DEPOSITORY AS DESCRIBED IN THIS AUTHORIZATION. I ALSO AGREE THAT I HAVE RECEIVED A COPY OF THIS AUTHORIZATION FOR MY RECORDS.

Name: _____

Date: **10/8/2021** _____



Signature: _____

November 2019

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631



rev. October 2019

| **FACTS** | WHAT DOES SOLAR MOSAIC, INC. ("MOSAIC") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> ■ Social Security number and income <br> ■ account balances and payment history <br> ■ credit history and credit scores <br><br> When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Mosaic chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Mosaic share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**— to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | No | We don't share |
| **For non-affiliates to market to you** | No | We don't share |

| **Questions?** | Call toll-free (855) 746-7849 or go to www.joinmosaic.com |
|---|---|

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

## What we do

| | |
|---|---|
| How does Mosaic protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We also restrict access to your personal information to those employees who need to know this information to perform their job duties. |
| How does Mosaic collect my personal information? | We collect your personal information, for example, when you<br><br>■ give us your income information<br>■ provide employment information<br>■ provide account information<br>■ show your driver's license or government issued ID<br><br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br><br>■ sharing for affiliates' everyday business purposes—information about your creditworthiness<br>■ affiliates from using your information to market to you<br>■ sharing for non-affiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *Our affiliates include companies with a Mosaic or Modern Home name.* |
| **Non-affiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>■ *Mosaic does not share with nonaffiliates so they can market to you.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>■ *Mosaic does not jointly market with other nonaffiliated financial companies.* |

DocuSign Envelope ID: FD90CE7C-4565-4285-9EE7-6C37D6D77948

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

Solar Mosaic, Inc. | www.joinmosaic.com
300 Lakeside Drive, 24th Floor, Oakland, CA 94612
loannotices@joinmosaic.com | 855.746.7849
CA Finance Lenders License 6054631



rev. October 2019

## Other Important Information

**For Vermont Customers:**

- We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.
- Additional information concerning our privacy policies can be found at https://joinmosaic.com/privacy-policy or call (855) 746-7849.

