UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* RUSSELL COLEMAN, ATTORNEY GENERAL, | ) ) ) ) ) ) ) | 3:23-CV-00046-DCLC-JEM |
| Plaintiffs, | ) | |
| v. | ) ) | |
| IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, et al., | ) ) | |
| Defendants. | ) | |

### DEFENDANTS MICHAEL ATNIP AND CRAIG KELLEY'S MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO MODIFY ASSET FREEZE

Defendants Michael Atnip ("Atnip") and Craig Kelley ("Kelley") (collectively, "Individual Defendants") respectfully request that this Court enter an Order modifying this Court's asset freeze in the Amended Preliminary Injunction Order [Doc. 159] as to the Individual Defendants. The Individual Defendants respectfully request that this Honorable Court modify the asset freeze to allow the Individual Defendants to: (1) pay their past due legal fees to Midtown Legal, LLC in the amount of $47,941.47.

*PROCEDURAL HISTORY AND FACTUAL BACKGROUND*

Plaintiffs filed this action on February 6, 2023, against Defendants Atnip, Kelley, Sarah Kirkland, Ideal Horizon Benefits, LLC d/b/a Solar Titan USA ("Solar Titan"), Solar Titan Charters, LLC ("Titan Charters"), and Solar Mosaic, LLC d/b/a Mosaic ("Mosaic"). Along with the Complaint against Defendants, Plaintiffs filed a Motion for a Temporary Restraining Order that,

together with other injunctive terms, included a request for an appointment of a Receiver over Solar Titan under Rule 66 of the Federal Rules of Civil Procedure, and analogous state laws, and an asset freeze for the Individual Defendants. [Doc. 4 and 5]. This Court granted Plaintiffs' Temporary Restraining Order, appointed Richard Ray as a Receiver (the "Receiver") over Solar Titan [Doc. 21], and subsequently converted the Temporary Restraining Order to a Preliminary Injunction [Doc. 78]. This Court subsequently issued an Amended Preliminary Injunction Order, which remains in effect [Doc. 159].

The preliminary injunction froze Kelley and Atnip's assets. The property subject to the asset freeze will be referred to herein as the "Estate". It also directed the receiver to distribute $3,500 per month to Atnip and Kelly for reasonable living expenses.

Following the Plaintiffs' and Individual Defendants' Joint Motion to Modify the Asset Freeze [Doc. 210], this Court modified the asset freeze order with respect to the Individual Defendants' accounts to allow for additional payments to the Individual Defendants, their counsel, and the Receivership estate and paused the Receiver Estates' obligation to pay the Individual Defendants' living expenses [Doc. 216].

Individual Defendants subsequently filed another Joint Motion to Modify the Asset Freeze (Doc. 289) requesting, *inter alia*, allowance for payment of the Individual Defendants' past due legal fees in the amount of $128,912.34. Plaintiffs opposed the request. In ultimately denying the legal fees portion of the request, the Court stated that: "Whether Defendants submitted adequate documentation supporting what their attorneys charged for specific work is only part of the inquiry. They must also submit evidence supporting the reasonableness of the fees. This is commonly accomplished via an affidavit attesting to the reasonableness of the amounts charged, or via evidence of prevailing market rates". [Doc. 342, pg. 9]. The Court also noted that in its prior

decision regarding attorney's fees on the matter, the Court was clear that general principles of equity would ordinarily require unfreezing assets to pay reasonable attorneys' fees. [Doc. 342, pg. 9].

*The Individual Defendants' Income*

Each of the Individual Defendants have made a good faith effort to earn an income after the asset freeze. Kelley has found gainful employment with Westgate Marketing, LLC. (*See*, Doc. 289, Exhibit 2, ¶ 2-4). Where he made $57,370.88 in 2023, or $5,215.54 per month (February through December). (*Id*. at ¶ 5). In 2024, Mr. Kelley made $175,364 from Westgate Marketing, LLC. (Exhibit 1).

Unfortunately, Atnip, age 65, has been directed by his medical doctor that he should not be working due to his current health condition. (See, Doc. 289 Exhibit 3, ¶ 3-5). The Individual Defendants have a 19-year-old son who is a dependent living in their house. (*Id*. at ¶ 2).

It is also important to note, that the Estate earns an income of approximately $13,400 per month from account with First Horizon Bank alone (See, *Id*. At pg. 7).

