UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| STATE OF TENNESSEE, *ex rel.* JONATHAN SKRMETTI, ATTORNEY GENERAL and REPORTER, and COMMONWEALTH OF KENTUCKY, *ex rel.* RUSSELL COLEMAN, ATTORNEY GENERAL, <br><br> Plaintiffs, <br><br> v. <br><br> IDEAL HORIZON BENEFITS, LLC d/b/a SOLAR TITAN USA, *et al.*, <br><br> Defendants. | 3:23-CV-00046-DCLC-JEM |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Michael Atnip and Craig Kelley's Joint Motions to Modify the Asset Freeze [Docs. 367, 370]. The first motion, opposed by Plaintiffs [Doc. 371], requests a modification to allow Atnip and Kelley to pay their past due legal fees. The second motion requests a modification to pay property taxes and HOA fees for properties that benefit the Estate. Plaintiffs do not oppose this motion. [Doc. 374]. Both matters are fully briefed and ripe for review. For the reasons that follow, both motions are granted.

**1.    BACKGROUND**

Plaintiffs State of Tennessee and Commonwealth of Kentucky initiated this civil enforcement action against Ideal Horizon Benefits, LLC d/b/a Solar Titan USA and the Individual Defendants alleging violations of various federal and state consumer protection laws. Shortly after this action commenced, the Court issued a Temporary Restraining Order ("TRO") that, together with other injunctive terms, froze the Individual Defendants' assets [Doc. 21]. The Court later

1

Case 3:23-cv-00046-DCLC-JEM   Document 380   Filed 02/20/26   Page 1 of 7
PageID #: 9649

converted the TRO into a Preliminary Injunction [Doc. 78] and continued the asset freeze, which remains in place today.

In relevant part, the Preliminary Injunction prohibits the Individual Defendants from "[t]ransferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of" all assets existing at the time of issuance of the Order or, under certain limited circumstances, assets obtained after issuance of the Order [Doc. 78, § II(A)]. However, the Court excluded certain accounts and directed the court-appointed receiver to distribute $3,500 per month to Atnip and Kelley for reasonable housing and other living expenses [Doc. 78, § X(S)(1)]. The Court permitted Atnip and Kelley to move to adjust this amount for good cause shown [Id. at § X(T)].

Defendants' *potential* liability in this case exceeds the frozen asset funds four times over, as consumers have filed 845 unique claims totaling approximately $36.3 million as of March 31, 2025, and the value of the frozen assets is roughly $7.7 million. [Docs. 101, pg. 4, 216, pg. 1, & 354-1, pg. 2]. This disparity underscores the Court's obligation to preserve the frozen assets for potential consumer restitution.

Atnip and Kelley now move to modify the asset freeze to pay past due legal fees in the amount of $47,941.47 and past due property taxes and Homeowner's Association fees in the amount of $23,077.

## II.   LEGAL STANDARD

"The Court has inherent power to modify its own injunctions." *Toledo Area AFL-CIO Council v. Pizza*, 907 F. Supp. 263, 265 (N.D. Ohio 1995). In doing so, "the Court exercises the same discretion it exercised in granting the injunction in the first place." *Id.* Moreover, "[a]s a

2

Case 3:23-cv-00046-DCLC-JEM   Document 380   Filed 02/20/26   Page 2 of 7
PageID #: 9650

corollary to the rules of law permitting a district court to grant a preliminary asset freeze, a district court may release or lower the amount of assets frozen." *Fed. Trade Comm'n v. Washington Data Res., Inc.*, No. 8:09-CV-2309, 2010 WL 11507704, at *3 (M.D. Fla. Jan. 15, 2010); *see Fed. Trade Comm'n v. Fed. Check Processing, Inc.*, No. 14-CV-122S, 2016 WL 10988581, at *1 (W.D.N.Y. Mar. 7, 2016) ("Just as this Court has the authority to freeze assets in a civil enforcement action, it also has the discretion to 'unfreeze those assets when equity requires.'"). Yet, "[a]ny determination to modify the asset freeze . . . must account for the fact that this ancillary relief was imposed to ensure this Court's ability to fashion an appropriate remedy, such as restitution to [consumers], in the event the [Plaintiffs are] successful in [their] prosecution of this action." *Fed. Check Processing, Inc.*, 2016 WL 10988581, at *1. The party seeking modification bears the burden of demonstrating that equity warrants relief and that the requested release will not undermine the purpose of the freeze.

## III. ANALYSIS

### A. Legal Fees

Defendants first move the Court to unfreeze $47,941.47 to pay their past due legal fees. The Court previously denied their motion to unfreeze $128,912.34 to pay legal fees as they provided no evidence supporting the reasonableness of the fees.[1] [Doc. 342]. Now, in the pending motion, Defendants attached a sworn Declaration of Attorney Blink attesting to the reasonableness of the hours billed and rates charged by defense counsel. [Doc. 369-2]. Plaintiffs do not dispute that the fees are reasonable, but still oppose the motion, arguing that Defendants have not shown good cause to modify the asset freeze. Plaintiffs contend that Defendants have not demonstrated

---

[1] Defendants have not refiled their motion to receive $128,912.34 in attorneys' fees. Instead, the new motion seeks money to pay for different attorneys' fees billed in recent months.

the need to pay attorneys' fees from the frozen funds when Kelley earns an annual salary of $175,000 and can pay the fees himself.  In reply, Defendants counter that it is absurd and unreasonable that they fund their defense in a case this complex and sophisticated on Kelley's salary alone.