*Work Done by Individual Defendants and their Counsel*

A significant amount of work in this matter was performed by Defendants' prior firm during the period when Attorney Blink was employed there. As detailed extensively in Defendants' earlier fee motions, that prior work involved substantial briefing, motion practice, discovery efforts and coordination with the receiver,[1] yet those fees remain ultimately unpaid. While that history is relevant to show the sustained effort required to defend this case, the present motion is focused on the work performed by Midtown Legal. Midtown Legal has undertaken significant additional work

---

[1] This matter started with a preliminary injunction hearing, where the Plaintiffs filed over 1,000 pages of documentation. (Doc. 5 – Doc. 11). To the date of filing this Memorandum, there have been 365 other filings in this matter, each requiring diligent review and analysis. (See Docket). There have also been four (4) collection lawsuits brought against Mr. Atnip in Tennessee state court that Mr. Atnip's counsel had to defend using the Amended Preliminary Injunction Order.

since the prior motions, including continued coordination with the Receiver and receipt and analysis of an enormous Receiver file and related records pertaining to claims relevant to the defense, defense of collections lawsuit brought against Mr. Atnip in Tennessee state court, and discovery including subpoena preparation, and depositions.

The case is now in discovery phase, including the exchange of written discovery and depositions. Participation in this critical stage requires significant attorney time and resources. Without the release of funds, Defendants' ability to respond to discovery, prepare for and attend depositions will be severely impaired and will undermine the ability to move the case forward in an orderly and efficient manner.

## LEGAL STANDARD

"The Court has inherent power to modify its own injunctions." *Toledo Area AFL-CIO Council v. Pizza*, 907 F. Supp. 263, 265 (N.D. Ohio 1995). In doing so, "the Court exercises the same discretion it exercised in granting the injunction in the first place." *Id*. Moreover, "[a]s a corollary to the rules of law permitting a district court to grant a preliminary asset freeze, a district court may release or lower the amount of assets frozen." *Fed. Trade Comm'n v.Washington Data Res., Inc.,* No. 8:09-CV-2309, 2010 WL 11507704, at *3 (M.D. Fla. Jan. 15, 2010); see *Fed. Trade Comm'n v. Fed. Check Processing, Inc.*, No. 14-CV-122S, 2016 WL 10988581, at *1 (W.D.N.Y.Mar. 7, 2016) ("Just as this Court has the authority to freeze assets in a civil enforcement action, it also has the discretion to 'unfreeze those assets when equity requires.'"). Yet, "[a]ny determination to modify the asset freeze . . . must account for the fact that this ancillary relief was imposed to ensure this Court's ability to fashion an appropriate remedy, such as restitution to [consumers], in the event the [Plaintiffs are] successful in [their] prosecution of this action." *Fed. Check Processing, Inc.*, 2016 WL 10988581, at *1.

The Court has discretion to unfreeze assets to allow defendants to pay attorney fees. *FTC v. LAB Mktg. Assocs.*, 972 F. Supp 2d 1307, 1313 (S.D. Fla. 2013). Furthermore, this Court previously noted that it is not applying a "reasonable and necessary" standard to a request for modification. [Doc. 342].

## ARGUMENT

The Individual Defendants request a release of $47,951.47 from the asset freeze in order to pay off their past due legal fees. Previously, this Court denied Atnip and Kelleys' motion for reasonable legal fees in the amount of $128,912.34. This Court's denial was not premised on the fact that legal fees were not warranted. Rather, the denial was based on Atnip and Kelley failing to satisfy their burden of providing sufficient evidence supporting the reasonableness of the fees. [Doc 342, pg. 9]. The Court stated: "Whether Defendants submitted adequate documentation supporting their attorneys charged for specific work is only part of the inquiry. They must also submit evidence supporting the reasonableness of the fees. This is commonly accomplished via an affidavit attesting to the reasonableness of the amounts charged or via evidence of prevailing market rates." [Doc. 342, pg. 9].

Furthermore, in the Court's opinion on Defendants' initial Motion for fees, this Court stated it "has the discretion to grant or deny a request to unfreeze assets for … attorneys' fees" and that this Court "recognizes the need for representation and the hardships presented by being unable to pay for such representation due to the asset freeze." [Doc 158, pg. 5, pg. 15]. Generally speaking, this Court referenced "that general principles of equity would require the release of frozen assets to pay reasonable legal … expenses." *Id*. at pg. 16.