The Court has discretion to grant or deny a request to unfreeze assets for attorneys' fees, but in applying that discretion, it must be mindful of the competing values at stake.  On one hand, "this suit was brought to establish the defendants' wrongdoing; the court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987).  On the other hand, the frozen assets in this case are less than the amount that would be needed to compensate consumers for their losses, if the Defendants are found liable.  And "while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *F.T.C. v. RCA Credit Servs., LLC*, No. 8:08-CV-2062, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008).  The Court has already allocated $350,000 from the frozen asset funds to cover the Defendants' attorneys' fees.  The present request is materially smaller, supported by sworn evidence of reasonableness, and reflects ongoing litigation costs in a complex enforcement action.

The Court must determine whether Defendants have demonstrated that they are unable to secure continued legal representation without the release of frozen assets. *See Dixon*, 835 F.2d at 565. The burden rests on Defendants to show that they cannot reasonably pay the outstanding fees from unrestrained income or assets.

Based on the record, the Court finds that Defendants have satisfied this burden. The only unrestrained income identified is Kelley's annual salary of $175,000. The record reflects that this

4

Case 3:23-cv-00046-DCLC-JEM | Document 380 | Filed 02/20/26 | Page 4 of 7
PageID #: 9652

income supports a three-person household, including a dependent child, and that Atnip is medically unable to work. Defendants have represented—without contradiction—that they have already contributed personal funds toward their legal expenses. The Court further notes that the frozen assets include income-producing properties that are themselves subject to the injunction and therefore unavailable for liquidation or borrowing.

Although Kelley's salary is substantial, the record demonstrates that the outstanding legal fees alone represent a significant portion of that annual income and that ongoing litigation costs in this complex enforcement action will continue to accrue. Under these circumstances, requiring Defendants to satisfy the full amount of accrued fees solely from current income would materially impair their ability to maintain continued representation.

The Court therefore finds that Defendants have shown that release of a limited portion of frozen assets is necessary to secure ongoing legal representation and that the requested amount—$47,941.47—is supported by sworn evidence of reasonableness. The Court also finds that this limited release will not materially undermine the purpose of the asset freeze, given the overall scale of frozen assets and the amount already preserved for potential restitution. Therefore, this motion [Doc. 367] is **GRANTED**.

### B.  Property Taxes and HOA Fees

Defendants also move to modify the asset freeze to allow the Defendants to pay $3,900 in HOA fees and $19,177 for property taxes owed for 2025.[2]

Both parties incorrectly claim that the HOA request includes late fees. [Doc. 374-1 (Plaintiffs include $1,260 in late fees); Doc. 375, pg. 2 (Defendants seek $3,600 in association fees

---

[2]  The motion [Doc. 370] requests $40,605.30 for property taxes, which includes $21,428.30 for 2024 property taxes.  In their reply brief, Defendants state this request was in error, and they only seek property taxes owed for 2025. [Doc. 375].

5

with late fees of "$150 per property for six properties.")]. But Defendants' HOA request for $3,900 only includes association fees. Defendants own six properties, each of which was assessed a $650 association fee. Thus, the total association fees are $3,900. Defendants do owe late fees of $1,260 on these properties, but they have not requested additional funds to cover those fees.

As the Court explained in its prior Order addressing a motion to modify the asset freeze, the Court's main concern is whether a given request would "thwart the goal of the asset freeze— i.e., maintaining the status quo for prospective consumer redress." [Doc. 158, pg. 7]. Payment of property taxes and mandatory association fees preserves the value of assets subject to the freeze and therefore advances, rather than undermines, the equitable purpose of the injunction. Allowing a release of funds to pay property taxes and HOA fees would not flout the purpose of the asset freeze and it would preserve the status quo. If the taxes and fees go unpaid, penalties or foreclosure could result, as Defendants appear keenly aware of. It best preserves the status quo to ensure that these properties remain unencumbered and available for potential consumer redress. Therefore, this motion [Doc. 370] is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions [Docs. 367, 370] are **GRANTED.** The Asset Freeze [Doc. 159] shall be modified to allow for the release of $47,941.47 for the payment of Defendant Atnip and Kelley's legal fees, $3,900 for the payment of HOA fees, and $19,177 for the payment of 2025 property taxes. The receiver is authorized to release these funds for the limited purpose described herein and shall go through Midtown Legal's IOLTA account ending in 9659.

**SO ORDERED:**

                                                  s/ Clifton L. Corker
                                                  United States District Judge