***Reasonableness of Fees***

In accordance with the Court's Order [Doc. 342], Attached hereto is a sworn Declaration of Attorney Blink attesting to the reasonableness of the hours billed and rates charged by the attorneys of the defense team at Midtown Legal. (Exhibit 2).

Additionally, the fees requested are reasonable for the complexity of this matter. There have been over 365 filings in this matter. There have been multiple ancillary state court cases. There has been ongoing and extensive discovery. Furthermore, the reasons set forth, *infra,* in the *Johnson* analysis, support reasonableness of the fees sought.

**The Johnson Factors**

As the Court noted in its most recent Order denying attorney's fees [Doc. 342, pg. 9], although Plaintiffs suggest that the Court should apply the five factors from *FTC v. Johnson*, No. 210CV02203, 2011 WL 13249477 (D. Nev. June 17, 2011), that framework is not binding on this Court. Defendants maintain that the relevant showing is that the requested fees are reasonable, and that the Johson factors have no bearing on the analysis. However, for the sake of argument, and assuming the Court elects to apply the Johonson analysis, the factors are addressed here. "District courts have considered the following factors in determining whether to release frozen funds for legal fees: (1) the likelihood that plaintiff will prevail on the merits; (2) whether defense counsel was aware of the possibility that the court might deny or limit attorney fees; (3) the availability of assets for consumer redress; (4) a defendant's access to alternative assets; and (5) the reasonableness of the funds requested for legal fees and living expenses." *Johnson*, 2011 WL 13249477, at *1 (quoting *FSLIC v. Ferm*, 909 F.2d 372, 374 (9th Cir. 1990)).

    1.    *Likelihood that Plaintiff will prevail on the merits*

While Plaintiffs argue that they satisfy this factor merely because the Court previously found a likelihood of success on the merits when granting the temporary injunction, the prior finding of likely success on the merits is not dispositive of this factor. It merely reflects the minimal

showing Plaintiffs had to make to obtain a preliminary freeze. A preliminary injunction requires a finding of likely success to justify the extraordinary remedy of freezing assets. If the preliminary injunction standard alone were dispositive of this factor, then this factor would be meaningless in every case involving frozen assets because the Court will have already made that finding by virtue of issuing the injunction in the first place. The fact that the Court made a preliminary, expedited, and necessarily limited determination for purposes of injunctive relief does not automatically satisfy the more searching inquiry required at the stage of determining whether frozen funds should be released for legal fees. The asset release analysis allows the Court to consider additional factual development, the evolving record, the actual litigation posture, and the equities involved, none of which were fully developed at the preliminary injunction stage. Since the preliminary injunction, the parties have conducted discovery, and the Receiver has uncovered more about Generac's potential liability; thus Plaintiffs' likelihood of prevailing on the merits is diminished. *See infra*, Availability of Assets for Consumer Redress, for more information on Generac's liability in this matter.

2. *Defense Counsel's Awareness of the Asset Freeze*

Defendants concede that Counsel was aware of the asset freeze when they decided to take on Defendants as clients. However, as *Johnson* points out, "attorneys who are aware of the asset freeze will also know that the court has discretion to approve or deny a release of frozen assets to pay attorneys fees". *Id*. At 2, *citing FTC v. Sharp*, 1991 WL 214076 (D. Nev. Jul. 23, 1991). Accordingly, Counsel's decision to undertake representation reflects a reliance on the Court's authority to permit payment of reasonable fees from frozen assets as Defendants request here.

3. *Availability of Assets for Consumer Redress*

Plaintiff's argument that the Receiver's estate alone "will not be large enough to pay all the claims against it" [Doc. 304, pg. 9] narrows the analysis to the Receiver's current estate while

ignoring other material components of the total asset pool. First, Plaintiff fails to account for the frozen assets over ten million dollars from the Defendants alone. *See* Combined Financial Disclosures. Second, Plaintiff disregards the sizeable claim against Generac, which the Receiver, pursuant to its report, has preserved via a tolling agreement. The Receiver's 15th Status Report notes continued review relative to estimate of damages "caused by Generac failed components". [Doc 329-1, pg.2]. That claim represents a substantial potential recovery that will significantly expand the pool of assets available for consumer redress. Specifically, the Receiver's Tenth Status report highlights the significance of the Generac-related issues. The Report notes a 71% cumulative replacement rate of Generac SNAPRS component. [ Doc. 279-1, pg. 7]. The Report notes that in 2022, 319 Snap RS802 were installed and in 2023, 500 Snap RS802 were installed. This totals 819 consumer homes. There are 332 consumer homes that have pending warranty service or are offline, for a total of 1,151 consumer homes that needed warranty service. This amounts to 71% of the total Generac installations by Solar Titan that needed warranty service. Therefore, 71%, or 1,151, of the Generac Installations performed by Solar Titan on consumer homes experienced products that would "rapidly turn on and off" and "melt during normal use" due to no fault of Solar Titan. Furthermore, the 12th Status Report details consumer complaints attributable to Generac batteries. That report states the number of [battery related] complaints as 26. Those "manufactured by Generac" are 26. The Report also notes: "No Solar Edge battery complaints". [Doc. 292-1, pg. 7]. Thus, a staggering 100% of the battery-related complaints are attributable to Generac. Consequently, any claim against Generac seeking recovery for these very failures stands to resolve a major portion of the consumer complaints.

    4.    *Access to Alternative Assets*

While Plaintiffs point out that Mr. Kelley has obtained gainful employment, that does not mean that he possesses sufficient financial resources to cover both basic living expenses and to

fund litigation of this magnitude. As previously discussed, Mr. Atnip is medically unable to work. This is a complex action requiring substantial attorney time and ongoing litigation costs. Even steady employment does not equate to the capacity to shoulder fees of this scale. This is further compounded by the fact that the $3,500 monthly living stipend has ceased, leaving Defendants with even less disposable income to allocate toward legal costs. Moreover, Defendants have already used their best efforts to pay attorney's fees out of their own pockets and have contributed to a portion of Midtown Legal's fees to date. Thus, this limited request for release of frozen assets is not a matter of convenience, but of necessity.

5.   *Reasonableness*

Defendants' fees are reasonable for the reasons set forth in Attorney Blink's Declaration and in light of the prevailing market rate. Furthermore, Midtown Legal is a very small firm, and the defense team assigned to this matter operates with minimal personnel. In nearly all meetings, conferences and communications, only one attorney participates. At most, and in limited discovery-related circumstances, two attorneys may be involved. This stands in stark contracts to Plaintiff's approach, where multiple attorneys routinely appear on calls, correspondence and litigation tasks. For a case of this magnitude, Midtown Legal has ensured that all work performed is necessary and carried out with maximum efficiency. Additionally, Counsel has undertaken the substantial task of reviewing the Receiver's massive file as part of ongoing discovery, which requires careful analysis as it contains information that is absolutely essential to the defense of this case. For a firm of Midtown Legal's size, this matter demands a substantial allocation of time and resources.

## CONCLUSION

In conclusion, the Individual Defendants request a modification of the asset freeze portion of the Injunction Order. Specifically, the Individual Defendants request a release of (1) $47,941.47

to pay off their past due attorney fees. The money to pay the requests herein can be released from the Individual Defendants 0039 First Horizon Bank Account. The money can be deposited into the Midtown Legal LLC IOLTA account.

Respectfully submitted,

MIDTOWN LEGAL, LLC

    */s/ Samuel Blink*
Samuel Blink, Esq. (#36400)
Jillian McGough, Esq., *PHV* (FL. BN# 1014590)*
Midtown Legal, LLC
102 Hartmann Drive, Suite G321
Lebanon, TN. 37087
sblink@midtownlegal.co
jmcgough@midtownlegal.co
*Attorneys for Michael Atnip and Craig Kelley*

CERTIFICATE OF SERVICE

I do hereby certify that on November 21, 2025, the forgoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

    */s/ Samuel Blink*
Samuel Blink, Esq. (#36400)
Jillian McGough, Esq., *PHV* (FL. BN# 1014590)*
Midtown Legal, LLC
102 Hartmann Drive, Suite G321
Lebanon, TN. 37087
sblink@midtownlegal.co
jmcgough@midtownlegal.co
*Attorneys for Michael Atnip and Craig Kelley*